Hon. James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VHT, INC., a Delaware corporation,

Plaintiff,

v.

ZILLOW GROUP, INC., a Washington corporation; and ZILLOW, INC., a Washington corporation,

Defendants.

Case No. 2:15-cv-01096-JLR

**ANSWER OF DEFENDANTS ZILLOW GROUP, INC. AND ZILLOW, INC. TO SECOND AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT WITH COUNTERCLAIM**

**JURY DEMAND**

Defendants Zillow Group, Inc. ("Zillow Group") and Zillow, Inc. ("Zillow, Inc." and collectively with Zillow Group, "Zillow"), by its undersigned counsel, hereby answers the second amended complaint of plaintiff VHT, Inc. d/b/a VHT Studios ("Plaintiff" or "VHT") as follows:

## INTRODUCTION

1.      Zillow admits that it owns and operates an online real property listing service (www.zillow.com) for the marketing and sale of properties (the "Listing Site"), and that the Listing Site also provides a means for real estate brokers and agents (including those who acted as brokers or agents for listed properties that have already sold) to market their services to the Listing Site's users. Zillow admits that the audience for Zillow's websites is larger than any competitor. Zillow admits that the quotation referred to from Housingwire.com was made by Spencer Rascoff of Zillow, but that VHT has misleadingly truncated the quotation, which states in full: "We're all about providing consumers with access to information and then connecting

1

them with local professionals. And we do a great job of giving those local professional high-quality lead[s], they'll convert those leads to[o] at a high rate and then want more media impressions from us. So we're not actually in the transaction, we're in the media business." Zillow denies knowledge and information as to whether VHT owns copyright in the photographic images alleged in Paragraph 1 of the Second Amended Complaint ("SAC"), and, except as so admitted and denied, denies the allegations contained in paragraph 1 of the SAC.

2.     Zillow admits that it continues to display photographs of properties provided by a subset of listing providers on the Listing Site after such properties have been sold; admits, upon information and belief, that some such photographs, supplied to Zillow by brokers, agents, and Multiple Listing Services ("MLSs") for use on Zillow websites, may have been previously supplied to brokers or agents by VHT; denies knowledge and information sufficient to form a belief as to VHT's allegations that it is the "leading full service provider of professional photographs for the real estate industry" or that "VHT owns the copyrights in many of these photographs," and avers that the U.S. Copyright Office has refused to register VHT's claims of copyright in the database in which such photographs are included; avers that any use by Zillow of photographs in which VHT actually owns copyrights are permitted under the terms of the VHT license to its customers as alleged at paragraph 34 of the SAC, and, except as so denied and averred, denies the remaining allegations in paragraph 2 of the SAC.

3.     Zillow admits and avers that the www.zillow.com website features a separate section, called Zillow "Digs" (the "Digs Site"), which is directed at consumers who are interested in home design and renovation; that the information available on the Digs Site can also be accessed by Internet users who download a separate "app" (the "Digs App"; all references herein to "Digs" refer to both the Digs Site and the Digs App unless expressly stated otherwise); that Digs contains a public board that may be viewed by all users of Digs; that photographs of house interiors are shown on the Digs public board; that some of such photographs have been saved by Zillow from property listings on the Listing Site; that users of the Listing Site may maintain

Answer to Second Amended Complaint
Case No. 2:15-cv-01096-JLR

**Susman Godfrey LLP**
1201 Third Avenue, Suite 3800
Seattle WA  98101-3000

personal boards and save photographs to such personal boards, including photographs from the Listing Site; that such photographs are not saved to the Digs public board by Zillow until they are reviewed by Zillow to determine that they meet quality standards; that when Zillow posts photographs to the Digs public board, it makes them searchable by category, so that users can see multiple photographs within the same or combined categories; that Zillow adds "bubbles" to design features shown within some of the photographs so that when a bubble is clicked on by the user, information is displayed to the user, such as the name of a merchant that sells the feature, a price for the feature, and a website link; and that such information cannot be considered to be advertising (or "pairing for marketing for vendors" as alleged by VHT) because, except in a very limited number of circumstances, merchants have not asked Zillow to include that information and do not pay Zillow for including that information. Zillow also admits, upon information and belief, that some photographs used on Digs, supplied to Zillow by brokers, agents, and MLSs for use on Zillow websites, may have been previously supplied to brokers or agents by VHT; that because it is well-known in the real estate industry that a property is always on the market and Zillow provides users with photographs of properties and interiors on the Listing Site and on Digs for the purpose of assisting with the marketing or sale of properties and/or for marketing or sale of the services of brokers or agents, such uses are within the scope of the VHT license alleged at paragraph 34 of the SAC; and, except as so admitted, denies the allegations of paragraph 3 of the SAC.

4.      Zillow admits that when Zillow launched the Digs, it used at least some photographs from property listings on the Listing Site; admits, upon information and belief, that some such photographs, supplied to Zillow by brokers, agents, and MLSs for use on Zillow websites, may have been previously supplied to brokers or agents by VHT; and, except as so admitted, denies the allegations contained in paragraph 4 of the SAC.

5.      Zillow admits, upon information and belief, that some photographs that were previously supplied by VHT to brokers or agents, and which in turn were supplied to Zillow by

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

brokers, agents, and MLSs, are on the Listing Site and Digs, and that some of the photographs within this group may be from properties that have been sold and, while such properties may not be currently offered by their owners for sale, they are nonetheless being marketed by the Listing Site because, as is well-known in the real estate industry, a property is always on the market. Zillow also avers that it does not automatically remove from the Listing Site or Digs the photographs associated with properties that have been sold unless the contract it has in place with a source providing property listings requires that Zillow remove the photographs upon the source removing the corresponding property from the source's feed of property listings it provides to Zillow. Zillow further avers that offers to purchase properties can occur even when an owner has not listed its property for sale, and even a recent purchaser of a property is often willing to resell when presented with an offer that would provide him or her with a profit. In addition, Zillow avers that its use of such photographs in the case of sold properties continues to market the services of the listing broker or agent, who remains identified in the listing, usually with a link to that broker or agent's full profile on Zillow. Zillow denies the allegations contained in the second sentence of paragraph 5 of the SAC; denies, upon information and belief, the allegations contained in the third sentence of paragraph 5 of the SAC; and, except as so admitted and denied, denies knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 5 of the SAC.

6.      Zillow denies the allegations contained in the first sentence of paragraph 6 of the SAC. Zillow admits that it held discussions with VHT in 2013 regarding a direct license to Zillow for use of VHT photographs and that no such license agreement was entered into between those parties, and, except as so admitted, denies the remaining allegations contained in paragraph 6 of the SAC.

7.      Zillow admits that when Zillow launched Digs, it used at least some photographs from property listings on the Listing Site; admits that it does not automatically remove from the Listing Site or Digs the photographs associated with properties that have been sold unless the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

contract it has in place with a source providing property listings requires that Zillow remove the photographs upon the source removing the corresponding property from the source's feed of property listings it provides to Zillow; admits that when a property listed on the Listing Site is sold, a notation of that sale appears on the Listing Site page for that property; admits that Zillow is seeking advertisers to pay for advertising in connection with the Digs product; admits that Zillow does tag images in Digs with bubbles that provide a link to third-party vendors; and, except as so admitted, denies the remaining allegations contained in paragraph 7 of the SAC.

