UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VHT, INC., a Delaware corporation, | Case No. 2:15-cv-01096-JLR |
| Plaintiffs, | **ZILLOW'S MOTION FOR SUMMARY JUDGMENT** |
| v. | **NOTED ON MOTION CALENDAR: NOVEMBER 18, 2016** |
| ZILLOW GROUP, INC., a Washington corporation; and ZILLOW, INC., a Washington corporation, western | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

# TABLE OF CONTENTS

I.     UNDISPUTED FACTS ...................................................................1

    A.     Zillow HDPs ...............................................................1

    B.     Zillow Digs ...................................................................3

    C.     VHT's Infringement Claims ........................................5

II.    ARGUMENT ...............................................................................6

    A.     Summary Judgment .....................................................6

    B.     The automated operations of Zillow's web site in response to interactions with providers and users are not "volitional acts" of direct infringement by Zillow. ...............................................6

        1.     VHT cannot prove that Zillow displayed or reproduced any VHT images in connection with sold HDPs. ...............................8

            a.     Any display of VHT photos on sold HDPs does not result from volitional acts of direct infringement by Zillow. ...............................8

            b.     Any reproduction of VHT photos on sold HDPs does not result from volitional acts of direct infringement by Zillow. ...............................9

        2.     VHT cannot prove that Zillow displayed or reproduced any VHT images that users posted to Digs. ...............................10

            a.     Any display of user-selected images on Digs does not result from volitional acts of direct infringement by Zillow. ...............................10

            b.     Any reproduction of VHT photos on Digs does not result from volitional acts of direct infringement by Zillow. ...............................11

        3.     VHT cannot prove that Zillow created any derivative works from VHT images in connection with sold HDPs or Digs. ...............................11

        4.     VHT cannot prove that any distribution of its images resulted from volitional acts of infringement by Zillow ...............................13

    C.     Any possibly volitional uses of VHT images by Zillow is fair use. ...............................13

1. Zillow's image rendering processes are fair-use user enhancements that are intrinsic to the operation of a web site. .................14

2. Zillow's making images searchable for display on Digs is a substantial fair-use transformation. ..............................................15

    a. Purpose and Character of the Use ..................................16

    b. Nature of the Copyrighted Work ...................................17

    c. Amount and Substantiality of the Portion Used ............................18

    d. Effect of Use on the Market..........................................18

    e. Weighing of Factors......................................................18

D. VHT cannot prove that Zillow is secondarily liable for copyright infringement. ...........................................................................19

1. VHT cannot prove contributory infringement by Zillow. .........................19

2. VHT cannot prove vicarious infringement by Zillow...............................20

III. CONCLUSION............................................................................21

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

# TABLE OF AUTHORITIES

**CASES**

*A&M Records, Inc., v. Napster*,
    239 F.3d 1004 (9th Cir. 2001) ...................................................................................19

*Arpin v. Santa Clara Valley Transp. Agency*,
    261 F.3d 912 (9th Cir. 2001) ......................................................................................6

*Cartoon Network LP v. CSC Holdings, Inc.*,
    536 F.3d 121 (2d Cir. 2008).........................................................................................7

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)......................................................................................................6

*CoStar Group, Inc. v. LoopNet, Inc.*,
    373 F.3d 544 (4th Cir. 2004) ...............................................................................8, 9, 10

*Ellison v. Robertson*,
    357 F.3d 1072 (9th Cir. 2004) ...............................................................................20, 21

*Field v. Google Inc.*,
    412 F. Supp. 2d 1106 (D. Nev. 2006) ..........................................................................7

*Fox Broad. Co. v. Dish Network L.L.C.*,
    747 F.3d 1060 (9th Cir. 2014) .....................................................................................7

*Intel Corp. v. Hartford Accident & Indem. Co.*,
    952 F.2d 1551 (9th Cir. 1991) .....................................................................................6

*Kelly v. Arriba Soft Corp.*,
    336 F.3d 811 (9th Cir. 2003) ................................................................15, 16, 17, 18

*Lewis Galoob Toys v. Nintendo of Am.*,
    780 F.Supp. 1283 (N.D. Cal. 1991) .....................................................................12, 13, 14

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005)....................................................................................................19

*Micro Star v. Formgen Inc.*,
    154 F.3d 1107 (9th Cir. 1998) ...................................................................................12

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ...........................................................................passim

*Perfect 10, Inc. v. Giganews, Inc.*,
    No. CV 11-07098-AB SHX, 2014 WL 8628031 (C.D. Cal. Nov. 14, 2014).....................21

Zillow's Motion for Summary Judgment
Case No. 2:15-cv-01096-JLR
Page iii

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

*Perfect 10, Inc. v. Giganews, Inc.*,
    No. CV11-07098 AHM SHX, 2013 WL 2109963 (C.D. Cal. Mar. 8, 2013) .................... 19

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
    907 F. Supp. 1361 (N.D. Cal. 1995) ........................................................................... 7

*Rosen v. eBay, Inc.*,
    No. CV 13-6801 MWF EX, 2015 WL 1600081 (C.D. Cal. Jan. 16, 2015) ..................... 14

*Sega Enters. v. MAPHIA*,
    948 F. Supp. 923 (N.D. Cal. 1996) ............................................................................. 7

*Torres v. City of Madera*,
    648 F.3d 1119 (9th Cir.2011) ..................................................................................... 6

*Wells Fargo & Co. v. WhenU.com, Inc.*,
    293 F. Supp. 2d 734 (E.D. Mich. 2003) ..................................................................... 12

**STATUTES**

17 U.S.C. § 101 ...................................................................................................................... 12

17 U.S.C. § 106 ................................................................................................................. passim

17 U.S.C. § 107 ...................................................................................................................... 13

**RULES**

Fed. R. Civ. P. 56(a) ................................................................................................................. 6

