The Honorable James L. Robart

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

VHT, INC., a Delaware Corporation,

                    Plaintiff,

     v.

ZILLOW GROUP, INC., a Washington
corporation; and ZILLOW, INC., a Washington
corporation,

                    Defendants.

No. 15-cv-1096-JLR

**VHT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT**

Noted on Motion Calendar:
November 18, 2016

Oral argument requested

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................... 1

II.   BACKGROUND ..................................................................................................... 2

    A.    VHT & Its Photography Business ............................................................... 2

        1.    VHT's Service Level Agreement and Photography Rider ...................... 2

        2.    VHT's Terms of Use ............................................................................. 3

    B.    VHT's Copyright Applications & Registrations .................................................. 3

    C.    Zillow's Infringing Uses of VHT's Images ......................................................... 4

    D.    Procedural History ............................................................................................... 5

III.  GOVERNING STANDARD ................................................................................... 5

IV.   THERE IS NO GENUINE ISSUE OF FACT ON LIABILITY ...................................... 6

    A.    VHT Holds Valid Copyright Registrations ........................................................ 6

    B.    The VHT Licenses Unambiguously Limit the Use of VHT's Photographs......... 7

    C.    Neither VHT License Authorizes Zillow's Infringing Uses ............................. 11

    D.    Zillow's Uses Violate VHT's Rights Under the Copyright Act........................ 13

        1.    Direct Infringement on Both Sites...................................................... 13

        2.    Secondary Liability on the Digs Site.................................................. 15

    E.    Zillow's Remaining Defenses Lack Merit. ...................................................... 18

        1.    Zillow Is Not Entitled to the DMCA Safe Harbor ................................ 18

        2.    Zillow's Uses Were Not A Fair Use.................................................... 20

V.    ZILLOW'S INFRINGEMENTS WERE WILLFUL ................................................. 21

VI.   EACH OF VHT'S IMAGES HAS AN INDEPENDENT ECONOMIC VALUE......... 23

VII.  ZILLOW CANNOT CREATE A TRIABLE ISSUE OF FACT ON ITS
      COUNTERCLAIMS ........................................................................................... 25

    A.    The CPA Claim ................................................................................................. 25

    B.    The CFAA Claim .............................................................................................. 27

    C.    The Trespass to Chattels Claim ........................................................................ 28

    D.    The Tortious Interference Claim ....................................................................... 29

VIII. CONCLUSION .................................................................................................... 30

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (15-cv-1096-JLR) - i
DWT 30548647v6 0104728-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) .......................................................................................16, 18

*AFP v. Morel*,
934 F.Supp.2d 547567 (S.D.N.Y. 2013) ...............................................................................19

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ..............................................................................................................5

*Apple Computer, Inc. v. Formula Int'l Inc.*,
725 F.2d 521 (9th Cir. 1984) ................................................................................................6

*Arista Records LLC v. Lime Wire Group LLC*,
2011 WL 1311771 (S.D.N.Y. April 4, 2011) .......................................................................25

*Capitol Records, Inc. v. MP3tunes*,
LLC, 48 F.Supp.3d 703 (S.D.N.Y. 2014), *aff'd in relevant part*, Nos. 14-
4369-cv(L), 14-4509-cv(XAP) (2d Cir. Oct. 25, 2016) .................................................14, 15

*Carideo v. Dell, Inc.*,
492 F.Supp.2d 1283 (W.D. Wash. 2007) ..............................................................................9

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ..............................................................................................................5

*Columbia Pictures Inds. v. Fung*,
710 F.3d 1020 (9th Cir. 2013) .............................................................................................20

*Columbia Pictures Television v. Krypton Broad.*,
106 F.3d 284 (9th Cir. 1997), *rev'd on other grounds*, 1185 S.Ct. 1279
(1998) ..............................................................................................................................21, 24

*CoStar Group, Inc. v. LoopNet, Inc.*,
373 F.3d 544 (4th Cir. 2004) ...............................................................................................15

*Czech v. Wall St. on Demand, Inc.*,
674 F.Supp.2d 1102 (D. Minn. 2009) ..................................................................................27

*Davis v. G.N. Mortg. Corp.*,
396 F.3d 869 (7th Cir. 2005 .................................................................................................10

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

*Dolman v. Agee*,
   157 F.3d 708 (9th Cir. 1998) ......................................................................22

*eBay Inc. v. Digital Point Sols., Inc.*,
   608 F.Supp.2d 1156 (N.D. Cal. 2009) ......................................................27

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
   76 F.3d 259 (9th Cir. 1995) ...............................................................15, 17

*Fox Broad. Co., Inc. v. Dish Network, LLC*,
   747 F.3d 1060 (9th Cir. 2014) ..................................................................15

*Gamma Audio & Video, Inc. v. Ean-Chea*,
   11 F.3d 1106 (1st Cir. 1993) .....................................................................25

*Gardner v. Café Press Inc.*,
   2014 WL 794216 (S.D. Cal. Feb. 26, 2014) ............................................19

*Glob. Policy Partners, LLC v. Yessin*,
   686 F.Supp.2d 642 (E.D. Va. 2010) .........................................................28

*Holley v. Crank*,
   400 F.3d 667 (9th Cir. 2005) ....................................................................14

*In re iPhone Application Litig.*,
   844 F.Supp.2d 1040 (N.D. Cal. 2012) ...............................................27, 29

*Indigo Blue Studios d/b/a Andy Frame Photography v. Zillow Inc.*,
   9:13-cv-80664 (S.D. Fla. 2013) ................................................................22

*Joshua Johnson Photography v. Warner Bros.*
   1:16-cv-00306 (D. Colo. 2016) .................................................................22

*Kisch v. Ammirati & Puris, Inc.*,
   657 F.Supp. 380 (S.D.N.Y. 1987) ...............................................................7

*L.A. News Serv. v. Tullo*,
   973 F.2d 791 (9th Cir. Cal. 1992) ...............................................................7

*LinkCo, Inc. v. Fujitsu Ltd.*,
   230 F.Supp.2d 492 (S.D.N.Y. 2002) .........................................................30

*Louis Vuitton Malletier S.A. v. Akanoc Solutions, Inc.*,
   658 F.3d 936 (9th Cir. 2011) ....................................................................21

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) ....................................................................................6

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (15-cv-1096-JLR) - iii
DWT 30548647v6 0104728-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

*Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.,*
    722 F.3d 591 (4th Cir. 2013) ...............................................................24

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,*
    545 U.S. 913 (2005) ...............................................................16, 17

*Minnick v. Clearwire US, LLC,*
    683 F.Supp.2d 1179 (W.D. Wash. 2010) ...............................................9

*Monge v. Maya Magazines, Inc.,*
    688 F.3d 1164 (9th Cir. 2012) ...............................................................20, 23

*N.A.S. Import, Corp. v. Chenson Enters., Inc.,*
    968 F.2d 250 (2d Cir. 1992) ...............................................................23

*Nova Stylings, Inc. v. Ladd,*
    695 F.2d 1179 (9th Cir. 1983) ...............................................................6

*Peer Int'l Corp. v. Pausa Records, Inc.,*
    909 F.2d 1332 (9th Cir. Cal. 1990) ...............................................................22

*Perfect 10, Inc. v. Amazon.com, Inc.,*
    508 F.3d 1146 (9th Cir. 2007) ...............................................................16

*Perfect 10, Inc. v. CCbill . LLC,*
    488 F.3d 1102 (9th Cir. 2007) ...............................................................19

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,*
    494 F.3d 788 (9th Cir. 2007) ...............................................................16

*Playboy Enterprises, Inc. v. Sanfilippo,*
    1998 WL 207856 (S.D. Cal. Mar. 25, 1998) ...............................................................24

*Religious Tech. Ctr. v. Netcom On-line Comm.Serv., Inc.,*
    907 F.Supp.2d 361 (N.D. Cal. 1995) ...............................................................15, 16

*Robinett v. Opus Bank,*
    2013 WL 5850873 (W.D. Wash. Oct. 30, 2013) ...............................................................26

*S. Home Care Servs., Inc. v. Visiting Nurse Servs., Inc. of S. Connecticut,*
    2015 WL 4509425 (D. Conn. July 24, 2015) ...............................................................30

*S.O.S., Inc. v. Payday, Inc.,*
    886 F.2d 1081 (9th Cir. 1989) ...............................................................7

*Twin Peaks Productions v. Publications Int'l, Ltd.,*
    996 F.2d 1366 (2d Cir. 1993) ...............................................................25

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

*UMG Recordings, Inc. v. Shelter Capital Partners LLC,*
    718 F.3d 1006 (9th Cir. 2013) ..............................................................19

*United States v. Carlson,*
    209 F. App'x 181 (3d Cir. 2006) ...........................................................28

*United States v. Christensen,*
    828 F.3d 763 (9th Cir. 2015) ................................................................30

*United States v. Nosal,*
    676 F.3d 854 (9th Cir. 2012) ................................................................27

*Video Views, Inc. v. Studio 21, Ltd.,*
    925 F.2d 1010 (7th Cir. 1991) ..............................................................23

*Yellow Pages Photos, Inc. v. Ziplocal LP,*
    795 F.3d 1255 (11th Cir. 2015) ............................................................23

**State Cases**

*Air Safety, Inc. v. Teachers Realty Corp.,*
    706 N.E.2d 882 (Ill. 1999)..............................................................9, 10

*Central Illinois Light Co. v. Home Ins. Co.,*
    821 N.E.2d 206 (Ill. 2004)...................................................................10

*Certification from the United States Court of Appeals for the Ninth Circuit in
    Centurion Properties III, LLC v. Chicago Title Ins. Co.,*
    375 P.3d 651 (Wash. 2016) .................................................................30

*Continental Cas. Co. v. MidStates Reinsurance Corp.,*
    24 N.E.3d 122 (Ill. Ct. App. 2014) ......................................................10

*Farm Credit Bank of St. Louis v. Whitlock,*
    581 N.E.2d 664 (Ill. 1991)...................................................................10

*Gillespie Cmty. Unit Sch. Dist. No. 7, Macoupin Cty. v. Union Pac. R. Co.,*
    43 N.E.3d 1155 (Ill. Ct. App.), *appeal denied*, 48 N.E.3d 1092 (Ill. 2016).........10

*Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.,*
    935 P.2d 628 (Wash. App. 1997) .........................................................26

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,*
    719 P.2d 531 (1986) ......................................................................25, 26

*Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.,*
    170 P.3d 10 (Wash. 2007) ...................................................................26

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (15-cv-1096-JLR) - v
DWT 30548647v6 0104728-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

*K & K Mgmt., Inc. v. Lee*,
    316 Md. 137, 557 A.2d 965 (1989) ........................................................30

*Leingang v. Pierce Cty. Med. Bureau, Inc.*,
    930 P.2d 288 (Wash. 1997) ..................................................................29

*Mulcahy v. Farmers Ins. Co. of Wash.*,
    95 P.3d 313 (2004) ...............................................................................9

*Pac. Nw. Life Ins. Co. v. Turnbull*,
    754 P.2d 1262 (Wash. App. 1988) ......................................................26

*Pac. Nw. Shooting Park Ass'n v. City of Sequim*,
    144 P.3d 276 (Wash. 2006) ..................................................................29

*Panag v. Farmers Ins. Co. of Wash.*,
    204 P.3d 885 (Wash. 2009) ..................................................................26

*Pleas v. City of Seattle*,
    774 P.2d 1158 (Wash. 1989) ................................................................30

*River's Edge Homeowners' Ass'n v. City of Naperville*,
    819 N.E.2d 806 (Ill. Ct. App. 2004) ....................................................10

*West Bend Mut. Ins. Co. v. Talton*,
    997 N.E.2d 784 (Ill. Ct. App. 2013) ....................................................10

**Federal Statutes**

18 U.S.C.A. § 1030(e)(8) .............................................................................27

17 U.S.C. § 101 .......................................................................................2, 7

17 U.S.C. § 106 ...........................................................................................13

17 U.S.C. § 107 ...........................................................................................20

17 U.S.C. § 201(b) .........................................................................................2

17 U.S.C. § 410 .........................................................................................6, 7

17 U.S.C. § 411(a) .........................................................................................6

17 U.S.C. § 412 .............................................................................................7

17 U.S.C. § 504(c) .......................................................................................24

17 U.S.C. § 512 ................................................................................18, 19, 20

18 U.S.C. § 1030(a)(5)(A) ...........................................................................27

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

18 U.S.C. § 1030(g)...............................................................................................28

**Regulations**

37 C.F.R. § 202.3(b)(5) ....................................................................................4, 24

37 C.F.R. § 205.13..................................................................................................6

**Other Authorities**

Black's Law Dictionary (10th ed. 2014) .................................................................8

Merriam-Webster Dictionary, available at http://www.merriam-
    webster.com/dictionary/ (last visited October 25, 2016).......................................8

3 *Nimmer* § 10.15 ..................................................................................................7

5 *Nimmer* § 14.04 [B] [3] [a].................................................................................22

**Davis Wright Tremaine LLP**
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

# I.    INTRODUCTION

Real estate brokers earn their living from commissions they receive when they sell properties.  Plaintiff VHT, Inc. ("VHT"), a real estate photography studio, earns its income when brokers contact VHT to license photographs of those properties, so that they can use them to market those properties.  Defendant Zillow, the largest real estate website in the world, has built a $6 billion advertising business by making itself an essential facility for brokers:  they have to send their listings and photos to Zillow for free if they want to market those properties.  Zillow makes its money by selling ads to brokers:  as Zillow's C.E.O. says:  "We sell ads, not houses".  This is the real estate brokerage ecosystem: brokers hustle to get listings; photographers shoot the listed properties and license the photos to brokers; brokers send them to Zillow; Zillow posts them and then sells advertising around those posts.  Zillow has built its entire business off the backs and efforts of others, and around data and intellectual property that it gets for free.

It is in this context that this copyright dispute between VHT and Zillow arose.  VHT has no quarrel with Zillow's use of VHT's photos to sell the properties they depict on behalf of the brokers; it licenses brokers the right to use the photos for that very purpose.  What VHT complains about is Zillow's use of its photos for purposes that have nothing whatsoever to do with marketing or sale of the depicted properties or the brokers who are trying to sell those properties.  *First*, Zillow keeps these photos up *after* those properties have been sold on its main Listing Site so that it can get more traffic, sell more ads, and build its "living database of all homes".  *Second*, Zillow had a problem:  how to keep eyeballs on its website during the seven years between the time the average homeowner buys and sells a home?  To solve that problem, it conceived "Zillow Digs", which does not market real estate properties or real estate brokers at all – it markets home improvement and design ideas.  To launch the Digs Site, it lifted thousands of photos (including VHT photos) from its Listing Site, and then induced users to "dig" still more photos from the Listing Site to the Digs Site.

VHT learned within weeks of the launch of the Digs Site in 2013 that some of its photographs were up on that site without its permission.  VHT saw a business opportunity:  it

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

approached Zillow seeking to negotiate a license for its use of VHT's photos. Zillow declined, saying it was "going in a different direction". That it did not do: despite knowing that VHT owned the copyrights in these photographs and that VHT was willing to license Zillow to use them for a price, Zillow did not remove them from either the Listing Site or the Digs Site and indeed, posted and encouraged users to post even more of them. Why did it do that? Zillow did it because it could: that is the way it built its entire business model.

This lawsuit ensued. VHT sued Zillow for direct and secondary copyright infringement. To date, VHT has identified 84,400 of its photographs that Zillow is using without license or authority. Now that discovery has concluded, VHT is entitled to summary judgment on liability across the board, as explained more fully hereinafter.

## II. BACKGROUND

### A. VHT & Its Photography Business

VHT's primary business model is simple: it takes photographs of residential real estate and then licenses them to its clients, real estate agents and brokers, to use as a part of their efforts to sell the property. Hensley Decl. Ex. A 20:13-21:2. VHT commissions the photos from a network of professional photographers, working as independent contractors to create "works for hire" for the benefit of VHT. Hensley Decl. Ex. B at 51:9-52:8; *id.* Ex. N. As such, VHT is the author and copyright owner of each photograph as of the moment of its creation. 17 U.S.C. §§101, 201(b).

VHT uses two forms of license when providing its photographs to its agent and broker clients: a Service Level Agreement and Photography Rider ("SLA") and the Terms of Use posted on VHT's website ("TOU"). While these two contracts differ, both expressly limit the use of VHT's images for particular purposes and limit the client's use to the time the depicted property is on the market.

### 1. VHT's Service Level Agreement and Photography Rider

The VHT SLA governing the use of the majority of images at issue in this litigation grants the following license:

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

> ***VHT owns and retains all copyrights*** for works created/produced by VHT, its affiliates, employees, contractors and subsidiaries. Unless otherwise specifically agreed to in writing by the parties, ***VHT hereby grants Client a license to use the Visual Content produced by VHT in the sales or marketing of the subject property or the company/agent representing the property. No other rights or uses are permitted without the prior written consent of VHT.*** Client is under no circumstance permitted to sell or collect payment of any kind for the use or display of Visual Content produced by VHT. Client is not permitted to assign the rights granted to Client by VHT to any third parties without express written consent from VHT.

Hensley Decl. Ex. O (emphasis added); *see also id.* Ex. P-S.[1] 76,992 of the photographs VHT claims Zillow infringed ("Infringed Images") were licensed under a VHT SLA, and of those, at least 56,235 were licensed under the version quoted above. Baker Decl. at ¶¶11, 14.

### 2. VHT's Terms of Use

For independent agents or smaller brokerages who may not require a significant volume of photography, VHT licenses its images under the Terms of Use ("TOU") on its website. Hensley Decl. Ex. A at 165:4-166:2. The TOU provides the agent or broker the following license for use of the photographs they receive from VHT:

> All images and media ("Content") created by VHT is the sole property of VHT. VHT retains ownership and licensing rights to all Content. ***Content is made available to clients for property specific marketing purposes only. Any publication of content for non specific property marketing purposes is strictly prohibited*** by law without the express written consent of VHT…

Hensley Decl., Ex. U (emphasis added). VHT has identified 6,931 Infringed Images it licensed under its TOU. Baker Decl. at ¶11.

### B. VHT's Copyright Applications & Registrations

Because of the extremely large number of images in VHT's residential real estate database, VHT uses a group registration method provided by the Copyright Office (the

---

[1] Certain SLAs have minor and immaterial variations. VHT's current form SLA grants the following license:

> VHT owns and retains all copyrights for works created or produced by VHT, its affiliates, employees, contractors and subsidiaries. Unless otherwise specifically agreed to in writing by the parties, ***VHT hereby grants a*** worldwide, perpetual, irrevocable, non-exclusive, fully-paid and non-assessable ***license*** to reproduce, distribute, copy, display, perform, modify and create derivative works of the visual content produced by VHT in hard copy or electronic form, in any medium now existing or hereafter created, ***for use in the sales or marketing of the subject property, the Client or the agent representing the subject property. No other rights or uses are permitted without the prior written consent of VHT.*** Client is under no circumstance permitted to sell or collect payment of any kind for the use or display of visual content produced by VHT. Client is not permitted to assign the rights granted to Client by VHT to any third parties without express written consent from VHT.

Hensley Decl. Ex. S (emphasis added).

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

"Office") to permit the registration of a high volume of photographs on a single form quarterly. *See* 37 C.F.R. §202.3(b)(5) and Compendium of U.S. Copyright Office Practices (3d ed. 2014) ("Compendium") §1117.2; Berkovits Decl. Ex. 3, ¶¶2-3; Hensley Decl. Ex. A at 459:20-460:15. Between January 2014 and mid-2016, VHT filed 14 copyright applications pursuant to this group registration method. *See* Third Amended Complaint [Dkt. 123] ("TAC"), Exs. 1-14. The Office has granted 11 of those applications covering 75,823 of the 84,400 Infringed Images at issue. Berkovits Decl. Ex. 1; Baker Decl. at ¶17. The three applications that remain pending before the Office include one application that was lost in the mail, one that remains under review by the Office for technical reasons and a third that was submitted only recently and has not yet been acted upon. Critically, the Office has never asserted a lack of copyrightability or ownership of any of these photographs. Berkovits Decl. Ex. 7. Together, the three pending applications cover 8,577 of the Infringed Images at issue. Baker Decl. at ¶17.

