The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VHT, INC., a Delaware corporation,<br><br>            Plaintiff,<br><br>   v.<br><br>ZILLOW GROUP, INC., a Washington corporation; and ZILLOW, INC., a Washington corporation,<br><br>            Defendants. | No. 2:15-cv-1096- JLR<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE EXPERT TESTIMONY**<br><br>*Noted for Hearing: Nov. 11, 2016* |

PL.'S REPLY IN SUPPORT OF MOTION TO
EXCLUDE EXPERT TESTIMONY (2:15-cv-1096-JLR)
DWT 30751468v1 0104728-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

Defendants Zillow Inc. and Zillow Group Inc. (collectively, "Zillow") draw fine lines in the sand in an effort to salvage the inadmissible testimony they offer through their experts Patrick Gannon, Jeffrey Sedlik and John Vogel. Expert testimony is admitted to aid the jury in understanding the facts at issue; it cannot usurp the function of the Court, nor is it closing argument, offered by the attorneys to summarize and package the evidence admitted for the jury. In various ways, each of Zillow's offered experts crosses those lines and therefore all of their testimony discussed in VHT's Motion to Exclude ("Mot.") should be excluded.

### 1. Zillow's Experts Cannot Offer Expert Opinions on the Law

Both Mr. Gannon and Mr. Sedlik purport to opine on legal conclusions that are solely within the province of the Court, particularly in their respective efforts to analyze VHT's licenses to its clients. As VHT's summary judgment motion discusses, both the terms of use on VHT's website and its standard brokerage agreement ("SLA") are clear and unambiguous; therefore, under governing Illinois law any extrinsic evidence, including expert testimony, purporting to interpret or supplement the terms of those agreements is inadmissible. VHT Summary Judgment Motion [Dkt. 137], at 7-10. For that reason alone, the opinions offered by Mr. Gannon ("Gannon Rep."[1], pp. 4-6 & 24) and Mr. Sedlik ("Sedlik Rep." pp. 24-27) purporting to interpret those agreements should be excluded in their entirety.[2] Beyond that threshold issue, neither Mr. Gannon nor Mr. Sedlik has the requisite experience to so opine. Zillow argues, splitting hairs, that Mr. Sedlik is not "giving a legal interpretation of VHT's license terms" (Opp., p. 17) but is rather offering his expert opinion on licensing terms. Even assuming Mr. Sedlik is a licensing expert, his expertise is on licensing of stock photography, not on how the SLA would be interpreted in the real estate industry. He is not an expert on marketing of brokers and agents, what it means to "represent" a property, or what "property specific" means in the industry. If this case involved a dispute about whether a licensee had

---

[1] All expert reports and transcripts cited herein were filed as exhibits to the Lloyd Declaration at Dkt. 132.

[2] Zillow purports to draw a distinction between Mr. Sedlik's opinions 1 through 4 and 6 through 7, as opposed to his opinions 8 through 15, on the grounds that they are supposedly "factual descriptions" of VHT licenses (Zillow Opposition ("Opp."), p. 19), but there is no principled basis for any such distinction.

PL.'S REPLY IN SUPPORT OF MOTION TO
EXCLUDE EXPERT TESTIMONY (2:15-cv-1096-JLR) - 1
DWT 30751468v1 0104728-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

exceed a permitted "comp use" of a photo or had provided a sufficient "credit line", perhaps Mr. Sedlik would be qualified to opine on those issues, but that is not the nature of the supposed ambiguity here. Rather, Zillow argues that what it means to "market" a broker or to "represent" a property are somehow ambiguous, and Mr. Sedlik has no expertise in that area.

Mr. Gannon also purports to offer his opinion about the VHT SLA, and in like vein, Zillow claims that "Mr. Gannon does not consider this evidence [an email VHT sent to certain prospective clients] as a means to interpret the license agreement, but as an indication of VHT's position in the hypothetical negotiation". Opp., p. 6. But Mr. Gannon is not an expert on either the real estate industry or licensing, and these opinions should be excluded as well.

Zillow strains to find a path to get these opinions in by citing Illinois cases to the effect that the testimony of a lawyer may be permissible in some circumstances to aid in interpretation of a contract.[3] Opp., p. 19, citing *Harbor Ins. Co. v. Continental Bank Corp.*, 922, F.2d 357 (7th Cir. 1990) and *In Re Ocean Bank*, 481 F. Supp. 2d 892, 898 (N.D. Ill. 2007). But neither Mr. Sedlik nor Mr. Gannon is a lawyer, and even under these cases, the contract must be ambiguous before such testimony is allowed. Further, those cases involved technical terms specific to the industry at issue; *Harbor Ins.* addressed the interpretation of the word "indemnity" in an insurance policy as used in the charter of the insurer, and *In Re Ocean Bank* considered whether an email was a "firm offer of credit" under the Fair Credit Reporting Act. Nothing in either case changes the basic proposition that both Mr. Sedlik's and Mr. Gannon's opinions on the interpretation of VHT's agreements are irrelevant, constitute impermissible legal conclusions for the court to determine, and are outside the scope of their expertise.

**2. Zillow's Experts' Reliance on Dead Stock Inventory is Off Point**

Zillow persists in its argument, central to Mr. Sedlik's valuation of the VHT images and to Mr. Gannon's conclusions as to the value of licenses in the willing buyer/willing seller hypothetical negotiation, that certain of VHT's photos are "dead stock". *See* Sedlik Rep., p. 23

---

[3] Zillow argues based on Seventh Circuit law that these opinions are admissible since VHT's licenses are governed by Illinois law. Opp., pp. 18-19. But Ninth Circuit law, not Illinois contract law, governs expert admissibility.

PL.'S REPLY IN SUPPORT OF MOTION TO
EXCLUDE EXPERT TESTIMONY (2:15-cv-1096-JLR) - 2
DWT 30751468v1 0104728-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

("When evaluating VHT's image collection, it is safe to assume that at least 90% of VHT's images will never re-sell for any purpose"); Gannon Rep., pp. 16, 25-26, 45 (relying on that conclusion both in his criticism of Mr. Henson's valuation and in formulating his own license values). But there can be no dead stock in the hypothetical negotiation here, because the parties are sitting at the bargaining table to hammer out the terms of the license to use the specific photos that Zillow in fact used. *See* Mot., pp. 6-8. Recognizing this misstep, Zillow once again attempts to split hairs: it argues that its experts do not claim 90% of the Infringed Images would be dead stock, but only used that fact to challenge Mr. Henson's reliance on Getty Images' pricing to calculate his base price per image. Opp., p. 7-8. It is hard to fathom what this distinction means or how a jury could understand the difference.

Separately, Zillow continues to argue that dead stock is relevant to the hypothetical negotiation (Opp., p. 8), because VHT needed to take into account the fact that some of the images it was negotiating to license to Zillow would never have sold if offered to someone other than Zillow. Zillow then argues, as an aside, that VHT also should have considered what it terms a "non-infringing alternative", *i.e.*, that Zillow would simply not use the VHT photos at all. Opp., pp. 8-9. This flies in the face of the logic of the hypothetical buyer/seller negotiation. Of course, VHT does not have Zillow "over a barrel" such that it could charge whatever price it wanted for the Infringed Images, *Oracle America, Inc. v. Google, Inc.*, 798 F.Supp.2d 1111, 1121 (N.D. Cal. 2011), but there is a defined set of images over which the parties are negotiating. Zillow cannot do an end run around the willing buyer/willing seller construct by claiming it would have simply walked away from the bargaining table.

**3.    Mr. Gannon's Reliance on VHT's SLA as a Benchmark is Misplaced**

Messrs. Gannon and Sedlik rely for their own respective valuations on benchmarks that are simply not comparable. Mot., pp. 9-12. Prime among them is their reliance on licenses VHT granted its clients under its SLA, which Mr. Gannon opines (without even the benefit of

PL.'S REPLY IN SUPPORT OF MOTION TO
EXCLUDE EXPERT TESTIMONY (2:15-cv-1096-JLR) - 3
DWT 30751468v1 0104728-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

Mr. Sedlik's opinion[4]), is for the "highest and best" use of the VHT photos. Gannon Rep., p. 49. On that basis, Mr. Gannon calculates a purported average price VHT charges its brokerage clients as a base, and then discounts from that base to reach his valuation. Gannon Rep., pp. 49-52. As addressed in VHT's Motion (p. 11), and as Mr. Gannon himself admitted (Gannon Tr. 203:4-23), these licenses are for a different term, for a different use, by different clients and consequently on altogether different terms than the licenses at issue in the hypothetical negotiation between VHT and Zillow. Zillow's use on the Listing Site is not limited to the time when the property is on the market or the broker is representing the property; Zillow's use on the Digs Site is a completely different animal – a use for purposes totally divorced from marketing either the property or the broker. To use licenses VHT issued to brokers as a benchmark for these two entirely different uses makes no sense at all.

Mr. Gannon relied on this inappropriate benchmark, as well as Mr. Sedlik's conclusion that the pricing in the hypothetical negotiation should be based on royalty free rather than rights-managed comparables, to fault Mr. Henson for failing to consider the "tens if not hundreds of millions of other royalty free images available on the web for *de minimis* amounts per image". Opp., p. 22; Gannon Rep., p. 52. Again splitting hairs, Zillow now argues that Mr. Gannon never suggested that royalty free images could literally be substituted for VHT's images by Zillow on the Listing Site, and posits that Mr. Gannon instead relied on Mr. Sedlik's conclusion simply for the fact that since there are royalty free images available of like quality, royalty free pricing is a more appropriate data point. Opp., p. 10. Again, the basis for this distinction is confounding and, at a minimum, would be confusing to the jury.

**4.     Hindsight has No Place at the Willing Buyer/Seller Bargaining Table**

Zillow continues to maintain that Mr. Gannon's hindsight analysis is appropriate, citing a hoary precedent about the "Book of Wisdom". *See* Opp., p. 12, citing *Sinclair Refining Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 698 (1933). While Justice Cardozo indeed used

---

[4] Zillow now claims that Mr. Gannon relied on Mr. Sedlik's opinion that the primary purpose of VHT photos is to sell homes (Opp., p. 2), but that says nothing about that purpose as the photos' "highest and best use".

PL.'S REPLY IN SUPPORT OF MOTION TO
EXCLUDE EXPERT TESTIMONY (2:15-cv-1096-JLR) - 4
DWT 30751468v1 0104728-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

that phrase in the context of discovery to frame a complaint, here we have ample evidence of what the market was for like photographs like VHT's in 2013, when this hypothetical negotiation occurred, so there is no need to look to post-hac developments.[5]  Zillow also relies on this "book of wisdom" approach to justify Mr. Gannon's reliance upon VHT's later largely unsuccessful licensing efforts (Opp., p. 12), but this not only reflects hindsight analysis, it also ignores that the fact that Zillow has been using these photographs for free for four years with the obvious resultant impact on VHT's ability to license them to other customers.

### 5. Mr. Gannon's Opinions on the Benefit to Zillow Lack Foundation

Zillow offers no credible response to VHT's argument that Mr. Gannon's conclusion that 50% of the benefit to Zillow calculated by VHT's expert Dr. Ward Hanson is arbitrary. Zillow faults Dr. Hanson for not apportioning that revenue, but that is **Zillow's burden**, not VHT's.[6]  Mot., p. 14.  Zillow claims that "to correct Dr. Hanson's mistake" (Opp., p. 16), Mr. Gannon derived his 50% allocation from a table in the background section of Dr. Hanson's report, summarizing survey results on real estate buyers' reactions to various types of information.  Hanson Rep., Fig. 3.2.  But Dr. Hanson did not rely on that chart in his empirical calculation.  *Contrast*, Hanson Rep., p. 12, with *id*. pp. 20-31.  That chart is clearly insufficient basis for an expert's opinion about allocation of revenues to the use of photographs, *see Frank Music Co. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 514-16 (9th Cir. 1985) (defendant bears a high burden to provide evidence to allocate revenues, and any doubt resolved in favor of the plaintiff) and even if it were, it does not provide any basis for Mr. Gannon's arbitrary allocation of 50%.[7]

---

[5] Zillow also cites *Gaylord v. United States*, 112 Fed.Cl. 539 (Fed.Cl. 2013) in support of this proposition, but the opinion of that Court relied on the actual prices plaintiff had charged for comparable licenses prior to the hypothetical negotiation and cited to *Sinclair* in a footnote.

[6] Zillow splits hairs yet again with respect to Mr. Gannon's legal conclusion that Dr. Hanson failed to establish causation, claiming that Mr. Gannon's critique is not as a "legal matter", but rather of Dr. Hanson's "methodology as an economics expert".  Opp., p. 15.

[7] Similarly, neither Zillow nor Mr. Gannon offer any sufficient basis for his reliance on consolidated Zillow Group financials, his use of only 18 months' worth of financial, or his failure to consider the entire benefit to Zillow including increased traffic and search engine optimization. *See* Mot., pp. 14-15.  Mr. Gannon's judgment in this area is questionable:  he concluded that Zillow was not likely to make a profit at any point in the future, but Zillow

PL.'S REPLY IN SUPPORT OF MOTION TO
EXCLUDE EXPERT TESTIMONY (2:15-cv-1096-JLR) - 5
DWT 30751468v1 0104728-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

### 6. Mr. Vogel is Not Qualified to Offer the Opinions He Offers

Just as VHT does not question Mr. Gannon's qualifications as a certified public accountant to run the numbers, it does not question that Mr. Vogel is an expert in affordable housing and perhaps some other areas of real estate development and construction. But nothing he or Zillow have offered shows he has any expertise whatsoever in connection with the marketing of real estate brokers and that is what he opines about. The two case studies Mr. Vogel annexes to his supplemental declaration (Dkt. 160, Ex. 1, 2) to bolster his lack of relevant expertise only serve to highlight the palpable deficiency: the Pinckney Street case study (Ex. 1) mentions the potential buyer using Zillow in passing in one paragraph and says absolutely nothing about the marketing of real estate brokers; the Smuggler Notch case study (Ex. 2) considering whether the owner of a timeshare resort should sell out to a major developer, mentions that "the key to success in the timeshare business is marketing" (*id*. p. 7), and likewise has absolutely nothing to do with the marketing of real estate brokers.

Zillow claims that "Mr. Vogel's opinions are based on broad trends involving information dissemination and the role of agents and brokers in the real estate industry" (Opp., p. 22) and that "[h]is real estate expertise is more relevant for the issues he actually addresses than an expertise in marketing would be" [footnote omitted]. *Id*. at 22. Zillow offers no support, nor does Mr. Vogel, for the proposition that he has the expertise to opine on broad trends either regarding "information dissemination" or about "the role of agents and brokers in the real estate industry". In short, he himself does not have the experience, and his research is neither sufficiently broad-based nor reliable, to aid the jury.[8] *See* Mot., pp. 17-19.

### II. CONCLUSION

For these reasons, the Court should exclude the entire expert testimony of Mr. Gannon and Mr. Vogel, and Mr. Sedlik's expert testimony on the interpretation of VHT's licenses.

---

recently posted its "biggest profit ever". *See* http://www.housingwire.com/articles/38425-zillow-posts-biggest-profit-ever?eid=311687211&bid=1575479 (last visited Nov. 11, 2016); Gannon Rep., p. 57.

[8] To try to convince the Court that Mr. Vogel has credible testimony that might aid the jury, Zillow also argues there is a reason brokers give Zillow broad rights to use the photos sent to it for purposes of marketing the property (Opp., p. 21). But that is totally irrelevant if the brokers do not have the right to do so under their licenses, and it says absolutely nothing about whether Zillow's specific uses of those photos do anything to market those brokers.

PL.'S REPLY IN SUPPORT OF MOTION TO
EXCLUDE EXPERT TESTIMONY (2:15-cv-1096-JLR) - 6
DWT 30751468v1 0104728-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

DATED this 11th day of November, 2016.

DAVIS WRIGHT TREMAINE LLP
Attorneys for Plaintiff VHT, Inc.

By *s/ Jonathan M. Lloyd*
    Jonathan M. Lloyd, WSBA #37413
    Max B. Hensley, WSBA #47030
    1201 Third Avenue, Suite 2200
    Seattle, WA  98101-3045
    Telephone: (206) 622-3150
    Fax: (206) 757-7700
    E-mail:  jonathanlloyd@dwt.com
    E-mail:  maxhensley@dwt.com

and

Marcia B. Paul *(pro hac vice)*
Yonatan Berkovits *(pro hac vice)*
1251 Ave of the Americas, Suite 2100
New York, New York 10019
Tel: (212) 603-6427
Fax: (212) 489-8340
E-mail:  marciapaul@dwt.com
E-mail:  yonatanberkovits@dwt.com

PL.'S REPLY IN SUPPORT OF MOTION TO
EXCLUDE EXPERT TESTIMONY (2:15-cv-1096-JLR) - 7
DWT 30751468v1 0104728-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

# **CERTIFICATE OF SERVICE**

I hereby certify that on November 11, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system. All other parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure.

DATED: November 11, 2016.

Davis Wright Tremaine LLP
Attorneys for Plaintiff VHT, Inc.


By   *s/ Max B. Hensley*
Max B. Hensley, WSBA #47030
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
Telephone: (206) 622-3150
Fax: (206) 757-7700
Email: maxhensley@dwt.com

PL.'S REPLY IN SUPPORT OF MOTION TO
EXCLUDE EXPERT TESTIMONY (2:15-cv-1096-JLR) - 8
DWT 30751468v1 0104728-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax