UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VHT, INC., <br><br> Plaintiff, <br><br> v. <br><br> ZILLOW GROUP, INC., et al., <br><br> Defendants. | CASE NO. C15-1096JLR <br><br> ORDER |

## I. INTRODUCTION

Before the court are various issues on which the parties have asked the court to rule before trial commences. Plaintiff VHT, Inc., moves for reconsideration (MFR (Dkt. # 212) at 2-5) of part of the court's December 23, 2016, order (12/23/16 Order (Dkt. # 211)). In the same motion, VHT raises three additional legal questions on which the court declined to rule in deciding VHT's and Defendants Zillow Group, Inc., and Zillow, Inc.'s (collectively, "Zillow") motions for partial summary judgment. (MFR at 5-6.) The parties also request that the court determine whether Zillow's terms of use ("TOU") is

ORDER - 1

1 | ambiguous. (TOU Stmt. (Dkt. # 228).) Separately, VHT asks the court to conclude that
2 | VHT has valid copyrights in two sets of photographs on which the Copyright Office has
3 | yet to take action. (Renewed MPSJ (Dkt. # 215).) At the pretrial conference, the court
4 | took under advisement Zillow's seventh motion in limine and indicated that it would
5 | issue a written order. (*See* Zillow MILs (Dkt. # 195) at 11-12.) Finally, in light of the
6 | court's summary judgment ruling, Zillow moves to exclude evidence of the functionality
7 | of Zillow's Home Detail Pages ("HDPs") at trial. (PTC Stmt. (Dkt. # 219) at 1.)

Having considered the parties' briefing on these matters, counsel's oral argument at the pretrial conference, the relevant portions of the record, and the applicable law, the court rules as follows.

## II. BACKGROUND & ANALYSIS

In its December 23, 2016, order, the court recounted the facts of this complex copyright case. (*See* 12/23/16 Order at 3-11.) To the extent additional facts and procedural background are relevant to each pending matter, the court expands on that background below.

### A. Zillow's Seventh Motion in Limine

Zillow moves in limine to exclude evidence of two categories of its allegedly infringing conduct: (1) migration of content to the Amazon Cloud; and (2) accepting images into the searchable Digs set that users failed to complete saving to their own Digs

//
//
//

board (i.e., "implicit digs").[1] (Zillow MILs at 11-12.) Zillow contends that VHT failed to include these allegedly infringing acts in response to Zillow's Interrogatory No. 24. (*Id.*) Accordingly, Zillow seeks to preclude VHT from contending at trial that those actions constitute infringement. (*Id.*) VHT responds that it objected to Interrogatory No. 24 as vague and ambiguous. (VHT MILs Resp. (Dkt. # 206) at 10.) VHT also argues that contrary to Zillow's narrow reading, VHT's response to Interrogatory No. 24 sufficiently identify the two categories of conduct that Zillow seeks to exclude. (*Id.* at 11-13.)

The court addresses each category of evidence in turn.

1. Migration to Amazon Cloud

The court first rejects VHT's argument that its general objection to Interrogatory No. 24 excuses its failure to identify the migration to Amazon Cloud as an infringing act. VHT objected to Interrogatory No. 24 "as vague and ambiguous to the extent it seeks information about the 'nature of the act.'" (10/25/16 Crosby Decl. (Dkt. # 133) ¶ 11, Ex. 10 ("VHT Interr. Resp.") at 5.) However vague or ambiguous "nature of the act" may be in the abstract, Interrogatory No. 24 clearly and unambiguously directs VHT to "[i]dentify each act by Zillow that [VHT] contend[s] constitutes an infringement." (*Id.*) The Amazon Cloud migration clearly falls under this language, and VHT's objection

//

//

---

[1] Zillow initially sought to exclude a third category of conduct: certain promotional emails and blogs. (Zillow MILs at 11-12.) However, at the pretrial conference, Zillow withdrew that component of its motion.

therefore does not excuse its failure to identify the Amazon Cloud migration as an act of infringement.

In the alternative, VHT contends that its response "precisely" identifies the Amazon Cloud migration. (VHT MILs Resp. at 11-12.) VHT argues that it did not identify the Amazon Cloud migration by name, but that its response captured the migration by identifying the following acts:

- Zillow "continu[ed] to create archival copies of photos, including but not limited to 'p-series' copies, from the Listing Site of properties that are no longer actively listed for sale, both for storage on its [Amazon] and/or Legacy System servers and on its CNS network." (VHT Interr. Resp. at 6:21-23; *see also* VHT MILs Resp. at 11 (identifying this language from VHT's response to Interrogatory No. 24).)
- "[B]efore and during the display of VHT photos on the Listing Site and the Digs Site and app, Zillow uses digital tools to modify the images, including by altering the coloration of the pixels to increase contrast and decrease blurring, and by cropping the photos." (VHT Interr. Resp. at 7:7-9; *see also* VHT MILs Resp. at 11-12 (identifying this language from VHT's response to Interrogatory No. 24).)

The court disagrees that either description, when read in context, sufficiently identifies migration to the Amazon Cloud as an act of infringement.

The first excerpt on which VHT relies identifies "continuing to create archival copies." (VHT Interr. Resp. at 6:21.) "[C]ontinuing" refers to the previous action that VHT identifies: "making multiple copies of each image it has identified for display on the Digs Site . . . , and storing those copies on its [Amazon] and/or Legacy System

servers." (*Id.* at 6:18-21.) This context makes clear that this portion of VHT's response refers not to a migration of archival photographs, but to the initial generation of archival photographs. A plain reading therefore precludes the interpretation for which VHT advocates.

For the second excerpt to cover the migration to Amazon Cloud, one must read "uses digital tools to modify [the images]" to include "cop[ying the images]." (*See id.* at 7:7-9.) However, "cop[ying]," as that term is commonly understood, involves no "modif[iciation]," and the court therefore finds VHT's position to strain the plain meaning of the language. The interpretive maxim *noscitur a sociis*—"a word may be known by the company it keeps"—supports the court's rejection of VHT's reading. *See Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 287-88 (2010). VHT listed two examples of "us[ing] digital tools to modify the images": "altering the coloration of the pixels to increase contrast and decrease blurring" and "cropping the photos." (VHT Interr. Resp. at 7:8-9.) Both examples enhance the aesthetic quality of the photographs by modifying the photograph in a manner that simply copying an archival copy of the photograph to a new database does not. Accordingly, the court concludes that VHT failed to identify the migration to Amazon Cloud as an infringing activity in its response to Interrogatory No. 24.

If VHT's failure to disclose is harmless, the court need not exclude evidence of infringement stemming from Zillow's Amazon Cloud migration. Fed. R. Civ. P. 37(c)(1). VHT bears the burden of demonstrating harmlessness to Zillow. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1007 (9th Cir. 2001). VHT argues that

even if it insufficiently identified the photographs, "Zillow has been fully aware for months of each of the infringing acts [Zillow] seeks to preclude VHT from referencing, include [sic] from specific allegations in VHT's complaints and the deposition testimony of its own witnesses." (VHT MILs Resp. at 13.) However, none of the five portions of the record to which Zillow cites support this assertion. Pages 27 and 28 of Jason Gurney's Rule 30(b)(6) deposition are the only cited pages that refer to the Amazon Cloud migration. (See 12/19/16 Hensley Decl. (Dkt. # 207) ¶ 8, Ex. F at 27:13-28:7.) In his deposition, Mr. Gurney acknowledges the Amazon Cloud migration, but neither the questioning nor the responses evince notice to Zillow that VHT considered the migration an act of infringement. (Id.) Indeed, the lack of notice harmed Zillow by, for instance, precluding Zillow from moving for summary judgment on VHT's infringement allegations rooted in the Amazon Cloud migration. (See Zillow MIL at 11-12.) Accordingly, the court concludes that VHT may not pursue infringement claims based on evidence of the migration to Amazon Cloud.[2]

2. Implicit Digs

The court rejects Zillow's motion to exclude evidence of infringement via implicit digs (Zillow MILs at 11) because VHT sufficiently identified implicit Digs in its

---

[2] VHT contends that even if its disclosure of Zillow's infringing acts was insufficient, it should be permitted to reference those additional infringing acts at trial as evidence of willfulness and the need for deterrence. (VHT MIL Resp. at 13 n.6.) In its oral ruling on several of Zillow's motions in limine, the court announced general principles governing the admissibility of evidence that is relevant to willfulness and deterrence but not to liability. The principles announced in that ruling, the exact contours of which remain for trial, shall also govern allusion to the Amazon Cloud migration at trial.

pleadings and in discovery. VHT's second amended and third amended complaints contain the following allegation:

> Since sometime in 2014, Zillow has itself added images by using a process which it refers to as "Implicit" or "Inferred" Digging. Namely, when a user starts to save an image by clicking the "Save" button but does not complete the process by clicking "Save Image to Zillow Digs" or "Add to Board" in the dialogue box that follows, Zillow deems the image to merit further review for possible inclusion on the Digs public board. Zillow's employees review all such images that are "implicitly dug" in this way, selecting certain of them to import into the Digs public board.

(SAC (Dkt. # 105) ¶ 88; TAC (Dkt. # 123) ¶ 88.) Furthermore, VHT's response to Interrogatory No. 24 states, "Zillow itself actively selected a large number of photos from the Listing Site to display on the Digs Site when the site was launched (and has subsequently done so on other occasions) . . . ." (VHT Interr. Resp. at 6:3-5.) VHT's reference to "other occasions" capture implicit digs, through which Zillow "actively selected . . . photos from the Listing Site to display on . . . Digs." (*Id.*) Accordingly, the court concludes that VHT sufficiently identified implicit digs as a source of its infringement allegations.

**B.      Motion for Reconsideration**

"Motions for reconsideration are disfavored." *See* Local Rules W.D. Wash. LCR 7(h)(1). However, the court will grant such a motion upon "a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence." *Id.* VHT contends the court committed manifest error in concluding as a matter of law that the volitional act doctrine

1 precludes VHT's direct infringement claims based on Zillow's HDPs. (MFR at 2-5; *see also* 12/23/16 Order at 27-32.)

Having considered VHT's arguments and the portions of the record and legal authority on which VHT relies, the court concludes that VHT has not demonstrated manifest error and denies VHT's motion for reconsideration. *See* Local Rules W.D. Wash. LCR 7(h)(1). The majority of the arguments and authority that VHT raises were contained in VHT's summary judgment briefing, and the court considered those positions and authority prior to issuing its December 23, 2016, order. (*See* 12/23/16 Order at 27-32.) The court declines to restate its reasons for rejecting those arguments here. To the extent VHT raises new arguments, those arguments could have been raised previously and fail to show manifest error in the court's prior ruling. *See* Local Rules W.D. Wash. LCR 7(h)(1).

However, VHT's motion and Zillow's response demonstrate that clarification of the court's order is warranted in one respect. The court concluded that when Zillow implicitly digs an image, Zillow "may properly be deemed the selector of the content for copying." (12/23/16 Order at 32.) Based on implicit digs and other conduct related to images on Digs, the court concluded that Zillow committed volitional acts only as to images on Digs and not on HDPs. (*See id.* (concluding that Zillow's actions are sufficient to satisfy the volitional act doctrine only as to Digs).)

//

//

//

VHT moves the court to reconsider this ruling, arguing that implicit digs "occurs *not* on the Digs Site, but rather on the Listing Site."[3] (MFR at 4 (emphasis in original); *see also id.* at 5 ("Just because the copies are reproduced for use, displayed, and modified on the Digs Site does not mean that the initial volitional act which caused the copy to be made did not occur on the Listing Site.").) It is unclear from VHT's briefing whether VHT (1) asks the court to impute volitional conduct to other allegedly infringing images on the Listing Site, simply because the images that Zillow implicitly dug began on the Listing Site; or (2) merely asks to have a jury decide its direct infringement claims arising out of implicit digs. Zillow's exercise of volition by implicitly digging images has no implication on whether it exercised volition on images on the Listing Site that it did not implicitly dig. Therefore, precisely "where" the volitional act occurred is a distinction without relevance. Additionally, the court has already concluded that a jury will determine whether Zillow is liable for direct infringement for the images on Digs because sufficient volitional conduct has occurred toward those images to send liability to the finder of fact. (*See* 12/23/16 Order at 32.) Having clarified its ruling on implicit digs and otherwise denied VHT's motion for reconsideration, the court turns to the other issues that the parties have asked the court to determine in advance of trial.

//

//

---

[3] In the same section of its motion, VHT argues that Zillow's migration to Amazon Cloud and promotional blogs and emails constitute volitional conduct. The court has excluded the Amazon Cloud migration as a theory of infringement, *see supra* § II.A.1., and Zillow withdrew its objection regarding promotional blogs and emails, *see supra* n.1. Accordingly, the court considers those matters moot.

C. **Supplemental Summary Judgment**

The parties have asked the court to determine five discrete issues before trial. The court addresses each of those issues in turn.

1. Ownership and Validity of VHT's Copyrights in its Existing Registrations

VHT asks the court to grant summary judgment on the ownership and validity of the copyrights that it has registered with the Copyright Office. (MFR at 5); *see also* 17 U.S.C. § 410(c) (indicating that a certificate of a registration constitutes "prima facie evidence of the validity of the copyright and of the facts stated in the certificate"). At the pretrial conference, Zillow indicated that it no longer contests this issue. Accordingly, the court grants VHT summary judgment on the ownership and validity of its registered copyrights.

2. Ownership and Validity of VHT's Copyrights in its Unregistered Images

VHT also moves for summary judgment on the ownership and validity of the images covered by two copyright applications—the 2011 Application and the 2014 Application—that the Copyright Office has not registered. (*See* Renewed MPSJ at 1-4.) Generally, a party may not institute a civil copyright infringement action unless the copyright has been preregistered or registered. *See* 17 U.S.C. § 411(a). However, VHT contends that the images in the 2011 Application and the 2014 Application fall under the following exception:

//

//

//

> [W]here the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute a civil action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights.

*Id.*

VHT initially moved for summary judgment as to the 2011 Application, the 2014 Application, and another application from 2016. (VHT MPSJ (Dkt. # 141) at 6-7.) The court concluded that VHT had not demonstrated that the Copyright Office "refused" registration of any of those applications or that VHT had served the Register of Copyrights with notice and the complaint. (12/23/16 Order at 20-21.) The court granted VHT leave to renew its motion for summary judgment on this issue and submit additional evidence. (*Id.* at 21.) VHT timely renewed its motion, in which VHT concedes that the Copyright Office has not refused the application from 2016 and submits additional evidence in support of the 2011 Application and the 2014 Application. (*See* Renewed MPSJ at 1 & n.1.)

As a threshold matter, VHT now identifies in the record the Section 411 letter that it sent to the Copyright Office. (*See* Renewed MPSJ at 2; 10/25/16 Berkovits Decl. (Dkt. # 139) ¶ 6, Ex. 4 ("Section 411 Letter").) VHT sent the letter on April 18, 2016, and enclosed the then-operative complaint. (*Id.* at 1.) The court therefore concludes that the Copyright Office received proper notice of this case and has not intervened within 60 days. *See* 17 U.S.C. § 411(a).

VHT has also demonstrated that the Copyright Office "refused" the 2011 Application. On September 22, 2015, the Copyright Office informed VHT that it

"refus[ed] to register" the images included in the 2011 Application because they demonstrated insufficient compilation authorship. (10/25/16 Berkovits Decl. ¶ 5, Ex. 3 at 37.) Although VHT has requested that the Copyright Office reconsider this request, the text of the statute leads the court to conclude that this request for reconsideration does not vitiate the Copyright Office's initial refusal.

The court also rejects Zillow's argument that a dispute over the veracity of VHT's submissions to the Copyright Office precludes summary judgment as to registrability of the images covered by the 2011 Application. (*See* Renewed MPSJ Resp. at 2.) In this context, inaccurate information is only relevant where, "if known," the information "would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b); (*see also* Zillow MPSJ Resp. (Dkt. # 168) at 9 (citing 17 U.S.C. § 411(b)).) Here, the Copyright Office was aware of and had reviewed the representations on which Zillow rests its argument, and the Copyright Office found VHT's statements not to preclude the registration of 11 similar copyright applications. (*See* 10/25/16 Berkovits Decl. ¶ 7, Ex. 5 at 2 (finding that VHT's second submission "provided much more detailed information on the compilation authorship contained in the[] works").) Zillow presents no evidence or argument that leads the court to conclude differently as to the 2011 Application. (*See id.*; Zillow MPSJ Resp. at 8-9.) Accordingly, the court concludes that VHT may sue on the images in the 2011 Application.

However, VHT fails to show that the Copyright Office refused to register the 2014 Application. Based on the prolonged series of exchanges that VHT has had with the Copyright Office (*see* Villenueve Decl. (Dkt. # 216) ¶¶ 3-8, Exs. A-E), VHT argues that

the Copyright Office "has effectively refused to register the photographs ... for over two years" (Renewed MPSJ at 3). VHT cites no authority for its argument that this process—protracted as it may be—constitutes a refusal under Section 411(a). To the contrary, the 2014 Application appears to remain under consideration by the Copyright Office. (*See* 10/25/16 Berkovits Decl. ¶ 8, Ex. 7.) Accordingly, the court concludes that VHT may not sue for infringement of the images covered under the 2014 Application.

### 3. Calculation of Statutory Damages

The parties dispute the appropriate manner of calculating the statutory damages for which Zillow is potentially liable. *See* 17 U.S.C. § 504(c); (MFR at 5-6; MFR Resp. at 4.) The disputed provision of the Copyright Act reads:

> Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

17 U.S.C. § 504(c)(1). VHT contends that if it can prove at trial that each image has an independent economic value, each image constitutes a separate "work" for purposes of calculating statutory damages. (MFR at 5-6; VHT MPSJ at 23-25; VHT MPSJ Reply (Dkt. # 168) at 15-18.) Zillow responds that VHT's photo database is a compilation and therefore only one work for purposes of assessing statutory damages. (MFR Resp. (Dkt. # 220) at 4; Zillow MPSJ Resp. at 24-27.)

The court concludes that this dispute is not ripe and declines to decide the issue at this juncture. The course of litigation, before, during, and after trial, could moot the issue. The impact of the recent exclusion of VHT's expert valuation testimony is unclear; whether Zillow's photographs are of independent economic value remains a question for the jury; the jury may find Zillow's actions to be non-infringing; and the jury may issue a verdict rooted in actual damages plus profits that exceeds potential statutory damages. The court will structure the jury instructions and verdict form to ascertain the jury's findings regarding the number of images, if any, that Zillow infringed, VHT's actual damages plus Zillow's profits, and the appropriate statutory damages. If VHT obtains a favorable verdict, the court will rule on this legal question after trial, at which point VHT may elect whether to recover actual damages plus profits or statutory damages. *See* 17 U.S.C. § 504(c)(1) (allowing the copyright owner to "elect, at any time before final judgment is rendered, to recover" statutory damages rather than actual damages and profits); *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998) (concluding that an award of statutory damages under the Copyright Act must be submitted to the jury).[4] Rather than issuing an advisory opinion on this fact-bound,

---

[4] *See also* 5 Nimmer on Copyright § 14.04(A) ("Absent the ability to reconvene the jury or to empanel a new one, it would seem that, in those cases in which the defendant has requested a trial by jury, the plaintiff's last opportunity to elect statutory damages effectively matures when the case is submitted to the jury for deliberation. One expedient might be to instruct the jury on both statutory and actual damages, and allow plaintiff to elect the greater figure following return of the verdict." (internal footnote omitted)); *Sophia & Chloe, Inc. v. Brighton Collectibles, Inc.*, No. 12-CV-2472-AJB-KSC, 2016 WL 3211800, at *7-8 (S.D. Cal. Mar. 21, 2016) (ruling on the number of separate works for purposes of calculating statutory damages in addressing a post-trial motion, in part because factual disputes precluded a pretrial determination of whether the defendant had infringed).

hypothetical, and potentially superfluous legal question, the court reserves its judgment until after trial.

   4. DMCA Safe Harbor

VHT asks the court to conclude as a matter of law that Zillow is ineligible for the Zillow's Digital Millennium Copyright Act ("DMCA") safe harbor. (MFR at 6); *see also* 17 U.S.C. § 512. At the pretrial conference, Zillow conceded that its DMCA safe harbor defense does not extend to Digs images. Zillow accordingly indicated that this motion is moot if the court denies VHT's motion for reconsideration. *See* Prop. PTO (Dkt. # 218) at 2-3 (listing Zillow's defenses without including the DMCA safe harbor).) The court denied VHT's motion for reconsideration. *See supra* § II.B. The court therefore denies VHT's motion as moot.

   5. Ambiguity of the TOU

VHT contends that images licensed under the TOU may only be used to market the property that the images depict. (VHT MPSJ at 7-8 (citing 10/25/16 Hensley Decl. (Dkt. # 140) ¶ 22, Ex. U ("TOU") ¶ 11.b.).) Further, VHT argues that the language of the TOU is unambiguous in this regard, and that Zillow may not rely on parol evidence to the contrary at trial. (*See id.*) In its order addressing VHT's motion for partial summary judgment, the court did not reach this issue because genuine disputes of material fact precluded summary judgment on the enforceability of the TOU. (12/23/16 Order at 24-25.) The parties, resting on their briefing submitted in summary judgment proceedings, request that the court determine whether the TOU's terms are ambiguous, assuming that it is binding and enforceable as written. (TOU Stmt. at 1-2.)

The court agrees that whether or not the TOU is ambiguous must be decided before trial to determine the admissibility of parol evidence. *See Air Safety, Inc. v. Teachers Realty, Inc.*, 706 N.E.2d 882, 884 (Ill. 1999) (explaining that a court must first look to the language of a contract, and only if that language is susceptible to more than one meaning may the trier of fact consider parol evidence to resolve the ambiguity).[5] "[I]f the words used . . . are reasonably susceptible to more than one meaning [or] 'obscure in meaning through indefiniteness of expression,'" then the language is ambiguous. *Cent. Ill. Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 213 (Ill. 2004) (quoting *Platt v. Gateway Int'l Motorsports Corp.*, 813 N.E.2d 279, 283 (Ill. App. Ct. 2004)). Based on this definition of ambiguity, the court concludes that to the extent the TOU is enforceable, it unambiguously licenses an image to be used only for purposes of marketing the property that the image depicts.

The TOU's relevant provision reads:

> All images and media ("Content") created by VHT is the sole property of VHT. VHT retains ownership and licensing rights to all Content. Content is made available to clients for property specific marketing purposes only. Any publication of content for non specific property marketing purposes is strictly prohibited by law without the express written consent of VHT. All images and media ("Content") created by VHT is registered with the US Copyright Office.

(TOU ¶ 11.b.) VHT argues that "property specific marketing" means marketing the property depicted in the image, and VHT therefore contends that it exceeds the scope of

---

[5] Based on the parties' repeated and exclusive references to Illinois law, the court infers that both sides consider the choice-of-law provision in the TOU binding insofar as the jury finds the TOU binding. (*See* TOU ¶ 18.b.)

ORDER - 16

the license to leave the photographs posted after the property sells. (VHT MPSJ at 7-8.) Zillow agrees that the term "property specific marketing" could mean marketing the property depicted in the image, but Zillow responds that one could also reasonably read the term to mean marketing any specific property. (Zillow MPSJ Resp. at 5.) Zillow therefore concludes that it is ambiguous whether one exceeds the TOU license by displaying VHT's images after the depicted property sells, so long as the continued display markets property. (*Id.*)

Zillow's interpretation reads "specific" out of the TOU. The TOU could achieve what Zillow contends this language indicates by conferring a license to clients "for property [] marketing purposes only" and prohibiting the publication of images "for non [] property marketing purposes." (TOU at 3.) In light of this more reasonable alternative phrasing, the court will not interpret the TOU in a manner that renders "specific" superfluous. *See River Plaza Homeowner's Ass'n v. Healey*, 904 N.E.2d 1102, 1109 (Ill. Ct. App. 2009) (quoting *Vill. of Orland Hills v. Citizens Utils. Co. of Ill.*, 807 N.E.2d 590, 599 (Ill. Ct. App. 2004)) ("When a court interprets a contract, 'meaning and effect must be given to every term and provision, if possible, since it is presumed that every clause in the contract was inserted deliberately and for a purpose, and that the language was not employed idly.'").

By including "specific" in these phrases, the TOU unambiguously limits the scope of "property" to include only the "specific" property that the image depicts. The language could be clarified—for instance, by inserting hyphens between the words that constitute compound adjectives—but the meaning as written is not "obscure" and the

alternative meaning that Zillow advances is not reasonable. *Cf. Cent. Ill. Light*, 821 N.E.2d at 213. Accordingly, the court grants VHT summary judgment on the meaning of the TOU. To the extent VHT proves at trial that the TOU's express terms govern the images at issue, the language of Section 11.b. confers only the right to market the specific property depicted in the image.

### D. Admissibility of Evidence Regarding Operation of the Listing Site

At the pretrial conference, the court heard argument on and took under advisement Zillow's motion to exclude evidence of the HDPs' functionality. In light of the court's summary judgment ruling, Zillow contends that litigating the operations of the Listing Site "should be excluded as irrelevant, confusing, and a waste of time." (PTC Stmt. at 1); *see also* Fed. R. Evid. 403. At the pretrial conference, VHT responded that even if the court denies VHT's motion for reconsideration, the operations of the Listing Site are relevant to explain how images arrive on Digs and the issues of willfulness and statutory damages.

The court agrees with VHT that evidence of the Listing Site's operations and functionality provides necessary context to explain how Digs functions. The court therefore denies Zillow's motion to entirely exclude evidence of the operations of the Listing Site. However, the court also agrees with Zillow that the court's summary judgment ruling limited the relevance of evidence related to the Listing Site. If the evidence unduly focuses on the Listing Site rather than on Digs, there arises a nontrivial risk of confusing the issues, misleading the jury, and wasting time. *See* Fed. R. Evid. 403. Accordingly, the court's denial is without prejudice, and Zillow may move at trial

to limit evidence of the Listing Site's operations. In the context of trial, the court will determine whether and when the considerations enumerated in Rule 403 substantially outweigh the probative value of the Listing Site's operations.

### III. CONCLUSION

Based on the foregoing analysis, the court DENIES VHT's motion for reconsideration (Dkt. # 212), GRANTS in part and DENIES in part VHT's renewed motion for partial summary judgment (Dkt. # 215), DENIES without prejudice Zillow's motion to exclude evidence of the operations of the HDPs (Dkt. # 219), and issues the additional rulings articulated above regarding various legal questions raised by the parties.

Dated this 19th day of January, 2017.

JAMES L. ROBART
United States District Judge