1

2

3

4

5

6

7                      UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF WASHINGTON
8                              AT SEATTLE

9

10    VHT, INC.,                              CASE NO. C15-1096JLR

11                        Plaintiff,          ORDER
                v.
12
      ZILLOW GROUP, INC., et al.,
13
                        Defendants.
14

15                          I.    INTRODUCTION

16          Before the court are two post-trial motions:  Defendants Zillow Group, Inc., and

17    Zillow, Inc.'s (collectively, "Zillow") motion for judgment notwithstanding the verdict or

18    for a new trial (JNOV Mot. (Dkt. # 301)); and Plaintiff VHT, Inc.'s motion to amend the

19    judgment to add a permanent injunction (Inj. Mot. (Dkt. # 300)).  VHT opposes Zillow's

20    motion (JNOV Resp. (Dkt. # 304)), and Zillow opposes VHT's motion (Inj. Resp. (Dkt.

21    # 302)).  The court has reviewed the parties' submissions in support of and opposition to

22    the motions, the relevant portions of the record, and the applicable law.  Considering

itself fully advised,[1] the court GRANTS in part and DENIES in part Zillow's motion,

DENIES VHT's motion, and DIRECTS the parties to meet and confer, file a statement,

and attend a status conference as detailed below.

## II.    BACKGROUND

### A.    Procedural History

This action arose from Zillow's use of VHT's copyrighted real estate photographs.

(*See* Pretrial Order (Dkt. # 244) at 2:4-3:11; Ex. 600 (Dkt. # 272) ¶ 2.)  VHT alleged that

Zillow, which owns and hosts a real estate website and a related computer application

("app"), infringed upon 28,125 of VHT's photographs ("the VHT Photos").[2]  (*See*

Pretrial Order at 2:4-3:11; Ex. 600 ¶¶ 6, 9-10; Summ. Image SS (Dkt. # 256-1); Final JIs

(Dkt. # 275) at 20:2-13.)  Zillow used 28,124—all but one—of the VHT Photos in

conjunction with "Digs," a content area on Zillow's website geared toward home design

and renovation.  (*See* Summ. Image SS; Ex. 600 ¶ 11; Ex. 512 at Column N.)[3]  Zillow

also used one of those 28,124 VHT Photos in an email.  (1/27/17 Trial Tr. at 98:21-100:1,

112:22-25; Ex. 293; Ex. 512 at Row 17,744, Column AV.)  Zillow used the final VHT

Photo exclusively in a blog post.  (1/27/17 Trial Tr. at 100:2-22, 112:6-21; Ex. 243; Ex.

---

[1] Neither VHT nor Zillow requests oral argument on either motion, and the court determines that oral argument is not necessary.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

[2] Prior to the court's rulings on the parties' dispositive motions, VHT alleged more extensive infringement by Zillow, and Zillow pursued counterclaims against VHT.  (*See generally* 3d Am. Compl. (Dkt. # 123); Counter-Compl. (Dkt. # 156 at 26-35).)  Because the pretrial procedural history is largely irrelevant to the instant motions, the court focuses on the posture of the case at the time of trial.

[3] The court's citations herein to Exhibit 512—a voluminous spreadsheet—indicate the column(s) and row(s) that contain information in support of the pertinent factual assertion.

512 at Row 28,127, Column AV.)  Because of the voluminous set of VHT Photos at issue, the parties tried the case by stipulating to the accuracy of an electronic spreadsheet that provided pertinent details regarding all 28,125 VHT Photos.  (*See* Ex. 600 ¶ 12; Ex. 512; *see also* Ex. 600 ¶ 13; Ex. 513 (displaying each VHT Photo from VHT's copyright registrations and the mirror image from Digs).)

VHT sued Zillow under several theories of copyright infringement.  (*See* Pretrial Order at 2:7-15; Final JIs at 20:4-6; Verdict Form (Dkt. # 281) at 1:17-3:17.)  Most straightforwardly, VHT sought to hold Zillow liable for direct copyright infringement. (Pretrial Order at 2:7-10; Final JIs at 21:2-11; Verdict Form at 1:17-2:4.)  In addition, VHT sought to hold Zillow liable for direct infringements by Zillow's users under two theories of indirect copyright infringement.  (*See* Pretrial Order at 2:11-15; Final JIs at 20:7-11, 22:2-25:6; Verdict Form at 2:5-3:7.)  First, VHT contended that Zillow contributorily infringed by either materially contributing to or inducing infringement by Zillow's users.  (*See* Pretrial Order at 2:11-13; Final JIs at 22:2-23:8; Verdict Form at 2:5-16.)  Second, VHT alleged that Zillow vicariously infringed based on the direct infringement of Zillow's users.  (*See* Pretrial Order at 2:13-15; Final JIs at 24:2-25:6; Verdict Form at 2:17-3:7.)  The court held a jury trial on VHT's claims from January 23, 2017, to February 9, 2017.[4]

*//*

---

[4] (*See* Trial Min. Entries (Dkt. ## 246, 248, 251, 262, 269-71, 276); *see also* 1/23/17 Trial Tr. (Dkt. # 289); 1/24/17 Trial Tr. (Dkt. # 290); 1/27/17 Trial Tr. (Dkt. # 291); 2/2/17 Trial Tr. (Dkt. # 292); 2/3/17 Trial Tr. (Dkt. # 293); 2/7/17 Trial Tr. (Dkt. # 294); 2/8/17 Trial Tr. (Dkt. # 295); 2/9/17 Trial Tr. (Dkt. # 299).)

## B. Evidence Presented at Trial

Zillow receives millions of photos each day through feeds provided by real estate brokers, multiple listing services ("MLS"),[5] and other sources. (2/2/17 Trial Tr. at 120:13-16; 2/7/17 Trial Tr. at 69:16-18, 132:25-136:6.) Each feed provider operates under an agreement with Zillow. (2/7/17 Trial Tr. at 139:2-141:7.) Those feed agreements include assurances from the feed provider to Zillow regarding the scope of the providers' permissible use of the photos, and many of the agreements purport to confer a broad license to Zillow. (*Id.*; *see* Ex. A-77 at 1.) Zillow characterizes photos from feed agreements of unlimited temporal scope as "evergreen," whereas it classifies as "deciduous" photos from feed agreements that require Zillow to cease displaying the photos after the corresponding listing is removed. (2/2/17 Trial Tr. at 70:11-16.)

Before launching Digs publicly, Zillow contracted with a company called Samasource to select a launch set of images. (1/27/17 Trial Tr. at 195:24-196:1.) Samasource provided moderators, who selected approximately 20,000 evergreen images from Zillow's database, including 870 VHT Photos, to use as a launch set for Digs. (*Id.* at 195:6-196:13; 2/2/17 Trial Tr. at 71:17-72:4; 2/7/17 Trial Tr. at 69:13-70:9, 94:19-95:6; Ex. 512 at Column AD.) The moderators also tagged certain elements of the room displayed in those images. (2/7/17 Trial Tr. at 80:25-81:3.) Tagging the images rendered them searchable by visitors to Digs. (*Id.* at 70:24-71:6.)

//

---

[5] MLSs are regional services that run listing databases and set rules for real estate agent cooperation. (2/7/17 Trial Tr. at 134:4-15.)

When Digs launched, only the launch set of images was available, but over time, Zillow created several different ways for users to add images to Digs. (*Id.* at 71:7-10.) Users can upload their own images to Digs, and by January 2014, Zillow allowed users to "dig" images from home details pages ("HDPs") on Zillow's main website. (*Id.* at 71:11-25; 1/27/17 Trial Tr. at 211:7-213:18.) When a user digs an evergreen image, the image is accessible to any Digs user, but each deciduous image is visible only to the user that dug the image. (2/7/17 Trial Tr. at 73:16-74:1.) In addition, Zillow created a functionality called "implicit digs," in which Zillow saved to Digs images that its users selected to save but failed to finish saving. (2/2/17 Trial Tr. at 115:1-118:13.)

Zillow also tagged—and thereby made searchable—some of the evergreen images that Digs users selected. (1/27/17 Trial Tr. at 209:1-14; 2/7/17 Trial Tr. at 78:12-18, 80:9-13.) Zillow determined which images to make searchable through a moderation process. (1/27/17 Trial Tr. at 214:11-215:1.) Initially, and for the majority of the relevant time period, the moderation process included an initial automated review for blurriness or tilt and a second human review for images that passed the first, automated stage.[6] (2/7/17 Trial Tr. at 78:19-79:25.) The human review sought images that were "interesting or notable" and subjectively rated the quality of each image. (*Id.* at 80:16-81:21.) Zillow tagged and thereby made searchable the images that the moderators selected; the other images remained non-searchable. (*Id.* at 80:16-24, 81:4-7.) In addition, when the moderator gave an image a "great" quality rating, a Zillow design

---

[6] Approximately six months before trial, Zillow altered the second stage of the moderation process to rely more heavily on automation. (2/7/17 Trial Tr. at 80:1-5.)

moderator reviewed the image and overlaid product bubbles on the "interesting products" in the image. (*Id.* at 81:11-82:15.) The product bubbles linked to a website where the user could purchase the product that best matched the relevant feature. (*Id.* at 81:22-82:4.) Neither the moderation process nor the bubbling process created any additional copies of the image. (*Id.* at 81:8-10, 82:8-15.)

Beginning in 2013, VHT informed Zillow multiple times—and with varying degrees of specificity, accuracy, and completeness—that Digs featured images for which VHT held the copyright.[7] (1/27/17 Trial Tr. at 26:12-35:3; Ex. 51; Ex. 506; 2/2/17 Trial Tr. at 27:4-28:23; Ex. 45 at 2; 2/3/17 Trial Tr. at 61:21-64:13; Ex. A-83 at 1.) The discussions culminated in July 2014, when VHT sent Zillow a formal takedown notice and a list of purportedly infringing images. (1/27/17 Trial Tr. at 139:24-140:24; 2/3/17 Trial Tr. at 69:11-73:6; Ex. 98; *see also* Ex. 105; Ex. 512 at Column AF.) The list of images contained an address, a VHT identifying number, and a file name for each image. (Ex. 98 at 3-302.) Only 14 of the images on that list are at issue in this suit. (Summ. Image SS at 1.)[8] Without adequate identification of an image, technical realities limited

//

//

//

---

[7] The witnesses characterize those discussions differently, and for purposes of Zillow's motion the court credits the characterization most favorable to VHT. *Ostad v. Or. Health Sci. Univ.*, 327 F.3d 876, 881 (9th Cir. 2003).

[8] Exhibit 512 appears to conflict with this stipulation and indicate that the July 2014 letter identified 13—not 14—VHT Photos (*see* Ex. 512 at Column AF), but again, the court credits the stipulation most favorable to VHT.

Zillow's capacity to identify an image as infringing and remove the image.[9]  (2/2/17 Trial Tr. at 100:13-102:6, 125:23-127:3.)

**C.    The Jury's Verdict**

The jury found that Zillow directly infringed on all 28,125 of the VHT Photos. (Verdict Form at 1:17-2:3.)  The jury also found that Zillow contributorily and vicariously infringed VHT's copyrights, but because the verdict form instructed the jury not to double-count Zillow's infringements, it is not clear how many copyrights the jury found Zillow indirectly infringed.  (*Id.* at 2:5-3:7.)  After rejecting Zillow's affirmative defenses of license and fair use (*id.* at 3:11-4:13), the jury awarded actual damages of $2.84 per photograph, or $79,875.00 (*id.* at 4:15-19).  The jury also awarded $8,247,300.00 in statutory damages.  (*Id.* at 6:7-9.)  Because some of the statutory and actual damages were duplicative (*see id.* at 4:15-6:9), VHT elected to receive statutory damages for the 19,312 VHT Photos that were eligible for statutory damages (*see* Summ. Image SS at 1; Ex. 512 at Column AR) and actual damages for the remaining 8,813 VHT Photos (*see* Summ. Image SS at 1; Ex. 512 at Column AR; Dam. Election (Dkt. # 286) at 1).

Pursuant to the jury's verdict and VHT's damages election, the court entered judgment for VHT in the amount of $8,272,328.92.  (*See* Judgment (Dkt. # 296).)  The instant motions followed.

---

[9] Between July 2016 and September 2016, VHT provided lists using a Zillow image ID, and Zillow removed the VHT Photos from public accessibility on Digs.  (4/7/17 Kutner Decl. (Dkt. # 303) ¶ 3; 4/27/17 Kutner Decl. (Dkt. # 314) ¶¶ 1-8.)  Currently, Zillow appears to retain copies of the VHT Photos only for purposes of this litigation.  (4/27/17 Kutner Decl. ¶¶ 4-8.)

# III.    ANALYSIS

## A.    Zillow's Motion for Judgment Notwithstanding the Verdict

Zillow contends that it is entitled to judgment notwithstanding the verdict with respect to the vast majority of the VHT Photos.  (JNOV Mot. at 7:16-13:25.)  Zillow reaches this conclusion by whittling the field of VHT Photos on which, in Zillow's estimation, VHT presented sufficient evidence of direct infringement.  (*See id.*)  Specifically, Zillow argues that the 22,109 VHT Photos that Zillow never displayed on Digs only plausibly violated the reproduction right, *see* 17 U.S.C. § 106(1), and VHT failed to present sufficient evidence that Zillow caused the reproduction of any undisplayed VHT Photos (JNOV Mot. at 8:5-10:11).  In the alternative, Zillow contends that it is entitled to judgment notwithstanding the verdict on its fair use affirmative defense as it pertains to the 22,109 undisplayed VHT Photos.  (*Id.* at 20:6-21:20.)

6,015 of the remaining 6,016 VHT Photos were undisputedly displayed on Digs.  (*See* Ex. 512 at Column AW.)  However, Zillow argues that of those 6,015 displayed VHT Photos, 2,094 VHT Photos were non-searchable and therefore no evidence shows Zillow caused them to be copied.  (JNOV Mot. at 10:11-13:25.)  Finally, Zillow argues that no evidence shows whether 3,438 of the searchable VHT Photos went through any moderation by Zillow, and Zillow therefore concludes that the direct infringement verdict cannot stand as to those images.  (*Id.*)

By excluding the 22,109 undisplayed VHT Photos; the 2,094 non-searchable, displayed VHT Photos (including the image that Zillow also sent in an email); the 3,438 unmoderated, displayed VHT Photos; and the one VHT Photo included in a blog, Zillow

contends that it is entitled to judgment notwithstanding the verdict on VHT's direct

infringement claims regarding all but the 483 remaining VHT Photos. (*See* JNOV Mot.

at 2 n.1; JNOV Reply (Dkt. # 307) at 1:1-5.) Zillow then argues that under any of VHT's

indirect infringement theories, VHT presented insufficient evidence to support a liability

verdict as to any of the VHT Photos besides the 131 that were added to Digs after VHT

first specifically identified them. (JNOV Mot. at 14:10-19:23 & n.9.) Zillow therefore

moves for judgment in its favor on all counts of copyright infringement besides the 483

counts of direct infringement and 131 counts of indirect infringement and for a new trial

on those claims as to those VHT Photos.[10] (*See generally id.*; *see also* Reply at 1:1-5.)

In the alternative to judgment notwithstanding the verdict, Zillow requests a new trial as

to all infringement claims and all 28,125 VHT Photos. (*See* JNOV Mot. at 6:23-7:16,

//

---

[10] "[T]o preserve error," Zillow renews its motion for judgment as a matter of law that
17 U.S.C. § 504(c)(1) allows for only a single award of statutory damages in this case. (JNOV
Mot. at 3:7-16; *see also id.* at 23:17-30:16.) At trial, the court unequivocally rejected Zillow's
argument in an extensive oral ruling. (*See* 2/7/17 Trial Tr. at 11:19-18:2.) Zillow did not timely
move for reconsideration, *see* Local Rules W.D. Wash. LCR (7)(h)(2), and the court therefore
declines to revisit its prior ruling.

The court also declines to consider Zillow's alternative argument that it is entitled to a
new trial on the number of VHT Photos that are eligible for statutory damages. Unlike the other
issues on which Zillow seeks a new trial, Zillow's only argument that VHT presented
insufficient evidence regarding the number of VHT Photos that are eligible for statutory damages
consists of a conclusory, one-sentence footnote at the end of its motion. (*See* JNOV Mot. at 30
n.14 ("Alternatively, Zillow is entitled to a new trial on the number of VHT photographs that
have independent economic value, as the great weight of the evidence forecloses the conclusion
that any market exists for images such A-398 (toilet paper roll), A-399 (messy closet), A-416
(unfinished bathroom), and A-426 (hot water heaters), to name a few.").) The court rejects
Zillow's argument as inadequately raised. *See First Advantage Background Servs. Corp. v.
Private Eyes, Inc.*, 569 F. Supp. 2d 929, 935 n.1 (N.D. Cal. 2008) ("A footnote is the wrong
place for substantive arguments on the merits of a motion, particularly where such arguments
provide independent bases for dismissing a claim not otherwise addressed in the motion."); *In re
Katz Interactive Call Processing Litig.*, No. 07-ml-01816-B RGK (FFMX), 2009 WL 8636055,
at *1 (C.D. Cal. Oct. 26, 2009) (collecting cases).

10:10-11.)  To the extent the court does not vacate the liability verdict, Zillow also argues that VHT presented insufficient evidence that any of Zillow's infringements were willful and seeks judgment notwithstanding the verdict regarding the 3,373 images that the jury found Zillow infringed willfully.  (*See id.* at 21:20-23:17; Verdict Form at 5:21-6:5.)

1.  Legal Standard

The court may grant Zillow's renewed motion for judgment as a matter of law if it "finds that a reasonable jury would not have a legally sufficient evidentiary basis" to find for VHT.  Fed. R. Civ. P. 50(a)-(b).  To prevail, Zillow must show that VHT failed to support its claims with "substantial evidence."  *Weaving v. City of Hillsboro*, 763 F.3d 1106, 1111 (9th Cir. 2014).  "Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence."  *Landes Constr. Co. v. Royal Bank of Can.*, 833 F.2d 1365, 1371 (9th Cir. 1987) (citing *St. Elizabeth Cmty. Hosp. v. Heckler*, 745 F.2d 587, 592 (9th Cir. 1984)); *see also Weaving*, 763 F.3d at 1111.

The court must view the evidence and draw all reasonable inferences in VHT's favor.  *Ostad*, 327 F.3d at 881.  The court may not weigh the evidence or assess the credibility of witnesses in determining whether substantial evidence exists.  *Landes Constr.*, 833 F.2d at 1371.  Granting a motion for judgment as a matter of law is proper if "the evidence permits only one reasonable conclusion, and the conclusion is contrary to that reached by the jury."  *Id.*  Judgment as a matter of law "is appropriate when the jury could have relied only on speculation to reach its verdict."  *Lakeside-Scott v. Multnomah Cty.*, 556 F.3d 797, 802-03 (9th Cir. 2009).

Because it is a renewed motion, a proper post-verdict motion for judgment as a matter of law is limited to the grounds asserted in the movant's pre-deliberation Rule 50(a) motion. *EEOC v. GoDaddy Software, Inc.*, 581 F.3d 951, 961-62 (9th Cir. 2009) (citing *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003)). The standard recited above therefore applies to the issues properly preserved in Zillow's Rule 50(a) motion and renewed in Zillow's Rule 50(b) motion. On the other hand, Zillow must show that the jury plainly erred and that the error constitutes a manifest miscarriage of justice as to any arguments that it raises for the first time in its Rule 50(b) motion. *Janes v. Wal-Mart Stores, Inc.*, 279 F.3d 883, 888 (9th Cir. 2002).

   2. Direct Infringement

   Zillow's argument regarding VHT's direct infringement claims relies heavily on *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir. 2017), which the Ninth Circuit issued the day trial began.[11] In *Giganews*, the Ninth Circuit clarified several bedrock aspects of copyright infringement liability. *See generally id.* Most relevant to VHT's direct infringement claims, the Ninth Circuit confirmed that direct copyright infringement has a causation component, often referred to as "volitional conduct," that a plaintiff must prove. *Id.* at 666. "'Volition' in this context does not really mean an 'act of willing or choosing' or an 'act of deciding,' . . . ." *Id.* (quoting *Volition*, Webster's Third New International Dictionary (1986)). "Rather, . . . it 'simply stands for the unremarkable

---

[11] VHT points out that as of the filing of its response, the Ninth Circuit had not yet determined whether to rehear *Giganews* en banc. (VHT Resp. at 1 n.1 (citing *Perfect 10, Inc. v. Giganews, Inc.*, No. 15-55500 (9th Cir.), Dkt. # 123).) The Ninth Circuit subsequently denied the petition for rehearing. *See Giganews*, No. 15-55500, Dkt. # 137.

proposition that proximate causation historically underlines copyright infringement liability no less than other torts.'" *Id.* (quoting 4 Nimmer on Copyright § 13.08(c)(1) (2016) (Matthew Bender, Rev. Ed.)).

"The volitional-conduct requirement is not at issue in most direct-infringement cases; the usual point of dispute is whether the defendant's conduct is infringing (*e.g.*, Does the defendant's design copy the plaintiff's?), rather than whether the defendant has acted at all (*e.g.*, Did this defendant create the infringing design?)." *Am. Broad. Cos. v. Aereo, Inc.*, --- U.S. ---, 134 S. Ct. 2498, 2513 (2014) (Scalia, J., dissenting). But where, as here, "a direct-infringement claim is lodged against a defendant who [arguably] does nothing more than operate an automated, user-controlled system," the volitional-conduct—or proximate causation—requirement "comes right to the fore." *Id.* Due to the timing of the *Giganews* decision, much of the dispute over Zillow's direct infringement claims turns on pure questions of law as opposed to the sufficiency of the evidence. (*See generally* JNOV Mot.; JNOV Resp.; JNOV Reply.) The court now turns to those arguments.

      *a. Clarifying the Parties' Burdens*

Before turning to each category of the VHT Photos that Zillow raises, the court clarifies an implicit disagreement underlying the parties' briefing on this issue. In its response, VHT repeatedly refers generally to Zillow's volitional conduct or seeks to impute Zillow's volitional conduct as to one category of images to another category of

//

//

images or to Digs writ large.[12]  Some of VHT's arguments in this vein refer to the court's

previous rulings in this case.[13]

VHT's burden in opposing Zillow's motion is to identify legally sufficient

evidence to uphold the jury's verdict on the issues Zillow challenges.  *See Ostad*, 327

F.3d at 881; *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)

(equating the court's analysis under Rule 50 to its analysis under Rule 56).  As the court

has discussed, the parties litigated this unwieldy case by stipulating to the number of

VHT Photos at issue and certain pertinent characteristics of each VHT Photo.  (*See* Ex.

512; Ex. 600 ¶ 12.)  Those stipulated categories and characteristics are a part of the

evidentiary record.  (*See* Ex. 512.)  To support the jury's entire verdict, however, VHT

cannot merely show legally sufficient evidence that Zillow took volitional conduct

toward some subset of the VHT Photos.  *See Giganews*, 847 F.3d at 666.  Rather, VHT

must show substantial evidence of volitional conduct as to each category of the VHT

---

[12] (*See, e.g.*, JNOV Resp. at 5 n.5 ("Zillow's actions with respect to Digs greatly exceed the conduct of web hosts in other cases where courts found insufficient volitional conduct for direct liability."), 5:25-6:1 ("Unlike the *Giganews* site (or similar passive websites), Zillow exercised significant control over the content available to be added to Digs . . . ." (internal footnote omitted)), 6:9-7:1 ("Zillow also exercised significant control over many other aspects of the Digs platform . . . . While some of those volitional acts apply only to searchable images, many others do not, and regardless of that distinction, Zillow's design, launch, and operation of Digs are a far cry from Perfect 10's passive activities in *Giganews*.").)

[13] (*See, e.g.*, JNOV Resp. at 7:2-16 (citing 12/23/16 Order at 31:3-32:11) ("As this Court expressly recognized in denying Zillow's motion for summary judgment with respect to Digs, website hosts like Zillow cannot evade liability for direct infringement merely because some portions of its services are automated or user generated; if the host itself engages in at least 'some' volitional act related to the infringement, it can be held directly liable."), 9:3-5 (citing 12/23/16 Order at 31:3-32:11) ("Finally, with respect to the display right, the undisputed evidence established that Zillow engaged in multiple volitional acts, as this Court recognized on summary judgment.").)

Photos that Zillow challenges. *Weaving*, 763 F.3d at 1111; *see Giganews*, 847 F.3d at 666; *Landes Constr.*, 833 F.2d at 1371. Of course, that evidence may overlap to the extent reasonable inference permits. *Ostad*, 327 F.3d at 881.

In its summary judgment order, the court concluded that "several Digs-specific actions," including design moderation and implicit digs, "cross the line into volitional conduct." (12/23/16 Order at 31:3-4.) The summary judgment record and briefing did not permit for further parsing of the VHT Photos.[14] The court accordingly denied summary judgment as to all of the Digs-related images—the VHT Photos, as defined herein—and granted summary judgment in Zillow's favor as to whether Zillow infringed the images unrelated to Digs. (12/23/16 Order at 32:12-20); *see also supra* n.2. At various points, VHT apparently seeks to impute to all of the VHT Photos the court's summary judgment rulings regarding certain conduct that a reasonable factfinder could deem a volitional act. (*See, e.g.*, JNOV Resp. at 7:2-16.) Again, part of VHT's burden at trial was to present legally sufficient evidence that Zillow caused the copying of each VHT Photo. *See Giganews*, 847 F.3d at 666. Where VHT failed to do so, the court's summary judgment rulings are of no moment.

Having clarified the parties' respective burdens and the impact of the court's previous rulings, the court analyzes each category of the VHT Photos that Zillow challenges in its motion.

---

[14] Indeed, the parties did not agree regarding how many images fell into each subcategory until the middle of trial. (*Compare* Pretrial Order at 2:7-3:2, *and* Prelim. JIs (Dkt. # 245) at 4:10-11, *with* Summ. Image SS (Dkt. # 256-1) at 1 (submitted on January 30, 2017), *and* Final JIs at 20:2-3, *and* Ex. 600 ¶ 9.)

*b.  Undisplayed VHT Photos*

Zillow first argues that it did not cause the copying of—and therefore did not directly infringe—the 22,109 undisplayed VHT Photos.  (JNOV Mot. at 7:17-10:11; 2/7/17 Trial Tr. at 91:11-92:8; Ex. A-490; Ex. 512 at Column AW; Summ. Image SS.) VHT responds by identifying Zillow's supposedly volitional—and therefore legally sufficient—conduct.  (JNOV Resp. at 4:8-10:11.)  VHT pursued direct liability claims at trial for infringement of its reproduction right; right to prepare derivative works, also known as the adaptation right; distribution right; and display right.  (*See* Pretrial Ord. at 2:7-10; Final JIs at 19:2-8); 17 U.S.C. § 106(1)-(3), (5).  The court addresses the sufficiency of the evidence presented at trial as to each of these four protected rights.

i.  Reproduction Right

VHT points to several pieces of evidence in support of its claim that Zillow directly infringed the reproduction right in the undisplayed VHT Photos.  (JNOV Resp. at 7:16-8:9.)  For the following reasons, the court rejects VHT's contention that this evidence is legally sufficient.

VHT first points out that Zillow "made the decision to create 16 Digs-specific copies of each photo added to Digs and wrote the algorithms to cause those copies to be created."  (*Id.* at 7:21-24; *see also* 2/2/17 Trial Tr. at 86:8-88:17, 109:12-111:11; Ex. 302.)  The number of copies Zillow designed its systems to create has no bearing on causation.  *See Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1369 (N.D. Cal. 1995).  Rather, the system that created 16 Digs-specific copies of whatever image the user selected is analogous to a copy machine that produces

16 different-sized images each time a user places an image in it and hits the copy button. *See id.* ("Netcom's act of designing or implementing a system that automatically and uniformly creates temporary copies of all data sent through it is not unlike that of the owner of a copying machine who lets the public make copies with it.  Although some of the people using the machine may directly infringe copyrights, courts analyze the machine owner's liability under the rubric of contributory infringement, not direct infringement." (internal footnote omitted)); *see also Giganews*, 847 F.3d at 670 (agreeing with and adopting this reasoning); *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004) (concluding that to hold an entity liable for direct infringement, "something more must be shown than mere ownership of a machine used by others to make illegal copies").  The number and size of the copies is irrelevant to what entity or entities—Zillow, its users, or some combination—proximately caused the infringement of VHT's reproduction right.  *See Giganews*, 847 F.3d at 666.

VHT also points to evidence that Zillow "engaged in volitional conduct when it decided to change course and allow reproduction of Digs-specific copies of so-called deciduous images."  (JNOV Resp. at 8:6-8; 2/2/17 Trial Tr. at 81:22-86:7, 118:16-119:24; 2/7/17 Trial Tr. at 74:20-75:5, 104:16-25, 106:5-11; Ex. 30; Ex. 84; Ex. 106.)  The evidence VHT cites indeed shows that Zillow "change[d] course and allow[ed] reproduction" of deciduous images.  (JNOV Resp. at 8:7.)  Similarly, a copy shop owner "allow[s] reproduction" (*id.*), but without more, the copy shop owner does not thereby proximately cause the copyright infringement undertaken by his customers, *see Netcom*, 907 F. Supp. at 1369; *CoStar*, 373 F.3d at 550; *Cartoon Network LP, LLLP v. CSC*

*Holdings, Inc.*, 536 F.3d 121, 132 (2d Cir. 2008) [hereinafter, *Cablevision*]; *Aereo*, 134 S. Ct. at 2513 (Scalia, J., dissenting). This evidence too fails to advance VHT's theory that Zillow directly infringed VHT's reproduction right.

Finally, VHT identifies implicit digs, a process Zillow performed on 1,029 VHT Photos. (JNOV Resp. at 8:3-6; 2/2/17 Trial Tr. at 115:1-117:18; Ex. 512 at Col. AE.) VHT contends it would be "illogical" to conclude that users who fail to complete their dig "engaged in the volitional act that caused the implicit Dig copies to be created." (JNOV Resp. at 8 n.6.) In this context, however, volition does not refer to acts of willing, choosing, or deciding. *See Giganews*, 847 F.3d at 666 (citing *Volition*, Webster's Third New International Dictionary (1986)). Rather, the volitional-conduct doctrine discerns whether a defendant-host's actions are "sufficiently proximate to the copying to displace [or join] the customer as the person who 'makes' the copies." *Cablevision*, 536 F.3d at 132; *see also Aereo*, 134 S. Ct. at 2505-06 (making clear that multiple parties may proximately cause direct infringement); (JNOV Resp. at 4:8-5:4 (arguing that *Giganews* did not adopt an "immediate cause" requirement).) Although the user's interaction with an implicitly dug image is slightly different than the user's interaction with a dug image, no evidence suggests that Zillow takes any action toward implicitly dug images that it does not take toward every image that a user follows through in posting to Digs. (*See* JNOV Resp. at 8:3-6.) Rather, Zillow's system, including implicit digs, "responds automatically to users' input . . . without intervening conduct by" Zillow. *CoStar*, 373 F.3d at 550; *see also Giganews*, 847 F.3d at 670. There is thus no legally relevant distinction between implicit digs and Digs's regular functionality.

Having reviewed the evidence and legal authority that VHT contends supports the liability verdict on VHT's claim for direct infringement of its reproduction right in the undisplayed VHT Photos, the court concludes that a rational juror could not have found in favor of VHT. The court next turns to the adaptation right.

ii. Adaptation (Derivative Works) Right

For similar reasons, the court concludes VHT failed to present sufficient evidence that Zillow caused a violation of VHT's adaptation right. In addressing that right, the parties rely on the same evidence to support their arguments—Jason Gurney's testimony regarding how Zillow's automated systems create one or more scaled copies of every image that users add to Digs. (*See* JNOV Mot. at 9:13-18 (citing 2/2/17 Trial Tr. at 109:12-111:11); JNOV Resp. at 8:10-13 (same).) In addition, VHT points to an image sizing chart that shows the precise image sizes that Zillow's system automatically renders. (JNOV Resp. at 8:13 (citing Ex. 302).) As the court explained in addressing the reproduction right, *see supra* § III.A.2.b.i., Zillow's systems function identically for the millions of noninfringing photos uploaded daily and the comparatively few infringing VHT Photos that Zillow's users uploaded (2/2/17 Trial Tr. at 109:12-22); *see CoStar*, 373 F.3d at 550 ("[T]o establish direct liability . . . , something more must be shown than mere ownership of a machine used by others to make illegal copies. There must be actual infringing conduct with a nexus sufficiently close and causal to the illegal copying that one could conclude that the machine owner himself trespassed on the exclusive domain of the copyright owner."). The jury did not hear substantial evidence of "intervening conduct" by Zillow that amounts to more than "mere ownership of a machine used by

others to make illegal copies." *CoStar*, 373 F.3d at 550. Accordingly, the court concludes that VHT presented insufficient evidence at trial from which a reasonable juror could conclude that Zillow caused a violation of VHT's adaptation right in the undisplayed VHT Photos.

### iii. Display Right

The court also grants Zillow's motion as it pertains to the undisplayed VHT Photos violating the display right. At trial, VHT and Zillow stipulated that the spreadsheet of VHT Photos "summarizes relevant data about each image, including . . . certain facts relating to Zillow's use of the image on Digs." (Ex. 600 ¶ 12.) They also agreed that the jury "must treat every fact in th[e] spreadsheet as proven." (*Id.*; *see also id.* at 1 (requiring the jury to treat all of the facts in Exhibit 600 as "having been proved").) The spreadsheet includes a column entitled "Displayed" and 28,125 rows of either "Y[es]" or "N[o]" values. (Ex. 512 at Column AW.) That "Displayed" column and the corresponding yes-or-no values indicate that 22,109 VHT Photos were not displayed. (*Id.*; *see also* Ex. A-490; Summ. Image SS at 1.)

VHT now argues that despite the parties' stipulation, it presented adequate evidence at trial for the jury to conclude that Zillow in fact displayed every undisplayed VHT Photo. (JNOV Resp. at 11:5-14:13.) The incoherence of this statement belies its inconsistency with the parties' agreement. No amount of evidence or speculation by VHT could persuade a reasonable juror to reject a fact that he or she "must treat . . . as proven." (Ex. 600 ¶ 12; *cf.* JNOV Resp. at 11:13-12:6 & n.9.) The court accordingly

//

rejects the majority of VHT's arguments as to the display right as inconsistent with its stipulation.

Only one of VHT's arguments is arguably consistent with the jury treating as proven that the 22,109 undisplayed VHT Photos were, in fact, displayed. VHT argues that "web site operators violate the display right by making images available for public display on websites." (JNOV Resp. at 12:7-8.) In other words, VHT argues that the jury could reasonably conclude that Zillow violated VHT's display right by merely making the VHT Photos available on Digs. (*Id.* at 12:7-13:6.)

This theory of liability relies on the "making available" right, which is a corollary to the rights enumerated in Section 106 of the Copyright Act. *See generally U.S. Copyright Office, The Making Available Right in the U.S.* (2016) [hereinafter, "*The Making Available Right*"], *available at* https://www.copyright.gov/docs/making_available/ (last accessed June 20, 2017) (analyzing the impact of several international treaties on United States copyright law, and concluding that United States law fully protects the making available right). The Copyright Office interprets Section 106(5) of the Copyright Act to confer "an exclusive right to offer the public access to images on demand." *The Making Available Right* at 48; *see also id.* at 81 ("[T]he Copyright Office concludes that U.S. law provides the full scope of protection required by the making available obligation."). This interpretation focuses liability for direct copyright infringement on the provision of access rather than actual delivery. *Id.* at 1. In other words, under the Copyright Office's reading, the making available right attaches liability for violating the display right when a defendant makes an image available to the

public rather than when the public accesses the image. *Id.* at 47-48 ("It is well established that this right protects against the unauthorized uploading of a copyrighted image for display to the public online. . . . [B]ased on the above analysis of the Clause, the Copyright Office concludes that the right is properly construed to encompass the *offering* to transmit such an image."). By implication, liability does not hinge on the actual display of the image. *Id.*

VHT's proposed jury instruction on the display right did not include this corollary theory of liability. (Agreed Prop. JIs (Dkt. # 224) at 20:1-24.) Accordingly, the court's final jury instructions did not instruct on the making available theory. (Final JIs at 19:8.) VHT did not take exception to the court's instruction on direct infringement of the display right (2/7/17 Trial Tr. at 226:24-229:19) or take exception to any proposed instructions that the court declined to issue (*see id.* at 229:23-25). A legal theory—no matter how theoretically viable—cannot sustain a verdict where the plaintiff never presented the theory to the jury. *See France Telecom S.A. v. Marvell Semiconductor, Inc.*, 82 F. Supp. 3d 987, 994-95 (N.D. Cal. 2015) (collecting cases). For this reason, the jury had no rational basis on which to conclude that images they had been directed to treat as undisplayed were, in fact, displayed. *See Ostad*, 327 F.3d at 881.

Even ignoring that VHT never presented this theory to the jury and assuming the Copyright Office's expansive interpretation of the making available right is legally sound, the volitional conduct requirement precludes Zillow from being held directly liable for infringing the display right in the substantial majority of the undisplayed VHT

//

Photos.[15]  Zillow does not dispute that the undisplayed VHT Photos were made available

on Digs (*see* Ex. 600 ¶ 12; Ex. 512), but the proximate cause element raises the

question—and requires evidence—of who made those images available, *see Giganews*,

847 F.3d at 666-67.  In the internet context, a passive host whose systems merely

automatically store information, and whose users select the images to be copied, stored,

and transmitted, does not proximately cause copying and cannot be held directly liable

for infringing the display right.  *See, e.g.*, *Giganews*, 847 F.3d at 668 (quoting *CoStar*,

373 F.3d at 555) (affirming the dismissal of the plaintiff's display rights-based direct

infringement claims because the evidence showed "only that [the defendant]'s actions

were akin to 'passively storing material at the direction of users in order to make that

material available to other users upon request,' or automatically copying, storing, and

transmitting materials upon instigation by others").  The court has concluded that VHT

presented insufficient evidence that Zillow proximately caused violations of VHT's

reproduction and adaptation rights in the undisplayed VHT Photos, *see supra*

§§ III.A.2.b.i-ii., and VHT identifies no further evidence that Zillow proximately caused

the undisplayed VHT Photos to be made available for display (*see* JNOV Resp. at

12:7-13:4); *but see supra* n.15.  Accordingly, the court concludes that there was

//

//

---

[15] The exception to this substantial majority is the 58 undisplayed VHT Photos that Zillow included in the launch set, which images Zillow moderated extensively.  (*See* Ex. 512 at Columns AD, AW; 1/27/17 Trial Tr. at 195:6-196:13; 12/23/16 Order at 31:15-32:2 (concluding based on the summary judgment record that some of Zillow's moderation constituted volitional conduct).)

1  insufficient evidence for a reasonable juror to find that Zillow infringed VHT's display

2  right in the undisplayed VHT Photos.[16]

3          iv. Distribution Right

4          Finally, the court concludes that the evidence does not support a conclusion that

5  Zillow violated VHT's distribution right in the undisplayed VHT Photos.  Zillow argues

6  there is no evidence the VHT Photos that Zillow merely stored on its servers were ever

7  distributed, and that those images cannot be "deemed distributed."[17]  (JNOV Mot. at

8  13:8-25.)  VHT does not dispute the absence of direct evidence that Zillow violated its

9  distribution rights in the undisplayed VHT Photos.  (*See generally* JNOV Resp.)  VHT

10  resists Zillow's argument regarding the deemed distribution rule, but only in a three-

11  sentence footnote located in the section of its brief pertaining to the display and

12  adaptation rights.  (*Id.* at 12 n.10.)  In that footnote, VHT posits that "the deemed

13  distribution rule is an additional basis to support the verdict of direct infringement of all

14  28,125 VHT Photos."  (*Id.* (citing *Amazon.com*, 508 F.3d at 1162).)

15  //

16

17  [16] VHT challenges whether Zillow preserved its objection to VHT's making available
    theory.  (JNOV Resp. at 2:9-11.)  The court bases its ruling on the parties' stipulation, the jury

18  instructions, and the insufficient evidence of proximate cause—an argument Zillow undisputedly
    preserved (*see* 2/3/17 Trial Tr. at 96:15-98:8)—and therefore the court need not determine
    whether Zillow preserved its objection to the making available theory.  The court notes,

19  however, that Zillow responded to VHT's motion for judgment as a matter of law by objecting to
    VHT's theory that Zillow can be held liable for making available the VHT Photos.  (2/8/17 Trial

20  Tr. at 114:6-15.)

21  [17] The deemed distribution rule holds that "the owner of a collection of works who makes
    them available to the public may be deemed to have distributed copies of the works."  *Perfect 10,*

22  *Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1162 (9th Cir. 2007) (citing *Hotaling v. Church of*
    *Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 203 (4th Cir. 1997)).

Zillow contends that the court should not consider the deemed distribution rule because VHT failed to properly disclose it during the course of litigation. (*See* JNOV Mot. at 13:9-25.) The court agrees. VHT failed to raise the deemed distribution theory of liability in its interrogatory responses. (Crosby Decl. (Dkt. # 133) ¶ 11, Ex. 10 at 7:14-23 (attaching VHT's interrogatory responses, in which VHT alleges that Zillow infringed VHT's distribution right by including VHT Photos in promotional emails and blog posts); *see also* 1/19/17 Order (Dkt. # 236) at 2:16-6:14 (excluding another theory of infringement on the basis that VHT failed to adequately identify the theory in its interrogatory responses or otherwise).) Moreover, in its briefing, VHT inadequately raised the theory in a conclusory footnote. *See First Advantage*, 569 F. Supp. 2d at 935 n.1; *In re Katz*, 2009 WL 8636055, at *1; *supra* n.10; (*see also* 2/8/17 Trial Tr. at 130:19-21 (arguing in closing only that the distribution right applies to "the e-mails and using the photos in e-mails and in blog posts").) Accordingly, the court rejects the deemed distribution theory and concludes that VHT failed to present substantial evidence that Zillow directly infringed VHT's distribution right in the undisplayed VHT Photos.

v. Judicial Admission Argument

In summary, VHT presented insufficient evidence for a reasonable juror to hold Zillow liable for directly infringing any of VHT's exclusive rights in the 22,109 undisplayed VHT Photos. Separately, VHT argues that Zillow admitted in its closing argument that Zillow had directly infringed all 5,653 searchable VHT Photos, some of which are counted among the 22,109 undisplayed VHT Photos. (JNOV Resp. at 14:14-16:16 (citing 2/8/17 Trial Tr. at 182:2-17, 186:8-15).) The court disagrees.

"In order to qualify as judicial admissions, an attorney's statements must be deliberate, clear[,] and unambiguous." *MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 340 (6th Cir. 1997); *see also Jonibach Mgmt. Tr. v. Wartburg Enter., Inc.*, 750 F.3d 486, 491 n.2 (5th Cir. 2014). An attorney's statement in closing argument can constitute a binding judicial admission. *United States v. Bentson*, 947 F.3d 1353, 1356 (9th Cir. 1991); *MKB Constructors v. Am. Zurich Ins. Co.*, No. C13-0611JLR, 2015 WL 1188533, at *23 (W.D. Wash. Mar. 16, 2015), *appeal docketed*, No. 15-35291 (9th Cir. Apr. 15, 2015). However, the Ninth Circuit differentiates between a judicial admission and a "concession for the sake of argument." *Bentson*, 947 F.3d at 1356.

Here, Zillow recommended in closing that the jury find Zillow infringed the 5,683 searchable VHT Photos. (2/8/17 Trial Tr. at 182:2-16, 186:3-15.) VHT characterizes this recommendation as "an apparent strategic effort to convince the jury to (a) find that Zillow had not infringed the board or private images; and (b) accept [Zillow's] implied license defense." (JNOV Resp. at 15:7-8); *see Bentson*, 947 F.3d at 1356 (differentiating between a judicial admission and a concession for the sake of argument). Moreover, Zillow expressly preserved its argument that it was entitled to judgment as a matter of law as to direct infringement based on insufficient evidence of volitional conduct. (2/3/17 Trial Tr. at 96:15-18; *see also* Rule 50(a) Memo (Dkt. # 264) (providing written briefing on volitional conduct and several other grounds underlying Zillow's oral Rule 50(a) motions); *cf. MKB Constructors*, 2015 WL 1188533, at *23 (concluding that the party opposing a Rule 50 motion judicially admitted facts undermining the jury's verdict in its closing statement, and accordingly finding clear error in the jury's verdict). In sum,

Zillow's "recommended answer" to the jury (2/8/17 Trial Tr. at 182:6) was not an unambiguous or clear admission, and its preservation of the insufficiency of VHT's evidence on the subject (*see* 2/3/17 Trial Tr. at 96:15-18) belies any suggestion of deliberateness, *see MacDonald*, 110 F.3d at 340. The court therefore rejects VHT's argument that Zillow's statement in closing argument constitutes a judicial admission.

Having concluded that VHT presented insufficient evidence that Zillow directly infringed on any of its exclusive rights in any of the 22,109 undisplayed VHT Photos, the court grants Zillow judgment notwithstanding the verdict regarding the direct infringement verdict as to those images. The court now turns to the sufficiency of the evidence of direct liability regarding the remaining VHT Photos—the displayed VHT Photos.

### c. *Non-Searchable VHT Photos*

Of the 6,016 VHT Photos that were displayed, 2,094 were non-searchable. (Ex. 512 at Column N; 2/7/17 Trial Tr. at 92:10-93:14; Ex. A-491.) Zillow argues that it is entitled to judgment notwithstanding the verdict on the 2,094 non-searchable, displayed VHT Photos because "they were selected and saved to Digs by users and never added to the searchable set by Zillow's moderators."[18] (JNOV Mot. at 10:23-11:1.) Zillow reasons that the jury therefore had insufficient evidence to conclude that Zillow

//

---

[18] Zillow also distributed one of the 2,094 non-searchable, displayed VHT Photos in a promotional email. (*See* Ex. 512 at Row 17744; Ex. 293.) Zillow argues that VHT also presented insufficient evidence that Zillow proximately caused the dissemination of the promotional email that contained that VHT Photo. (JNOV Mot. at 13:9-12; *see also* Ex. 293.) The court addresses that argument below. *See infra* §§ III.A.2.e., III.A.6.

proximately caused direct infringement of the non-searchable VHT Photos. (*Id.* at

11:1-16.) The court agrees.

Above, the court recounts the evidence of Zillow's volitional conduct toward the

undisplayed VHT Photos and concludes that it is not substantial. *See supra* § III.A.2.b.

However, Zillow treats the non-searchable, displayed VHT Photos differently by

subjecting them to moderation. Zillow designed its systems to place evergreen,

non-searchable, displayed VHT Photos in a queue for potential moderation. (1/27/17

Trial Tr. at 214:11-215:1.) First, an automated moderation filters out images that are

particularly blurry or tilted. (2/7/17 Trial Tr. at 78:17-79:1.) Any images that pass the

automated moderation go to a queue for human moderation. (*Id.*) If the human

moderator finds the image of sufficient quality, he or she promotes it to the searchable set

of images. (*Id.*) Human moderators also have the discretion to remove images from

Digs. (*Id.* at 108:7-109:2.) Because of the volume of the evergreen images on Digs,

however, Zillow's moderators did not review all of those images. (1/27/17 Trial Tr. at

214:11-215:1.)

VHT contends that a jury could have concluded that Zillow "caused the images to

be displayed," *Giganews*, 847 F.3d at 668, by subjecting the non-searchable VHT Photos

to the potential for moderation (JNOV Resp. at 9:3-20). VHT points to the court's

previous analysis of Digs's moderation functionality, which in part led the court to deny

Zillow's motion for summary judgment. (*Id.* (citing 12/23/16 Order at 31:15-32:2).)

Consistent with the court's previous analysis, however, merely subjecting the images to

the potential for moderation does not constitute volitional conduct. (*See* 12/23/16 Order

at 31-32 (discussing the actual moderation that Digs moderators perform)); *CoStar*, 373 F.3d at 547, 550-51 (identifying the cursory review for content and obvious infringement that the defendant performed and rejecting the argument that the review constituted sufficiently volitional conduct to impose direct infringement liability). Including user-selected images in a moderation queue does not constitute volitional conduct sufficient to transform Zillow from a "passive host" to a "direct[] cause" of the display of VHT's images. *Giganews*, 847 F.3d at 668; *see also CoStar*, 373 F.3d at 550-51. The court therefore concludes as a matter of law that Zillow did not directly infringe the 2,094 non-searchable, displayed VHT Photos through Digs.

### d. Searchable VHT Photos that Lack Evidence of Display

Zillow next seeks judgment notwithstanding the verdict regarding 3,438 of the 3,921 displayed, searchable VHT Photos. (JNOV Mot. at 12:27-13:8.) Zillow contends that VHT presented insufficient evidence that Zillow's conduct—namely, moderation of the images—caused these 3,438 images to be displayed.[19] (*Id.*) Rather, Zillow argues, the evidence shows only that the images appeared on users' boards, "where visitors could view them without Zillow having influenced them to do so in any way through its moderation, indexing, and tagging process." (*Id.*) The court rejects Zillow's argument.

Ben Schielke, Zillow's program manager, testified that users generally interacted with Digs by "searching through the images that were in the searchable set." (2/7/17

//

---

[19] The remaining 483 displayed, searchable VHT Photos were "searchable-only," and Zillow concedes that VHT presented sufficient evidence to uphold the jury's direct infringement verdict as to those images. (JNOV Mot. at 13:3-5 & n.8.)

Trial Tr. at 70:24-71:2.)  Furthermore, the spreadsheet of stipulated image characteristics

shows that to the extent page views were trackable, searchable VHT Photos received

disproportionately more page views than non-searchable or undisplayed VHT Photos.

(*See* Ex. 512 at Columns N, Q, R.)  Based on Mr. Schielke's testimony regarding the

most common way users interacted with Digs and the disproportionate frequency with

which users viewed searchable images, the jury could have reasonably concluded that

users accessed those images through Digs's search function.  *See Ostad*, 327 F.3d at 881.

To the extent users accessed the images through Digs's search function, the jury could

have reasonably concluded that Zillow's moderation efforts, which rendered those

images searchable, proximately caused the copying.  *See Giganews*, 847 F.3d at 666.

Accordingly, the court denies Zillow's motion as to the 3,438 displayed, searchable VHT

Photos.[20]

### e.  *VHT Photos Used in an Email*

Finally, Zillow challenges whether the jury heard substantial evidence that Zillow

took volitional conduct toward the VHT Photo that it sent in an email.  (JNOV Mot. at

---

[20] Zillow also argues on multiple grounds that tagging images with product bubbles
cannot be deemed to directly infringe on VHT's adaptation right.  (JNOV Mot. at 9:17-10:4 &
n.3; *see also* JNOV Resp. at 8:13-15, 10:15-11:11:4 & n.8; JNOV Reply at 5:19-21 & n.9.)  Only
searchable VHT Photos were tagged with product bubbles.  (2/7/17 Trial Tr. at 79:10-25,
80:16-82:7.)  Because the court concludes on other grounds that VHT presented sufficient
evidence for the jury to reasonably conclude that Zillow directly infringed one or more of VHT's
exclusive rights in the displayed, searchable VHT Photos, the court declines to address Zillow's
additional arguments.

VHT contends that the court's review of Zillow's argument regarding the 3,438
displayed, searchable VHT Photos should be for plain error because in VHT's view, Zillow
failed to properly preserve the argument.  (JNOV Resp. at 2:5-18 (citing *GoDaddy*, 581 F.3d at
961-62).)  Because the stricter review for which VHT advocates would not impact the court's
conclusion regarding those images, the court declines to decide this question.

13:8-12; *see* Ex. 512 at Row 17,744, Column AV; Ex. 293); *see also supra* n.18.  Mr. Schielke testified that the images Zillow uses in its promotional emails are based on "the top-ranked images from the week that were dug by users." (2/7/17 Trial Tr. at 109:21-111:6.)  In that sense, "[t]he user data drives the contents of the e-mail[s]." (*Id.* at 111:9-10.)  However, Mr. Schielke conceded that Zillow "send[s] the e-mail[s]." (*Id.* at 111:9.)  Furthermore, Zillow limits the field of images that may be used in the email to "great" images, as classified by Zillow's moderators. (*Id.* at 111:11-13.)  Based on this evidence of Zillow's actions, a juror could have reasonably concluded that Zillow's email constitutes "'copying by [Zillow].'"  *Giganews*, 847 F.3d at 670 (citing *Fox Broad. Co. v. Dish Network, L.L.C.*, 747 F.3d 1060, 1067 (9th Cir. 2014)).  Accordingly, the court denies Zillow's motion as to the direct infringement verdict on the one emailed VHT Photo.[21]

   3.  Indirect Infringement

   The court has concluded that VHT presented insufficient evidence for a rational juror to find Zillow liable for direct infringement of 22,109 undisplayed VHT Photos, *see supra* § III.A.2.b.; and 2,093 non-searchable, displayed VHT Photos, *see supra* §§ III.A.2.c., e.[22]  The verdict form required the jury to make its findings as to direct

_____

   [21] Zillow does not address the VHT Photo it used only in a blog post (*see* JNOV Mot. at 12:8-12), and the direct infringement verdict therefore also stands as to that VHT Photo (*see* Ex. 512 at Row 28,127, Column AV; Ex. 243).

   [22] Although there were 2,094 non-searchable, displayed VHT Photos in the record at trial (*see* Ex. A-491), Zillow also distributed one of those images in an email (*see* Ex. 512 at Row 17744); *supra* n.18, and the court concluded above that the evidence at trial supports a finding of direct infringement as to that image, *see supra* § III.A.2.e.  Accordingly, the court analyzes the

infringement first and exclude from its consideration of indirect infringement any VHT Photos that it found Zillow directly infringed. (Verdict Form at 1:17-3:10.) Because the jury found Zillow directly infringed all 28,125 VHT Photos, the jury did not make an explicit finding as to how many images Zillow indirectly infringed. (*Id.* at 2:1-3:10.) Zillow argues that there was insufficient evidence to find Zillow secondarily liable for infringing any of the 28,125 VHT Photos besides the 131 images that were created on Digs after VHT first specifically identified the image. (JNOV Mot. at 14:1-20:6.) The court addresses each theory of secondary liability in turn.

### a. Contributory Infringement

"[O]ne contributorily infringes when he (1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007); *see also Giganews*, 847 F.3d at 670. The Ninth Circuit and the Supreme Court "have announced various formulations" of this "same basic test" for contributory liability. *Visa Int'l*, 494 F.3d at 795 (citing *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005); *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701 (9th Cir. 2007), *amended and superseded on denial of rehearing en banc by* 508 F.3d 1146;[23] *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004,

//

---

sufficiency of the evidence of indirect infringement only as to the 2,093 non-searchable, displayed VHT Photos that were not distributed in an email.

[23] The remainder of the court's citations to decisions in the *Perfect 10 v. Amazon.com* litigation are to the Ninth Circuit's amended opinion. *See Amazon.com*, 508 F.3d 1146.

1019 (9th Cir. 2001); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996)). In synthesizing those formulations, the Ninth Circuit "reviews the details of the actual 'cases and controversies' . . . in each of the test-defining cases and the actual holdings in those cases" to determine whether the factual scenario presented in the case before it is analogous. *Id.*

VHT presented both material contribution and inducement theories of contributory infringement to the jury. (*See* Pretrial Order at 2:12-13; Final JIs at 22:9-22.) Zillow challenges the sufficiency of the evidence as to each theory. (*See* JNOV Mot. at 14:10-18:22.)

i. Material Contribution

Zillow argues that besides the 131 VHT Photos that were created on Digs after VHT first specifically identified the image (*see* JNOV Mot. at 17:6-10 & nn.9-10; Ex. 512 at Column AS),[24] the evidence permitted only the conclusion that simple measures to remove infringing material were unavailable (JNOV Mot. at 16:4-17:13). According to Zillow, VHT therefore failed to meet its burden as to one of the elements of its contributory infringement by material contribution claim, and that claim fails. (*Id.*) VHT responds that substantial evidence supports the conclusion that simple measures were

---

[24] The court has granted Zillow judgment notwithstanding the verdict on VHT's direct infringement claims as to 114 of the 131 VHT Photos that were created on Digs after VHT first specifically identified the image. *See supra* §§ III.A.2.b-c.; (Ex. 512 at Columns N, AS, AW.) The jury made no finding as to how many or which VHT Photos Zillow indirectly infringed (*see* Verdict Form at 2:5-3:7), so there is no secondary liability verdict as to those 114 VHT Photos. As to the remaining 17 VHT Photos that were created on Digs after VHT first specifically identified the image, the jury's verdict of direct infringement stands and the court therefore need not evaluate the sufficiency of the evidence as to the indirect infringement claims directed toward those images.

available, and at any rate, VHT produced sufficient evidence to show material contribution in other ways that the Ninth Circuit recognizes. (JNOV Resp. at 18:12-20:6.)

One can prove contributory infringement by material contribution by showing "that a computer system operator . . . 'has *actual* knowledge that *specific* infringing material is available using its system,' *Napster*, 239 F.3d at 1022, and can 'take simple measures to prevent further damage' to copyrighted works, *Netcom*, 907 F. Supp. at 1375, yet continues to provide access to infringing works," *Amazon.com, Inc.*, 508 F.3d at 1172; *see also Giganews*, 847 F.3d at 671. VHT suggests that developing or licensing technological tools to identify and remove infringing images were simple measures available to Zillow.

VHT identifies testimony from Alex Kutner, the development manager for the Digs software engineering team. (2/2/17 Trial Tr. at 81:12-21.) Mr. Kutner indicated that he could create a tool capable of removing thousands of images in approximately 10 minutes. (*Id.* at 100:13-102:5.) Contrary to VHT's argument (JNOV Resp. at 19:1-5), however, Mr. Kutner did not indicate or suggest that he could create that tool in 16 hours. Rather, he testified that "the 16 hours were predicated on additional work that preceded them." (2/2/17 Trial Tr. at 100:20-22, 101:9-11.) Moreover, Mr. Kutner testified that the removal tool would be ineffective unless Zillow first obtained the ability to identify VHT's images. (*Id.* at 102:10-15.)

VHT argues that developing or licensing watermark-identifying software constituted a simple method by which Zillow could have identified the VHT Photos.

(JNOV Resp. at 19:5-13.)  The evidence also fails to support this position.  Jason Gurney testified that developing technology capable of recognizing and categorizing images according to visual watermarks—which do not appear on all images—would require approximately 72 developer weeks.  (2/2/17 Trial Tr. at 126:17-127:3.)  Mr. Bosch, VHT's vice president of product management (1/27/17 Trial Tr. at 74:5-9), provided the only relevant testimony regarding licensing such technology (JNOV Resp. at 19:5-8 (citing 1/27/17 Trial Tr. at 97)).  In response to an inquiry whether he has "done any research regarding software that can identify watermarks," Mr. Bosch indicated, "I have." (1/27/17 Trial Tr. at 97:1-3.)  Mr. Bosch concluded this brief testimony regarding watermark-detection software by describing how he conducted that research:  "Really just searching, searching around.  You know, we had previously looked at some software that identified contents of photographs.  So if it has a dining room or a table, part of that can also detect the watermark as well." (*Id.* at 97:5-8.)  Granting all reasonable inferences to VHT, *Ostad*, 327 F.3d at 881, Mr. Bosch's testimony establishes only that watermark-identifying software exists.  There is no reasonable basis to infer based on the existence of such software that it was available and simple for Zillow to use, *see id.*, particularly in light of the infrequency with which VHT watermarked its images during the relevant period (1/27/17 Trial Tr. at 97:18-98:10, 106:12-107:16).  Accordingly, the court concludes that Mr. Kutner's and Mr. Bosch's testimony taken together do not support Zillow's capacity to take simple measures to remove the VHT Photos.

In summary, like in *Giganews*, VHT's notices to Zillow failed to uniquely identify infringing images (*compare* 2/2/17 Trial Tr. at 102:10-15, 125:13-126:8), *with Giganews*,

847 F.3d at 671, and Zillow's only manner of identifying those images was onerous (*compare* 2/2/17 Trial Tr. at 126:17-127:3), *with Giganews*, 847 F.3d at 671.  Mr. Bosch's cursory testimony constitutes a mere scintilla of evidence and does not permit the reasonable inference that simple alternative methods of identifying the infringing images existed.  *See Chisholm Bros. Farm Equip. Co. v. Int'l Harvester Co.*, 498 F.2d 1137, 1140 (9th Cir. 1974), *cert denied* 419 U.S. 1023 (1974).  The court therefore concludes that VHT provided insufficient evidence for a reasonable juror to conclude that there were "simple measures available that [Zillow] failed to take to remove [VHT]'s works" from Digs.  *Giganews*, 847 F.3d at 671.

In the alternative to the "simple measures" theory, VHT argues that it proved, and the law supports, theories of contributory infringement by material contribution other than the "simple measures" test.  (JNOV Resp. at 19:14-20:4.)  Specifically, VHT contends that it adduced sufficient evidence that Zillow intentionally encouraged infringement through specific acts, *see Amazon.com*, 508 F.3d at 1170 & n.11, provided facilities that enable infringement, *Fonovisa*, 76 F.3d at 264, and provided server space, *see Louis Vuitton Malletier S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 943-44 (9th Cir. 2011).  Over a similar objection at trial (*see* 2/7/17 Trial Tr. at 227:3-12; *but see* Disp. Prop. JIs (Dkt. # 225) at 37:1-23 (failing to raise *Louis Vuitton*, *Amazon.com*, or any alternative theories of proving material contribution in VHT's proposed jury instruction on contributory infringement)), the court rejected VHT's alternative theories of material contribution.  Instead, the court instructed the jury that to find material contribution, it must find Zillow was "able to take simple measures to prevent further damages to

copyrighted works yet continued to provide access to infringing works." (Final JIs at 22:18-19); *see also Amazon.com*, 508 F.3d at 1172; *Giganews*, 847 F.3d at 671. The court again rejects VHT's alternative theories of material contribution as contrary to *Amazon.com*, 508 F.3d at 1172, and *Giganews*, 847 F.3d at 671.

ii. Inducement

The court also concludes that besides the 131 VHT Photos that were created on Digs after VHT first specifically identified the image (*see* JNOV Mot. at 17:9-13 & n.10; Ex. 512 at Column AS); *supra* n.24, the trial record contains insufficient evidence to hold Zillow liable for contributory infringement by inducement. A contributory infringement by inducement claim requires that the platform had "an object of promoting [a product's] use to infringe copyright." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1032 (9th Cir. 2013). "[C]lear expression or other affirmative steps taken to foster infringement" constitute evidence of such an object. *Grokster*, 545 U.S. at 936-37; *see also Giganews*, 847 F.3d at 672; (Final JIs at 22:20-22.)

None of the evidence presented at trial suggests that Zillow "promoted the use of [Digs] specifically to infringe copyrights." *Amazon.com*, 508 F.3d at 1176 n.11 (citing *Grokster*, 545 U.S. at 935-37). Indeed, most of the evidence to which VHT points (*see* JNOV Resp. at 20:16-25) merely evinces Zillow's promotion of the Digs platform and suggests no preference for or inclination toward infringing uses (*see* 2/2/17 Trial Tr. at 114:5-25; Ex. 283). This evidence does not provide a reasonable juror a basis to conclude that Zillow operated Digs with the object that users infringe copyrights, *see Grokster*, 545 U.S. at 936. The only evidence VHT identifies that differentiates between

potentially infringing and noninfringing uses is testimony from Kristen Acker, Zillow's

vice president of product teams. (JNOV Resp. at 20:25; 1/27/17 Trial Tr. at

176:23-177:1.) Ms. Acker indicated that in 2016, Zillow audited its feeds and determined

that more than 40 had been misclassified as evergreen rather than deciduous. (2/2/17

Trial Tr. at 37:1-38:2.) Zillow did not retroactively remedy the misclassified images, but

reclassified the errant feeds so that going forward, the images from those feeds would be

properly categorized as deciduous. (*Id.* at 38:3-22.) However, no evidence suggests that

the misclassification was intentional or that declining to remove the misclassified images

was an affirmative step toward anything other than convenience. (*See id.* at 38:9-10 ("It

would have been a lot of work to take them down, and we didn't do that at the time.").)

Furthermore, there is no evidence that any of the misclassified images ever appeared on

Digs. (*See id.* at 73:19-21 ("Q: Did any of those, to your knowledge, lead to any

complaints about images appearing on Digs improperly? A: No.").) Therefore, this

testimony—considered in conjunction with the other evidence presented at trial—does

not constitute substantial evidence of Zillow's object to promote infringement.

　　　The court has concluded that with the exception of the VHT Photos that were

created on Digs after VHT first specifically identified the image, *see supra* n.24, the

parties did not present substantial evidence that simple measures for removing the VHT

//

//

//

//

1    Photos were available or that Zillow induced its users to post the VHT Photos.[25]

2    Accordingly, the court grants Zillow judgment notwithstanding the verdict on VHT's

3    contributory infringement claims as to all but the 131 VHT Photos that were created on

4    Digs after VHT first specifically identified the image.

5               *b. Vicarious Infringement*

6          Finally, Zillow challenges the sufficiency of the evidence of vicarious

7    infringement. "To prevail on a claim for vicarious infringement, a plaintiff must prove

8    'the defendant has (1) the right and ability to supervise the infringing conduct and (2) a

9    direct financial interest in the infringing activity.'" *Giganews*, 847 F.3d at 673 (quoting

10   *Visa Int'l*, 494 F.3d at 802) (footnote omitted in original); *see also Amazon.com*, 508 F.3d

11   at 1175 ("[I]n general, contributory liability is based on the defendant's failure to stop its

12   own actions which facilitate third-party infringement, while vicarious liability is based on

13   the defendant's failure to cause a third party to stop its directly infringing activities.").

14   The first element—control over the direct infringer—requires that the defendant have

15   "both a legal right to stop or limit the directly infringing conduct, as well as the practical

16   ability to do so." *Amazon.com*, 508 F.3d at 1173 (citing *Grokster*, 545 U.S. at 930 &

17   n.9). VHT failed to provide substantial evidence of that element at trial.

18   //

19   //

---

20   [25] Zillow also argues that the record contains insufficient evidence of Zillow's
21   knowledge, which would preclude Zillow's liability for either theory of contributory
     infringement. (*See* JNOV Mot. at 14:16-16:4.) Because the court's conclusions regarding
     simple measures and inducement warrant the same relief Zillow seeks in its knowledge
22   argument, the court declines to decide that issue. (*See id.* at 14:16-18:22.)

The "simple measures" test for the material contribution element of contributory infringement differs from the "practical ability" test for the control element of vicarious infringement. *Compare Amazon.com*, 508 F.3d at 1170, *with id.* at 1173. Here, however, the court concludes that the trial record lacks substantial evidence of a practical ability to limit direct infringement for the same reasons it lacks substantial evidence of simple measures to remove infringing material.[26] *See supra* § III.A.3.a.i. As to all of the VHT Photos besides those added to Digs after VHT first specifically identified them, *see supra* n.24, Zillow "lack[ed] the practical ability to police" its users' infringing conduct, *Amazon.com*, 508 F.3d at 1174, because it could not reasonably identify which of the millions of images uploaded each day were infringing, *see supra* § III.A.3.a.i. The evidence unequivocally suggests that infringing images were the rare exception, not the norm, and that Zillow required each user to certify its scope of rights. (*See* 2/7/17 Trial Tr. at 137:2-144:19; Ex. A-77; Ex. A-406.) Without the practical ability to independently identify infringing images, Zillow could not police its users, and the record therefore lacks substantial evidence of vicarious infringement as to all but 114 of the VHT Photos that were created on Digs after VHT first specifically identified the image.

---

[26] VHT implies that Zillow waived this argument by making only "passing reference . . . in a section header." (JNOV Resp. at 21:1; *but see id.* at 21 n.18 (mounting a short substantive response to Zillow's argument).) Zillow indeed referenced the argument in a section header (JNOV Mot. at 18:23), but Zillow also began that section with a paragraph arguing the point (*id.* at 18:24-27). Although the paragraph consists of only one sentence, including a citation and an explanatory parenthetical, the content and context of the sentence make clear that Zillow was alluding to and incorporating its previous argument regarding the "simple measures" test. (*Id.* (citing *Amazon.com*, 508 F.3d at 1173-75) ("Zillow's inability to identify and remove VHT photographs also precludes vicarious liability for infringement on Digs.").) The court therefore rejects VHT's suggestion that Zillow inadequately raised the practical ability to control element of vicarious infringement liability.

4. <u>Fair Use</u>

Zillow argues that the creation of scaled copies of the 22,109 undisplayed VHT Photos was fair use as a matter of law and "precludes either direct or secondary liability." The court concluded on causation grounds that the direct infringement verdict cannot stand as to those images. *See supra* § III.A.2. The court also concluded that the jury heard insufficient evidence of indirect infringement as to all of the VHT Photos besides those that were created on Digs after VHT first specifically identified the image. *See supra* § III.A.3. & n.24. Of those 114 VHT Photos, 98 are among the 22,109 undisplayed VHT Photos (*see* Ex. 512 at Columns AS, AW) for which, according to Zillow, "pre-caching of scaled copies is the only potential basis for a finding of infringement" (JNOV Mot. at 2:20-21). Thus, although the court's conclusions above mostly moot Zillow's fair use argument, the court addresses the argument because it is nevertheless relevant to the indirect infringement claims regarding the 98 VHT Photos.

As a threshold matter, VHT and Zillow dispute the proper legal standard to apply to Zillow's fair use affirmative defense. VHT asserts that "Zillow did not move for judgment as a matter of law on its fair use defense pursuant to Rule 50(a)(1)(B), either in its oral and written Rule 50(a) motions or otherwise." (JNOV Resp. at 22:16-17.) Accordingly, VHT argues that the court should review the jury's finding for plain error. (*Id.* at 22:19-21.) Contrary to VHT's assertion, however, Zillow moved for judgment as a matter of law on its fair use affirmative defense at the close of its case. (2/8/17 Trial Tr. at 119:21-121:12.) Accordingly, the court rejects VHT's argument as a

//

mischaracterization of the record and reviews Zillow's fair use affirmative defense for substantial evidence. *See GoDaddy*, 581 F.3d at 961.

"Fair use is a mixed question of law and fact." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985). If the material facts are not in dispute, the court may decide the fair use question as a matter of law. *Fisher v. Dees*, 794 F.2d 432, 436 (9th Cir. 1986). Congress directs the court to consider the following nonexclusive factors: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107. Beyond this "very broad statutory explanation of what fair use is and some of the criteria applicable to it," however, the court is "free to adapt the doctrine to particular situations on a case-by-case basis." H.R. Rep. No. 94-1476, at 5680 (1976).

The court analyzes whether fair use shields Zillow from secondary liability arising from the direct infringement committed by Zillow's users. *See, e.g.*, *Amazon.com*, 508 F.3d at 1169-70; *Fox Broad. Co. v. Dish Network LLC*, 160 F. Supp. 3d 1139, 1170-73 (C.D. Cal. 2015). Despite asserting that its fair use defense precludes direct and secondary liability (JNOV Mot. at 2:19-21), Zillow's argument analyzes fair use only from Zillow's perspective and points to no evidence of Zillow's users' purpose (*id.* at 20:6-21:20; *see also* JNOV Reply at 11:21-23 ("Zillow showed that it made these copies of Digs images for just this purpose—to ensure the speed and reliability of the display of

the original image that it *already possessed*.")).  Whatever Zillow's purpose, the jury

could have reasonably concluded that its users were selecting images for Digs with a

different purpose.  *See Ticketmaster L.L.C. v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096,

1109 (C.D. Cal. 2007) (rejecting the contention that all cache copies constitute fair use as

a matter of law); *see also Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 594 (1994)

(concluding that "a silent record on an important factor bearing on fair use disentitled the

proponent of the defense" to judgment as a matter of law).  Furthermore, the third and

fourth fair use elements apply similarly to the cached images based on the trial record as

they did to the bubbled images based on the summary judgment record.  (*See* 12/23/16

Order at 34:18-35:18 (concluding that the third factor favors VHT and the fourth factor is

neutral).)  The court therefore concludes substantial evidence supports the jury's rejection

of Zillow's fair use affirmative defense.

     5.  <u>Willfulness</u>

     To prove willfulness under the Copyright Act, VHT had to show that Zillow

infringed VHT's copyrights and either "(1) that the defendant was actually aware of the

infringing activity, or (2) that the defendant's actions were the result of 'reckless

disregard' for, or 'willful blindness' to, the copyright holder's rights."  *Louis Vuitton*, 658

F.3d at 944 (internal quotations omitted); (Final JIs at 33:2-6.)  The jury found Zillow

willfully infringed 3,373 VHT Photos and awarded VHT $1,500.00 per willful

infringement.  (Verdict Form at 5:21-6:3.)  As VHT and Zillow acknowledge, this finding

corresponds with the 3,373 VHT Photos that were both searchable and eligible for

statutory damages.  (Ex. 512 at Columns N, AR; Summ. Image SS at 1.)  Of those 3,373

searchable, statutory damages-eligible VHT Photos, the court granted Zillow judgment notwithstanding the liability verdict on the 673 images that were undisplayed. *See supra* § III.A.2.b.; (Ex. 512 at AW.) Zillow challenges the sufficiency of the evidence of willfulness as to the remaining 2,700 VHT Photos that the jury found Zillow willfully infringed.[27] (JNOV Mot. at 21:20-23:17.)

"Willfulness does not exist . . . where infringing works were produced under color of title, such as a [sic] under a reasonable belief that the infringer possesses a license or implied license." *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1228 (9th Cir. 2012). Indeed, even after one is notified of alleged infringement, "[c]ontinued use of a work . . . does not constitute willfulness so long as one believes reasonably, and in good faith, that he or she is not infringing." *Id.* However, determining willfulness requires an assessment of a defendant's state of mind, which is generally a factual issue and ill-suited for judgment as a matter of law. *See Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1186 (9th Cir. 2016) (concluding that the defendant was not entitled to summary judgment on willfulness where the defendant's procedures included no confirmation or clearing of the provider's legal rights).

The court concludes that substantial evidence supports a finding of recklessness or willful blindness. Multiple witnesses testified that Zillow relies on representations from

//

---

[27] The jury's statutory damages verdict as to the willfully infringed images—$1,500.00 per work—is within the statutory range for images infringed non-willfully. (Verdict Form at 5:21-6:5; Final JIs at 31:11-16); 17 U.S.C. § 504(c)(1). Zillow nonetheless seeks judgment notwithstanding the verdict on the jury's finding of willfulness due to the "stigma associated with" that finding. (JNOV Reply at 14 n.16.)

its users without performing further investigation into the rights each user possesses.

(2/2/17 Trial Tr. at 34:21-23; 2/7/17 Trial Tr. at 148:2-149:14, 161:21-162:9.)

Furthermore, although the evidence suggests that the letters VHT sent to Zillow did not

adequately identify allegedly infringing images, there is no evidence Zillow took

responsive measures to obtain further information. (2/3/17 at 134:18-135:14.) Zillow's

witnesses indicated several good-faith reasons for its inaction (*id.* at 134:18-25), but the

record also suggests an economic incentive not to remove photographs (2/7/17 Trial Tr.

at 149:15-150:13; *see also* 2/2/17 Trial Tr. at 34:10-38:22 (admitting that Zillow

misclassified approximately 40 feeds as evergreen and did not retroactively fix those

classifications). Based on this circumstantial evidence, a reasonable juror could have

concluded that Zillow was reckless or willfully blind toward the 2,700 VHT Photos for

which the direct infringement verdict remains intact.[28] Accordingly, the court denies

Zillow's motion as to those images.

     6. <u>Summary of Relief</u>

       There are 28,125 VHT Photos. (*See* Ex. 512.) The court grants Zillow judgment

notwithstanding the verdict on VHT's direct infringement claims as to the 22,109

undisplayed VHT Photos. *See supra* § III.A.2.b. Of the remaining 6,016 VHT Photos,

//

---

[28] Zillow argues that upholding the willfulness verdict would "greatly increase the burden on parties . . . who rely on copyright licenses in their day-to-day business" by forcing those parties to "make expensive and disruptive changes" to the diligence they perform when presented with "an unsubstantiated demand notice" from a copyright holder. (JNOV Reply at 14 n.16.) This argument ignores the additional circumstantial evidence that the jury heard and concluded supported a finding of willfulness and a statutory damages award near the bottom of the permissible range. *See* 17 U.S.C. § 504(c)(1)-(2).

the court grants Zillow judgment notwithstanding the verdict on VHT's direct

infringement claims as to 2,093 of the 2,094 non-searchable VHT Photos; the exception

being the one non-searchable VHT Photo that Zillow also distributed in an email.  *See*

*supra* n.18; §§ III.A.2.c., e.  The direct infringement liability verdict stands as to the

remaining 3,923 VHT Photos.

The court grants Zillow judgment notwithstanding the verdict on VHT's indirect

infringement claims as to all but the 131 VHT Photos that were created on Digs after

VHT first specifically identified the image.  *See supra* § III.A.3. & n.24.  Of those 131

VHT Photos, 17 images are among the 3,923 VHT Photos for which the direct liability

verdict stands.  *See supra* n.24.  As to the remaining 114 VHT Photos, the court has

vacated the direct infringement liability verdict, Zillow did not challenge the sufficiency

of the evidence of indirect infringement (JNOV Mot. at 17:6-10 & nn.9-10), and the jury

made no finding specific to those images regarding VHT's indirect infringement claims,

*see supra* n.24; (Verdict Form at 2:5-3:7).  Accordingly, the court orders a new trial on

VHT's indirect infringement claims as to those 114 VHT Photos.

Of the 3,923 VHT Photos for which the direct infringement liability verdict

remains intact, 2,702 images were eligible for statutory damages and 1,221 images were

ineligible for statutory damages.  (Ex. 512 at Columns N, AR, AW.)  Of the 2,702 VHT

Photos that were eligible for statutory damages, the jury found that Zillow infringed

2,700 images willfully, *see supra* § III.A.5., leaving two images that VHT infringed

innocently (*see* Verdict Form at 5:21-6:5 (showing that the jury found all infringements

//

of statutory damages-eligible VHT Photos either willful or innocent)).[29]  The jury

awarded $1,500.00 in statutory damages per willful infringement and $200.00 in statutory

damages per innocent infringement.  (Verdict Form at 5:21-6:5.)  Accordingly, the court

reduces the statutory damages award to $4,050,400.00.  Because the jury awarded $2.84

in actual damages per infringement (*id.* at 4:15-19) and VHT opted to receive actual

damages only for infringement of images that were ineligible for statutory damages

(Dam. Election at 1), the court reduces the actual damages award to $3,467.64.  Based on

these calculations, the court reduces the total damages award to $4,053,867.64.[30]

**B.     Zillow's Motion for a New Trial**

In the alternative to judgment notwithstanding the verdict, Zillow seeks a new

trial.  (JNOV Mot. at 6:23-7:16.)  Zillow does not identify separate grounds that entitle

Zillow to a new trial, but instead relies on its arguments in support of judgment

notwithstanding the verdict.  (*See generally id.*)

1.     Legal Standard

Under Rule 59(a)(1)(A), the "court may, on motion, grant a new trial on all or

some of the issues—and to any party . . . after a jury trial, for any reason for which a new

trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P.

*//*

---

[29] The two innocently infringed VHT Photos that were eligible for statutory damages and for which the verdict remains intact are the VHT Photos distributed via email or blog post.  (*See* Ex. 512 at Columns N, AR, AV, AW.)

[30] The court will not enter final judgment at this time because VHT retains indirect infringement claims on 114 VHT Photos.  *See supra* § III.A.6 (citing *supra* n.24).  The court also notes that VHT reserved the right to move for a new trial following this order.  (*See* JNOV Resp. at 3 n.2 (citing Fed. R. Civ. P. 50(d)).)

59(a)(1)(A). "Rule 59 does not specify the grounds on which a motion for new trial may be granted." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). Rather, the court is "bound by those grounds that have been historically recognized." *Id.* "Historically recognized grounds include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" *Id.* (internal citation omitted).

Courts apply a lower standard of proof to motions for new trial than they do to motions for judgment as a matter of law. Thus, even if the court declines to grant judgment as a matter of law, it may order a new trial under Rule 59. A verdict may be supported by substantial evidence, yet still be against the clear weight of evidence. *Id.* Unlike a motion for judgment as a matter of law, in addressing a motion for a new trial, "[t]he judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." *Id.* Instead, if "having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed," then the court should grant the motion. *Id.* at 1371-72.

However, a motion for new trial should not be granted "simply because the court would have arrived at a different verdict." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002); *U.S. v. 40 Acres*, 175 F.3d 1133, 1139 (9th Cir. 1999). Indeed, when a motion for a new trial is based on insufficiency of the evidence, "a stringent standard applies" and a "new trial may be granted . . . only if the verdict is against the great weight of the evidence" or "it is quite clear that the jury has reached a seriously erroneous result."

*Digidyne Corp. v. Data Gen. Corp.*, 734 F.2d 1336, 1347 (9th Cir. 1984) (internal quotations and citations omitted). Further, the court should uphold a jury's award of damages unless the award is based on speculation or guesswork. *See City of Vernon v. S. Cal. Edison Co.*, 955 F.2d 1361, 1371 (9th Cir. 1992).

### 2. Merits

The structure of the verdict form and the court's ruling on Zillow's motion for judgment notwithstanding the verdict leave the court without a verdict or method of reasonably inferring the jury's finding on VHT's indirect infringement claims as to 114 of the 131 VHT Photos that were created on Digs after VHT first specifically identified the image. *See supra* § III.A.6. (citing *supra* n.24). Accordingly, the court grants a new trial on that issue.

In addition, the court alternatively grants a new trial as to all of VHT's claims on which the court granted judgment notwithstanding the verdict. *See* Fed. R. Civ. P. 50(c)(1) ("If the court grants a renewed motion for judgment as a matter of law, it must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed."). Each of Zillow's challenges to the jury's verdict was based on the insufficiency of the evidence under the governing legal standards. (*See generally* JNOV Mot.) For the same reasons the court concludes the trial record does not contain substantial evidence as to those claims, the court finds the verdict "against the great weight of the evidence." *Digidyne*, 734 F.2d at 1347.

//

1      However, the court denies Zillow's motion for a new trial as to the claims and

2 issues on which the court denies Zillow's motion for judgment as a matter of law.

3 Although the standard of proof is lower for Rule 59(a) motions than for Rule 50(b)

4 motions, *Molski*, 481 F.3d at 729, "a stringent standard applies when the [new trial]

5 motion is based on insufficiency of evidence," *Digidyne*, 734 F.2d at 1347. The court's

6 observation and review of the evidence presented at trial leads the court to conclude that

7 the jury's verdict—to the extent it remains intact—was a defensible resolution of a

8 complex case. *See id.*; *see also Pavao*, 307 F.3d at 918 (holding that the court may not

9 grant a new trial "simply because the court would have arrived at a different verdict").

10 Zillow took sufficient volitional action toward the remaining directly infringed VHT

11 Photos to be fairly characterized as the direct copier of those images. *See Giganews*, 847

12 F.3d at 666-70. In addition, there is sufficient circumstantial evidence of Zillow's

13 awareness to conclude that some of its copying was willful. *See Louis Vuitton*, 658 F.3d

14 at 944; *see also Friedman*, 833 F.3d at 1186 (noting that willfulness, as a state of mind, is

15 generally a factual issue that requires deference to the jury). The court therefore

16 concludes that the remaining verdict is not against the weight of the evidence, the

17 remaining damages are not excessive, and the trial was not fundamentally unfair. *Molski*,

18 481 F.3d at 729.

19 **C.**     **VHT's Motion**

20       Pursuant to Federal Rule of Civil Procedure 59(e), VHT seeks to amend the

21 judgment to permanently enjoin Zillow from directly and indirectly infringing on the

22 *//*

VHT Photos on Digs.  (*See generally* Inj. Mot.)  VHT asks the court to enter the

following injunction:

> Defendants Zillow, Inc. and Zillow Group, Inc. are hereby enjoined and
> restrained from:
>> a.    reproducing, displaying (including making available for public
>> display), distributing, or creating derivative works from the 28,125 VHT
>> Photos that Zillow was found to have infringed in this matter on or in
>> connection with Defendants' Digs platform, without specific written
>> authorization from VHT;
>> b.    inducing or materially contributing to Zillow users'
>> reproduction, display (including making available for public display),
>> distribution or creation of derivative works from the VHT Photos on or in
>> connection with Digs, without specific written authorization from VHT; and
>> c.    failing to exercise their right and ability to prevent Zillow
>> users' reproduction, display (including making available for public display),
>> distribution or creation of derivative works from the VHT Photos on or in
>> connection with Digs, without specific written authorization from VHT.

(Am. Prop. Inj. (Dkt. # 308-1) at 2:12-22; *see also* Prop. Inj. (Dkt. # 300-1) at 2:10-20

(proposing a similar permanent injunction but without multiple narrowing clarifications

contained in the amended proposed injunction); 4/17/17 Hensley Decl. (Dkt. # 309)

¶¶ 2-4 (indicating that VHT's amended proposed injunction is the result of the parties'

meet-and-confer and is intended to replace the initial proposed injunction); Inj. Reply

(Dkt. # 308) at 6:10-17 (same).)  Zillow opposes the injunction.  (*See generally* Inj.

Resp.)

The Copyright Act authorizes courts to "grant temporary and final injunctions on

such terms as it may deem reasonable to prevent or restrain infringement of a copyright."

17 U.S.C. § 502(a).  A party seeking a permanent injunction must make four showings:

> (1) that it has suffered an irreparable injury; (2) that remedies available at
> law, such as monetary damages, are inadequate to compensate for that injury;
> (3) that, considering the balance of hardships between the plaintiff and

defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 995-96 (9th Cir. 2011) (explaining that the *eBay* test extends to copyright infringement actions). Under the Copyright Act, a permanent injunction is most often appropriate where a "substantial threat of continuing infringement exists." *Broad Music, Inc. v. McDade & Sons, Inc.*, 928 F. Supp. 2d 1120, 1136 (D. Ariz. 2013).

VHT bases much of its argument in support of a permanent injunction on the jury verdict. (*See, e.g.*, Inj. Mot. at 1:17-22 ("Pursuant to the jury's verdict . . . , VHT hereby moves for a permanent injunction to prevent the continued copying of [the VHT Photos] on or in connection with Digs.")). Because the court vacates the majority of the verdict as unsupported by substantial evidence, *see supra* § III.A., the court considers moot VHT's arguments as to all but the 3,923 VHT Photos for which the jury's direct infringement verdict remains intact, *see supra* § III.A.6. As to those 3,923 VHT Photos, the court concludes that VHT fails to show irreparable injury and the inadequacy of legal remedies. *See Getty Images (U.S.), Inc. v. Virtual Clinics*, No. C13-0626JLR, 2014 WL 1116775, at *6 (W.D. Wash. Mar. 20, 2014) (identifying the overlap between the irreparable injury element and the inadequacy of legal remedies element).

VHT makes four arguments regarding irreparable injury: (1) "there is a real threat of continuing and future infringement" (Inj. Mot. at 4:5-22); (2) Zillow not only directly infringed VHT's copyrights, but also encouraged its users to do so (*id.* at 4:23-5:13); (3)

Zillow's infringement has harmed VHT's ability to license the VHT Photos (*id.* at 5:14-24); and (4) Zillow's use of the VHT Photos "has likely led to marketplace confusion as to the origin or source of VHT's photos" (*id.* at 5:25-6:6). VHT incorporates these four arguments into its briefing on the inadequacy of monetary damages and adds a fifth argument: monetary damages are inadequate because VHT would have to initiate subsequent lawsuits to recover for infringements not covered by this lawsuit. (*Id.* at 6:9-22).

Zillow's conduct does not suggest a likelihood of "continuing and future infringement." (Inj. Mot. at 4:7.) As VHT argues, Zillow received several notices from VHT regarding allegedly infringing uses, but those notices inadequately identified many of the purportedly infringing images. (*See, e.g.*, 1/27/17 Trial Tr. at 106:4-112:5; 2/2/17 Trial Tr. at 125:9-126:16; 2/3/17 Trial Tr. at 114:18-115:13, 122:4-11, 134:18-25; Ex. 98); *cf. Broad. Music, Inc. v. Benchley Ventures, Inc.*, 131 F. Supp. 3d 1097, 1105 (W.D. Wash. 2015) (granting a permanent injunction where the defendants had shown "ongoing recalcitrance" in the face of repeated cease-and-desist letters that accurately identified the plaintiff's infringed works). In addition, Zillow maintained its position that its users had licensed Zillow's uses until a jury rejected that argument at trial. (*See* Pretrial Order at 2:14-3:10; 2/8/17 Trial Tr. at 164:8-168:22; Verdict Form at 3:11-14.) The record suggests no reason to conclude that Zillow maintained that position in bad faith, and Zillow's non-infringement contention proved accurate as to most of the images at issue in this lawsuit. (*See* 3d Am. Compl. ¶ 8; 12/23/16 Order at 25:14-32:20); *supra* §§ III.A. Moreover, despite retaining its license and non-infringement contentions, Zillow revoked

public access to all of the VHT Photos in October 2016 and now retains those images only for purposes of this litigation. (4/27/17 Kutner Decl. ¶¶ 1-8; *see also* Stip. W/D of Arg. (Dkt. # 313) at 1:18-2:1 (withdrawing VHT's argument that the majority of the VHT Photos remained available on Digs as late as April 2017).) Zillow also "modified the entries for [the removed photographs] in Zillow's database in such a way that they will not be available to be saved to Digs in the future." (4/7/17 Kutner Decl. ¶ 3.) The record therefore suggests that Zillow will comply with its legal obligations going forward. *See Flexible Lifeline*, 654 F.3d at 994-95 (holding that meritorious copyright infringement claims alone do not demonstrate irreparable harm).

In light of this conclusion and the court's prior rulings in this order, VHT's second and fifth arguments also lack merit. The court grants Zillow judgment as a matter of law on VHT's indirect infringement claims as to the vast majority of the images at issue, *see supra* § III.A.3., and a new trial as to the remaining indirect infringement claims, *see supra* § III.A.6. Because of those rulings, VHT's assertion that Zillow encouraged or induced its users to infringe is inaccurate. (*See* Inj. Mot. at 4:23-5:13; *see also id.* at 6:11-18 (citing the district court's decision in *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1220 (C.D. Cal. 2007), for the proposition that it can be untenable for a plaintiff to track and proceed against every direct infringer that a defendant induces to infringe, and concluding that in such circumstances a plaintiff has shown irreparable injury for purposes of obtaining an injunction against the defendant).) Here, Zillow appears inclined to comply with its legal obligations, and the court vacates the jury's finding that Zillow indirectly infringed VHT's copyrights in an indeterminate

number of the VHT Photos.  Accordingly, the court is unpersuaded that Zillow's past actions suggest future infringements.

VHT's third and fourth arguments relate to the indeterminate economic harm VHT asserts that it has and will suffer from Zillow's infringements.  (Inj. Mot. at 5:14-6:6.) Again, the court's conclusion that Zillow will likely comply with its legal obligations going forward mitigates the likelihood of future harm.  Furthermore, the cases VHT cites to support its arguments involved significant factors that are absent in this case.  *See Fung*, 2013 WL 12098334, at *1 (finding irreparable harm where the defendants were likely judgment-proof, every infringing download "automatically and simultaneously further distribute[d] the work to innumerable others," and access through the defendants' infringement undermined "the growing legitimate market for . . . the same works"); *Getty Images*, 2014 WL 1116775, at *5-6 (finding irreparable injury and inadequacy of legal remedies where the defendants continued their infringing activities, deceived in furtherance of their business, and encouraged harassment of the plaintiff); *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010) (observing that in evaluating whether to issue a preliminary injunction pending the outcome of litigation, courts often characterize "harm to the plaintiff's property interest . . . as irreparable in light of possible market confusion").  The only factor from those cases applicable here is a potential legitimate, paying market for licenses to VHT's images, and that market is speculative.  (*See* 1/22/16 Balduf Decl. (Dkt. # 57) ¶ 5; 11/14/16 Hensley Decl. (Dkt. # 174) ¶ 6, Ex. 5 at 91:7-12, 97:17-23; 1/24/17 Trial Tr. at 95:9-96:2); *cf. In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007) (citing *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466,

472 (9th Cir. 1984)) ("Speculative injury cannot be the basis for a finding of irreparable harm."). The court therefore concludes that these arguments also fail to show irreparable injury or inadequacy of legal remedies.

Having rejected all of VHT's arguments regarding irreparable injury and the inadequacy of legal remedies, the court concludes that a permanent injunction is not warranted. Accordingly, the court denies VHT's motion to amend the judgment to add a permanent injunction.

**D.      Status Conference**

The court schedules a status conference for Friday, June 30, 2017, at 10:00 a.m. The court intends to address subsequent proceedings in this case as well as other related matters the parties wish to address. The parties must meet and confer regarding this order and the status of the case. Following that meet-and-confer, the parties must jointly file a statement of no more than six (6) pages no later than Wednesday, June 28, 2017, at 12:00 p.m., indicating the matters one or both parties intend to raise at the status conference.

## IV.      CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Zillow's motion for judgment notwithstanding the verdict or a new trial (Dkt. # 301) and DENIES VHT's motion to amend the judgment (Dkt. # 300). The court DIRECTS the

//

//

//

//

parties to meet and confer, file a statement, and attend a status conference as described above.

Dated this 20th day of June, 2017.

JAMES L. ROBART
United States District Judge