8.      Zillow denies knowledge and information sufficient to form a belief (1) as to whether any of the photographs on either the Listing Site or Digs are works in which VHT claims a copyright interest and (2) as to VHT's allegations in the last sentence of paragraph 8 of the SAC, and therefore denies the same; denies that any use of VHT photos on the Listing Site or Digs is infringing and avers that Zillow is permitted to use such photos (including in connection with properties that are not currently offered for sale and to continue to market the subject brokers or agents) under the license granted by VHT to its customers and/or that such use is a fair use; admits that VHT has purported to serve one or more notices on Zillow pursuant to the Digital Millennium Copyright Act and that such notices are legally defective and/or Zillow has fully responded to such notices; admits that Zillow does not automatically remove photos of a property from the Listing Site after the sale of the property (except when it has contractually agreed with the source of the photographs to do so upon the source removing the corresponding property from the source's feed of property listings it provides to Zillow) because such photos continue to market the property and the agents or brokers; denies that Zillow is able to determine whether photos supplied to it by brokers, agents, and MLSs are photos in which VHT claims an interest, and, except as so denied and admitted, denies the allegations contained in paragraph 8 of the SAC.

5

Answer to Second Amended Complaint
Case No. 2:15-cv-01096-JLR

**Susman Godfrey LLP**
1201 Third Avenue, Suite 3800
Seattle WA  98101-3000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JURISDICTION AND VENUE**

9.      Zillow admits that VHT purports to sue under the Copyright Act, and except as so admitted, denies the allegations contained in paragraph 9 of the SAC.

10.      Zillow admits that VHT alleges that the Court has original subject matter jurisdiction over VHT's claims, and, except as so admitted, denies the allegations contained in paragraph 10 of the complaint.

11.      Solely for the purposes of this specific action, Zillow admits that it is subject to personal jurisdiction within the Seattle Division of the Western District of Washington, and, except as so admitted, denies the allegations contained in Paragraph 11 of the SAC.

12.      Solely for purposes of this specific action, Zillow admits that venue is proper in this District, and, except as so admitted, denies the allegations contained in Paragraph 12 of the SAC.

**PARTIES**

13.      Zillow denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of the SAC and therefore denies the same.

14.      Zillow admits the allegations contained in the first two sentences of paragraph 14 of the SAC. Zillow admits that in 2009, it provided a co-branded version of the Listing Site for use in the real estate sections of 180 on-line newspaper websites and that in 2010, it partnered with Yahoo! Real Estate to provide for-sale listings, Zestimate home values, and other information to Yahoo! Real Estate, and, except as so admitted, denies the allegations contained in paragraph 14 of the SAC.

15.      Zillow denies that Zillow Group participated in or authorized any of the acts alleged to be infringing by Plaintiff, and, except as so denied, admits the allegations contained in paragraph 15 of the SAC.

6

# **FACTUAL BACKGROUND**

16.     Zillow denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 of the SAC and therefore denies the same.

17.     Zillow denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 17 of the SAC and therefore denies the same.

18.     Zillow denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 of the SAC and therefore denies the same.

19.     Zillow denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 19 of the SAC and therefore denies the same.

20.     Zillow denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 20 of the SAC and therefore denies the same.

21.     Zillow denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 21 of the SAC and therefore denies the same.

22.     Zillow denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 22 of the SAC and therefore denies the same.

23.     Zillow denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of the SAC and therefore denies the same.

24.     Zillow denies the allegations contained in paragraph 24 of the SAC.

25.     Zillow denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 25 of the SAC and therefore denies the same.

26.     Zillow denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 26 of the SAC and therefore denies the same.

27.     Zillow denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 27 of the SAC and therefore denies the same.

28.     Zillow denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 28 of the SAC and therefore denies the same.

7

29.     Zillow admits that documents purporting to be applications by VHT to register compilations, to wit, certain databases and updates thereto, are attached to the complaint as "Exhibits 1-13," admits, upon information and belief, that no registration has been issued by the U.S. Copyright Office with respect to certain applications; and, except as so admitted, denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 29 of the SAC and therefore denies the same.

30.     Zillow admits that the Copyright Office initially denied eight of VHT's applications and that VHT requested reconsideration, admits that the Copyright Office indicated that it would reverse the denials of some of those applications and issue registrations upon submission of additional information by VHT, admits that the Copyright Office appears to have issued registrations for seven of VHT's applications, admits that other applications are still under consideration, and, except as so admitted, denies the allegations contained in paragraph 30 of the SAC.

31.     Zillow admits that VHT served notification of the pendency of this action on the Copyright Office on our around April 18, 2016, admits that the Copyright Office had not intervened by June 17, 2016, and, except as so admitted, denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 31 of the SAC and therefore denies the same.

32.     Zillow denies the allegations contained in paragraph 32 of the SAC.

33.     Zillow denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 33 of the SAC and therefore denies the same.

34.     Zillow denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 34 of the SAC and therefore denies the same.

35.     Zillow denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 35 of the SAC and therefore denies the same.

36. Zillow admits that it has received property listings from MLSs, and, except as so admitted, denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 36 of the SAC and therefore denies the same.

37. Zillow denies that it currently has a commercial relationship with ListHub, and denies knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 37 of the SAC and therefore denies the same.

38. Zillow denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 38 of the SAC and therefore denies the same.

39. Zillow denies the allegations contained in paragraph 39 of the SAC.

40. Zillow denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 40 of the SAC and therefore denies the same.

41. Zillow denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 41 of the SAC and therefore denies the same.

42. Zillow admits that Zillow and Plaintiff engaged in discussions in early 2013 concerning a possible direct license from VHT to Zillow for use of photographs contained in VHT's claimed database of photographs and that such negotiations did not advance to the point of monetary offer or demand, and, except as so admitted, denies the allegations of paragraph 42 of the SAC.

43. Zillow denies the allegations contained in paragraph 43 of the SAC.

44. Zillow admits that it provides information to users of Digs relating to where they can locate goods similar to those shown in photographs displayed on the Digs public board, admits that Zillow is seeking advertisers to pay for advertising in connection with the Digs product, admits that it is an Amazon affiliate and in a very limited number of circumstances it receives payment from certain advertisers, and, except as so admitted, denies the allegations contained in paragraph 44 of the SAC.

45. Zillow admits the allegations contained in paragraph 45 of the SAC.

9

46.     Zillow admits that its contractual relationship with ListHub ended in April 2015 and that it obtains the bulk of its listings from MLSs or from individual listing agents or brokers, admits that it has contracted with MLSs to obtain property listings, the terms of which contracts are confidential and contain sensitive business information, and, except as so admitted, denies the allegations contained in paragraph 46 of the SAC.

47.     Zillow denies the allegations contained in the first sentence of paragraph 47 of the complaint.   Zillow admits and avers that it acquired Postlets in April 2011; acquired Diverse Solutions in November 2011; acquired Rent Juice in June 2012; acquired Buyfolio in October 2012; acquired Mortech in November 2012; acquired Hot Pads in December 2012; acquired Street Easy in August 2013; acquired Retsly in July 2014; and closed a stock-based merger transaction with Trulia in February 2015 to form Zillow Group. Zillow admits that the SAC in paragraph 47 quotes and paraphrases a portion of a New York Times article dated July 28, 2014, and that the article speaks for itself.   Zillow denies knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 47 of the SAC and therefore denies the same.

48.     Zillow denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 48 of the SAC and therefore denies the same.

49.     Zillow admits the allegations contained in paragraph 49 of the SAC.

50.     Zillow denies the allegations contained in paragraph 50 of the SAC.

51.     Zillow admits that the images appearing in paragraph 51 the SAC appear to be a screen capture of a page from the Listing Site, that many property listings on the Listing Site contain photographs of the properties, and that users can navigate through and in some instances enlarge such photographs, and, except as so admitted, denies the allegations contained in paragraph 51 of the SAC.

52.     Zillow admits the allegations contained in paragraph 52 of the SAC.

53.     Zillow admits it does not charge consumers to access the Listing Site, avers that information about a listing seller's agent or broker for a particular listing always appears on that listing on the Listing Site without payment of any fee, and that the listing agent will always be displayed for free on top of the buyers' agent list, above any agent who is paying for advertising (i.e., Premier Agents), further avers that only potential buyers' agents pay a fee if they choose to be identified within advertising next to listings on the Listing Site, and, except as so admitted and averred, denies the allegations of paragraph 53 of the SAC.

54.     Zillow admits that when a property is sold, it is generally removed from the feed and, except as so admitted, denies the allegations contained in paragraph 54 of the SAC.

55.     Zillow admits that information about a property (including the name of the broker or agent representing the seller of the property and a link to that broker or agent's full profile) remain on the Listing Site after sale of the property, with information about the sale when Zillow receives notice of that information, and except as so admitted, denies the allegations contained in the first sentence of paragraph 55 of the SAC. Zillow admits that it continues to display certain information for sold properties on the Listing Site after they are sold, as explained in the previous sentence of this Answer, and, except as so admitted, denies the allegations of the second sentence of paragraph 55 of the SAC.  Zillow admits that the continued appearance and the updates that are made to a property listing after it is sold are the result of an automated process and that property photographs are automatically removed when the corresponding listing is removed from the feed provided to Zillow if Zillow has a contract in place with a source providing property listings that requires Zillow to remove the photographs upon the source removing the corresponding property from the source's feed of property listings it provides to Zillow, and, except as so admitted, denies the allegations contained in the third sentence of paragraph 55 of the SAC.

56.     Zillow denies the allegations contained in the first sentence of paragraph 56 of the SAC. Zillow denies knowledge and information sufficient to form a belief as to the allegation regarding "facts. . . widely known in the real estate industry" contained in the second sentence of

1
2
3
4
5
6
7

paragraph 56 of the SAC and therefore denies the same, admits that VHT has informed Zillow that VHT has a copyright in its photos, denies that VHT has a valid copyright in its photos, and, except as so admitted and denied, denies the remaining allegations contained in that sentence. Zillow admits that it discussed Plaintiff's claim to own copyright in photographs in 2013 and a potential direct license by Plaintiff to Zillow, admits that it received a July 2014 letter from Plaintiff, refers to said letter for the true contents thereof, and, except as so admitted, denies the allegations contained in the third sentence of paragraph 56 of the SAC.

8
9
10
11
12
13
14
15
16
17
18
19
20
21

57.     Zillow admits that it does not automatically remove from the Listing Site or Digs the photographs associated with properties that have been sold unless the contract it has in place with a source providing property listings requires that Zillow remove the photographs upon the source removing the corresponding property from the source's feed of property listings it provides to Zillow; avers that Zillow's use of such photographs in the case of sold properties continues to market the properties because, as is well-known in the real estate industry and to VHT, offers to purchase properties can occur even when owners have not listed the properties for sale, and even a recent purchaser of a property is often willing to resell when presented with an offer that would provide him or her with a profit; further avers that Zillow's use of such photographs in the case of sold properties continues to market the services of the listing broker or agent, who remains identified in the listing, usually with a link to that broker or agent's full profile on Zillow; denies knowledge and information sufficient to form a belief as to whether VHT owns any photographs used on the Listing Site and therefore denies the same, and, except as so admitted, averred and denied, denies the allegations contained in paragraph 57 of the SAC.

22
23
24
25
26
27

58.     Zillow admits and avers that the Listing Site has a feature that allows users to search for properties based within the category "Recently Sold Homes" that can be filtered by "Featured," "Newest," "Cheapest," and "More"; admits that a user can enter a zip code or address into a search box on the Zillow home page; admits that after the user enters a zip code or address into the search box on the Zillow home page, he or she is directed to another page that contains a

28

Answer to Second Amended Complaint
Case No. 2:15-cv-01096-JLR

**Susman Godfrey LLP**
1201 Third Avenue, Suite 3800
Seattle WA  98101-3000

menu that allows the user to filter properties using options such as "For Sale," "Potential Listings," "For Rent," and "Recently Sold," some of which options contains further filtering options; admits that when a user checks the box marked "Recently Sold," the page refreshes to indicate which properties within the subject search were recently sold; admits that users can click on any of the images associated with the recently sold properties and enlarge them, and except as so admitted, denies the allegations contained in paragraph 58 of the SAC.

59.     Zillow admits that the image included within paragraph 59 of the SAC appears to be a screen shot taken by VHT from a page on the Listing Site; and, except as so admitted, denies the allegations contained in paragraph 59 of the SAC.

60.     Zillow denies knowledge and information sufficient to form a belief as to the allegations contained in the first sentence of paragraph 60 of the SAC, and therefore denies the same. Zillow denies the remaining allegations contained in paragraph 60 of the SAC.

61.     Zillow admits that the image included within paragraph 61 of the SAC appears to be a screen shot taken by VHT from a page on the Listing Site, denies that Zillow receives payment for any advertisements for remodeling services set forth on this Listing Site page, and, except as so admitted and denied, denies knowledge and information sufficient to form a belief as to the allegations contained in paragraph 61 of the SAC, and therefore denies the same.

62.     Zillow admits that the image included within paragraph 62 of the SAC appears to be a screen shot taken by VHT from a page on the Listing Site, denies that Zillow "approves" any agents that advertise on this or similar Listing Site pages, and, except as so admitted and denied, denies knowledge and information sufficient to form a belief as to the allegations contained in the first and third sentences of paragraph 62 of the SAC, and therefore denies the same. Zillow admits the allegations contained in the second sentence of paragraph 62 of the SAC.

63.     Zillow denies the allegations contained in paragraph 63 of the SAC.

64.     Zillow admits (1) that the Listing Site contains a "Make Me Move" function that markets properties by permitting potential purchasers to make offers to property owners who are

13

not actively listing their properties at the time but are potentially interested in selling them, and (2) that such offers are a common feature of real estate marketing and sometimes result in sales; denies, to the extent that VHT photographs are used by Zillow in connection with the "Make Me Move" function, that such use falls outside of the license VHT alleges it has granted for use of such photographs; denies that the names and contact information of sellers' agents and brokers from prior transactions for such properties "appear[] nowhere on the 'Make Me Move' pages," and, except as so admitted and denied, denies the allegations contained in paragraph 64 of the SAC.

65.     Zillow admits that it introduced the Digs Site as a separate section of the Zillow Listing Site, on or about February 2013, that Digs relates to home design, that Zillow has informed users that they can use Digs to find inspiration for a home project, avers that Digs provides numerous links back to the Listing Site that provide marketing for properties on the Listing Site and the services of listing brokers and agents shown therein, and, except as so admitted and averred, denies the remaining allegations of paragraph 65 of the SAC.

66.     Zillow admits that it has promoted Digs, including on social media, and, except as so admitted, denies the allegations contained in the first sentence of paragraph 66 of the SAC. Zillow denies the allegations contained in the second sentence of paragraph 66 of the SAC. Zillow denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in the third sentence of paragraph 66 of the SAC and therefore denies the same.

67.     Zillow admits the allegations contained in paragraph 67 of the SAC.

68.     Zillow admits that once a user clicks on the "Home Design" link in the Listing Site, the user is directed to the Digs Site, whose landing page is the Digs public board, a screen with full uncropped photographs from listings that appear on and are linked to the Listing Site and/or that were provided to Zillow by professionals and designers, that such photographs are searchable, and that a user can navigate through such photographs. Zillow further admits that the

image appearing in paragraph 68 of the SAC appears to be a screen capture from the Digs Site. Except as so admitted, Zillow denies the allegations contained in paragraph 68 of the SAC.

69.     Zillow admits that the Digs public board does contain a menu that allows a user to conduct various searches on Digs and refine previous searches, and, except as so admitted, denies the allegations contained in paragraph 69 of the SAC.

70.     Zillow admits that a user on the Digs public board can select an image on view, which will open in a new screen page and that the image appearing in paragraph 70 of the SAC appears to be a screen capture from the Digs Site, and, except as so admitted, Zillow denies the remaining allegations contained in paragraph 70 of the SAC.

71.     Zillow admits that it has added "bubbles" to items and features within certain photographs displayed on Digs and that when these bubbles are clicked, the user is provided with information showing a source where the user may purchase the items or features or similar items or features, and in some instances the price charged and a link to the source's website, and, except as so admitted and denied, denies the allegations contained in paragraph 71 of the SAC.

72.     Zillow admits that when a photograph displayed on the Digs public Board is clicked, the user is taken to a page where Zillow provides useful information: an estimate of the cost to create the room; a column captioned "Recreate this look" that identifies certain items or features in the photograph and provides a link to the website merchant that may offer the item or feature; a column where the user may ask a Digs Designer a question about the image (and where questions by other users and responses by Digs Designers are shown); and, where the photograph is of a "Home from Zillow" (that is, a property on the Listing Site), thumbnail photographs under a "More from this home" legend that are direct links to the property's page on the Listing Site, and, except as so admitted, denies the allegations contained in paragraph 72 of the SAC.

73.     Zillow admits that paragraph 73 of the SAC references a press release related to Digs, refers to said press release for the true contents thereof, and except as so admitted, denies the allegations contained in paragraph 73 of the SAC.

15

74.     Zillow denies the allegations contained in paragraph 74 of the SAC.

75.     Zillow admits the allegations contained in the first sentence of paragraph 75 of the SAC. Zillow admits that users who click on the "More From This Home" photographs will be directed back to the Listing Site's page for the subject property, but denies the remaining allegations contained in the second sentence of paragraph 75 of the SAC. Zillow denies the allegations contained in the third sentence of paragraph 75 of the SAC.     Zillow admits that the image included at the end of paragraph 75 of the SAC appears to be a screen shot of a page from the Digs Site, and, except as so admitted, denies any allegation that may be implied from inclusion of that image in paragraph 75 of the SAC.

76.     Zillow admits that it uses a practice called Search Engine Optimization and, except as so admitted, denies the allegations contained in the first sentence of paragraph 76 of the SAC. Zillow denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in the second and third sentences of paragraph 76 of the SAC and therefore denies the same. Zillow denies the allegations contained in the fourth sentence of paragraph 76 of the SAC.

77.     Zillow admits that it offers the Digs App, an application by which users can access Digs on their mobile devices, and that the Digs App is functionally similar to that of the Digs Site, which VHT incorrectly terms the "Digs Desktop," and, except as so admitted, denies the allegations contained in paragraph 77 of the SAC.

78.     Zillow admits the allegations contained in paragraph 78 of the SAC.

79.     Zillow admits that the quoted language set forth in the final sentence of paragraph 79 of the SAC is contained in its May 15, 2013 press release, and, except as so admitted, denies the allegations contained in paragraph 79 of the SAC.

80.     Zillow denies the allegations contained in paragraph 80 of the SAC.

81.     Zillow admits that it operates an information and news blog relating to residential real estate that has recently featured an online poll to determine which was the most unique

among four homes featured on the Zillow Listing Site, and that the image included within paragraph 81 of the SAC appears to be a screen shot of a prior post on the Zillow blog, and, except as so admitted, denies the allegations contained paragraph 81 of the SAC.

82.     Zillow admits that the photograph labeled "2" in the image depicted in paragraph 81 of the SAC appears to have won the "Which home is most unique" online poll contained in the image, that the poll was made available to a large audience of users, and that Zillow addresses blog posts, e-mails, and marketing efforts to a substantial base of persons interested in residential real estate, and otherwise denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in the first, third, and fourth sentences of paragraph 82 of the SAC and therefore denies the same. Zillow denies the allegations contained in the second and final sentences of paragraph 82 of the SAC.

83.     Zillow denies the allegations contained in paragraph 83 of the SAC.

84.     Zillow admits the allegations contained in paragraph 84 of the SAC.

85.     Zillow admits that when it launched the Digs Site, it populated the Digs Site with a number of photographs from the Listing Site, in addition to photographs from professionals and designers, and, except as so admitted, denies the allegations contained in paragraph 85 of the SAC.

86.     Zillow denies that when a user clicks a button marked "Dig It" in connection with a Listing Site photo, that a "copy" of the photo is saved to the user's personal board on Digs, denies that it was not until the latter part of 2014 that users first began to "Dig" or "Add to Digs" photos from the Listing Site, and, except as so denied, admits the remaining allegations contained in paragraph 86 of the SAC.

87.     Zillow admits that its staff reviews some photos that users have saved from the Listing Site to their personal boards and then selects certain of these photos for inclusion on the public board, and denies the remaining allegations contained in paragraph 87 of the SAC. Zillow admits that the graphic that follows paragraph 87 of the SAC appears to be a screen capture from

a page on the Digs Site, but denies any allegations that may be implied from inclusion of that graphic in the SAC.

88.     Zillow denies the allegations contained in paragraph 88 of the SAC..

89.     Zillow admits that the pages for photos included on the Digs public board have a section entitled "Features in This Room" that contain description tags that, when clicked, direct users to another page that includes other items from within that same product category and, except as so admitted, denies the allegations in paragraph 89 of the SAC.

90.     Zillow admits that users of the Digs Site and users of the Digs App who view the Digs public board have access to the same database of photographs and, except as so admitted, denies the allegations contained in paragraph 90 of the SAC.

91.     Zillow admits that users may designate photographs that they have saved to their Digs personal boards, that such photographs may be added to the Digs public board by Zillow after it reviews the photographs and determines that they meet Zillow's quality standards, admits that Zillow has included a function on Digs that permits users to save photographs from the Digs public board and other users' boards to the users' personal boards, and, except as so admitted, denies the allegations contained in paragraph 91 of the SAC.

92.     Zillow denies the allegations contained in paragraph 92 of the SAC.

93.     Zillow admits that before it adds photographs to the Digs public board that have been added by users to their Digs personal board, it reviews the photographs for quality and makes them searchable by categories, further admits that Zillow adds "bubbles" to certain photographs so that when these bubbles are clicked, the user is provided with useful information showing potential sources where the user may purchase the items or features or similar items or features, prices, and in links to websites, denies that Zillow "marrie[s]" photographs on the Digs Site to advertising or promotion, denies that it has received any revenue from Digs except in a very limited number of circumstances, and, except as so admitted and denied, denies the allegations contained in paragraph 93 of the SAC.

94.     Zillow admits that through the use of bubbles, it provides information to Digs users that helps them to locate vendors who may sell the same or similar items as depicted in a photograph, and, except as so admitted, denies the allegations contained in paragraph 94 of the SAC.

95.     Zillow denies the allegations contained in paragraph 95 of the SAC.

96.     Zillow denies the allegations contained in paragraph 96 of the SAC.

97.     Zillow admits that a law firm purporting to represent VHT sent a letter to Zillow dated July 7, 2014, refers to said letter for the true contents thereof, and, except as so admitted, denies the allegations contained in paragraph 97 of the SAC.

98.     Zillow admits that, on or about July 21, 2014, counsel representing Zillow sent a letter in response to said letter, refers to said response letter for the true contents thereof, and, except as so admitted, denies the allegations contained in paragraph 98 of the SAC.

99.     Zillow admits that the law firm purporting to represent VHT sent a letter to Zillow, dated July 28, 2014, refers to said letter for the true contents thereof, and, except as so admitted, denies the allegations contained in paragraph 99 of the SAC.

100.    Zillow admits, upon information and belief, that the original complaint in this action was served upon Zillow on or about July 10, 2015, refers to said complaint for the contents thereof (without admitting the truth of any allegations therein, which are admitted and denied as set forth in Zillow's Answer to said complaint), and, except as so admitted, denies the allegations contained in paragraph 100 of the SAC.

101.    Zillow admits that it received a letter from counsel for VHT, dated November 19, 2015, refers to said letter for the true contents thereof, and, except as so admitted, denies the allegations contained in paragraph 101 of the SAC.

102.    Zillow admits that its counsel sent a letter to counsel to VHT, on or about December 2, 2015, refers to said letter for the true contents thereof, and, except as so admitted, denies the allegations contained in paragraph 102 of the SAC.

19

103.     Zillow admits that it received letters from counsel for VHT, dated March 10, 2016, and June 20, 2016, refers to said letters for the true contents thereof, and, except as so admitted, denies the allegations contained in paragraph 103 of the SAC.

104.     Zillow denies the allegations contained in paragraph 104 of the SAC.

105.     Zillow admits that it is an Internet service provider and entitled to the benefits of the safe harbor provisions of the Digital Millennium Copyright Act, and, except as so admitted, denies the allegations contained in paragraph 105 of the SAC.

106.     Zillow admits there are currently tens of thousands of photographs on the Digs public board that are viewable by Digs users, and that some of those photographs originally appeared in the property listings of the Listing Site, and, except as so admitted, denies the allegations contained in the first sentence of paragraph 106 of the SAC. Zillow denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph 106 of the SAC and therefore denies the same.

107.     Zillow denies that any copyright owned by Plaintiff has been infringed by Zillow, and, except as so denied, denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 107 of the SAC (and paragraph 109 thereof, to the extent incorporated by reference in paragraph 107) and therefore denies the same.

108.     Zillow denies the allegations contained in paragraph 108 of the SAC.

### CLAIMS FOR RELIEF

### COUNT I
### (Direct Copyright Infringement)

109.     Zillow repeats and realleges the admissions, denials, and averments contained in paragraph 1 through 108 of this Answer as though fully set forth.

110.     Zillow denies the allegations contained in paragraph 110 of the SAC.

111.     Zillow denies the allegations contained in paragraph 111 of the SAC.

112.     Zillow denies the allegations contained in paragraph 112 of the SAC.

113. Zillow denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 113 of the SAC with respect to so-called "VHT-owned images," and denies the remaining allegations contained in said paragraph.

114. Zillow denies the allegations contained in paragraph 114 of the SAC.

115. Zillow denies the allegations contained in paragraph 115 of the SAC.

116. Zillow denies the allegations contained in paragraph 116 of the SAC.

117. Zillow denies the allegations contained in paragraph 117 of the SAC.

118. Zillow denies the allegations contained in paragraph 118 of the SAC.

**COUNT II**
**(Direct Copyright Infringement – Digs Public Board and Dueling Digs" Game)**

119. Zillow repeats and realleges the admissions, denials, and averments contained in paragraph 1 through 118 of this Answer as though fully set forth.

120. Zillow denies the allegations contained in paragraph 120 of the SAC.

121. Zillow denies the allegations contained in paragraph 121 of the SAC.

122. Zillow denies the allegations contained in paragraph 122 of the SAC.

123. Zillow denies the allegations contained in paragraph 123 of the SAC.

124. Zillow denies the allegations contained in paragraph 124 of the SAC.

125. Zillow denies the allegations contained in paragraph 125 of the SAC.

126. Zillow denies the allegations contained in paragraph 126(a)-(d) of the SAC.

127. Zillow denies the allegations contained in paragraph 127 of the SAC.

128. Zillow denies the allegations contained in paragraph 128 of the SAC.

129. Zillow denies the allegations contained in paragraph 129 of the SAC.

130. Zillow denies the allegations contained in paragraph 130 of the SAC.

131. Zillow denies the allegations contained in paragraph 131 of the SAC.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT III
### (Contributory Copyright Infringement by Material
### Contribution – Digs Personal and Private Boards)

132.    Zillow repeats and realleges the admissions, denials, and averments contained in paragraph 1 through 131 of this Answer as though fully set forth.

133.    Zillow denies the allegations contained in paragraph 133 of the SAC.

134.    Zillow denies the allegations contained in paragraph 134 of the SAC.

135.    Zillow denies the allegations contained in paragraph 135 of the SAC.

136.    Zillow denies the allegations contained in paragraph 136 of the SAC.

137.    Zillow denies the allegations contained in paragraph 137 of the SAC.

138.    Zillow denies the allegations contained in paragraph 138 of the SAC.

139.    Zillow denies the allegations contained in paragraph 139 of the SAC.

140.    Zillow denies the allegations contained in paragraph 140 of the SAC.

141.    Zillow denies the allegations contained in paragraph 141 of the SAC.

142.    Zillow denies the allegations contained in paragraph 142 of the SAC.

## COUNT IV
### (Contributory Copyright Infringement by Inducement – Digs
### Personal and Private Boards)

143.    Zillow repeats and realleges the admissions, denials, and averments contained in paragraph 1 through 142 of this Answer as though fully set forth.

144.    Zillow denies the allegations contained in paragraph 144 of the SAC.

145.    Zillow denies the allegations contained in paragraph 145 of the SAC.

146.    Zillow denies the allegations contained in paragraph 146 of the SAC.

147.    Zillow denies the allegations contained in paragraph 147 of the SAC.

148.    Zillow denies the allegations contained in paragraph 148 of the SAC.

149.    Zillow denies the allegations contained in paragraph 149 of the SAC.

150.    Zillow denies the allegations contained in paragraph 150 of the SAC.

**COUNT V**
**(Vicarious Copyright Infringement- Digs Personal and Private Boards)**

151.    Zillow repeats and realleges the admissions, denials, and averments contained in paragraph 1 through 150 of this Answer as though fully set forth.

152.    Zillow denies the allegations contained in paragraph 152 of the SAC.

153.    Zillow denies the allegations contained in paragraph 153 of the SAC.

154.    Zillow denies the allegations contained in paragraph 154 of the SAC.

155.    Zillow denies the allegations contained in paragraph 155 of the SAC.

156.    Zillow denies the allegations contained in paragraph 156 of the SAC.

157.    Zillow denies the allegations contained in paragraph 157 of the SAC.

158.    Zillow denies the allegations contained in paragraph 158 of the SAC.

159.    Zillow denies the allegations contained in paragraph 159 of the SAC.

**PLAINTIFF'S PRAYER FOR RELIEF**

The Prayer for Relief requires no response. To the extent any response is required, Zillow denies that Plaintiff should be granted any of the relief it requests.

**DEFENSES AND AFFIRMATIVE DEFENSES**

Zillow asserts the following additional defenses to Plaintiff's claims for copyright infringement. The assertion of such defenses, or the designation of a defense as an "affirmative defense," does not admit that Zillow has the burden of proving the matter asserted.

**FIRST AFFIRMATIVE DEFENSE**
**(Failure to State a Claim)**

The SAC fails to state a claim upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**
**(Express or Implied License)**

The uses of Plaintiff's photographs alleged to be infringing in the SAC are permitted under an express or implied license granted by Plaintiff to its broker and agent customers, in that, among other things, those uses constitute marketing or sale of the subject properties and/or marketing or sale of the services of the brokers and agents, and Zillow and its users are third party

23

beneficiaries and/or proper sublicensees of said license.

### THIRD AFFIRMATIVE DEFENSE
### (Failure to Join Indispensable Party)

The users of the Digs Site and/or the suppliers of photographs to Zillow are indispensable parties to this action and have not been joined herein.

### FOURTH AFFIRMATIVE DEFENSE
### (Fair Use)

Assuming arguendo that Plaintiff's photographs are entitled to copyright protection, the uses of said photographs by Zillow and Zillow's users, as alleged in the SAC, are fair uses under 17 U.S.C. § 107 and therefore are not infringing.

### FIFTH AFFIRMATIVE DEFENSE
### (Statute of Limitations)

Plaintiff's claims are barred in whole or in part by 17 U.S.C. § 507(b) and any other applicable statutes of limitations.

### SIXTH AFFIRMATIVE DEFENSE
### (Limitation of Statutory Damages)

If a registration has issued, Plaintiff is limited to claim only one award of statutory damages in this action as the sole work at issue in this action is a single database with updates, which is a compilation or parts of a compilation and has been claimed by Plaintiff as a compilation, and which under 17 U.S.C. § 504(c) is a single work for purposes of calculating statutory damages.

### SEVENTH AFFIRMATIVE DEFENSE
### (No Statutory Damages or Attorney's Fees)

Plaintiff failed to register the database in which it claims copyright within three months from first publication of any part of that database, and Plaintiff may therefore not recover statutory damages or attorney's fees for Zillow's alleged infringement of the database. Alternatively, if the Court determines that the photographs in Plaintiff's database are separate works for purposes of 17 U.S.C. § 504(c), Plaintiff may not recover statutory damages or attorney's fees from Zillow for any photograph because no photograph has been registered for

24

copyright within three months of first publication thereof.

### EIGHTH AFFIRMATIVE DEFENSE
#### (Lack of Standing)

On information and belief, Plaintiff's claims are barred, in whole or in part, by its lack of standing to assert a claim for copyright infringement due to defect in ownership of the applicable copyright in the particular work or works.

### NINTH AFFIRMATIVE DEFENSE
#### (Lack of Registration)

On information and belief, Plaintiff's claims are barred, in whole or in part, by the lack of a valid copyright registration for the work at issue in this action.

### TENTH AFFIRMATIVE DEFENSE
#### (Laches, Waiver, Estoppel, and Unclean Hands)

Plaintiff is barred in whole or in part under principles of equity, including without limitation, laches, waiver, estoppel, and/or unclean hands.

### ELEVENTH AFFIRMATIVE DEFENSE
#### (Innocent Infringement)

Plaintiff's claims are barred, or its remedies limited, because Zillow's use, if any, of the works at issue was made with innocent intent and without any belief that any of its acts constituted an infringement or violation.

### TWELFTH AFFIRMATIVE DEFENSE
#### (Reservation of Defenses)

Zillow reserves any and all rights to amend its answer, including its currently pled defenses, and/or to add additional defenses, as any basis for doing so becomes apparent.

### <u>COUNTERCLAIM</u>

#### <u>Parties</u>

1.      Counterclaim plaintiff Zillow, Inc., ("Zillow") is a Washington corporation with its principal place of business in Seattle, Washington.

---

Answer to Second Amended Complaint
Case No. 2:15-cv-01096-JLR

**Susman Godfrey LLP**
1201 Third Avenue, Suite 3800
Seattle WA  98101-3000

2.      Counterclaim defendant VHT, Inc., ("VHT") is a Delaware corporation with its principal place of business in Rosemont, Illinois.

3.      On information and belief, counterclaim defendant Unknown Funder is a litigation funding entity whose principal place of business is unknown.

**Jurisdiction and Venue**

4.      Jurisdiction is proper over Zillow's counterclaim under 28 U.S.C. §§ 1331, 1338, and 1367.

5.      Venue for Zillow's counterclaim is proper under 28 U.S.C. § 1391.

**Facts**

6.      Zillow incorporates the denials, admissions, and averments stated in paragraphs 1 through 154 above as if fully stated herein.

7.      For avoidance of doubt, Zillow reiterates that it has no way of knowing at the time that it receives a particular photograph from a provider of property listings whether that photograph is owned by or subject to a license from VHT or any other third-party rights holder.

8.      Rather, Zillow relies on representations by providers of listings, such as brokers and MLS syndicators, about the rights that they are authorized to convey regarding the authorized use by Zillow of the contents of those listings. Zillow's agreements with such providers typically include both negative assurances that the provider is not aware of any reason that such use of the materials provided would violate any third party licenses, as well as affirmative warranties that such use will not result in a violation.

9.      The uses authorized by such agreements typically extend beyond simply marketing listed properties for sale. Such agreements often provide that Zillow may use provided content for the duration of the agreement with the provider. In such cases, Zillow may be obligated to promptly update the for sale status on listings that are no longer included in the listing feed, but may continue to use the content provided with the listings on its sites for various

26

purposes. Zillow's systems are designed only to retain post-sale images provided by sources that have assured Zillow they have the right to authorize that use.

10.       The authorization of post-sale display of listings content reflects, on information and belief, the understanding of real estate agents that their prior sales constitute their "resumé" for marketing themselves to potential customers. They also evidence, on information and belief, the understanding of real estate agents that unlisted properties may be objects of unsolicited offers that may present opportunities for agents who were involved in prior sales.

11.       Because, on information and belief, real estate agents understand that sold property listings have value in promoting themselves and in generating future sales, they and the brokerages with which they are associated often seek broad rights respecting photos that they commission for properties that they list for sale. Consequently, on information and belief, real estate photography providers, such as VHT, compete at least in part on the basis of the breadth of the license terms that they offer to customers.

12.       VHT's typical license terms for real estate broker clients, for example, grant "a worldwide, perpetual, irrevocable, non-exclusive, fully paid and non-assessable license to reproduce, distribute, copy, display, perform, modify and create derivative works of the visual content produced by VHT in hard copy or electronic form, in any medium now existing or hereafter created, for use in the sale or marketing of the subject property, the Client or the agent representing the subject property." Nothing in the terms of this "perpetual" license limits the authorized uses to the period of time when the subject property is being actively listed for sale.

13.       Nevertheless, VHT has encountered resistance and even lost sales from potential customers who were concerned that the scope of VHT's license might be too restrictive. To address these concerns, in 2014 VHT created a template for a cover e-mail to be provided with its standard form Service Level Agreement and Photography Rider. That template referred to VHT's standard terms as "boilerplate" and summarized the scope of its photography license as follows: "We provide you a license to use the photographs wherever you want, any way you want, and for

as long as you want. This includes promotion of your brokerage, your agents, and your listings. You just can't sell them."

14.     Around the same time that it was preparing this summary of its then existing license terms to reassure its customers that they could do anything with VHT's photos short of selling them, VHT began threatening Zillow with claims that it was infringing VHT's copyright by retaining images of sold properties that VHT's licensees or their intermediaries had authorized Zillow to retain.

15.     VHT's initial letter through counsel to Zillow of July 10, 2014, represented that "VHT grants clients a license to use the visual content produced by VHT in the sales or marketing of the subject property; however, no other rights or uses are permitted without the prior written consent of VHT." This representation was false. As noted, VHT's standard terms provide a "perpetual" license not just "for use in the sale or marketing of the subject property," but also "the Client or the agent representing the subject property." And internally, VHT was preparing to represent to its customers that this language authorized anything short of a sale of the subject photographs.

16.     On September 3, 2014, VHT's CEO Brian Balduf expressed concern to VHT's Chief Technology Officer Kevin McGuire about the breadth of VHT's planned characterization of its license terms to its customers, on information and belief, because it conflicted with the litigation position that VHT was asserting against Zillow:

1

2

3

4

5

6

7

8

9

10

11

| From: | Balduf, Brian |
| Sent: | Wednesday, September 03, 2014 4:15 PM |
| To: | McGuire, Kevin |
| Subject: | RE: Email Template: Delivering SLA & Rider |

One caveat on this, can we tone down the script about
photographs wherever you want, any way you want,  and for as long as you want

I'm just afraid that sentence could be taken out of context on its own and used against us.

Maybe we say something like;

We provide you a very { robust/wide ranging/extensive/solid } license to use the photographs for the promotion of your brokerage, your agents, and your listings.

Not sure what the word should be but something to give them the sense we are giving them security/assurances that they don't get from others, without giving away the whole farm in a casual e-mail.

Thanks,

BB

12

13

14

15

16

17

      17.      Despite knowing that its words would cause its customers to believe that they were receiving rights that VHT was representing to Zillow that it had reserved, VHT retained the broad language of its template as drafted. In particular, VHT began requiring use of the "SLA Rider and Prospective Client Template" containing the "wherever you want, any way you want, and for as long as you want" language as part of the "Contract" phase of its "Sales Cycle" taught to its sales executives as part of "VHT University."

18

19

20

21

22

      18.      At the same time that VHT was representing to its licensees that they could do anything short of selling VHT's photos, VHT internally discussed, and, on information and belief, was specifically aware that MLSs were providing feeds that include both active and inactive listings to third-party real estate site operators like Zillow, and that such MLSs were requiring brokers to warrant that the listing content they submitted was authorized for that use.

23

24

25

26

      19.      Likewise, VHT also discussed internally, and on information and belief was also specifically aware, that brokers were posting its photographs to Zillow Digs at the same time it was representing to them the they could do whatever they wished short of selling the photographs that they licensed from VHT.

27

28

Answer to Second Amended Complaint
Case No. 2:15-cv-01096-JLR

**Susman Godfrey LLP**
1201 Third Avenue, Suite 3800
Seattle WA  98101-3000

20.     In view of these and similar circumstances VHT knew or should have known that its characterization of its license terms, as well as the substance of those terms themselves, were specifically inducing its licensees to cause VHT's photographs to be placed on Zillow's listing and Digs pages in association with feeds for which Zillow had received a warranty and representation that the content could be retained post sale. In short, VHT knew or should have known that its affirmative representations to its licensees were causing the very situation that it now claims gives rise to infringement of its copyrights.

21.     On information and belief, VHT has intended that this foreseeable result occur in order to manufacture the predicate for the sham copyright litigation that it is now pursuing against Zillow for the purpose of unjustly enriching itself and at least one litigation funding entity whose identity it has sought to conceal and with which, on information and belief, it has conspired for that purpose.

22.     The conduct of VHT and its unidentified co-conspirator in inducing this conduct by VHT's licensees has resulted in damage to the integrity of Zillow's computer systems by causing data in the form of VHT photographs to be placed there in association with sources that VHT contends do not possess the rights that they purport to convey to Zillow. Zillow has had to spend substantial sums well in excess of $5,000 in value of engineering time to correct this damage to the integrity of its computer systems by disabling access to and removing photographs that VHT has identified as allegedly infringing in several of its DMCA notices. Zillow has demanded that VHT cease and desist inducing its licensees to cause photographs to be placed on Zillow's systems under a misattribution of asserted rights.

23.     Zillow has also spent substantial sums in excess of $75,000 defending claims for copyright infringement based on uses of photographs provided to Zillow under a representation of authorization by VHT's licensees that VHT knowingly authorized and induced.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Count One: Washington Unfair Business Practices—**

**Consumer Protection Act (RCW 19.86.090)**

24.    Zillow realleges paragraphs **1** through **23** above as if fully set forth in this count.

25.    Counterclaim Defendants have committed and/or conspired to commit an unfair and deceptive practice in the conduct of trade or commerce at least by falsely representing and/or concealing their asserted understanding of the effect of VHT's license terms to VHT's licensees, thereby knowingly inducing and/or conspiring to induce VHT's licensees to place photographs on Zillow's computers in association with sources for which Zillow has received warranties and/or assurances of rights that are inconsistent with said asserted understanding.

26.    Said conduct has resulted in injury to the business or property of Zillow at least in the form of the cost of engineering time expended to remove unauthorized content from Zillow's computers, as well as the costs of defending copyright claims based on the presence of such content.

**Count Two: Computer Fraud and Abuse Act (18 U.S.C. 1030(a)(5)(A))**

27.    Zillow realleges paragraphs **1** through **26** above as if fully set forth in this count.

28.    Counterclaim Defendants have knowingly caused the transmission of information at least by inducing and/or conspiring to induce VHT's licensees to submit digital representations of photographs to Zillow and/or Zillow's MLS partners.

29.    As a result of such conduct, Counterclaim Defendants have intentionally caused damage to Zillow's computer systems at least by causing those computer systems to contain photographs whose attribution of rights is inconsistent with the asserted rights of the claimed rights holder.

30.    The transmission of said photographs and resulting damage to the integrity of Zillow's computer systems occurred without authorization at least in that Zillow's agreements with providers of photographs to its computers only authorize the submission of content for

31

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

which the provider has secured sufficient rights to permit Zillow to engage in the uses authorized by those agreements.

31.     Zillow's computer systems are "protected computers" at least in that they are used in or affecting interstate or foreign commerce or communication at least as a result of providing and/or promoting online real estate listings and/or related services throughout the United States and the world via the Internet.

32.     Within the past year, the aggregate loss to Zillow in terms of the cost of engineering time expended to remove unauthorized VHT content from Zillow's computers has exceeded $5,000.

### Count Three: Trespass to Chattels

33.     Zillow realleges paragraphs **1** through **32** above as if fully set forth in this count.

34.     Counterclaim Defendants have intentionally and without authorization interfered with Zillow's possessory interest in its computer systems at least by inducing and/or conspiring to induce VHT's licensees to place photographs on Zillow's computers in association with sources for which Zillow has received warranties and/or assurances of rights that are inconsistent with VHT's asserted understanding of its licenses.

35.     Counterclaim Defendants' conduct has proximately resulted in damage to Zillow in at least the form of the cost of engineering time expended to remove unauthorized content from Zillow's computers, as well as the costs of defending copyright claims based on the presence of such content.

### Count Four: Tortious Interference with Contract

36.     Zillow realleges paragraphs **1** through **35** above as if fully set forth in this count.

37.     At all times relevant to this claim, Zillow has had contracts with certain agents, brokers and MLSs (among other sources) to provide listings including photographs under warranties and representations that Zillow was authorized to use those photographs for a wide

32

variety of purposes for the duration of the contracts, including once the property that was the subject of the listing was no longer included in the listing feed.

38.     At least since VHT first identified photographs on Zillow's web sites that it claims are infringing, the Counterclaim Defendants have been aware of Zillow's contracts with specific brokers and/or MLSs that provided those photographs to Zillow.

39.     The Counterclaim Defendants have intentionally induced and/or conspired to induce the breach of those contracts at least by inducing and/or conspiring to induce VHT's licensees to place photographs on Zillow's computers in association with sources for which Zillow has received warranties and/or assurances of rights under those contracts that are inconsistent with VHT's asserted understanding of its licenses.

40.     The Counterclaim Defendants' conduct was undertaken at least for the improper purpose of subjecting Zillow to harm in the form of sham copyright claims, and at least by the improper means of falsely representing and/or concealing their asserted understanding of the effect of VHT's license terms to VHT's licensees, contrary to the established standards of the real estate trade.

41.     The Counterclaim Defendants' conduct in inducing these breaches has proximately resulted in damage to Zillow in at least the form of the cost of engineering time expended to remove unauthorized content from Zillow's computers, as well as the costs of defending copyright claims based on the presence of such content.

## JURY DEMAND

Zillow demands a trial by jury of all issues so triable in this action.

## PRAYER FOR RELIEF

WHEREFORE, Defendants ZILLOW GROUP, INC. and ZILLOW, INC., request that the Court enter judgment, for Defendants and against Plaintiff:

a)     Dismissing the Complaint with prejudice, as against ZILLOW GROUP, INC. and ZILLOW, INC.;

33

1

2

        b)      Awarding ZILLOW GROUP, INC. and ZILLOW, INC. its costs of defense of this

3

action, including a reasonable attorney fee, pursuant to 17 U.S.C. § 505 and 1203(b)(4) and

(b)(5);

4

5

        c)      Alternatively, determining that ZILLOW GROUP, INC. and ZILLOW, INC. are

innocent infringers and remitting any damages to the full extent permitted by law;

6

7

        d)      Entering judgment in favor of ZILLOW, INC., on all claims raised in its

Counterclaim;

8

9

        e)      That ZILLOW, INC., be awarded its actual damages on all claims raised in its

Counterclaim;

10

11

        f)      That ZILLOW, INC., be awarded multiple or exemplary damages to the extent

allowed by law.

12

13

        g)      That VHT be permanently enjoined from the acts of inducement alleged herein

and required to notify its licensees of the effect of said injunction.

14

15

        d)      Granting such other and further relief as the Court may deem just and proper.

16

17

        Respectfully submitted this 30th day of August, 2016.

18

Dated: August 30, 2016                        Respectfully submitted,

19

20

                                          By: /s/ Ian B. Crosby
                                              Brooke A. M. Taylor, WA Bar # 33190

21

                                              btaylor@susmangodfrey.com
                                              Edgar G. Sargent, WA Bar # 28283

22

                                              esargent@susmangodfrey.com
                                              Ian Bradford Crosby, WA Bar # 28461

23

                                              icrosby@susmangodfrey.com
                                              Genevieve Vose Wallace, WA Bar # 38422

24

                                              E-Mail: gwallace@susmangodfrey.com
                                              Jordan Connors, WA Bar # 41649

25

                                              E-Mail: jconnors@SusmanGodfrey.com
                                              Jenna Farleigh, WA Bar # 47392

26

                                              E-Mail: jfarleigh@susmangodfrey.com

27

                                              SUSMAN GODFREY L.L.P.

28

34

1201 Third Avenue, Suite 3800
Seattle, WA  98101
Telephone:        (206) 516-3880
Facsimile:        (206) 516-3883

Attorneys for Zillow Group, Inc. and Zillow, Inc.

Answer to Second Amended Complaint
Case No. 2:15-cv-01096-JLR

**Susman Godfrey LLP**
1201 Third Avenue, Suite 3800
Seattle WA  98101-3000

1

2

### CERTIFICATE OF SERVICE

3

4

     I hereby certify that on August 30, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record:

5

6

By: */s/ Ian B. Crosby*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---