Zillow's Motion for Summary Judgment
Case No. 2:15-cv-01096-JLR
Page iv

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

Zillow Group, Inc., and Zillow, Inc., (collectively "Zillow") move under Rule 56 of the Federal Rules of Civil Procedure for summary judgment on liability respecting all of the copyright infringements that VHT has alleged in this suit. Summary judgment is warranted because almost all of the infringements VHT has alleged resulted from the actions of others—most notably from the listing providers that VHT told could use its images "whenever you want, any way you want, and for as long as you want." Summary judgment is also warranted on grounds of fair use because any uses that may have resulted from Zillow's own conduct are either trivial technical aspects of the operation of a web site on the internet or highly useful transformations that in neither case supersede any opportunity for VHT to exploit its copyrights. Summary judgment is warranted on secondary liability for direct infringement by others because VHT cannot prove that Zillow knowingly induced or directly benefitted from any such infringements. Although summary judgment in full is warranted, even a grant of partial summary judgment would simplify and narrow the potential infringements remaining for trial on Zillow's core license and other defenses. In support of its motion, Zillow shows as follows:

## I.   UNDISPUTED FACTS

Zillow is a Seattle company that operates the world's largest web site related to real estate at Zillow.com. Kutner Dec. ¶ 2. Zillow.com is organized into a number of content areas. The site includes "Home Details Pages," or "HDPs," containing a variety of data and in many cases images relating to nearly every home in America. *Id.* ¶ 3; Crosby Dec. Ex. 1, Acker Dep. 49:4-20. Since February 2013, Zillow.com has also included a content area called "Digs" that is themed around home improvement. *Id.* ¶ 4.

### A.   Zillow HDPs

The content displayed on HDPs is drawn generally from public records and from active real estate listings that Zillow receives from agents, brokers, or multiple listing services ("MLSs"). Kutner Dec. ¶ 5. Zillow enters into agreements with these listing providers that, among other things, specify how Zillow may use the content, including listing data and photographs, that they deliver. *Id.* Most of the agreements grant Zillow "perpetual," unrestricted permission to display

Zillow's Motion for Summary Judgment
Case No. 2:15-cv-01096-JLR
Page 1

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

the photographs received—including VHT photographs. *See, e.g.*, Crosby Dec. Ex. 2, Zillow0011408 (example of Zillow's standard feed agreement). The standard feed agreements also include representations and warranties assuring Zillow that the providers have "all necessary rights and authority" to grant Zillow an unrestricted license and further warrant that Zillow's use of the photographs under the terms of the agreement will not "violate the intellectual property rights . . . of any third party, including the owner." *See id.*

With respect to photographs, Zillow's agreements generally either require that images (with the possible exception of an exterior shot from the curb) must be taken down when a home has been sold, or permit images to continue to be displayed indefinitely. Kutner Dec. ¶ 6. Zillow terms the former class of content "deciduous," and the latter "evergreen." *Id.*

Zillow distinguishes between evergreen and deciduous images on its web site by classifying the source from which the listing containing the image was received. Kutner Dec. ¶ 7. Zillow receives listings in the form of "feeds," or streams of content that the providers generate and upload via an interface to Zillow.com. *Id.* Each stream has a corresponding entry in a database that is coded as evergreen or deciduous based on the type of agreement that the provider has entered into with Zillow. *Id.* Zillow's servers use this entry to determine how content originating with a given feed may be displayed. Kutner Dec. ¶ 8.

When a provider updates a listing to indicate that the underlying property has been sold, Zillow's servers execute automated teardown algorithms to determine what data and images may continue to be displayed on the HDP corresponding to that property. *Id.* The effect of the teardown algorithm is that images received from an "evergreen" stream remain on the HDP after a property has been sold. *Id.* Images received from a "deciduous" stream, however, are removed from public access when the listing is deactivated, as required by the relevant agreement. *Id.*

Zillow receives as many as five million new listing images each day. Kutner Dec. ¶ 9. Zillow lacks personnel to manually review this volume of images as they are received, and does not attempt to do so. *Id.* Most images that Zillow receives, including all of VHT's images, do not contain any digital metadata that could be processed by a computer to identify the copyright holder.

Zillow's Motion for Summary Judgment
Case No. 2:15-cv-01096-JLR
Page 2

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

*Id.*; *see* Crosby Dec. Ex. 3, Bosch Dep. 235:23–236:11. Some images, including some of VHT's, do include a visual watermark in the body of the image itself. Kutner Dec. ¶ 9; *see* Crosby Dec. Ex. 3, Bosch Dep. 198:17–199:3 & 235:14-21. Zillow does not possess and is unaware of commercial technology that could automatically identify such marks in the listing photos it receives. Kutner Dec. ¶ 9.

Prior to the summer of 2014, Zillow's servers automatically converted each incoming image into a format called PTIFF that contains multiple embedded scaled image resolutions. *See* Crosby Dec. Ex. 4, Req. for Admis. ("RFA") Resp. No. 1. In response to requests to display these images, Zillow's servers would automatically render transitory, scaled JPG copies to transmit to the user, in the process applying image enhancement filters and cropping operations as necessary. *See id.*, RFA Resps. Nos. 3–5, 7–9. In the summer of 2014, Zillow migrated its system to the Amazon Web Services (AWS) cloud platform. Kutner Dec. ¶ 10. Following this migration, Zillow changed its format for storing incoming images to JPG, and began automatically "pre-rendering" separate "p-series" files at different scaled resolutions. *Id.*; *see* Crosby Dec. Ex. 4, RFA Resp. No. 11. Around September 2016, Zillow began rendering scaled images on the fly from a single master JPG, and deleted all scaled image copies from its AWS storage space. Kutner Dec. ¶ 10.

## B. Zillow Digs

Zillow Digs content includes "boards" on which users can post and share images of different types of rooms, as well as a body of searchable images classified by room type and tagged to identify different kinds of depicted features, such as furniture and appliances. Kutner Dec. ¶ 4. Before Digs was made available to the public on Zillow.com in February of 2013, contractors working for Zillow overseas identified an initial set of images classified as evergreen on HDPs to be made searchable on Digs. *See* Crosby Dec. Ex. 4, RFA Resp. No. 57. This classification resulted in the creation of entries in a database identifying those HDP images as available to be included in Digs search results, but did not cause any new copies of those images to be made. Kutner Dec. ¶ 11.

Zillow's Motion for Summary Judgment
Case No. 2:15-cv-01096-JLR
Page 3

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

After Digs launched, users were able to "save" HDP images to personal boards. Kutner Dec. ¶ 12. This operation created an entry in a database identifying the image as posted to the user's board. *Id.* If the image was classified as deciduous and not part of an active listing, it would only be viewable on Digs by the user who posted it. *Id.* If the image was part of an active listing or classified as evergreen, it could be seen on Digs by other visitors to that user's board. *Id.*

Prior to the migration to AWS, posting an image to Digs did not result in the creation of any scaled copies. Kutner Dec. ¶ 13. After the AWS migration, and until recently, a user's saving of an image on an HDP would result in the pre-rendering of appropriately scaled "i-series" versions of the original image for display on the Digs site and app. *Id.* All of the "i-series" images have been deleted since the switch to the new AWS system around September 2016. *Id.*

In all versions of Zillow's systems, posting of an evergreen image to Digs by a user would also result in a token for that image being placed in a moderation queue for review by a Zillow contractor. Kutner Dec. ¶ 14. The moderator would then review the image to determine that it contained no watermarks or other artifacts and was otherwise of reasonably high quality. *Id.* If the moderator released the image, it would be flagged in the database to be included in Digs search results. *Id.* If not, it would remain viewable only on the user's Digs board as before. *Id.*

Zillow moderators also confirm users' classification of the type of room depicted in a photograph, and tag the location and identity of image elements. Kutner Dec. ¶ 15. This operation results in the population of a database record with this information without any copying or modification of the underlying image. *Id.* When users request an image for display from Digs that has been tagged in this way, Zillow's servers retrieve this information to dynamically generate HTML code that a user's browser may use to overlay the image on the user's screen with shaded bubbles at the locations of products depicted in the image. *Id.* A user may choose to hide these bubbles by clicking a button on the page, or click the bubbles to show links to purchase the depicted products. *Id.* As of the end of Zillow's last fiscal year in 2015, Zillow had generated a total of $700 in revenue from clicks on product bubbles through Amazon's affiliate program. Crosby Dec. Ex. 5, Defs.' 2d Am. Resp. to VHT's 1st Interrogs., at 18.

Zillow's Motion for Summary Judgment
Case No. 2:15-cv-01096-JLR
Page 4

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

## C. VHT's Infringement Claims

VHT claims that Zillow infringes its copyrights by using VHT images received by Zillow from feeds classified as "evergreen" on HDPs after the property depicted has sold, as well as on Digs. Dkt. 123 at ¶ 2–3. VHT claims that such uses are outside the scope of its typical license, which it claims only permits use of its photos to "market[] the specific properties they depict and the listing broker, and then only while those properties are on the market." *Id.* ¶ 23.  However, VHT's standard license reads:

> VHT hereby grants a worldwide, perpetual, irrevocable, non-exclusive, fully-paid and non-assessable license to reproduce, distribute, copy, display, perform, modify and create derivative works of the visual content produced by VHT in hard copy or electronic form, in any medium now existing or hereafter created, for use in the sales or marketing of the subject property, the Client or the agent representing the subject property. No other rights or uses are permitted without the prior written consent of VHT. Client

Crosby Dec. Ex. 6, Dep. Ex. 183. This language does not limit the license to the time period *while the property is on the market* nor does it limit permitted marketing to "the listing agent" for that period. Moreover, VHT has systematically told the brokers who commissioned the photos that they could "use the photographs wherever you want, any way you want, and for as long as you want," Crosby Dec. Ex. 7, Dep. Ex. 122, and has represented to brokerage clients that VHT's license language "allows" a brokerage to display the images "after the sale of the property," Crosby Dec. Exs. 8 & 9, Dep. Exs. 212 & 264, respectively.

VHT has responded to interrogatories seeking its contentions about how Zillow infringes its copyrights by using its images in ways authorized those to whom VHT made that broad representation largely by identifying a variety of instances in which Zillow's systems automatically display, reproduce, modify, and distribute VHT images, along with a vastly larger quantity of undisputedly non-infringing content, in response to interactions with providers and users. Crosby Dec. Ex. 10, Plf.'s Resp. to Def.'s 2d Interrogs. VHT's responses do not identify a single instance in which a person at Zillow copied, displayed, modified, or distributed an image known at the time to belong to VHT. *Id.*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

## II.  ARGUMENT

Zillow is entitled to summary judgment that it does not infringe the copyright in any of VHT's images because almost none of the infringements that VHT has alleged resulted from Zillow's volitional conduct, and any possibly volitional uses that VHT claims are infringing are fair use as a matter of law. VHT's attempts to hold Zillow secondarily liable for alleged infringements by Zillow's users also fail for lack of proof of potentially actionable direct infringements and, in the case of vicarious infringement, for lack of evidence of a direct financial benefit to Zillow from the allegedly infringing conduct.

### A.  Summary Judgment

Summary judgment is appropriate if, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, the moving party shows that "there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Torres v. City of Madera,* 648 F.3d 1119, 1123 (9th Cir. 2011). The moving party "bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by "pointing out ... that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has satisfied its burden, the nonmoving party must then set out "specific facts showing that there is a genuine issue for trial" in order to defeat the motion. *Id.* at 324. "The mere existence of a scintilla of evidence in support of the non-moving party's position" is not sufficient; this party must present probative evidence in support of its claim or defense. *Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 919 (9th Cir. 2001); *Intel Corp. v. Hartford Accident & Indem. Co.,* 952 F.2d 1551, 1558 (9th Cir. 1991).

### B.  The automated operations of Zillow's web site in response to interactions with providers and users are not "volitional acts" of direct infringement by Zillow.

There is no dispute that nearly all of the alleged copying, display, distribution, and alteration of VHT images on Zillow's web site results from the operation of automated processes in re-

Zillow's Motion for Summary Judgment
Case No. 2:15-cv-01096-JLR
Page 6

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

sponse to provider uploads and user interactions, not actions taken by Zillow's personnel. Ninth Circuit law clearly holds that providing an automated system that others use to infringe does not meet the "requirement that the defendant cause the copying" in order to be itself a direct infringer under the Copyright Act. *Fox Broad. Co. v. Dish Network L.L.C.*, 747 F.3d 1060, 1067 (9th Cir. 2014) ("[O]perating a system used to make copies at the user's command does not mean that the system operator, rather than the user, caused copies to be made.") (adopting the holding in *Cartoon Network LP v. CSC Holdings, Inc. ("Cablevision")*, 536 F.3d 121 (2d Cir. 2008)). Rather, a finding of direct infringement requires "volitional conduct on the part of the defendant in order to support a finding of direct copyright infringement." *Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1115 (D. Nev. 2006) (citing *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.,* 907 F. Supp. 1361, 1369-70 (N.D. Cal. 1995)).

Merely soliciting others to upload copyrighted materials to a service that automatically copies and stores them for online display is not a volitional act of direct infringement by a service provider. *See Netcom*, 907 F. Supp. 2d, at 1369; *accord Sega Enters. v. MAPHIA*, 948 F. Supp. 923, 932 (N.D. Cal. 1996) (holding that a BBS operator was not directly liable for copyright infringement even when he had knowledge of infringement and "solicited others to upload games"). Nor is the automated transmission of such content to a user in response to a request for a web page a volitional act by the service provider:

> [W]hen a user requests a Web page contained in the Google cache by clicking on a "Cached" link, it is the user, not Google, who creates and downloads a copy of the cached Web page …. The automated, non-volitional conduct by Google in response to a user's request does not constitute direct infringement under the Copyright Act.

*Field*, 412 F. Supp. 2d at 1115.

The Fourth Circuit has applied the *Netcom* volitional conduct rule on facts similar to those in this case to hold that the operator of a web site for hosting real estate listings posted by brokers who had represented to it that they had all necessary rights to do so was not a volitional infringer of the copyrights of the photographs contained in the listings, even though its employees reviewed

Zillow's Motion for Summary Judgment
Case No. 2:15-cv-01096-JLR
Page 7

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

listings for content and obvious copyright violations before accepting them for display. *See Co-Star Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544 (4th Cir. 2004).

### 1. VHT cannot prove that Zillow displayed or reproduced any VHT images in connection with sold HDPs.

VHT contends that Zillow has directly infringed VHT's exclusive rights under 17 U.S.C. § 106 to display and reproduce its images when Zillow hosts sold HDPs on its web site. Crosby Dec. Ex. 10, at 5–6. Yet VHT has not even identified, much less adduced evidence to prove, any volitional acts by Zillow that caused these operations. To the contrary, each of the allegedly infringing operations that VHT contends are infringing in connection with sold HDPs is indisputably the result of automated processes executing in response to interactions between listing providers or users and Zillow's web site. Zillow is thus entitled to summary judgment that it does not directly infringe VHT's copyrights by hosting sold HDP pages.

#### a. Any display of VHT photos on sold HDPs does not result from volitional acts of direct infringement by Zillow.

VHT contends that Zillow's hosting of sold HDPs infringes its public display rights under 17 U.S.C. § 106(5) by "displaying VHT photos on Home Details Pages on its Listing Site after the subject properties have been sold ...." *Id.* at 5–6. VHT states that it is "Zillow itself that takes affirmative steps to remove the name of the listing agent from the 'Contact Agent' module at the top of the Home Details Pages of properties not actively listed for sale on the Listing Site, to mark the listings as 'Sold' or 'Off-Market' and to continue to display those VHT photos despite the property being no longer listed for sale." *Id.*, at 6 But VHT fails to identify what acts by Zillow might constitute such "affirmative steps," or how modifications to the contents of an HDP such as modifying the "Contact Agent" module or changing the listing status affect the display of its images.

It is undisputed that it is brokers and agents, not Zillow, that place VHT photographs on Zillow's web site in the contents of listings that they provide to Zillow by means of automated feeds. Kutner Dec. ¶ 7. It is undisputed that Zillow's web site automatically classifies listings and their contents as evergreen—*i.e,* available for display after the subject property has sold—according to

Zillow's Motion for Summary Judgment
Case No. 2:15-cv-01096-JLR
Page 8

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

the rights that the provider has warranted to Zillow in connection with the associated feed. *Id.* And it is undisputed that the retention of an HDP for display after a property has sold, including any modification of the "Contact Agent" module or alteration of the listing status, occurs automatically based on this classification without the intervention of any person at Zillow. *Id.* ¶ 8. Because VHT has failed to identify any volitional act by Zillow that results in the display of its images on sold HDP pages, Zillow is entitled to summary judgment that its hosting of VHT images on those pages does not directly infringe VHT's exclusive right to display them.

        *b.   Any reproduction of VHT photos on sold HDPs does not result from volitional acts of direct infringement by Zillow.*

VHT contends that Zillow's hosting of sold HDPs infringes its reproduction rights under 17 U.S.C. § 106(1) by "continuing to create archival copies of photos, including but not limited to 'p-series' copies, from the Listing Site of properties that are no longer actively listed for sale, both for storage on its AWS and/or Legacy System servers and on its CNS network,[1] … and … making additional 'p-series' copies of images that it does not display on the Listing Site, even for properties actively listed for sale." Crosby Dec. Ex. 10, at 6. Again, VHT does not identify any actions by Zillow that supposedly cause the creation of these copies.

With respect to archives, it is undisputed that Zillow's archival processes execute automatically on *all* images that are present on Zillow's systems, including any "p-series" copies. Kutner Dec. ¶ 16. Likewise, it is undisputed that neither Zillow's legacy nor its current system generate undisplayed "p-series" images, as those systems only generate transitory copies of scaled images in response to user requests. Crosby Dec. Ex. 4, RFA Resp. Nos. 3–5, 7–9. Finally, is undisputed that Zillow's old AWS system pre-rendered and stored unused "p-series" images automatically in response to submission of active listings by Zillow's providers. Kutner Dec. ¶ 10. VHT has not identified any images on sold HDPs that were copied and stored as a result of an action by Zillow,

---

[1]    VHT's interrogatory answers fail to define what it means by "CNS network." Zillow does not operate any network by that name. Kutner Dec. ¶ 16.

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

and Zillow is entitled to summary judgment that its hosting of those images does not directly infringe VHT's exclusive reproduction rights either.

### 2. *VHT cannot prove that Zillow displayed or reproduced any VHT images that users posted to Digs.*

VHT also alleges that the operation of Zillow Digs results in infringement of VHT's display and reproduction rights in its images. But again, all but a few of the operations that VHT claims are infringing are attributable to user interactions, not volitional acts by Zillow.

### a. *Any display of user-selected images on Digs does not result from volitional acts of direct infringement by Zillow.*

VHT contends that Zillow's operation of Digs infringes its public display rights under 17 U.S.C. § 106(5) by "displaying VHT photos on the searchable portion of the Digs Site; displaying VHT photos on individual Image Details Pages on the Digs Site; displaying VHT photos on user boards on the Digs Site; [and] displaying VHT photos on the Dueling Digs game on Zillow's Digs mobile application." Crosby Dec. Ex. 10, at 6. VHT contends that Zillow caused infringing displays of images on Digs because "Zillow itself actively selected a large number of photos from the Listing Site to display on the Digs Site when the site was launched (and has subsequently done so on other occasions), and Zillow itself that [*sic*] curates the photos that users have saved to their Digs boards and selects certain of those photos to display on the searchable portion of the Digs Site." *Id.*

Zillow does not contend that the volitional act doctrine applies to the relatively small number of VHT images that it initially selected and were displayed on Digs. With respect to photos that users save to Digs, however, there is no dispute that the extent of Zillow's involvement in making those photographs available for display consists of releasing images from a moderation queue based on a quality assessment. Crosby Dec. Ex. 4, RFA Resp. No. 29. This moderation is no different from the screening of user submissions in *CoStar*, which held that such a "perfunctory gatekeeping process" does not "create liability … as a direct infringer [for] conduct [that] otherwise does not amount to direct infringement." 373 F.3d at 556. Zillow is entitled to summary

Zillow's Motion for Summary Judgment
Case No. 2:15-cv-01096-JLR
Page 10

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

judgment that it is not directly liable for any allegedly infringing display of images added by users to Digs, including those that were made searchable as a result of approval by Zillow's moderators.

      b.    *Any reproduction of VHT photos on Digs does not result from volitional acts of direct infringement by Zillow.*

VHT contends that Zillow's operation of Digs has infringed its reproduction rights under 17 U.S.C. § 106(1) by "making multiple copies of each image it has identified for display on the Digs Site, including but not limited to copies for use in the 'More From This Home' feature on the Digs Site, for its Digs app, and for the 'Dueling Digs' game and 'i-series' copies, and storing those copies on its AWS and/or Legacy System servers …." Crosby Dec. Ex. 10, at 6. VHT again fails to identify a single volitional act by Zillow that caused the creation of these copies. *Id.*

It is undisputed that Zillow's legacy and current systems do not create and store "i-series" or other copies of original images that are made available on Digs. Crosby Dec. Ex. 4, RFA Resp. Nos. 21, 24, & 27. In particular, it is undisputed that no such copies were created and stored in connection with Zillow's identification of the launch set of images in late 2012 and early 2013. Kutner Dec. ¶ 11. Finally, it is undisputed that on Zillow's old AWS system, secondary copies were generated and stored in response to users saving images on Digs, not (at least in any instances that VHT has identified) as a result of any action by a person at Zillow. *Id.* ¶¶ 10, 13. Zillow is entitled to summary judgment that it is not directly liable for infringing VHT's reproduction rights on Digs.

      **3.**    ***VHT cannot prove that Zillow created any derivative works from VHT images in connection with sold HDPs or Digs.***

VHT claims that Zillow has infringed its right to prepare derivative works under 17 U.S.C. § 106(2) because "before and during the display of VHT photos on the Listing Site and the Digs Site and app, Zillow uses digital tools to modify the images, including by altering the coloration of the pixels to increase contrast and decrease blurring, and by cropping the photos. In addition, on the Digs Site, Zillow affixes bubbles containing advertising (which Zillow refers to as "product tags") directly on top of the VHT photos." Crosby Dec. Ex. 10, at 6. Once again, VHT fails to identify any volitional acts by Zillow that result in these alleged adaptations of its works. There is

Zillow's Motion for Summary Judgment
Case No. 2:15-cv-01096-JLR
Page 11

S U S M A N  G O D F R E Y  L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

no dispute that Zillow's systems automatically enhance and crop images for both sold HDPs and Digs at the same time that they create scaled copies in response to provider uploads or user requests, not as a result of actions by persons at Zillow. Kutner Dec. ¶¶ 10, 13. Product overlays are likewise generated on the fly in response to user requests. *Id.* ¶ 15.

Product overlays also are not derivative works in any event. A work, including a derivative work, is only created under the Copyright Act when it is "fixed" in a copy. *See* 17 U.S.C. § 101; *see Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1110 (9th Cir. 1998) ("[A] derivative work must exist in a concrete or permanent form" (internal quotation omitted)); 2 Nimmer on Copyright § 8.09 (Under "the plain language of the Act … the adaptation right … should not be deemed implicated, absent fixation."). It is undisputed that Digs product overlays do not involve the fixation of an altered image in any concrete form. Rather, a user's browser receives an unaltered image along with dynamically generated code that enables the user's browser to render overlapping product bubbles on the user's screen. Kutner Dec. ¶ 15. Such transitory compositing of content on a user's computer screen does not result in the creation of a derivative work. "Even if the presence of an overlapping window could be said to change the appearance of the underlying window on a computer screen, the mere alteration of the manner in which an individual consumer's computer displays the content sent by plaintiffs' websites does not create a 'derivative work.'" *Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F. Supp. 2d 734, 769 (E.D. Mich. 2003) (citing *Lewis Galoob Toys v. Nintendo of Am.*, 780 F.Supp. 1283, 1291 (N.D. Cal. 1991), *aff'd*, 964 F.2d 965 (9th Cir.1992).

Because the actions of users and providers, not Zillow, generate all of the adaptations that VHT contends are infringing, and because product overlays are not statutory works in any event, Zillow is entitled to summary judgment that it does not directly infringe VHT's right to prepare derivative works.

Zillow's Motion for Summary Judgment
Case No. 2:15-cv-01096-JLR
Page 12

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

**4.  *VHT cannot prove that any distribution of its images resulted from volitional acts of infringement by Zillow.***

VHT claims that Zillow has infringed its distribution rights under 17 U.S.C. § 106(3) by "sending out promotional emails for the Listing Site that include VHT images when the properties depicted are no longer on the market; by including VHT images in blog posts, when the properties depicted are no longer on the market; and by sending out promotional emails for the Digs Site that include VHT images." Crosby Dec. Ex. 10, at 6. Once again, VHT has not identified any volitional acts by Zillow that it contends resulted in these alleged categories of distribution.

VHT has identified three specific instances in which it claims Zillow distributed VHT photographs via e-mail, namely "VHT093103-07 (VHT photo of roof deck in "What's Trending" on Digs email); VHT093108-11 (VHT photo in "What's Trending on Zillow Digs" email) and VHT093112-15 (VHT photo of kitchen in Digs promotional email)." *See* Crosby Dec. Exs. 12–14. But Zillow's systems generated these e-mails automatically, selecting their contents algorithmically based on characteristics or preferences of users who elected to receive them. Kutner Dec. ¶ 17. None of these examples was created or sent by any person at Zillow. *Id.* Accordingly, Zillow is entitled to summary judgment that it has not directly infringed VHT's distribution rights as well.

**C.  Any possibly volitional uses of VHT images by Zillow is fair use.**

Even if the pre-rendering of scaled, cropped, and enhanced copies of VHT images or the display of VHT images in the searchable set selected or moderated by Zillow could be attributed to Zillow's volitional acts, it would not be infringement under the fair use doctrine. Under 17 U.S.C. § 107, courts consider four factors in ascertaining non-infringing fair use:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

Zillow's Motion for Summary Judgment
Case No. 2:15-cv-01096-JLR
Page 13

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

*Id.* (emphasis added). Zillow's automated image optimizations and creation of its searchable set of images on Digs are both highly transformational uses that do not affect the use or value of VHT's images, and are thus fair use as a matter of law.

### 1. Zillow's image rendering processes are fair-use user enhancements that are intrinsic to the operation of a web site.

Zillow's scaling, cropping, and enhancing of images are "automatic processes carried out to improve a user's internet experience, and not to exploit the copyrighted works" that do not infringe as a matter of law because they are "an inevitable and necessary part of using the internet, and ultimately a trivial activity that falls within the protections of the fair use doctrine." *Rosen v. eBay, Inc.*, No. CV 13-6801 MWF EX, 2015 WL 1600081, at *20 (C.D. Cal. Jan. 16, 2015) (granting summary judgment) (citing *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007)). The Ninth Circuit has found these factors to be readily satisfied by automated technical measures, such as caching, that enhance internet access:

> The copying function performed automatically by a user's computer to assist in accessing the Internet is a transformative use. Moreover, as noted by the district court, a cache copies no more than is necessary to assist the user in Internet use. It is designed to enhance an individual's computer use, not to supersede the copyright holders' exploitation of their works. Such automatic background copying has no more than a minimal effect on Perfect 10's rights, but a considerable public benefit.

*Amazon*, 508 F.3d 1146.

Applying *Amazon*, the Central District of California in *Rosen* had little difficulty finding on summary judgment that a service provider's automated copying and distribution of images over content delivery networks (CDNs) was fair use as a matter of law:

> [S]uch usage is minimal and is a crucial part of maintaining not only internet commerce, but the efficient operation of the internet generally. It also causes only minor and wholly incidental copying and distribution of images. … As in *Amazon*, eBay's use of CDNs is designed to 'enhance [a user's] use, not to supersede the copyright holders' exploitation of their works.' *Id.* at 1169. eBay's use of CDNs is highly analogous and is fair use.

2015 WL 1600081, at *21.

Zillow's Motion for Summary Judgment
Case No. 2:15-cv-01096-JLR
Page 14

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

Zillow's automated copying and image enhancement operations that VHT claims are infringing are highly analogous to online user-experience enhancements that have been found to be fair use in *Amazon*, *Rosen*, and elsewhere. The rendering of scaled "p-series" and "i-series" copies and the automated cropping and enhancing of images, for example, facilitate the ability of users to view images on computer screens in a variety of page layouts on different devices. These uses are highly transformative in this respect, and involve no more copying or alteration than is necessary to effect that purpose.

Nor do these uses displace any market for VHT's works. There is no evidence or reason to believe that users would pay VHT for scaled, cropped, or enhanced versions of its images if Zillow's systems only served the unmodified originals. Nor is there any evidence that a separate market exists to license such images to service providers. Indeed, VHT does not dispute that such transformations to facilitate Zillow's online user experience are already authorized by the terms of its license to the original photographs when performed in connection with on-sale HDPs. Finally, there is no evidence that these transformations supplant any market for VHT's original images.

The Ninth Circuit has given substantial weight to such lack of superseding exploitation in finding that the comparable practice of creating scaled "thumbnail" images for display on search engines is fair use. *See Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 822 (9th Cir. 2003). Indeed, the Ninth Circuit held in *Amazon* that the transformational benefit to users of providing thumbnail images outweighed any incidental possibility that it might supersede the copyright holder's as yet unconsummated efforts to license low resolution images on mobile phones. *See* 508 F.3d at 1166–67. Here, there is not even a theoretical effect on the market for VHT's copyrights from automated transformations that occur to enhance the user experience on Zillow's web site, and a finding of fair use is even more highly compelled.

### 2. Zillow's making images searchable for display on Digs is a substantial fair-use transformation.

The Ninth Circuit has repeatedly held that the use of images in connection with search applications is highly transformative and fair use even when done for commercial purposes. In both

Zillow's Motion for Summary Judgment
Case No. 2:15-cv-01096-JLR
Page 15

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

*Kelly* and *Amazon*, it found that the commercial use of scaled copies of previously published images was fair use in view of its transformative utility to the public and lack of appreciable effect on any market for the underlying works. *See Kelly*, 336 F.3d at 818–22; *Amazon*, 508 F.3d at 1163–68. Zillow's use of images commissioned for real estate sales to allow users to search for examples of home improvements is easily more transformative than the uses authorized in those cases, and no less harmless to any opportunity for VHT to exploit its copyrights. The balance of fair use factors supports reaching the same result as a matter of law in this case.

> ### a. *Purpose and Character of the Use*

"The central purpose of th[e] inquiry [into the nature of the use] is to determine whether and to what extent the new work is 'transformative.' A work is 'transformative' when the new work does not 'merely supersede the objects of the original creation' but rather 'adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message.'" *Amazon*, 508 F.3d at 1164. There can be no dispute that Zillow's coding of the subject matter and contents of images on Digs enables additional uses that are very different from the narrow purpose of marketing properties and agents in connection with active listings for which VHT claims its images were commissioned.[2] Serving a different purpose from that for which the original work was created is a hallmark of fair-use transformation. *See Kelly,* 336 F.3d at 819 ("Arriba's use of the images serve[d] a different function than Kelly's use—improving access to information on the internet versus artistic expression.")

The provision of a new and different social benefit from a work's original use is also highly probative or transformation. In *Amazon*, the Ninth Circuit found that search functionality was, if anything, more transformative than the paradigmatic fair use of parody:

> Just as a "parody has an obvious claim to transformative value" because "it can provide social benefit, by shedding light on an earlier work, and, in the process, creating a new one," a search engine provides social benefit by incorporating an original work into a new work, namely, an electronic reference tool. Indeed, a search engine may be more transformative than a parody be-

---

[2] Zillow of course disputes that the purposes authorized in VHT's licenses are so limited, and maintains that its uses of VHT's photos on Digs fall within the broad scope of those licenses.

Zillow's Motion for Summary Judgment
Case No. 2:15-cv-01096-JLR
Page 16

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

cause a search engine provides an entirely new use for the original work, while a parody typically has the same entertainment purpose as the original work.

*Amazon*, 508 F.3d at 1165 (citation omitted).

Zillow's *de minimis* commercialization of Digs images bears no weight against the substantial transformation effected by its use. In *Amazon*, the Ninth Circuit found that "the extent to which Google's search engine promotes the purposes of copyright and serves the interests of the public" outweighed Google's commercial purpose of displaying ads in connection with its search results. *Id.* Zillow's commercialization of Digs is indisputably trivial by comparison. While in *Amazon* "Google's AdSense programs as a whole contributed $630 million, or 46% of total revenues to Google's bottom line," the evidence here shows $700 in Zillow revenue from displaying product links on Digs. Crosby Dec. Ex. 5, at 18. And here as in *Amazon*, "this figure did not break down the much smaller amount attributable to websites that contain infringing content." *Id.* (indication of quotations omitted). Because the transformational benefit to the public and lack of commercial significance to Zillow of searchable Digs images are both undisputed, the purpose and character of the use weigh in favor of a finding of fair use as a matter of law.

> b. *Nature of the Copyrighted Work*

For purposes of applying this fair use factor, the Ninth Circuit has found that works that are "creative in nature" are "closer to the core of intended copyright protection than are more fact-based works." *Kelly*, 336 F.3d at 820. But even in the case of "[p]hotographs that are meant to be viewed by the public for informative and aesthetic purposes," the Ninth Circuit has held that this factor has "only slightly" weighed in favor of the copyright holder when the work has already been published "because the first appearance of the artist's expression has already occurred." *Id.*; *accord Amazon*, 508 F.3d at 1167 ("Once Perfect 10 has exploited this commercially valuable right of first publication by putting its images on the Internet for paid subscribers, Perfect 10 is no longer entitled to the enhanced protection available for an unpublished work. Accordingly the district court did not err in holding that this factor weighed only slightly in favor of Perfect 10.").

Zillow's Motion for Summary Judgment
Case No. 2:15-cv-01096-JLR
Page 17

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

Here, even if VHT's repetitive depictions of home interiors were deemed "creative" rather than "factual," this factor would not weigh significantly against a finding of fair use.

### c. Amount and Substantiality of the Portion Used

The Ninth Circuit held in both *Kelly* and *Amazon* that this factor weighs in favor of neither party when it is necessary to copy the entire work in order to realize the transformational benefit of the use. *Kelly*, 336 F.3d at 821; *Amazon*, 508 F.3d at 1167–68. While Digs, like the defendants in those cases, displays scaled versions of all or substantially all of the searchable images, there can be no dispute that the whole layout of a depicted room and its contents is the essential subject matter that conveys home improvement concepts on Digs. This factor again does not weigh against a finding of fair use.

### d. Effect of Use on the Market

Finally, there is no evidence that the display of VHT images on Digs had any effect on the market for VHT's images. There is no conceivable mechanism by which the display of images on Digs might supplant the primary market for VHT's images among brokers who require recent images of a particular property for the purpose of marketing a property for sale. Nor is there any evidence that such use supplants any secondary market for the use of VHT's images in connection with home improvement. VHT has only ever licensed about a hundred of its images for secondary uses, and never for one remotely comparable to creating a searchable database of home improvement examples. Crosby Dec. Ex. 11, Respns. to Interrog. 11. Where, as here, the challenged use "does not harm the market for or value" of the works in question, this factor weighs in favor of finding fair use. *Kelly*, 336 F.3d 821–22.

### e. Weighing of Factors

The calculus of factors in this case is identical to that which the Ninth Circuit found in *Kelly* to warrant a finding of fair use as a matter of law. Here, as there, the transformative nature of the use and lack of harm to the market for the works favored such a finding, while the extent of the use was neutral and the nature of the work weighed at most only slightly against. *Id.* at 822. The

Zillow's Motion for Summary Judgment
Case No. 2:15-cv-01096-JLR
Page 18

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

same result is compelled here regarding searchable Digs images, and Zillow is entitled to summary judgment that this use is fair use.

**D.   VHT cannot prove that Zillow is secondarily liable for copyright infringement.**

In addition to claiming direct infringement on sold HDPs and Digs, VHT asserts that "Zillow is contributorily and vicariously liable for direct infringements by users of the Digs Site." Ex. 10, at 10. The Supreme Court has held: "One infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (citations omitted). VHT cannot prove secondary liability by Zillow under either theory.

> ### *1.   VHT cannot prove contributory infringement by Zillow.*

Liability for contributory infringement requires knowledge of particular works that are being infringed. *See A&M Records, Inc., v. Napster*, 239 F.3d 1004, 1021 (9th Cir. 2001) ("[A]bsent any specific information which identifies infringing activity, a computer system operator cannot be liable for contributory infringement merely because the structure of the system allows for the exchange of copyrighted material."); *accord Perfect 10, Inc. v. Giganews, Inc.*, No. CV11-07098 AHM SHX, 2013 WL 2109963, at *10 (C.D. Cal. Mar. 8, 2013) ("[T]he knowledge element [for contributory infringement] is satisfied when a defendant knows that there has been a concrete incident of infringement of a specific copyrighted work."). It is undisputed that Zillow has no practical means to distinguish VHT images from the millions of others that it receives from providers every day. Kutner Dec. ¶ 9. Consequently, any contributory infringement by Zillow is limited to inducements of direct infringement of images of which Zillow had received notice.

But VHT cannot prove any direct infringements that occurred after Zillow received such notice. VHT asserts that the underlying direct infringements on Digs consist of displays of images to users as identified in a spreadsheet that it produced in discovery. *See* Crosby Dec. Ex. 10, at 12. But this spreadsheet shows only how many asserted displays occurred after the image was first created on Digs, not at what times after that date the displays occurred. *See* Crosby Dec. Ex. 15

Zillow's Motion for Summary Judgment
Case No. 2:15-cv-01096-JLR
Page 19

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1    (screenshot of subset of spreadsheet headings and records). It cannot be inferred from the spread-

2    sheet which images were displayed relative to any subsequent notice date. Absent such evidence,

3    VHT cannot prove that Zillow had the requisite intent respecting any specific contributory in-

4    fringements.

5        The inability to identify when a display occurred is especially important here because VHT

6    is unlikely to be able prove that Zillow received adequate notice of most, if any alleged infringe-

7    ments on Digs before extremely recently. VHT provided its only formal notice purporting to refer

8    to any specific infringements on Digs in July 2014, over a year after Digs began displaying imag-

9    es to users. Crosby Dec. Ex. 16. The list accompanying that notice contained too many inaccura-

10   cies, however, to allow Zillow to locate those images and take them down. Crosby Dec. Ex. 17.

11   As late as the summer of 2016, Zillow was still working on a "fuzzy logic" process to locate al-

12   legedly infringing images using information that VHT had provided. Crosby Dec. Ex. 18. It is

13   thus highly unlikely that many of the displays of VHT images on Digs that VHT has identified

14   occurred after Zillow had received adequate notice—and VHT cannot prove that *any* of them did.

15   This failure of proof entitles Zillow to summary judgment of no contributory infringement.

16       **2.    *VHT cannot prove vicarious infringement by Zillow.***

17       Zillow's inability to distinguish and remove VHT photographs also precludes vicarious lia-

18   bility for infringement on Digs prior to notice identifying specific works from VHT. *See Amazon*,

19   508 F.3d at 1173–75 ("[U]nder *Grokster*, a defendant exercises control over a direct infringer

20   when he has both a legal right to stop or limit the directly infringing conduct, *as well as the prac-*

21   *tical ability* to do so." (emphasis added)). VHT's failure or proof of direct infringement after Zil-

22   low had notice thus entitles Zillow to summary judgment of no vicarious infringement as well.

23       Zillow is also entitled to summary judgment of no liability for vicarious infringement be-

24   cause VHT cannot show that Zillow received a "direct financial benefit from the [alleged direct]

25   copyright infringement." *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004). VHT asserts

26   that "Zillow derives a financial benefit that is directly attributable to the infringement by literally

27   placing advertising directly onto VHT's photos, and the advertising is keyed to specific items that

Zillow's Motion for Summary Judgment
Case No. 2:15-cv-01096-JLR
Page 20

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

appear in each particular photo ….” Crosby Dec. Ex. 10, at 12 But there is no evidence that Zillow received advertising revenue in connection with the display of any VHT photo on Digs. Indeed, VHT's own expert Dr. Ward Hanson did not attribute any revenue to use on Digs of any VHT photos. Crosby Dec. Ex. 19, Hanson Rpt. at 30. Rather, he admitted in his deposition that he had only "outline[d] a method that *if Digs had revenue* would be a reasonable way to go about it." Crosby Dec. Ex. 20, Hanson Dep. 211:5–17 (emphasis added).

There is likewise no evidence supporting VHT's assertion that its "photos also bring increased traffic to Zillow's websites, from which Zillow derives increased advertising revenue." At a minimum, to prove that such revenue constitutes a "direct financial benefit" from the alleged infringement, VHT must show that the allegedly "infringing activity constitutes a draw [to visitors], not just an added benefit." *Ellison*, 357 F.3d, at 1079.

VHT's own expert concluded that VHT's images constitute only about 1.6% of the searchable images available on Digs. Crosby Dec. Ex. 19, Hanson Rpt. at 30. There is no evidence that the presence of this tiny proportion of Digs photos has any effect on user traffic. To the contrary the presence of such a "relatively minuscule number" of allegedly infringed works on a provider like Zillow's service "suggests [that] any conclusion that subscribers were 'drawn' to [the provider's] services as a result of the availability of [VHT's] content would be pure speculation." *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB SHX, 2014 WL 8628031, at *4 (C.D. Cal. Nov. 14, 2014), *reconsideration denied*, No. CV 11-07098-AB SHX, 2015 WL 1746406 (C.D. Cal. Mar. 6, 2015). Because there is no evidence that "the availability of [allegedly] infringing material acts as a draw for customers" to Zillow, "no jury could reasonably conclude that [Zillow] received a direct financial benefit from providing access to the [allegedly] infringing material." *Ellison*, 357 F.3d, at 1079. Zillow is therefore entitled to summary judgment of no vicarious infringement on this ground as well.

## III. CONCLUSION

The volitional act doctrine precludes liability by Zillow for direct infringement of any but a handful of the images at issue in this suit, and the fair use doctrine further precludes liability re-

Zillow's Motion for Summary Judgment
Case No. 2:15-cv-01096-JLR
Page 21

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

specting any uses by Zillow that are even arguably volitional. The lack of evidence of direct infringements after notice to Zillow or any direct financial benefit to Zillow from such infringements also precludes secondary liability. For all these reasons, the Court should grant Zillow's motion for summary judgment.

Dated: October 25, 2016.                    Respectfully submitted,

By: /s/ *Ian B. Crosby*
Brooke A. M. Taylor, WA Bar # 33190
btaylor@susmangodfrey.com
Edgar G. Sargent, WA Bar # 28283
esargent@susmangodfrey.com
Ian Bradford Crosby, WA Bar # 28461
icrosby@susmangodfrey.com
Genevieve Vose Wallace, WA Bar # 38422
E-Mail: gwallace@susmangodfrey.com
Jordan Connors, WA Bar # 41649
E-Mail: jconnors@SusmanGodfrey.com
Jenna Farleigh, WA Bar # 47392
E-Mail: jfarleigh@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Telephone:      (206) 516-3880
Facsimile:      (206) 516-3883

Attorneys for Zillow Group, Inc. and Zillow, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Ian B. Crosby*
Ian B. Crosby

Zillow's Motion for Summary Judgment
Case No. 2:15-cv-01096-JLR
Page 22

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883