## C. Zillow's Infringing Uses of VHT's Images

VHT's claims arise from Zillow's use of VHT's copyrighted photos on specific portions of Zillow's central Listing Site for the sale and rental of properties, available on both Zillow.com and a mobile application (together, the "Listing Site"), and on Zillow Digs, an independent section of the Zillow website and a stand-alone mobile app that showcases photographs of particular rooms illustrating elements of home design, such as kitchen countertops, plumbing fixtures, or art deco sofas, and pairs them with marketing for vendors who sell the goods depicted in the photographs or offer related services (together, the "Digs Site").

VHT's claims relating to the Listing Site focus specifically on (i) the display of VHT photographs of properties that are no longer on the market, *i.e.*, no longer actively listed for sale or rent ("Off-Market Properties") on Home Details Pages ("Off-Market HDPs"), *see* Hensley Decl. Ex. W; (ii) Zillow's use and distribution of VHT photographs of Off-Market Properties on blogs and in emails; and (iii) various actions Zillow takes in its back-end systems to support these infringing uses including copying, modifying and storing copies of the VHT photographs.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (15-cv-1096-JLR) - 4
DWT 30548647v6 0104728-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

VHT's claims relating to the Digs Site focus specifically on (i) the display of VHT's photographs on the searchable portion of the Digs Site (the "Digs Search Page"), on individual Image Details Pages ("IDPs"), on user boards ("boards") on the Digs Site, and on the Dueling Digs game, *see* Hensley Decl. Ex. X-AA; and (ii) Zillow's use of VHT photographs of Off-Market Properties on blogs and in emails, as well as various actions Zillow takes in its back-end systems associated these infringing uses, including copying, modifying and storing copies of the VHT photographs.

**D.      Procedural History**

VHT commenced this action on or about July 8, 2015 by filing a complaint which it has now amended three times, principally to add additional instances of infringement by Zillow as uncovered by an ongoing matching process.  Dkt. 1, 53, 105, 123.  In response to the Second Amended Complaint, Zillow filed and served four counterclaims, which VHT answered denying any liability thereupon.  Dkt. 112, 114.  Discovery has now been completed:  hundreds of thousands of pages of documents have been produced by parties; fifteen fact witnesses have been deposed; and each party has produced the reports and taken the depositions of three experts.  Zillow has twice moved under F.R.C.P. 12(c) for judgment on the pleadings; one of those motions – for failure to join necessary parties under Rule 19 – is *sub judice*.  Dkt. 98.  There are no outstanding discovery issues for resolution.

### III.      GOVERNING STANDARD

Under Federal Rule 56(c), a party moving for summary judgment bears the initial burden of identifying those portions of the record showing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has made its threshold showing, the burden shifts to the nonmoving party to prove the existence of a triable issue of material fact regarding that element of the cause of action or defense.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, and "must set forth facts showing that there is a genuine issue for trial." *Id.* at 248.  Conclusory statements,

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

speculation, personal beliefs, and unsupported assertions will not suffice to withstand summary judgment, and a court will not "presume" "missing facts." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-889 (1990). Under this standard, it is clear that (i) Zillow is liable for both direct and secondary copyright infringement; (ii) Zillow acted with willful intent; (iii) VHT is entitled to a separate statutory damages award for each infringed photograph that VHT proves has independent economic value; and (iv) VHT is entitled to summary judgment on each of Zillow's counterclaims. The only issues remaining for trial would be proof of such independent economic value and the amount of damages to which VHT is entitled.

## IV.    THERE IS NO GENUINE ISSUE OF FACT ON LIABILITY

### A.    VHT Holds Valid Copyright Registrations

Each of the Infringed Images is the subject of a valid and subsisting copyright registration or a pending application therefor. Under the Copyright Act, VHT's 11 registrations are *prima facie* evidence of the validity of VHT's copyrights in the 75,823 Infringing Images covered by those registrations. 17 U.S.C. § 410(c). There is no evidence in the record allowing Zillow to carry its burden of overcoming that presumption. *See Apple Computer, Inc. v. Formula Int'l Inc.*, 725 F.2d 521, 523 (9th Cir. 1984), citing *Williams Electronics, Inc. v. Artic Int'l, Inc.*, 685 F.2d 870, 873 (3d Cir. 1982).

Because VHT cannot prevail on its infringement claims for the remaining 8,577 photographs absent registration, it served notice of the pendency of this action on the Office under 17 U.S.C. § 411(a) and 37 C.F.R. §205.13, triggering a sixty-day deadline for the Office to appear in this action, which it did not elect to do. This Court has the power under §411 to determine that those photos are the subject of valid copyrights, properly included in this action, and should now do so. As the Ninth Circuit has explained: "a party may now sue for infringement notwithstanding the refusal of the Register to register the claim to copyright. The only precondition is that notice be served on the Register. Once that has occurred, the district court can determine both the validity of the copyright, which in turn determines its registrability, as well as whether an infringement has occurred." *Nova Stylings, Inc. v. Ladd*,

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

695 F.2d 1179, 1181 (9th Cir. 1983). The Copyright Act expressly covers photographs (17 U.S.C. §101), and "the photographer's 'original' 'conception' of his subject" is core creative authorship that copyright protects. *Kisch v. Ammirati & Puris, Inc.*, 657 F.Supp. 380, 382 (S.D.N.Y. 1987). Indeed, "'[almost] any … photograph may claim the necessary originality to support a copyright merely by virtue of the photographers' personal choice of subject matter, angle of photograph, lighting, and determination of the precise time when the photograph is to be taken.'" *L.A. News Serv. v. Tullo*, 973 F.2d 791, 794 (9th Cir. Cal. 1992), quoting 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* §2.08[E][1] at 2 - 126.3 (1992 Ed) (hereinafter, "*Nimmer*"). There is no dispute that VHT owns valid copyrights in the images on these three pending applications, and that they are copyrightable subject matter.[2]

## B. The VHT Licenses Unambiguously Limit the Use of VHT's Photographs

The language of VHT's TOU and SLA place clear and unambiguous limits on its licensees' use of the photographs they receive from VHT: the TOU only permits use of the photos to market the subject property while it is actively listed for sale; and the SLA permits that same use plus marketing of the listing broker and agent while the subject property is actively listed for sale, *i.e.*, while that broker or agent is "representing the property".[3] Zillow tries to muddy the waters by pointing to extraneous pre-contractual communications relating to the SLA, but governing black-letter Illinois law precludes the use of such evidence to interpret the clear language of the SLA.

VHT's TOU permits just one form of use: "Content is made available to clients for property specific marketing purposes only" and specifically prohibits any other uses: "Any

---

[2] The statute expressly provides that a protracted review process by the Copyright Office does not rob a plaintiff of its ability to obtain statutory damages because "[t]he effective date of a copyright registration is the day on which an application, deposit, and fee, *which are later determined by the Register of Copyrights or by a court of competent jurisdiction to be acceptable for registration*, have all been received in the Copyright Office[.]" 17 U.S.C. § 410(d) (emphasis added). At trial, VHT will present proof that the registration materials for each image were received by the Copyright Office before commencement of the infringement or within 3 months of publication, as the Act requires for an award of statutory damages. 17 U.S.C. § 412.

[3] "Copyright licenses are assumed to prohibit any use not authorized." *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1088 (9th Cir. 1989) (interpreting license "to have granted to [licensee] any right which [licensor] did not expressly retain … is contrary to federal copyright policy"). *See also* 3 *Nimmer* § 10.15 ("when a license is limited in scope, exploitation of the copyrighted work outside the specified limits constitutes infringement").

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

publication of content for nonspecific property marketing purposes is strictly prohibited."
Hensley Decl. Ex. U.  Black's law dictionary defines "marketing" as "The act or process of promoting and selling, leasing, or licensing products or services."  Black's Law Dictionary (10th ed. 2014).  In this context, the word specific means "restricted to a particular individual, situation, relation, or effect."  Merriam-Webster Dictionary, available at http://www.merriam-webster.com/dictionary/specific (last visited October 25, 2016).   Thus, "property specific marketing" can only mean those acts which promote the sale of the particular property depicted in the licensed image.  This language unambiguously limits use of photos licensed under the TOU to marketing the specific property portrayed in that photo – not the agent representing the property, not the brokerage they may be affiliated with, not other agents or brokers, and not Zillow, home décor suppliers, or home improvement contractors even during the term of the license, *i.e.*, while the listing is active.

The language of VHT's SLA unambiguously limits use of VHT's photos to "the sales or marketing of the subject property or the company/agent representing the property" and expressly provides that "[n]o other rights or uses are permitted without the prior written consent of VHT." Hensley Decl. Ex. O-S.  The grant of rights is limited to the life of the listing, as an agent or broker does not permanently "represent" a property; properties are "for sale" only when covered by a listing agreement.  Hensley Decl. Ex.  D at 112:9-115:14[4]; *see also id.* Ex. C at 49:21-25 (VHT VP of Sales defining properties as "off the market" when they are "not under contract.").  Consequently, use of VHT's images after the property is no longer actively listed for sale by that agent or broker is not within the scope of the SLA.

Recognizing as it must that agents may only represent properties subject to a time-limited agreement to do so, Zillow strains to create an ambiguity where none exists.  It argues that the term "representing the property" in the SLA modifies only the term "agent," but not the term "company" and, therefore, the SLA grants a perpetual license to the particular

---

[4] Realtors sign "representation agreements" which are generally limited in time.  Hensley Decl. Ex. D  at 133:11-14 (explaining that, in the absence of a representation agreement, an agent is "not representing the seller.")

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

listing brokerage to market itself and Zillow's various uses therefore fall within the scope of the VHT license. As Zillow's counsel postulated (in connection with the current form of VHT's SLA), in order to obtain the strained reading that Zillow postulates, it would need to "put an Oxford comma" into the agreement. Hensley Decl. Ex. A at 577:2-3. But that comma is not in the agreement and so it is wholly irrelevant and anyway, this contorted interpretation ignores the economic reality of the transaction: agents work for brokers and they are one and the same for this purpose. *Id.* at 582:17-18; *see also id.* Ex.. D at 22:2-14.

Zillow also harps upon certain VHT sales emails that tout the scope of the license to encourage brokers to enter into SLAs. Those emails attach a copy of the actual language of the proposed agreements, and are antecedent to the license itself. In the first instance, the licensees of at least 72,209 out of the 84,400 images at issue in this case never received any such communication. Baker Decl. at ¶25. But even more importantly, those communications are entirely inadmissible to interpret the SLA because it is unambiguous under the governing Illinois law. Both versions of the SLA (and the TOU) include a choice-of-law provision selecting Illinois law.[5] Hensley Decl. Exs. O, T, & U.

Illinois (unlike Washington) follows a strict, traditional rule of contract interpretation known as the "four corners" approach, which bars the use of extrinsic evidence unless a contract is ambiguous on its face. In *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999), the Illinois Supreme Court specifically considered the following question: "May extrinsic evidence be provisionally admitted to show that an explicitly integrated, facially clear, and complete written contract is actually ambiguous?" *Id.* at 883. The answer: "no."

---

[5] Federal courts "appl[y] the choice-of-law rules of the forum state." *Carideo v. Dell, Inc.*, 492 F.Supp.2d 1283, 1287 (W.D. Wash. 2007) (enforcing choice of law provision). "Courts in Washington enforce contractual choice of law provisions unless: (1) absent the provision, Washington law would apply, (2) the 'chosen state's law violates a fundamental public policy of Washington', and (3) Washington's interest in the issue outweighs the other state's interest." *Minnick v. Clearwire US, LLC*, 683 F.Supp.2d 1179, 1184 (W.D. Wash. 2010) (quoting *McKee v. AT & T Corp.*, 191 P.3d 845 (Wash. 2008) (en banc)). None of those reasons for declining to enforce the Illinois choice-of-law provisions exist in this case. Even absent a choice of law clause, Washington law would not govern these contracts under the most significant relationship test, *Mulcahy v. Farmers Ins. Co. of Wash.*, 95 P.3d 313, 317 (2004), as most of VHT's clients have no relationship whatsoever with this State, and there is no "fundamental public policy" violated by VHT's contracts.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

The Court reasoned that "considering extrinsic evidence of prior negotiations to create an "extrinsic ambiguity" where *both* parties *explicitly* agree that such evidence will *not* be considered ignores the express intentions of the parties and renders integration clauses null." *Id.* at 885-886.[6] As Judge Posner has explained, this "four corners" rule is "more restrictive" than the more common "parole evidence rule," in that it "goes further by prohibiting the use of extrinsic evidence to supplement rather than only to contradict the written contract." *Gillespie Cmty. Unit Sch. Dist. No. 7, Macoupin Cty. v. Union Pac. R. Co.*, 43 N.E.3d 1155, 1173 (Ill. Ct. App.), *appeal denied*, 48 N.E.3d 1092 (Ill. 2016) (quoting Richard A. Posner, *The Law and Economics of Contract Interpretation,* 83 Tex. M. Rev. 1581, 1603 (2005)); *see also Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 879-80 (7th Cir. 2005) ("The introduction of parol evidence to establish ambiguity in a facially unambiguous, signed, dated and fully integrated contract is a practice which the Illinois Supreme Court has, to this date, neither condoned nor sanctioned, and accordingly we refuse to do so today.").[7]

Illinois courts use the following test to determine whether the language of a contract is ambiguous: "if the words used in the policy are reasonably susceptible to more than one meaning, they are ambiguous … an ambiguity will be found if the language of the contract is obscure in meaning through indefiniteness of expression." *Central Illinois Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 213-14 (Ill. 2004) (internal quotation omitted). However, a "contract is not rendered ambiguous merely because the parties disagree on its meaning." *Id.* "[C]onstruction of the instrument where no ambiguity exists is a matter of law …. Where a court determines that a contract is ambiguous, its construction is then a question of fact." *Farm Credit Bank of St. Louis v. Whitlock*, 581 N.E.2d 664, 667 (Ill. 1991). As discussed above, neither VHT's TOU nor SLA are ambiguous so Zillow's extrinsic evidence is wholly

---

[6] Both the SLA and the TOU contain just such explicit integration clauses. Hensley Decl. Exs. O, T, & U.

[7] Illinois courts have repeatedly reaffirmed this position. *See, e.g.*, *River's Edge Homeowners' Ass'n v. City of Naperville*, 819 N.E.2d 806, 811 (Ill. Ct. App. 2004) (applying 4 corners approach); *Continental Cas. Co. v. MidStates Reinsurance Corp.*, 24 N.E.3d 122, 128 (Ill. Ct. App. 2014) ("we will not consider extrinsic evidence to determine if a latent ambiguity exists under the provisional admission approach … the four corners rule of contract interpretation remains the law in Illinois."); *West Bend Mut. Ins. Co. v. Talton*, 997 N.E.2d 784, 790 (Ill. Ct. App. 2013) (same).

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

inadmissible.

## C.    Neither VHT License Authorizes Zillow's Infringing Uses

As neither of VHT's licenses permits use of VHT's photographs when the subject property is not actively listed, each Zillow use of a VHT photograph of an Off-Market Property on either the Listing Site or the Digs Site is unauthorized and infringing.

***Zillow's Infringing Uses of VHT's Photographs Do Not Market the Subject Property.*** There can be no meaningful dispute that none of the Infringing Uses on the Listing Site or Digs Site that VHT is challenging in this lawsuit constitute "property specific marketing purposes" or "sales and marketing of the subject property", for several reasons. *First*, as discussed above, under listing agreements and industry custom and practice, residential properties that are marketed and sold through the brokerage system (the only properties at issue in this case) must be actively listed for sale to be marketed. *See supra* Section IV(B)(1). *Second*, despite its oft-stated suggestion that all properties are always for sale, Zillow itself assigns specific statuses to the properties displayed on the Listing Site including "For Sale", "Recently Sold", and "Off-Market", and regularly updates those statuses to ensure they are accurate. *See* Hensley Decl. Ex. F at 44:13-22, 81:9-82:8, 88:19-90:9; *id.* Ex. BB. *Third*, Zillow specifically set up the Digs Site to market home improvement products, not the properties depicted in the photographs it displays on that Site; the images are organized (and searchable) by room, style, color, and cost (not by property); and Digs does not display crucial listing information like the address of the property or its listing price.[8] *Compare id.* Exs. X-AA *with id.*, Exs. U, V, CC, DD. Indeed, Zillow rejected Digs functionalities that would have allowed users to search images by geographic location or market status. *Id.* Ex. K at 209:7-210:24. *Fourth*, Zillow's own traffic data demonstrates that users do not view the Digs Site as marketing properties. Hensley Decl. Ex. EE. *Finally*, that the Digs Site focuses on selling home improvement products rather than houses is underscored by Zillow's placement of "product tag" bubbles on top of the images, along with both links and

---

[8] The emails and blog posts including photographs of Off-Market Properties and from the Digs Site similarly fail to provide this information. *See, e.g.*, Hensley Decl. Exs. FF-HH.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

information about where customers can purchase those products, and for how much. *Id.* Ex. Y.

***Zillow's Infringing Uses of VHT's Photographs Do Not Market the Listing Broker or Agent Who Licensed Those Photographs from VHT.*** Similarly, none of the Infringing Uses on the Listing Site or Digs Site that VHT is challenging constitute "marketing…the company/agent representing the property", for several reasons.[9] *First*, none of Zillow's uses on the Digs Site and in emails and promotional blogs even identify the current or former listing agent or broker in any way, shape or form. *See* Hensley Decl. Exs. X-AA, FF-HH. Without any such identification, Zillow has no credible argument that those uses of VHT's photographs markets that agent or broker. *Second*, Zillow's use of VHT photographs on Off-Market HDPs similarly fails to market the former listing agent or broker, who is not identified or displayed anywhere near the photographs, unlike the three Premier Agents who pay Zillow to be displayed prominently next to the photos themselves. Instead, the former listing agent, if displayed at all, is hidden in a "Price/Tax History" module far down the Off-Market HDP that users have to click on to access. *See* Hensley Decl. Ex. W, JJ. This is in sharp contrast to how Zillow displays the listing agent on the HDPs for properties that are actively listed for sale: in the top position of the prominent "Contact Agent" module displayed next to the photographs, above three paying Premier Agents. *Compare id.* with *id.*, Ex. V.[10] *Third*, the *only* real estate agent or broker that has provided discovery in this case testified that it (a) does not view the display of a former listing agent in the Price/Tax History module of an Off-Market HDP to market that agent, (b) does not use the Digs Site to market itself and does not encourage or instruct its agents do so; and (c) is not aware of any of its agents ever getting a lead from either the Digs Site or from being displayed in the Price/Tax History module of an Off-Market HDP. *See id.* Ex. M at 60:18-65:6. *Finally*, both parties' real estate/marketing experts have opined that when real estate agents and brokers use photographs of homes to market themselves, they

---

[9] This applies only to the SLA, since the TOU does not authorize use to market agents or brokers. Hensley Decl. Ex. U.

[10] In the last few weeks Zillow has apparently changed the display of at least some Off-Market HDPs so that Premier Agents are no longer displayed next to the photographs. That was not its practice until now, as demonstrated by the screenshots VHT created evidencing the infringing displays on Off-Market HDPs. Hensley Decl. Ex. W.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

identify themselves and provide contact information in close proximity to those photos – which Zillow does ***not*** do for the former listing agent on Off-Market HDPs, the Digs Site or its promotional emails and blog posts. *See* Hensley Decl. Ex. L at 188:15-189:7 & Ex. KK.

## D. Zillow's Uses Violate VHT's Rights Under the Copyright Act

Zillow's above-described uses of the Infringed Images on the Listing Site and on the Digs Site violate several of VHT's exclusive rights under 17 U.S.C. §106.[11]

### 1. Direct Infringement on Both Sites

The evidence establishes beyond any reasonable dispute that Zillow has infringed VHT's display (§106(5)) right by displaying VHT photos: (i) on its Listing Site when the subject properties are no longer actively listed, Hensley Decl. Ex. V; (ii) on the searchable portion of the Digs Site, *id.* Ex. W; (iii) on individual IDPs on the Digs Site, *id.* Ex. X; (iv) on user boards on the Digs Site *id.* Ex. Y; and (iv) on the Dueling Digs game on Zillow's Digs mobile application, *id.* Ex. Z.

Next, Zillow has infringed VHT's reproduction right (§106(1)) by: (i) making multiple "i-series" copies of each image displayed on the Digs Site, the Digs app, and the "Dueling Digs" game, and (ii) storing those copies on its AWS and/or Legacy System servers, Hensley Decl. Ex. I at 60:2-62:25; 162:17-172:19; (iii) continuing to create archival copies of photos, including but not limited to "p-series" copies, from the Listing Site of properties that are no longer actively listed for sale, both for storage on its AWS and/or Legacy System servers and on its CDN network, *id.* at 51:8-53:24; 97:21-98:12; 118:15-120:19; and (iv) making additional "p-series" copies of images that it does not display on the Listing Site, even for properties actively listed for sale, *id.* at 120:3-19.

Zillow has infringed VHT's right to create derivative works (§106(2)) by: (i) before and during the display of VHT photos on the Listing Site and the Digs Site and app, using digital

---

[11] Zillow refused to produce information as to which specific images were distributed via blogs or emails or in other marketing efforts. Hensley Decl. Ex. II at 51-52. Nonetheless, specific examples of which VHT is aware are annexed as Ex. FF-HH to the Hensley Declaration. Likewise, information as to which images contain product tags is only known to Zillow and although Zillow represented it would produce this information, it has not done so. *Id.* Ex. II at 9-13.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (15-cv-1096-JLR) - 13
DWT 30548647v6 0104728-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

tools to modify the images, including by altering the coloration of the pixels to increase contrast and decrease blurring, and by cropping the photos, Hensley Decl. Ex. E at 50:12-51:5; *id.* Ex. I at 88:24-91:15; and (ii) affixing bubbles containing advertising directly on top of the VHT photos on the Digs site. Hensley Decl. Ex. E at 344:11-346;5; *id.* Ex. K at 270:21-271:15; 275:5-21.

On both sites, Zillow has infringed VHT's distribution (§106(3)) right by (1) distributing promotional emails for the Listing Site including VHT images when the properties depicted are no longer on the market; Hensley Decl. Ex. E at 118-19; (2) including VHT images in blog posts, when the properties depicted are no longer on the market, *id.* Ex. E at 326-27; and (3) by sending out promotional emails for the Digs Site that include VHT images, *id.* Ex. FF-HH.

All of the above violations were directly committed by Zillow itself – not by Zillow's users or any other third party. Specifically:

- Zillow actively selected a large number of photos from the Listing Site to display on the Digs Site when the site was launched (and has subsequently done so on other occasions). *See* Hensley Decl. Ex. K at 71:18-72:10; 81:9-83:5, 253:12-255:6.

- Zillow curates the photos that users have saved to their Digs boards and selects certain of those photos to display on the searchable portion of the Digs Site: "once an admin reviews it, they -- they say, 'Oh, yes. This is -- this is a really interesting image or inspiring image. Let's say yes.' And that's now searchable." *Id.* at 41:7-42:20.

- When a user starts the save-to-Digs process but fails to complete it, Zillow itself sometimes completes the process of copying the photo to Digs. *Id.* Ex. I at 39:5-13.

- Zillow takes affirmative steps to remove the name of the listing agent from the "Contact Agent" module at the top of the Home Details Pages of properties not actively listed for sale on the Listing Site, to mark those listings "Sold" or "Off-Market", and to continue to display those VHT photos although the property is no longer listed for sale. *Id.* Ex. F at 99:12-107:2; Ex. W.

- For both sites, Zillow makes multiple copies of VHT images and stores them on its servers, and alters the composition of VHT's images. *Id.* Ex. I at 60:2-62:25; 162:17-172:19; 51:8-53:24; 118:15-120:19.

- On the Digs Site, Zillow directs its paid reviewers to affix "product tags" advertising Zillow's sponsors to VHT images. *Id.* Ex. E at 66:5-67:20, 344:11-346:5); Ex. K at 270:21-271:15, 275:5-21.

The evidence is clear that all of the above are volitional acts initiated, directed and/or controlled by Zillow itself and/or by automated processes designed and set in motion by its employees and contractors. Zillow is therefore directly liable for them. *Holley v. Crank*, 400 F.3d 667, 671 (9th Cir. 2005) (principal is vicariously liable for acts of his agent); *see also Capitol Records,*

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

*Inc. v. MP3tunes*, LLC, 48 F.Supp.3d 703, 714 (S.D.N.Y. 2014), *aff'd in relevant part*, Nos. 14-4369-cv(L), 14-4509-cv(XAP) (2d Cir. Oct. 25, 2016) (company was vicariously liable for acts of copyright infringement by its employees).

In all of these respects, Zillow engaged in volitional conduct, distinguishing this case from cases such as *Religious Tech. Ctr. v. Netcom On-line Comm.Serv., Inc.*, 907 F.Supp.2d 361 (N.D. Cal. 1995), where there were "no allegations in the complaint to overcome the missing volitional or causal elements necessary to hold [the operator of an online bulletin board] directly liable for copying that is automatic and caused by a subscriber." Similarly inapposite is *Fox Broad. Co., Inc. v. Dish Network, LLC*, 747 F.3d 1060, 1067-1068 (9th Cir. 2014), where the court found no volitional conduct on a direct infringement claim against a pay television service that offered a digital video recorder which allowed viewers to copy shows, because it was the viewers who directed the system to make copies. Here, Zillow *does* make multiple copies of each VHT photo for each of the Listing Site and Digs. Equally off-point is on *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 556 (4th Cir. 2004), where the passive hosting of photos posted by users on defendant's website did not constitute sufficient volitional conduct by defendant even though its employees perfunctorily reviewed the photos. Zillow is far from a passive host: it takes affirmative, volitional steps after the listing expires, when it marks the property "sold" or "off market," buries the name of listing agent, places ads for its Premier Agents right next to the photos, makes multiple copies of them for its own archival purposes and for the Digs Site, and then uses them to sell advertising. *See*, *e.g.*, *Capitol Records, Inc. v. MP3tunes, LLC*, 48 F.Supp.3d 703, 720 (S.D.N.Y. 2014) (recognizing that creation of feature to automatically reproduce album cover was a volitional act causing unauthorized reproduction).

## 2. Secondary Liability on the Digs Site

Zillow is also liable for contributory infringement and has vicarious liability in connection with the Digs Site. Contributory infringement by material contribution requires (i) actual knowledge of infringing activity and (ii) material contribution to the infringement. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1995). Contributory infringement by

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

inducement will be found where there is "[e]vidence of active steps … taken to encourage direct infringement … such as advertising an infringing use or instructing how to engage in an infringing use, show[ing] an affirmative intent that the product be used to infringe." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005); *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007) ("an actor may be contributorily liable [for inducement under *Grokster*] for intentionally encouraging direct infringement if the actor knowingly takes steps that are substantially certain to result in such direct infringement").[12]

*First*, Zillow has actual knowledge that Digs users are using the features Zillow offers on the Digs Site to reproduce, distribute and display publicly VHT's copyrighted works.  It knew that VHT photos were not licensed to market home design goods and services, or for game play, or for any purpose at all once the subject property has been sold, because VHT advised Zillow "that these were our photographs and if Zillow was interested in using them, we needed to discuss that[,]" as far back as the time of the Digs launch.  Hensley Decl. Ex. A at 297:8-299:13; *id.* Ex. E at 209:9-14; 254:6-255:17; *id.* Ex. TT.  If that were not enough, VHT expressly provided Zillow with the specific terms of VHT's licenses with its clients in July 2014.  Hensley Declaration Exs. LL, KK.  *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171 (9th Cir. 2007) (contributory infringement will be found where "a computer system operator has actual knowledge that specific infringing material is available using its system and can take simple measures to prevent further damage to copyrighted works, yet continues to provide access to infringing work");  *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021 (9th Cir. 2001) (defendant had actual knowledge as it was informed of 12,000 infringing songs but continued to make them available to users).

*Second*, Zillow calculatedly designed the Digs Site with features that materially contribute to infringement, such as the ability for users to save copyright-protected images from the Listing Site to the Digs Site; to select particular images they favor on the Digs App by "digging" them or by saving them to personal boards; and to share infringing pictures by email and on social media.

---

[12] There is no volitional conduct requirement on secondary liability claims. *See Netcom*, 907 F.Supp.2d at 1373.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

Hensley Decl. Ex. K at 183:23-184:14; 248:24-250:23; Ex. E at 370:9- 372:14; Ex. NN.  Zillow also created features for the Listing Site that materially contributed to users' infringements on the Digs Site including "trumping rules" to favor feeds that purported to allow Zillow to keep photos up and its affirmative decision not to delete photos of sold properties.  Hensley Decl. Ex. G at 63:14-67:22; *id.* Ex. I at 120:3-19, 51:8-53:24, 97:21-98:12, 118:15-120:19; *id.* Ex. OO.

*Third*, Zillow has induced infringing acts by users by (i) inviting and encouraging them to post copyright-protected images to Digs with a "save" button, pop-up messages that say things like "keep filling up your board," and reminders that "tons more images" are available, Hensley Decl. Ex. K at 248:24-250:23; (ii) inviting users to infringe VHT's reproduction, distribution and display rights by posting copyright-protected images from Digs and by emailing them to each other, *id.* Ex. E at 369:21-370:2; (iii) failing to provide means to prevent or discourage users from importing infringing images to the Digs Site, *id.* Ex. I at 192:12-196:5; Ex. PP; and (iv) failing to monitor the Digs Site for infringements *id.* Ex. K at 202:8-13. These are textbook examples of inducement under *Grokster*.

Zillow is also liable for vicarious infringement, as it has the right and ability to control the above user activity, and receives a financial benefit directly attributable to that activity. *Fonovisa*, 76 F.3d at 262.  That Zillow has both the right and the ability to supervise and/or control these actions is evidenced by the facts that (i) Zillow itself reviews photos that users post to their Digs personal boards and selects those it wishes to include on the Digs public board, Hensley Decl. Ex. K at 41:7-42:20; and (ii) Zillow's employees or contractors review photos on Digs and remove those that they determine to be "inappropriate." *Id.* at 39:23-40:9. The process by which photos appear on Digs is not purely automated; it requires the work of individual Zillow employees who have both the right and the ability to assess each individual photo and to decide if and how it will appear on Digs.  *Id.* at 81:19-83:24.

Zillow derives a financial benefit that is directly attributable to the infringement by literally placing advertising directly onto VHT's photos, which advertising is keyed to specific items that appear in each particular photo. *See*, *e.g.*, *id.* at 270:21-276:15.  Zillow admits that it

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

has made money from Digs from the advertisements that it affixes directly to VHT's images and from its participation in the Amazon Partner's Program. *See id.* Ex. E at 344:19-346:5; Ex. H at 49:4-9. Zillow also quite obviously benefits financially by using the Digs Site and the VHT photos on it to draw users to its brand as a whole: in the words of a Zillow Vice-President, "[t]he value of Digs is that for a subset of users … who are interested in content about improving their home, that we have something they can come for and look at on Zillow and not just other places[.]" *Id.* Ex. E at 354:18-355:17; *id.* Ex. QQ. It is well-established that "financial benefit exists where the availability of infringing material acts as a 'draw' for customers" in precisely this manner. *Napster*, 239 F.3d at 1023. *See also MP3 Tunes*, Nos. 14-4369-cv(L), 14-4509-cv(XAP) at p. 42 (vicarious liability "where infringing material acts as a 'draw'… even if it is not the primary, or even a significant draw") (internal quotes omitted).

Thus, Zillow therefore has secondary liability for the actions of users on the Digs Site.

**E.      Zillow's Remaining Defenses Lack Merit.**

**1.      Zillow Is Not Entitled to the DMCA Safe Harbor**

Zillow cannot escape liability under cover of the "safe harbor" provision of the Digital Millennium Copyright Act ("DMCA"). To be entitled to that safe harbor, Zillow must prove: (1) it is a "service provider" under the statute; (2) the Infringed Images were posted "at the direction of a user," rather than by Zillow itself; (3) Zillow did not have "actual knowledge that the material … is infringing"; (4) "is not aware of facts or circumstances from which infringing activity is apparent"; or (5) "upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material" and (6) "does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity"; and (7) "upon notification of claimed infringement" … responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity." 17 U.S.C. §512(c)(1)(A)-(B).

For the Listing Site, even if it were to otherwise qualify, Zillow is not entitled to this safe harbor for 39,204 of the Infringed Images, because it refused to timely remove or disable

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

access to those photos even after VHT served Zillow with statutorily compliant notices. *See* 17 U.S.C. §512(c)(1)(C); 512(c)(3); Baker Decl. at ¶ 22. Since filing this lawsuit, VHT has sent five separate DMCA notifications to Zillow (without waiver of its position that Zillow does not qualify for the safe harbor). In the first two instances, Zillow completely failed to remove the photos; on the third occasion, it did not timely do so. Hensley Decl. Ex. RR. The Ninth Circuit has confirmed what the statute says explicitly: the removal of or disabling access to infringing material is "'specifically required by the DMCA' to obtain safe harbor protection." *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1027 (9th Cir. 2013).

Even for the 15,053 Infringing Images that Zillow removed from the Listing Site in a reasonable time after notice, *see* Baker Decl. at ¶ 22, Zillow is not eligible for the safe harbor because it had the right and ability to control whether the photos remained up after the listing expired, and received a financial benefit directly attributable to the infringement, each as discussed above. 17 U.S.C. §512(c)(1); Hensley Decl. Ex. SS. *See Perfect 10, Inc. v. CCbill . LLC*, 488 F.3d 1102, 1117 (9th Cir. 2007) (defendant receives financial benefit directly attributable to infringement where infringing works serve as "a draw" for customers); *Gardner v. Café Press Inc.*, 2014 WL 794216, *1 3, 4-5 (S.D. Cal. Feb. 26, 2014) (court refused to rule that defendant was protected by DMCA where defendant was "directly selling products to online shoppers").

It is just as clear that Zillow cannot hide behind the safe harbor for its own, and its users' "digs" on the Digs Site.[13] 20,000 photos on Digs (including more than 1000 VHT images) were imported from the Listing Site *by Zillow itself* when Digs was launched. With respect to images saved to Digs by users at Zillow's inducement, Zillow itself reviews those photos and selects which to post to the Digs public board and it also completes users' aborted "digs" on the Listing Site. None of these postings are made "at the direction of a user," as the

---

[13] Zillow is also not functioning as a "service provider" with respect to its activities on the Digs Site, as it is not providing users access to a "service," but rather uses copyright-protected works of others to sell advertising. *See AFP v. Morel*, 934 F.Supp.2d 547567 (S.D.N.Y. 2013) ("[E]very case the Court has reviewed in which a party was a held to be a 'service provider' … reflects a fact pattern in which the party claiming the benefit of the DMCA safe harbor was 'doing something useful' for other entities or individuals, such as providing a file hosting or file sharing platforms, rather than itself selling or licensing copyrighted material.") (emphasis added).

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

safe harbor requires. 17 U.S.C. §512(c)(1). As discussed, *supra*, Zillow also has the right and ability to control what photos appear on Digs, and receives a financial benefit directly attributable to those infringements. 17 U.S.C. §512(c)(1) (B). Zillow induced users to post images to Digs, well-knowing that "if Zillow was interested in using [VHT images on Digs] we needed to discuss that[,]" Hensley Decl. Ex. A at 297:8-299:13, so Zillow was aware of facts or circumstances from which infringing activity is apparent. 17 U.S.C. §512(c)(1) (A) (ii). *See, e.g., Columbia Pictures Inds. v. Fung*, 710 F.3d 1020, 1043 (9th Cir. 2013) (defendant had "red flag" knowledge from which infringing activity was apparent where he helped users upload material and it would have been objectively obvious to a reasonable person that that material was infringing); *MP3 Tunes*, Nos. 14-4369-cv(L), 14-4509-cv(XAP) at p. 42 (defendant's general knowledge that certain categories of works on its site were never authorized by their copyright owners for digital distribution was sufficient for jury to find "red flag" knowledge).

Thus, the DMCA safe harbor affords Zillow absolutely no escape hatch.

## 2. Zillow's Uses Were Not A Fair Use

Zillow claims that despite the fact that it has taken the entirety of each of the Infringed Images, which are highly creative works, without "transforming" them by adding something new of value, and in so doing, supplanted VHT's actual and potential market to license these images to others, that it is somehow entitled to a fair use defense under 17 U.S.C. §107. That simply cannot be the case.[14] *See Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1173-84 (9th Cir. 2012) (unauthorized use of plaintiffs' photographs was not fair use, applying the statutory factors).[15]

---

[14] Zillow may argue that its violation of the reproduction right is a fair use because it needed to make multiple copies of the Infringed Images to use on the Listing Site while the properties are on the market. Whether or not its reproduction of multiple copies constitutes an independent violation of the reproduction right, it in no way excuses its separate violations of VHT's rights of distribution, display, and to make derivative works.

[15] Zillow's remaining affirmative defenses deserve even shorter shrift. Zillow's Second Affirmative Defense should be denied for the reasons stated in Part II, above. Its Third Affirmative Defense has already been fully briefed or Zillow's Motion for Judgment on the Pleadings [Dkt. 98] and is without merit for the reasons stated in VHT's Opposition [Dkt. 116]. Zillow's statute of limitations defense (fifth) makes no sense as VHT seeks damages only for infringements that took place within the statutory period. There is no evidence or argument whatsoever to support the defense that VHT lacks standing to pursue these claims "due to defect in ownership of the applicable copyright" (Dkt. 112 at 25); as noted above, each of the Infringed Images is or should be registered,

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

# V. ZILLOW'S INFRINGEMENTS WERE WILLFUL

In order to prove willfulness, a plaintiff must show "(1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' or 'willful blindness' to the copyright holder's rights ". *Louis Vuitton Malletier S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 944 (9th Cir. 2011). Zillow cannot create a material issue of fact under either prong.

There can be no dispute but that Zillow was on notice of all of the infringements and yet continued to display and distribute them; that alone suffices for a finding of willfulness. As early as February 2013—within a week Zillow's launch of the Digs Site—VHT advised Zillow that it owned the copyrights in photographs that Zillow had posted on Digs and that Zillow needed a license from VHT to use VHT-owned photographs on that Site. Hensley Decl. Ex. A at 297:8-299:13; *id.* Ex. E at 209:9-14; 254:6-255:17; *id.* Ex. TT. Zillow refused to negotiate a license at that point, saying that because it "wasn't interested anymore." *Id.* Ex. A at 359:1-9. As Zillow's Chris Crocker put it, "we're going to go in another direction and don't – we're not going to need to license photos from you." *Id.* Ex. C at 75:7-10. Although Zillow may not have been interested in paying for VHT images, it remained interested in using them and it did not "go in another direction"; it not only failed to remove the VHT images already on the Digs Site, but it posted (and induced others to post) thousands more VHT-owned photos to the Digs Site after that time. Again, in July 2014, when VHT's attorneys advised Zillow that its use of VHT-owned photographs on the Listing Site after the listings had expired, and on the Digs Site, constituted copyright infringement, *id.* Ex. ML, and shortly thereafter furnished copies of its licenses to Zillow (*id.* Ex. MM), Zillow did not take the images down and continued to leave them up after sale on the Listing Site and to induce users to post them on the Digs Site. These letter notifications put Zillow on clear notice of VHT's claims of rights and yet Zillow nonetheless continued to display VHT's images on both sites. That is willful copyright infringement. *Columbia Pictures Television v. Krypton Broad.*, 106 F.3d 284, 293 (9th Cir.

---

and each was taken by a photographer as a "work for hire." Hensley Decl. Ex. N; *id.* Ex. B at 39:6-9, 51:9-52:8. Finally, Zillow has no evidence to support the various equitable theories in its Tenth Affirmative Defense.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1997), *rev'd on other grounds*, 1185 S.Ct. 1279 (1998) (willful infringement where defendant

continued broadcasting television episodes after termination of license agreement and even

after filing of complaint for copyright infringement); *Peer Int'l Corp. v. Pausa Records, Inc.*,

909 F.2d 1332 (9th Cir. Cal. 1990) (ordering maximum statutory award for willful conduct

where defendant infringing activity after being notified that its license was terminated).

Nor can Zillow escape a finding of willfulness by claiming that, notwithstanding VHT's

protestations, it believed it could use the photos under licenses from third parties. To the

contrary, a defendant's conduct becomes willful where it ignores the plaintiff's warning that

reliance on a third-party license is misplaced. In *Dolman v. Agee*, 157 F.3d 708, 715 (9th Cir.

1998), defendant licensed the right to use songs that had appeared in certain films from the film

producer. The songwriter's heirs then informed defendant that they owned the copyright, not the

producer, yet defendant continued to infringe. Defendant argued his good faith belief that his use

was authorized; the Ninth Circuit found willful conduct because he knew that there was at least a

question as to ownership of the songs. Similarly, in *Friedman v. Live Nation Merchandise, Inc.*,

defendant who infringed a photographer's photos of a musical group could not avoid trial on the

issue of willfulness by arguing that he had permission from the musicians, because failure to

investigate further may have constituted recklessness or willful blindness. 833 F.3d 1180, 1186-

87 (9th Cir. 2016). Just as in *Dolman* and *Live Nation*, Zillow chose to recklessly double down on

its claim of a valid third-party license, even in the face of evidence from VHT to the contrary.

Zillow's conduct echoes defendant's conduct in *Dolman* in yet another way that

illustrates Zillow's complete disregard of copyright ownership:[16] even when Zillow knows there

are conflicting grants of rights to use the same photograph it receives from multiple sources, it

uses its "trumping rules" to favor whichever feed grants it greater rights, ignoring the implicit

knowledge of conflicting claims. Hensley Decl. Ex. G at 63:14-67:22; 113:5-7, 119:2-120:2; *id.*

---

[16] Zillow's history of copyright infringement also supports a finding of willfulness. Hensley Decl. Ex. UU; *Indigo Blue Studios d/b/a Andy Frame Photography v. Zillow Inc.*, 9:13-cv-80664 (S.D. Fla. 2013); *Joshua Johnson Photography v. Warner Bros.* 1:16-cv-00306, (D. Colo. 2016). As Professor Nimmer has explained, willful conduct that can justify an enhanced statutory damages award "can be inferred from a past practice of infringing other works[.]" 5 *Nimmer* § 14.04 [B] [3] [a].

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

Ex. OO.  By this maneuver, Zillow turns a "blind eye" to the existence of conflicting license restrictions, even when it knew or should have known of them, as it did with respect to VHT's images.  This sort of reckless disregard for a copyright holder's rights is exactly the kind of conduct that courts have found to be willful.  See *Yellow Pages Photos, Inc. v. Ziplocal LP*, 795 F.3d 1255, 1272 (11th Cir. 2015) ("willful copyright infringement under §504(c)(2) encompasses reckless disregard of the possibility that one's actions are infringing a copyright"); *N.A.S. Import, Corp. v. Chenson Enters., Inc.*, 968 F.2d 250, 252 (2d Cir. 1992) ("reckless disregard of the copyright holder's rights (rather than actual knowledge of infringement) suffices to warrant [an] award of enhanced damages"); *Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010, 1020–21 (7th Cir. 1991) (as used in the Copyright Act's statutory damages provision, the term "willful" encompasses "reckless disregard of the copyright owner's right").

## VI.     EACH OF VHT'S IMAGES HAS AN INDEPENDENT ECONOMIC VALUE

An award of statutory damages is available for every "work" that is infringed; in this Circuit, the test for determining whether an image is a separate "work" entitled to a unique damage award is whether that image "can live its own copyright life and has an independent economic value and is, in itself, viable."  *Monge*, 688 F.3d at 1180 (internal quotation and alteration omitted).  VHT seeks a determination on this motion that, subject to proof of the independent economic value of the Infringed Images, it is entitled to a separate award of statutory damages for each of them.

The Ninth Circuit and multiple district courts in this Circuit have held that single photographs are separate copyrightable works for purposes of statutory damages.  In *Monge*, the Court rejected an argument that a database of 400 wedding photos were a single "compilation" and concluded that "it makes sense to treat *each photo* as an individual copyrighted work."  *Id.* In an earlier decision, the Ninth Circuit similarly held that each individual episode of a television series was an individual work, rejecting defendants' argument that the TV series should be considered either a single compilation or a set of anthologies; as the court explained, "the episodes were broadcast over the course of weeks, months, or even

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

years, and could be repeated and rearranged at the option of the broadcaster." *Columbia Pictures Television*, 106 F.3d at 296. Similarly, in *Playboy Enterprises, Inc. v. Sanfilippo*, 1998 WL 207856, at *5 (S.D. Cal. Mar. 25, 1998), the court granted statutory damages for "each of the 7475 incidents of infringement" of individual images, although the "images were collectively included in one of plaintiff's copyrighted magazines", rejecting the argument that "defendant should only be liable for a singular violation of that particular magazine's copyright and not for separate violations of each image included in that magazine issue." *Id.*

Zillow argues that because VHT used this group registration method, its registrations protect only its database as a whole, rather than each individual image in it, and therefore VHT is only entitled to one statutory damages award for the entire compilation. *See* Dkt. 50 at 5. This argument was expressly rejected in *Alaska Stock v. Houghton Mifflin*, considering a group registration like the one used by VHT. That Court held that the registration protected both the compilation elements of the group of photos as a whole, as well as each individual photo within the group. 747 F.3d 673 (9th Cir. 2014). As the Ninth Circuit held: "[t]he procedure applied for over three decades by the Register of Copyrights to registration by stock photo agencies complied with the statutory requirements" and that therefore "registration by a stock photo agency of a CD collection of images the copyright to which the stock agency owns, registers both the collection and the individual images." *Id.* at 685. The Ninth Circuit noted that this holding was in agreement with the Copyright Office itself (whose regulations expressly permit such group registrations), *Nimmer*, and multiple other Circuits. *Id.* at 683-84. *See, e.g.*, *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591, 599-600 (4th Cir. 2013) (group registration for a database of real estate photos made under the exact same regulatory provision used by VHT (37 C.F.R. §202.3(b)(5)) was sufficient to protect each individual photograph within the database).

Zillow also argues that VHT is limited to one award per registration because the statute provides: for "purposes of this subsection, all the parts of a compilation or derivative work constitute one work," 17 U.S.C. §504(c). That argument has also been squarely rejected:

We are unable to find any language in either the statute or the corresponding

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

regulations that precludes a copyright owner from registering the copyrights in multiple works on a single registration form while still collecting an award of statutory damages for the infringement of each work's copyright.

*Gamma Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106, 1117 (1st Cir. 1993)(awarding 4 separate statutory awards for separate television episodes even though all the episodes were part of the same series, all were registered on single group registration form, and plaintiff distributed the 4 episodes to video stores as a set). *See also Twin Peaks Productions v. Publications Int'l, Ltd.*, 996 F.2d 1366 (2d Cir. 1993) (defendant that infringed 8 separate teleplays that were all part of a single TV series was liable for 8 separate statutory awards); *Arista Records LLC v. Lime Wire Group LLC*, 2011 WL 1311771, *4 n.6 (S.D.N.Y. April 4, 2011) (although box set of Rolling Stones albums "is technically a compilation of all of the works contained therein," court rejected argument that plaintiff "is entitled to only one statutory damage award for all 25 songs, simply because those 25 songs have also been issued as part of one compilation").

## VII.  ZILLOW CANNOT CREATE A TRIABLE ISSUE OF FACT ON ITS COUNTERCLAIMS

Zillow's counterclaims [Dkt. No. 112] are sheer makeweight, and VHT is entitled to summary judgment on each of them.

### A.  The CPA Claim

"[T]o prevail in a private CPA action … a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (1986). Zillow cannot offer any evidence to carry its burden of proof or create a disputed issue of fact on this claim.

Zillow claims that VHT's email sales pitch to certain prospective clients (discussed *supra*) is the deceptive act or practice that grounds this claim. Answer [Dkt. 112] at Counterclaim ¶13. But a "deceptive act or practice" under the CPA must have "the *capacity* to deceive a substantial portion of the public." *Hangman Ridge*, 105 Wash.2d at 785. These emails cannot satisfy this standard because they did not have the capacity to deceive the recipients of them in the context in which they were made:  communications between experienced players in

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

the real estate market.  Nor were they made in a vacuum; they were sent as a cover note with the license agreement itself.  Hensley Decl. Ex. A at 94:6-7, 99:22 – 100:2 ("This would never go out on its own."); *id.* Ex. C at 11:16-19.  For much the same reason, no "public interest" was implicated by those emails.  *Hangman Ridge* establishes two separate tests for this element, depending on whether the alleged misrepresentations were made in a "consumer transaction" or a "private dispute."  105 Wash.2d at 789-90.  Here, VHT's interactions with its licensees are private business-to-business arrangements and "[o]rdinarily, a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest."  *Id.* at 790.  In just such private negotiations where plaintiff has "sufficient sophistication to remove them from the class of bargainers subject to exploitation," the public interest element is not satisfied.  *Pac. Nw. Life Ins. Co. v. Turnbull*, 754 P.2d 1262, 1268–69 (Wash. App. 1988) (affirming grant of motion to dismiss CPA claim); *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 935 P.2d 628, 635 (Wash. App. 1997) (affirming dismissal of a tire dealer's CPA claim against its distributor for lack of affect upon public interest); *Robinett v. Opus Bank*, 2013 WL 5850873, at *3 (W.D. Wash. Oct. 30, 2013) (dismissing CPA claim because plaintiff is has "some level of sophistication … beyond that of the average consumer" and "the complete lack of any evidence that Defendants were advertising the services or practices described in the complaint to the general public.").

A CPA plaintiff must also show that any injuries it suffered were "induced" by the alleged unfair or deceptive act or practice.  *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885 (Wash. 2009).  The Washington Supreme Court has held that "our case law establishes that there must be some demonstration of a causal link between the misrepresentation and the plaintiff's injury," and that but for "[a] plaintiff defendant's unfair or deceptive practice, plaintiff would not have suffered an injury."  *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 170 P.3d 10, 21 (Wash. 2007).  Zillow's 30(b)(6) designee on its counterclaims expressly admitted that Zillow has no evidence of such a causal link:  "Q: Is Zillow aware of any actions that those upstream feed providers, MLSs or brokerages may have taken as a result of [VHT's]

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (15-cv-1096-JLR) - 26
DWT 30548647v6 0104728-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

communications? A: …there's no information available. I have no information to add to that."
Hensley Decl. Ex. J at 154:18-155:7.

## B. The CFAA Claim

Zillow also claims that VHT violated the Computer Fraud and Abuse Act by "knowingly caus[ing] the transmission of a program, information, code, or command, and as a result of such conduct, intentionally caus[ing] damage without authorization, to a protected computer" (18 U.S.C. §1030(a)(5)(A)),[17] but it cannot carry its burden of proof on any element of that claims. *First*, it is undisputed that VHT itself did not transmit anything to Zillow; VHT's licensees decide whether and on what terms to send VHT's images to Zillow and therefore, VHT did not itself "cause" the transmission. Where a plaintiff seeks to impose liability on a third party for a transmission, it must show that defendant "controlled" the actions of the transmitting party. *eBay Inc. v. Digital Point Sols., Inc.*, 608 F.Supp.2d 1156, 1164 (N.D. Cal. 2009) (noting that "hackers may use the computers of unknowing third parties to carry out their schemes"). There is no evidence whatsoever of such control in this case.

*Next*, the CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C.A. §1030(e)(8). Zillow's only claim of "damage" is that its databases "contain photographs whose attribution of rights is inconsistent with the asserted rights of the claimed rights holder." Answer [Dkt. 112] Counterclaim ¶29. There is no evidence that the mere existence of those images in Zillow's databases impaired the "integrity or availability" of them. *See In re iPhone Application Litig.*, 844 F.Supp.2d 1040, 1067 (N.D. Cal. 2012) ("Damage under the CFAA does not occur simply by any use or consumption of a device's limited resources, but rather "damage" must arise from an impairment of performance") (internal quotation omitted). Plaintiff must also prove that any damage or loss "was a result of the prohibited conduct." *Czech v. Wall St. on Demand, Inc.*,

[17] The Ninth Circuit has warned against "expand[ing] [the CFAA's] scope … beyond computer hacking to criminalize any unauthorized use of information obtained from a computer. This would make criminals of large groups of people who would have little reason to suspect they are committing a federal crime." *United States v. Nosal*, 676 F.3d 854, 858 (9th Cir. 2012); *see also id.* at 857 (rejecting broad definition of terms in CFAA which "would transform the CFAA from an anti-hacking statute into an expansive misappropriation statute.").

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

674 F.Supp.2d 1102, 1121 (D. Minn. 2009) (dismissing CFAA claim for failure to plead causation). This element "incorporate[s] traditional principles of tort causation." *Glob. Policy Partners, LLC v. Yessin*, 686 F.Supp.2d 642, 647 (E.D. Va. 2010) (dismissing CFAA claim for failing to allege sufficient losses). For all of the reasons set forth above, VHT cannot have *caused* any purported damages Zillow suffered, because Zillow has no proof that VHT's purported misrepresentations had any impact on the licensees' delivery of images to Zillow. Nor can Zillow show that VHT acted intentionally. For these purposes, a "person acts intentionally when what happens was the defendant's conscious objective. To act intentionally means to do an act deliberately and not by accident." *United States v. Carlson*, 209 F. App'x 181, 184 (3d Cir. 2006). Zillow has nothing other than inflammatory speculation suggesting that VHT acted to disrupt the operations of Zillow's site.

Finally, civil plaintiffs under the CFAA must have at least $5,000 in losses. 18 U.S.C. §1030(g); §1030(c)(4)(A)(i)(I). "[T]he term "loss" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id.* at §1030(e)(11). Zillow's alleged loss consisting of "the cost of engineering time expended to remove unauthorized VHT content from Zillow's computers" (Answer [Dkt. 112] at Counterclaim ¶32), but the evidence in discovery flatly contradicts that claim. *See* Hensley Decl. Ex. J at 76:24-77:4; 79:8-12; 88:14-89:16.

## C. The Trespass to Chattels Claim

Zillow's sole allegation in support of its trespass claim is that VHT "induce[d] VHT's licensees to place photographs on Zillow's computers." Answer [Dkt. 112] at Counterclaim ¶34. For all of the reasons set forth above, Zillow cannot show that VHT caused (or was in any way involved with) its licensees' transmittal of images to Zillow. Further, in the computer context, "[a]n action for trespass arises when the trespass actually did, or threatened to, interfere with the intended functioning of the system, as by significantly reducing its available

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

memory and processing power.  Similarly, intermeddling is actionable only if 'the chattel is impaired as to its condition, quality, or value or ... the possessor is deprived of the use of the chattel for a substantial time'".  *In re iPhone*, 844 F.Supp.2d at 1069 (em.  In *iPhone*, even though Apple had placed some files and applications on users iPhones in a way that "conceivably constitute[s] a harm" to plaintiffs (a class of phone users), plaintiffs' trespass to chattels claim failed because "they do not plausibly establish a significant reduction in service constituting an interference with the intended functioning of the system."  *Id.*  Zillow offers no facts that would support a conclusion that the existence of VHT's images in Zillow's database had any impact – let alone a significant one[18] – on the operation of Zillow.com or Zillow's back-end databases.

## D.     The Tortious Interference Claim

"A claim for tortious interference with a contractual relationship or business expectancy requires five elements: (1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage."  *Leingang v. Pierce Cty. Med. Bureau, Inc.*, 930 P.2d 288, 300 (Wash. 1997).

Zillow cannot identify a single specific agreement that it claims VHT interfered with and that alone is sufficient to grant VHT summary judgment.  As its 30(b)(6) designee testified,

Hensley Decl. Ex. J at 150:2-151:15.  The Washington Supreme Court explained in the related context of tortious interference with business expectancy that a plaintiff "must show a specific relationship between it and identifiable third parties."  *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 144 P.3d 276, 281 (Wash. 2006) (rejecting allegations as to interference with "some amorphous

---

[18] As to Zillow's efforts to remove some of the images, even by Zillow's account, that took less than 40 hours of combined work.  *See* Hensley Decl. Ex. J at 79:5-9.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (15-cv-1096-JLR) - 29
DWT 30548647v6 0104728-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

group of people"). *See also LinkCo, Inc. v. Fujitsu Ltd.*, 230 F.Supp.2d 492, 495 (S.D.N.Y. 2002) ("Although a defendant need not be aware of all the details of a contract, it must have actual knowledge of the specific contract."; *S. Home Care Servs., Inc. v. Visiting Nurse Servs., Inc. of S. Connecticut*, 2015 WL 4509425, at *11 (D. Conn. July 24, 2015) ("VNS's general knowledge of the industry cannot substitute for actual knowledge of a specific contract.") (internal quotation omitted); *K & K Mgmt., Inc. v. Lee*, 316 Md. 137, 156, 557 A.2d 965, 974 (1989) (dismissing claim because "there was no evidence of any particular contract with any particular supplier with which the appellants interfered").

Moreover, "[t]ortious interference with a contract requires intentional conduct." *Certification from the United States Court of Appeals for the Ninth Circuit in Centurion Properties III, LLC v. Chicago Title Ins. Co.*, 375 P.3d 651, 662 (Wash. 2016). This requires that Zillow show that VHT's "conscious objective" was to interfere with Zillow's contracts with VHT's licensees, *see United States v. Christensen*, 828 F.3d 763, 775 (9th Cir. 2015), and Zillow has no such evidence. Indeed, there is no evidence that VHT had any improper purpose in sending this email: as described in Part VII.A.1, above, VHT was simply providing an introduction to the terms of its licenses to prospective clients, while simultaneously providing the terms of license itself.

Finally, for all of the reasons set forth in Part VII.A.3 above, Zillow cannot show that any damages were proximately caused by VHT's conduct. *Pleas v. City of Seattle*, 774 P.2d 1158, 1165 (Wash. 1989) (applying causation standard to tortious interference claim).

## VIII.   CONCLUSION

As set forth above, this Court should grant VHT summary judgment on liability on its copyright infringement claims; find that Zillow's infringements were willful; enter judgment in favor of VHT dismissing each of Zillow's Counterclaims; determine that VHT is entitled to a statutory damages award for each of the Infringed Images registered prior to Zillow's infringement, upon proof that each such image has independent economic value; and for such other and further relief as to this Court shall seem just and proper.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

DATED this 25th day of October, 2016.

DAVIS WRIGHT TREMAINE LLP
Attorneys for Plaintiff VHT, Inc.

By *s/ Max B. Hensley*
 Jonathan M. Lloyd, WSBA #37413
 Max B. Hensley, WSBA #47030
 1201 Third Avenue, Suite 2200
 Seattle, WA 98101-3045
 Telephone: (206) 622-3150
 Fax: (206) 757-7700
 E-mail: jonathanlloyd@dwt.com
 E-mail: maxhensley@dwt.com

and

Marcia B. Paul *(pro hac vice)*
Yonatan Berkovits *(pro hac vice)*
1251 Ave of the Americas, Suite 2100
New York, New York 10019
Tel: (212) 603-6427
Fax: (212) 489-8340
E-mail: marciapaul@dwt.com
E-mail: yonatanberkovits@dwt.com

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (15-cv-1096-JLR) - 31
DWT 30548647v6 0104728-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system.  All other parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure.

DATED this 25th day of October, 2016.

Davis Wright Tremaine LLP
Attorneys for Plaintiff VHT, Inc.


By *s/ Max B. Hensley*
    Max B. Hensley, WSBA #47030
    1201 Third Avenue, Suite 2200
    Seattle, WA  98101-3045
    Telephone: (206) 622-3150
    Fax: (206) 757-7700
    E-mail:  maxhensley@dwt.com

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (15-cv-1096-JLR) - 32
DWT 30548647v6 0104728-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax