1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

VHT, INC.,

CASE NO. C15-1096JLR

11

                        Plaintiff,

ORDER ON THE PARTIES'
CROSS-MOTIONS

    v.

12
13

ZILLOW GROUP, INC., et al.,

14

                       Defendants.

15

## I.   INTRODUCTION

16

Before the court are:  (1) Defendant Zillow Group, Inc., and Zillow, Inc.'s

17

(collectively, "Zillow" or "Defendants") motion for judgment on the pleadings, or in the

18

alternative, partial summary judgment (Zillow Mot. (Dkt. # 339)); and (2) Plaintiff VHT,

19

Inc.'s ("VHT") cross-motion for partial summary judgment (VHT Mot. (Dkt. # 343).)[1]

20
21

---

[1] VHT's cross-motion for partial summary judgment includes VHT's response to
Zillow's motion for partial summary judgment.  For simplicity's sake, the court cites to the
parties' motions respectively as "Zillow Mot." and "VHT Mot."

22

1    Both motions are opposed.  (*See* VHT Mot.; Zillow Reply (Dkt. # 345).)[2]  The court has

2    considered the motions, the parties' submissions in support of and in opposition to the

3    motions, the relevant portions of the record, and the applicable law.  Being fully advised,[3]

4    the court construes Zillow's motion for judgment on the pleadings as a portion of

5    Zillow's motion for partial summary judgment, DENIES Zillow's motion for partial

6    summary judgment, and GRANTS VHT's motion for partial summary judgment.

## II.    BACKGROUND

7

8    **A.    Factual Background**

9            1.    <u>VHT's and Zillow's Businesses</u>

10           This action arises from Zillow's use of VHT's copyrighted real estate

11   photographs.  (*See* PTO (Dkt. # 244) at 2-3; Ex. 600 (Dkt. # 272) ¶ 2.) VHT is a real

12   estate photography company that commissions photographs from professional

13   photographers.  (10/25/16 Hensley Decl. (Dkt. # 140) ¶ 2, Ex. A ("Balduf Dep.") at

14

15   ───────────────────

         [2] Zillow filed a combined response to VHT's cross-motion for partial summary judgment
16   and reply in support of Zillow's motion for partial summary judgment.  For simplicity's sake, the
     court cites to this filing as "Zillow Reply."

17       [3] VHT and Zillow both request oral argument.  (*See* Zillow Mot. at 1; VHT Mot. at 1.)
     Oral argument is not necessary where the non-moving party suffers no prejudice.  *See Houston v.*
18   *Bryan*, 725 F.2d 516, 517-18 (9th Cir. 1984); *Mahon v. Credit Bureau of Placer Cty. Inc.*, 171
     F.3d 1197, 1200 (9th Cir. 1999) (holding that no oral argument was warranted where "[b]oth
19   parties provided the district court with complete memoranda of the law and evidence in support
     of their respective positions," and "[t]he only prejudice [the defendants] contend they suffered
20   was the district court's adverse ruling on the motion.").  "When a party has an adequate
     opportunity to provide the trial court with evidence and a memorandum of law, there is no
     prejudice [in refusing to grant oral argument]."  *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir.
21   1998) (quoting *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724,
     729 (9th Cir. 1991)) (alterations in *Partridge*).  Here, the issues have been thoroughly briefed by
22   the parties, and oral argument would not be of assistance to the court.  *See* Local Rules W.D.
     Wash. LCR 7(b)(4).  Accordingly, the court DENIES the parties' requests for oral argument.

ORDER - 2

20:13-15; *id.* ¶ 3, Ex. B ("Bosch Dep.") at 39:6-9, 51:9-52:8; *id.* ¶ 15, Ex. N ("VHT Contractor Agmt.") at VHT005555-58.)  VHT creates and curates photographs of residential real estate properties listed for sale and the licenses those photographs to real estate brokers and agents.  (PTO at 5.)  VHT's clients, which include real estate brokerages and real estate agents, use VHT's photographs to market their properties and listings.  (Balduf Dep. at 20:18-21:2.)  When a broker or agent requests that VHT obtain and license photos of a residential real estate property, VHT dispatches one of the photographers in the VHT Photographer Network to shoot photographs of that property. (*Id.*)  VHT maintains its photographs in a database and licenses the photographs in its database either collectively or individually to third parties.  (TAC (Dkt. # 123) ¶ 23.)  A typical shoot results in approximately 16 photographs of a property.  (*Id.* ¶ 27.) Customers pay on either a per-property or per-photograph basis.  (*Id.*)

Zillow operates Zillow.com, a large real estate website.  (10/25/16 Kutner Decl. (Dkt. # 130) ¶ 2.)  Since February 2013, Zillow's website has included a content area called Zillow "Digs," which is themed around the topic of home design and renovation. (*Id.*; *see generally* TAC.)  Digs "includes a searchable set of images of home interiors classified by room type and tagged with information about the room contents, as well as 'boards' where users can save and share images they are interested in."  (10/25/16 Kutner Decl. ¶ 4.)

Zillow obtains the photographs that it uses on Digs from two main sources:  (1) public records; and (2) real estate listings received from agents, brokers, and Multiple Listing Services ("MLSs").  (*Id.* ¶ 5.)  Zillow contracts with each agent, broker, and MLS

1    to clarify the terms under which Zillow may use the contents of each listing.  (*Id*.)  Some

2    of those contracts restrict how Zillow may use the photos after a property is sold; Zillow

3    calls these contracts "deciduous."  (*Id*. ¶ 6.)  However, the majority of the contracts are

4    "evergreen," meaning they do not restrict Zillow's ability to use data or images after a

5    property sells.  (*Id*.)

6        2.  Zillow's Use of VHT's Images

7        In this lawsuit, VHT alleges that Zillow infringed upon 28,125 of VHT's

8    photographs ("the VHT Photos").  (*See* PTO at 2-3; Ex. 600 ¶¶ 6, 9-10; Summ. Image SS

9    (Dkt. # 256-1); Final JIs (Dkt. # 275) at 20.)  Zillow used 28,124—all but one—of the

10   VHT Photos in conjunction with the Digs section of Zillow's website.  (*See* Summ.

11   Image SS; Ex. 600 ¶ 11; Ex. 512 at Column N.)  Zillow also used one of those 28,124

12   VHT Photos in an email.  (1/27/17 Trial Tr. (Dkt. # 291) at 98-100, 112; Ex. 293; Ex. 512

13   at Row 17,744, Column AV.)[4]  Zillow used the final VHT Photo exclusively in a blog

14   post.  (1/27/17 Trial Tr. at 100, 112; Ex. 243; Ex.512 at Row 28,127, Column AV.)[5]

15   //

16   //

17   //

18   //

19

20      [4] All citations beginning with "Ex." without reference to a declaration or other filing refer
     to trial exhibits.

21      [5] Because of the voluminous number of VHT Photos at issue, the parties tried the case by
     stipulating to the accuracy of an electronic spreadsheet that provided pertinent details regarding
22   all 28,125 VHT Photos.  (*See* Ex. 600 ¶ 12; Ex. 512; see also Ex. 600 ¶ 13; Ex. 513 (displaying
     each VHT Photo from VHT's copyright registrations and the mirror image from Digs).)

**B.     Procedural Background**

   1.   VHT's Copyright Applications and Registrations

       VHT maintains its images in a database.  (*See* Rummage Decl. (Dkt. # 344) ¶ 2,

Ex. A.)  On a quarterly basis, VHT registers its images with the United States Copyright

Office (the "Copyright Office") through a group registration procedure that allows large

volumes of photographs to be registered using a single form.  (*See id.* Exs. 1-9.)

       VHT filed this lawsuit on July 8, 2015.  (*See id.*)  At the time VHT filed its initial

complaint, it had filed applications to register photographs in its database created from

the beginning of 2010 through the end of the first quarter of 2015.  (*Id.*)  Attached to

VHT's initial complaint are copies of nine applications VHT has submitted as of the time

of its initial complaint.  (*See id.* ¶ 27, Exs. 1-9.)

       Zillow answered VHT's initial complaint on August 27, 2015.  (*See* Answer (Dkt.

# 22).)  On September 22, 2015, the Copyright Office rejected eight of VHT's ten

pending applications for failure to establish the element of "compilation authorship"

required for the form of registration that VHT had chosen.  (*See* Crosby Decl. (Dkt.

# 340) ¶ 3, Ex. 2 at TX405.)  On that basis, the Copyright Office refused to register

VHT's images and closed its files.  (*Id.*)  VHT asked the Copyright Office to reconsider

its decision in a December 14, 2015, letter.  (*See* Crosby Decl. ¶ 2, Ex. 1 at TX 244.005.)

On June 30, 2016, the Copyright Office granted VHT's request to reconsider its

determination.  (*See* Crosby Decl. ¶ 4, Ex. 3 at TX 365.002.)

       VHT amended its complaint three times.  (*See* FAC (Dkt. # 53); SAC (Dkt.

# 105); TAC.)  By mid-2016, the Copyright Office had reconsidered and approved 11 of

1   VHT's registrations.  (*See* Rummage Decl. ¶ 2, Ex. A.)  VHT filed its third amended

2   complaint on October 24, 2016, and attached to it the relevant Copyright Office

3   registrations.  (*See* TAC ¶ 30, Ex. 15.)  Each registration states that it is a "group

4   registration for VHT, Inc. database" along with corresponding dates.  (*See id.*)  Each

5   registration further states:  "Basis of registration: compilation of photographs added to

6   revised database."  (*See id.*)  Listed as the "derivative work or compilation" is

7   "[p]reviously published photographs" and under "material added to this work" is

8   "[c]ompilation of photographs in unpublished database and photographs contained in the

9   database."  (*Id.*)  The effective date for five of the registrations was July 8, 2015; the rest

10  have an effective date of January 27, 2016.  (*See id.*)

11          2.  Pretrial Motions

12          On October 25, 2016, Zillow moved for summary judgment on all five of VHT's

13  copyright infringement claims.  (*See* Zillow MPSJ (Dkt. # 129).)  VHT cross-moved for

14  partial summary judgment as to liability on its copyright infringement claims and sought

15  summary judgment on Zillow's four counterclaims.  (*See* VHT MPSJ (Dkt. ## 137

16  (redacted); 141 (sealed)).)  The court granted in part and denied in part the parties'

17  motions.  (*See* MSJ Order (Dkt. # 211) at 50.)  The court granted VHT summary

18  judgment on Zillow's counterclaims, granted Zillow summary judgment on VHT's

19  infringement claims with respect to Zillow's home details pages on its listing website,

20  denied Zillow summary judgment on VHT's infringement claims with respect to Zillow's

21  use of Digs, and made several other rulings.  (*See id.* at 32, 38-41.)

22

### 3. The Compilation Issue

At trial, Zillow asked the court to determine whether 17 U.S.C. § 504(c)(1) limits VHT to a single award of statutory damages for all infringements of any number of images that VHT registered under an express claim of compilation in a single database. (*See* Prop. PTO (Dkt. # 218) at 6.)  Under 17 U.S.C. § 504(c)(1), a party may elect to recover statutory damages instead of actual damages for copyright infringement.  17 U.S.C. § 504(c)(1).  A party that does so is entitled to a statutory damages award of between $750.00 and $30,000.00 "with respect to any one work."  *Id.*  For the purposes of statutory damages, "all the parts of a compilation or derivative work constitute one work."  *Id.*   In other words, if VHT's images constitute a single "compilation," then the images by definition constitute a single "work," and VHT would be entitled on a single award of statutory damages for Zillow's infringement of any or all of the images.  On the other hand, if each image is a separate work, VHT would be entitled to statutory damages on a per-image basis.

The court initially declined to rule on the question of whether VHT would be entitled to statutory damages on a per-image basis.  (*See* 2/7/17 Trial Tr. (Dkt. # 294) at 12.)  Prior to issuing final jury instructions, the court ruled that VHT was entitled to a separate award of statutory damages for each image that has independent economic value.  (*See id.* at 13.)  The court relied on *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 292 (9th Cir. 1997) ("*Columbia Pictures I*"), *rev'd sub nom. Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998)). (*See* 2/7/17 Trial Tr. at 13.)  Based on *Columbia Pictures I* and its progeny, the court

determined that "the proper test to apply in analyzing whether each component is a separate work for purposes of statutory damages is whether each component has independent economic value." (*See id.* at 16.)  The court placed the question of independent economic value before the jury.  (*See* Jury Instructions (Dkt. # 275) at 31 ("Congress established statutory damages for each separate work infringed.  Each VHT Photo that has independent economic value constitutes a separate work."); Verdict Form (Dkt. # 281) at 5.)

    4.  Trial and Verdict

    Following trial, the jury found that Zillow directly infringed 28,125 of VHT's images.  (Verdict Form at 1-2.)  The jury also found that Zillow contributorily and vicariously infringed VHT's copyrights, but because the verdict form instructed the jury not to double-count Zillow's infringements, it is not clear how many copyrights the jury found Zillow indirectly infringed.  (*Id*. at 2.)  After rejecting Zillow's affirmative defenses of license and fair use (*id*. at 3), the jury awarded actual damages of $2.84 per photograph, or $79,875.00 (*id*. at 4).

    The jury also awarded $8,247,300.00 in statutory damages.  (*Id.* at 6.)  The jury found that 19,312 images were eligible for statutory damages under 17 U.S.C. § 594(c)(1), and that each of those 19,132 images had independent economic value.  (*Id.* at 5:6-17.)  Because some of the statutory and actual damages were duplicative (*see id.* at 4:15-6:9), VHT elected to receive statutory damages for the 19,312 VHT Photos that were eligible for statutory damages (*see* Summ. Image SS at 1; Ex. 512 at Column AR) and actual damages for the remaining 8,813 VHT Photos (*see* Summ. Image SS at 1; Ex.

512 at Column AR; Dam. Election (Dkt. # 286) at 1).  Pursuant to the jury's verdict and VHT's damages election, the court entered judgment for VHT in the amount of $8,272,328.92.  (*See* Judgment (Dkt. # 296).)

### 5.  Post-Trial Motions

After trial, Zillow filed a motion for judgment notwithstanding the verdict or for a new trial.  (*See* JNOV Mot. (Dkt. # 301).)  The court partially granted Zillow's motion, reversed in part the jury's verdict, reduced VHT's actual damages to $3,467.64, and reduced VHT's statutory damages award to $4,050,400.00.  (*See* 6/20/17 Order (Dkt. # 2) at 46.)  The court entered a final judgment on July 10, 2017.  (*See* Final Judgment (Dkt. # 322).)

### 6.  Appeal and Remand

The parties cross-appealed issues stemming from partial summary judgment, the jury verdict, and judgment notwithstanding the verdict.  *See VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 730 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 122, 205 (2019).  The Ninth Circuit affirmed (1) the court's summary judgment in favor of Zillow on direct infringement of the Zillow's listing platform photos; (2) the court's judgment notwithstanding the verdict in favor of Zillow on 22,109 non-displayed photos and 2,093 displayed but not searchable photos; (3) the court's summary judgment in favor of VHT on 3,921 displayed, searchable Digs photos; and (4) the court's judgment notwithstanding the verdict in favor of Zillow on secondary liability, both contributory and vicarious, on the Digs photos.  *Id.* at 750.  The Ninth Circuit reversed the court's denial of judgment

//

1   notwithstanding the verdict on the issue of willfulness and vacated the jury's finding on

2   willfulness.  *See id.*

3          Finally, the Ninth Circuit remanded for consideration of the issue of whether

4   VHT's photos used on Digs were part of a compilation or were individual "works."  *Id.* at

5   747-48, 750.  The Ninth Circuit instructed that determining whether the images at issue

6   are part of a "compilation" is a "threshold damages question" and that "consideration of

7   the independent economic value factor does not answer the question whether something

8   is a compilation."  *See id.* at 747.

9          7.   The *Fourth Estate* Opinion

10          On March 4, 2019, 11 days before the Ninth Circuit issued its opinion in this case,

11   the United States Supreme Court decided *Fourth Estate Public Benefit Corp. v.*

12   *Wall-Street.com, LLC, et al.*, ---U.S.---, 139 S. Ct. 881 (2019).  *Fourth Estate* addressed

13   the interpretation of 17 U.S.C. § 411(a), which states, in relevant part, that "no civil

14   action for infringement of the copyright in any United States work shall be instituted until

15   preregistration or registration of the copyright claim has been made."  *See* 17 U.S.C.

16   § 411(a).  In a unanimous opinion, the Supreme Court resolved a circuit split and held

17   that "'registration . . . has been made' within the meaning of 17 U.S.C. § 411(a) not when

18   an application for registration is filed, but when the Register has registered a copyright

19   after examining a properly filed application."  *See id.* at 892.  *Fourth Estate* overturned

20   the prior settled law in the Ninth Circuit, under which "receipt by the Copyright Office of

21   a complete application satisfies the registration requirement of § 411(a)."  *See Cosmetic*

22   *Ideas, Inc. v. IAC/Interactive Corp.*, 606 F.3d 612, 621 (9th Cir. 2010), *overruled by*

*Fourth Estate*, 139 S. Ct. 881.  Zillow's motion for judgment on the pleadings at issue

here is the first instance in which Zillow has raised a *Fourth-Estate*-based challenge to

VHT's claims.  (*See* Zillow Reply at 10-13.)

       8.  Post-Remand Procedure

      The parties filed a stipulated motion setting a briefing schedule for post-remand

motions (*see* Briefing Mot. (Dkt. # 336)), which the court granted (*see* 11/27/19 Order

(Dkt. # 338)).  In accordance with that schedule, Zillow filed a motion for judgment on

the pleadings based on *Fourth Estate*, or in the alternative, for partial summary judgment

on the compilation issue.  (*See* Zillow Mot.)  VHT filed a combined opposition to

Zillow's motion and cross-motion for partial summary judgment on statutory damages.

(*See* VHT Mot.)  The court now considers the parties' cross motions.

# III.   ANALYSIS

      The court first sets forth the legal standards applicable to the parties' motions.

The court next addresses Zillow's motion for judgment on the pleadings because it raises

a potential jurisdictional defect.  The court then turns to the parties' cross-motions on the

compilation issue.

**A.   Legal Standards**

      1.  Summary Judgment

      Summary judgment is appropriate if the evidence shows "that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v.*

*Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  A fact is "material" if it might affect the

1  outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A

2  factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact

3  finder to find for the non-moving party."  *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986,

4  992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

5        The moving party bears the initial burden of showing there is no genuine dispute

6  of material fact and that it is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at

7  323.  If the moving party does not bear the ultimate burden of persuasion at trial, it can

8  show the absence of such a dispute in two ways:  (1) by producing evidence negating an

9  essential element of the nonmoving party's case, or (2) by showing that the nonmoving

10 party lacks evidence of an essential element of its claim or defense.  *Nissan Fire &*

11 *Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000).  If the moving party

12 bears the ultimate burden of persuasion at trial, it must establish a *prima facie* showing in

13 support of its position on that issue.  *UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d

14 1465, 1471 (9th Cir. 1994).  That is, the moving party must present evidence that, if

15 uncontroverted at trial, would entitle it to prevail on that issue.  *Id.* at 1473.  If the moving

16 party meets its burden of production, the burden then shifts to the nonmoving party to

17 identify specific facts from which a fact finder could reasonably find in the nonmoving

18 party's favor.  *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

19       The court is "required to view the facts and draw reasonable inferences in the light

20 most favorable to the [nonmoving] party."  *Scott v. Harris*, 550 U.S. 372, 378 (2007)

21 (internal quotation marks and citation omitted).  The court may not weigh evidence or

22 make credibility determinations in analyzing a motion for summary judgment because

1  those are "jury functions, not those of a judge." *Anderson*, 477 U.S. at 255.  However,

2  the nonmoving party "must do more than simply show that there is some metaphysical

3  doubt as to the material facts . . . .  Where the record taken as a whole could not lead a

4  rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."

5  *Scott*, 550 U.S. at 380 (internal quotation marks omitted) (quoting *Matsushita Elec.*

6  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

7      2.  Judgment on the Pleadings

8      The standard for dismissing claims under Federal Rule of Civil Procedure 12(c) is

9  "substantially identical" to the Rule 12(b)(6) standard set forth in *Ashcroft v. Iqbal*, 556

10  U.S. 662, 678 (2009).  *Chavez v. United States*, 683 F.3d 1102, 1008 (9th Cir. 2012)

11  (internal quotation marks and citation omitted); *see also Cafasso, U.S. ex rel. v. Gen.*

12  *Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) ("Although *Iqbal*

13  establishes the standard for deciding a Rule 12(b)(6) motion, we have said that Rule 12(c)

14  is functionally identical to Rule 12(b)(6) and that the same standard of review applies to

15  motions brought under either rule.") (internal quotation marks and citation omitted).  This

16  is because, "under both rules, a court must determine whether the facts alleged in the

17  complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez*, 683 F.3d at

18  1008 (internal quotation marks and citation omitted).

19      Rule 12(c) motions for judgment on the pleadings should be made "[a]fter the

20  pleadings are closed—but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  Courts

21  have discretion to accept extraneous matter and construe a motion for judgment on the

22  pleadings as a motion for summary judgment. *See Sirisup v. It's Thai, L.L.C.*, No.

1  CV-13-07246-DDP, 2015 WL 6181688, at *4 (C.D. Cal. Oct. 21, 2015), *aff'd sub nom.*

2  716 F. App'x 739 (9th Cir. 2018).

3  **B.      Zillow's Motion for Judgment on the Pleadings**

4          Zillow moves for judgment on the pleadings on the ground that *Fourth Estate*

5  requires dismissal of VHT's "remaining claims"[6] for failure to meet 17 U.S.C. § 411(a)'s

6  registration requirement.  (*See* Zillow Mot. at 12 (citing *Fourth Estate*, 139 S. Ct. 881).)[7]

7  Zillow further argues that the Copyright Office's registration of VHT's images after VHT

8  filed suit—and VHT's corresponding amendment of its complaint to include these

9  registrations—does not remedy VHT's failure to satisfy § 411(a).  (*See* Zillow Mot. at

10  13-14.)

11          VHT does not dispute that it obtained registrations for its images after filing suit.

12  (*See generally* VHT Mot.; VHT Reply.)  VHT opposes Zillow's motion for judgment on

13  the pleadings on several grounds:  (1) Zillow's motion is procedurally improper because

14  a Rule 12(c) motion is by definition a pre-trial motion; (2) Zillow cannot seek judgment

15  on the pleadings because there are no longer operative pleadings in this case, given that

16  the pretrial order superseded the operative pleadings; (3) Even if Zillow's motion was

17  //

18          [6] Zillow is not explicit as to what claims it considers "remaining."  (*See generally* Zillow

19  Mot.)  VHT's copyright infringement claims have already come before a jury and Zillow's
    liability on those claims has been argued further in post-trial motions and on appeal.  *See supra*
    § II.B.  Although not explicit, Zillow appears to seek dismissal of those same copyright

20  infringement claims that have already been subject to judgment and appeal.  Therefore, the court
    construes Zillow's motion as seeking dismissal of all of VHT's copyright infringement claims

21  upon which Zillow was found liable in this case and dismissal of this case entirely.

22          [7] The court cites the parties' briefing with the page numbers provided by the court's
    electronic filing system.

1    procedurally proper, the Copyright Office registered VHT's images prior to VHT's third

2    amended complaint, which attached those registrations; (4) VHT's right to recover on its

3    copyright claims is now the law of the case; (5) § 411(a)'s registration requirement is not

4    jurisdictional, but rather a "claim-processing rule"; and (6) Zillow waived any argument

5    that VHT filed this lawsuit prematurely.  (*See* VHT Mot. at 19-29.)  VHT further

6    contends that even if Zillow had preserved the issue, the proper remedy would not be

7    dismissal but rather to conform the pleadings to the evidence or permit an amendment

8    relating back to the original complaint.  (*See id.* at 29.)

9        In reply, Zillow contends the court "cannot excuse" VHT's failure to comply with

10   § 411(a)'s registration requirement.  (*See* Zillow Reply at 18.)  Although not explicit,

11   Zillow's argument that the court "cannot excuse" § 411(a)'s registration requirement

12   implies a jurisdictional challenge.  If the court lacks jurisdiction to adjudicate VHT's

13   claims, it must dismiss those claims regardless of the procedural posture of this case.  *See*

14   *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434-35 (2011).  Because

15   questions of jurisdiction are paramount, the court first analyzes the effect of *Fourth*

16   *Estate* and whether, as Zillow argues, *Fourth Estate* requires this court to dismiss VHT's

17   copyright infringement claims.  The court then turns to the parties' remaining arguments,

18   including VHT's procedural challenge to Zillow's motion for judgment on the pleadings.

19        1.   The Nature of Section 411(a)'s Registration Requirement

20        Section 411(a) provides that "no civil action for infringement of the copyright in

21   any United States work shall be instituted until . . . registration of the copyright claim has

22   been made in accordance with this title."  17 U.S.C. § 411(a).  Prior to *Fourth Estate*, a

1    circuit split existed on the question of whether registration "has been made" in

2    accordance with § 411(a) as soon as the claimant delivers the required application, copies

3    of the work, and fee to the Copyright Office (the "application approach"); or only after

4    the Copyright Office reviews and registers the copyright (the "registration approach").[8]

5    *Fourth Estate*, 139 S. Ct. at 886.  Prior to *Fourth Estate*, the Ninth Circuit followed the

6    application approach.  *See Cosmetic Ideas, Inc.*, 606 F.3d at 621 (holding that registration

7    "has been made" under § 411(a) when the copyright claimant's "complete application"

8    for registration is received by the Copyright Office).  In *Fourth Estate*, the Supreme

9    Court opted for the registration approach.  *See* 139 S. Ct. at 892.

10        *Fourth Estate* describes the registration requirement as "akin to an administrative

11   exhaustion requirement that the owner must satisfy before suing to enforce ownership

12   rights."  *Id.* at 887.[9]  *Fourth Estate* further states that "[t]ime and again, then, Congress

13   has maintained registration as a prerequisite to suit."  *Id.* at 891.  However, *Fourth Estate*

14   does not squarely address whether failure to meet the registration requirement mandates

15   dismissal in every case or whether a copyright claimant may amend its complaint to

16   include subsequently registered material.  *See id.*; *see also Izmo, Inc. v. Roadster, Inc.*,

17   No. 18-CV-06092-NC, 2019 WL 2359228, at *2 (N.D. Cal. June 4, 2019).

18

19        [8] Under either approach, once registered, copyright protection runs from the date of the
     work's creation.  *See, e.g.*, 17 U.S.C. § 106; *Eldred v. Ashcroft*, 537 U.S. 186, 195 (2003).

20
        [9] *Fourth Estate* also refers to the "limited circumstances" in which copyright owners may
21   file an infringement suit before undertaking registration.  139 S. Ct. at 888.  Neither VHT nor
     Zillow discuss these limited circumstances and neither argue that any of these limited
22   circumstances apply in this case.  (*See generally* Zillow Mot; VHT Mot.; Zillow Reply; VHT
     Reply.)  Therefore, the court does not address them further.

1    The United States Supreme Court has held unmistakably that § 411(a)'s

2    registration requirement is non-jurisdictional and is instead a claim-processing

3    requirement.  *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010) ("Section

4    411(a) thus imposes a type of precondition to suit that supports nonjurisdictional

5    treatment under our precedents.")  In *Reed Elsevier, Inc.*, the Supreme Court held that

6    "Section 411(a)'s registration requirement is a precondition to filing a claim that does not

7    restrict a federal court's subject-matter jurisdiction." *Id.* at 157.  "While perhaps clear in

8    theory, the distinction between jurisdictional conditions and claim-processing rules can

9    be confusing in practice." *Id.* at 1243.  The *Reed Elsevier* Court applied the *Arbaugh test*,

10   which is used to distinguish between jurisdictional requirements and "claim-processing"

11   requirements.  *Id.* at 161.  The Court noted that "jurisdiction" refers to a court's

12   adjudicatory authority and speaks to "the courts' statutory or constitutional *power* to

13   adjudicate the case" rather than to "the rights or obligations of the parties." *Id.* at 160-61

14   (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 89 (1998); *Landgraf v. USI*

15   *Film Prods.*, 511 U.S. 244, 274 (1994)).  Under the *Arbaugh* test:

16       If the Legislature clearly states that a threshold limitation on a statute's scope
         shall count as jurisdictional, then courts and litigants will be duly instructed
17       and will not be left to wrestle with the issue.  But when Congress does not
         rank a statutory limitation on coverage as jurisdictional, courts should treat
18       the restriction as nonjurisdictional in character.

19   *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515-16 (2006).

20       Applying *Arbaugh*, the *Reed Elsevier* court concluded that § 411(a) does not

21   clearly state that the registration requirement is jurisdictional.  *Reed Elsevier, Inc.*, 559

22   U.S. at 163.  The Court further noted that it has treated as non-jurisdictional other

1    claim-processing requirements.  *See id.* at 166 & n.6 (citing cases).  Nevertheless, the

2    *Reed Elsevier* Court declined to address whether § 411(a)'s registration requirement is a

3    "mandatory precondition to suit that . . . district courts may or should enforce *sua sponte*

4    by dismissing copyright infringement claims involving unregistered works."  *See id.* at

5    171.

6           Whether the registration requirement is jurisdictional or non-jurisdictional is

7    significant in analyzing Zillow's *Fourth Estate*-based arguments.  If the registration

8    requirement is jurisdictional, Zillow cannot waive or forfeit objections to the

9    requirement.  Additionally, the court would have an obligation to raise the defect *sua*

10   *sponte*, and a late-discovered defect might void VHT's judgment on the merits.  *See*

11   *Henderson ex rel. Henderson*, 562 U.S. at 434-35 (discussing the consequences of

12   whether a "procedural rule is 'jurisdictional'"); *see also* Peter A. Devlin, Jurisdiction,

13   Exhaustion of Administrative Remedies, and Constitutional Claims, 93 N.Y.U. L. Rev.

14   1234, 1236 (2018).  However, "a party may waive or forfeit the benefit of a

15   nonjurisdictional rule."  *Paycom Payroll, LLC v. Richison*, 758 F.3d 1198, 1203 (10th

16   Cir. 2014) (quoting *Muskrat v. Deer Creek Pub. Sch.*, 715 F.3d 775, 784 (10th Cir.

17   2013)); *see also Mount v. Johnson*, 36 F. Supp. 3d 74, 80 (D.D.C. 2014) (noting that Title

18   VII exhaustion requirements are nonjurisdictional, and therefore, failure to exhaust must

19   be raised as an affirmative defense).

20          In addition to waiver, courts regularly create exceptions to non-jurisdictional

21   exhaustion requirements and other claim-processing requirements.  *See, e.g.*, *McBride*

22   *Cotton & Cattle Corp. v. Veneman*, 290 F.3d 973, 976 (9th Cir. 2002) (holding that the

1    exhaustion requirement of 7 U.S.C. § 6912(e) is not jurisdictional and excusing the

2    plaintiffs' noncompliance); *Douglas v. Donovan*, 559 F.3d 549, 556 n.4 (D.C. Cir. 2009)

3    ("Because the exhaustion requirement, though mandatory, is not jurisdictional . . . we do

4    not decide whether Douglas adequately exhausted his administrative remedies."); *Hoeft v.*

5    *Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1302-03 (9th Cir. 1992) (noting that the

6    Individuals with Disabilities Education Act's exhaustion requirement "is not a rigid one,

7    and is subject to certain exceptions," determined by "the general purposes of exhaustion

8    and the congressional intent behind the administrative scheme").

9         Because § 411(a)'s registration requirement is not jurisdictional, the court rejects

10   Zillow's arguments that the court "must" dismiss VHT's claims and "cannot excuse" a

11   failure to comply.  Before turning to whether the court *should* dismiss VHT's claims—

12   and vacate the corresponding judgment—based on any defects in VHT's compliance with

13   the registration requirement under *Fourth Estate*, the court addresses VHT's procedural

14   objection to Zillow's motion for judgment on the pleadings.

15        2.   Procedural Propriety of Zillow's Motion for Judgment on the Pleadings

16        VHT argues that Zillow's motion for judgment on the pleadings is procedurally

17   improper because "there no longer *are* operative pleadings."  (VHT Mot. at 19 (citing

18   *Wash. State Auto Dealers Ins. Tr. v. Aon Consulting, Inc.*, No. C07-1182 MJP, 2008 WL

19   4889680, at *1 (W.D. Wash. Nov. 12, 2008) ("Once the Court enters the final pretrial

20   order, that document will supersede the parties' pleadings and will control the remainder

21   of this action.")).)  Zillow responds that its motion is proper because although VHT's

22   pleadings have been superseded, those pleadings failed to show compliance with

1  § 411(a)'s registration requirement, and therefore entitle Zillow to judgment on those

2  pleadings—even if inoperative.  (*See* Zillow Reply at 13-14.)  Zillow further argues that

3  regardless of the form in which it brings its motion, Zillow is justified in raising the

4  *Fourth Estate* issue now, and courts "routinely recast motions for judgment on the

5  pleadings as motions for summary judgment."  (*See id.* at 13 (citing *Sirisup*, 2015 WL at

6  *4 (converting a motion for judgment on the pleadings into a motion for summary

7  judgment).)

8      VHT's argument is well-taken.  The pretrial order in this case superseded the

9  pleadings (*see* PTO).  Moreover, Rule 12(c) motions for judgment on the pleadings

10 should be made "[a]fter the pleadings are closed—but early enough not to delay trial."

11 Fed. R. Civ. P. 12(c).  Although the court agrees with VHT that a motion for judgment on

12 the pleadings is procedurally improper at this stage of the case, the court concludes that

13 Zillow is entitled to make its *Fourth Estate*-based arguments in another form.  Zillow

14 could not have known about *Fourth Estate* at the time of trial because *Fourth Estate* was

15 decided after trial in this case.  Zillow raised its *Fourth Estate*-based arguments in a

16 combined motion for judgment on the pleadings and motion for partial summary

17 judgment.  (*See* Zillow Mot. at 5-12.)  Moreover, Zillow suggests the court may construe

18 its motion for judgment on the pleadings as a motion for summary judgment (*see* Zillow

19 Reply at 13-14), and VHT does not respond to that suggestion in its reply brief (*see*

20 *generally* VHT Reply).  Additionally, the court considers extraneous materials, including

21 VHT's copyright registrations, in order to resolve the issue.  Therefore, the court

22 //

1    construes Zillow's motion as a motion for partial summary judgment on § 411(a)'s

2    registration requirement.  *See Sirisup*, 2015 WL at *4.

3        3.  Law of the Case

4        VHT contends that the law of the case doctrine precludes dismissal of its already

5    adjudicated claims based on the law of the case doctrine.  (*See* VHT Mot. at 20-24.)

6     "Under the doctrine, a court is generally precluded from reconsidering an issue

7    previously decided by the same court, or a higher court in the identical case."  *United*

8    *States v. Lummi Nation*, 763 F.3d 1180, 1185 (9th Cir. 2014).  "For the doctrine to apply,

9    the issue in question must have been decided explicitly or by *necessary implication* in the

10   previous disposition."  *Id.*  However, "[t]he law of the case doctrine expresses the

11   practice of courts generally to refuse to reopen that which has been decided, and is not a

12   limitation of the courts' power."  *Merritt v. Mackey*, 932 F.2d 1317, 1320 (9th Cir. 1991).

13   The doctrine is discretionary, not mandatory.  *See id.* (citing *United States v. Houser*, 804

14   F.2d 565, 567 (9th Cir. 1986)); *see also United States v. Mills*, 810 F.2d 907, 909 (9th

15   Cir. 1987); *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir.

16   1990).  A court properly exercises its discretion to reconsider an issue previously decided

17   in only three instances:  (1) the first decision was clearly erroneous and would result in

18   manifest injustice; (2) an intervening change in the law has occurred; or (3) the evidence

19   on remand was substantially different.  *Milgard Tempering, Inc.*, 902 F.2d at 715.

20       Because *Fourth Estate* was decided after trial, and Zillow did not challenge

21   VHT's conformance with § 411(c)'s registration requirement, the court has not "decided

22   explicitly" whether VHT complied with § 411(a) when it instituted this lawsuit.

1    However, because § 411(a) is a pre-filing requirement, the fact that this case made it to

2    trial implies a decision that VHT either complied with § 411(a) or was excused from

3    compliance. *See Lummi Nation*, 763 F.3d at 1185. Accordingly, the court applies the

4    law of the case doctrine and concludes that VHT's compliance with—or excusal from

5    compliance with—§ 411(a) is the law of the case.

6         The court may still exercise its discretion to reconsider the judgment in this case

7    on VHT's copyright claims if *Fourth Estate* constitutes an "intervening change in law."

8    *Milgard Tempering, Inc.*, 902 F.2d at 715. The court should only do so, however, "where

9    an intervening decision of a higher tribunal clearly demonstrates that the prior decision is

10   wrong." *Pediatric Specialty Care, Inc. v. Arkansas Dep't of Human Servs.*, 443 F.3d

11   1005, 1013 (8th Cir. 2006), *judgment vacated in part on other grounds sub nom. Selig v.*

12   *Pediatric Specialty Care, Inc.*, 551 U.S. 1142 (2007). The court concludes that *Fourth*

13   *Estate* is not an intervening change in law with respect to VHT's copyright claims in this

14   case because *Fourth Estate* was decided after trial and judgment but before the appellate

15   opinion in this case, and the issue was not raised on appeal. *See Merritt*, 932 F.2d at

16   1320; *United States v. Scrivner*, 189 F.3d 825, 828 (9th Cir. 1999).

17        4.   Excusal

18        Even if the law of the case doctrine did not apply here, and assuming Zillow did

19   not waive its objection to § 411(a)'s registration requirement, the court would excuse the

20   requirement in this narrow instance. *See, e.g.*, *Paycom Payroll, LLC*, 758 F.3d at 1203

21   (10th Cir. 2014) ("Generally, a party may waive or forfeit the benefit of a

22   nonjurisdictional rule.") (quoting *Muskrat*, 715 F.3d at 784; *Hoeft*, 967 F.2d at 1303.

1    Here, the purposes behind § 411(a)'s requirement would not be served by vacating

2    the final judgment and dismissing this case in its entirety.  *See Hoeft*, 967 F.2d at 1303

3    (analyzing whether to apply exceptions to a statutory exhaustion requirement by

4    determining whether application of that requirement will "further the general purposes of

5    exhaustion and the congressional intent behind the administrative scheme").  Exhaustion

6    requirements serve twin purposes to (1) protect agency autonomy and (2) promote

7    judicial efficiency.  *See Weinberger v. Salfi*, 422 U.S. 749, 765-66 (1975) ("Exhaustion is

8    generally required as a matter of preventing premature interference with agency

9    processes, so that the agency may function efficiently and so that it may have an

10   opportunity to correct its own errors, to afford the parties and the courts the benefit of its

11   experience and expertise, and to compile a record which is adequate for judicial

12   review.").  Neither of these purposes would be served by dismissal here.  First, VHT has

13   already obtained registrations for the images at issue, and dismissal would not require

14   VHT to interact with the Copyright Office whatsoever in order to refile its claims.  (*See*

15   *supra* § II.B.)  Second, dismissal would result in a massive waste of judicial resources.

16   The parties have litigated this case for five years through dispositive motions, trial,

17   post-trial motions, an appeal, and now a remand.  (*See id.*)

18       At least one other court has already declined to dismiss copyright infringement

19   claims in cases that have advanced significantly, despite *Fourth Estate*'s intervention.  In

20   *Schmidt v. Baldy*, No. CV169368DSFAGRX, 2019 WL 8219486, at *1 (C.D. Cal. June

21   11, 2019), the Central District of California declined to dismiss a defendant's copyright

22   infringement counterclaim after *Fourth Estate* was issued just weeks before trial.  That

court noted that "the Supreme Court [in *Fourth Estate*] did not state that dismissal was

the only remedy." *Id.* Here, this case has progressed far beyond *Schmidt* relative to the

time the defendant raised a *Fourth-Estate*-based objection.

True, several courts have granted motions to dismiss copyright infringement

claims filed before *Fourth Estate* based on the failure to obtain copyright registrations.

*See, e.g., Izmo, Inc. v. Roadster, Inc.*, No. 18-CV-06092-NC, 2019 WL 2359228, at *2

(N.D. Cal. June 4, 2019); *UAB "Planner 5D" v. Facebook, Inc.*, No.

19-CV-03132-WHO, 2019 WL 6219223, at *7 (N.D. Cal. Nov. 21, 2019); *Xclusive-Lee,*

*Inc. v. Hadid*, No. 19-CV-520-PKCCLP, 2019 WL 3281013, at *4 (E.D.N.Y. July 18,

2019); *Imagize LLC v. Ateknea Sols. Hungary KFT*, No. 18-CV-01098-RS, 2019 WL

3068345, at *3 (N.D. Cal. July 12, 2019). However, none of these cases progressed as

far as this one at the time of dismissal. Zillow fails to cite to any case in which a court

dismissed copyright infringement claims based on *Fourth Estate* after a trial on the

merits, a final judgment, an appeal, and a remand. The court declines to do so here.[10]

_____

[10] The parties also dispute whether amending a complaint "cures" a defect with § 411(a)'s
registration requirement. (*See* VHT Mot. at 19; Zillow Reply at 14-18.) District courts are split
on this question, although the majority of courts hold that amendment does not cure a defect.
*See, e.g., Malibu Media, LLC v. Doe*, No. 18-CV-10956 (JMF), 2019 WL 1454317, at *2
(S.D.N.Y. Apr. 2, 2019) ("Plaintiff's argument would make a meaningless formality out
of *Fourth Estate*'s requirement that an application be approved prior to filing suit. Were it
correct, a plaintiff could file suit at any time, notwithstanding Section 411(a)'s precondition, and
simply update the complaint when registration finally occurred."); *cf. Imagize LLC v. Ateknea
Sols. Hungary KFT*, No. 18-CV-01098-RS, 2019 WL 3068345, at *3 (N.D. Cal. July 12, 2019)
(dismissing complaint for failure to allege compliance with § 411(a)'s registration requirement
with leave to amend). That this question is largely moot here is further reason to excuse strict
compliance with § 411(a)'s requirement as interpreted by *Fourth Estate*. Here, VHT already
amended its complaint to include allegations that it holds registrations for the images at issue,
and that amended complaint was further superseded by the pretrial order. Therefore, the
question of whether to allow amendment is not before the court. Moreover, the parties stipulated

**C.      Compilation and Statutory Damages**

The parties cross-move for partial summary judgment on the issue of statutory damages.  (*See* Zillow Mot. at 15-21; VHT Mot. at 24-46.)  Zillow contends that VHT's images constitute a "compilation" under 17 U.S.C. § 504(c)(1) and therefore a single "work" for statutory damages purposes.  (*See* Zillow Mot. at 15-21.)  On that ground Zillow contends that VHT is limited to one award of statutory damages for all remaining images at issue.  (*See id.*)  VHT argues that the images do not comprise a "compilation" and seeks judgment as a matter of law that VHT is entitled to a separate statutory damages award for each remaining image.  (*See* VHT Mot. at 24-46.)

The parties diverge in their interpretations of the Ninth Circuit's opinion with respect to the compilation question.  Zillow focuses largely on the registration status of VHT's images and contends that the images' independent economic value is "irrelevant" to the compilation issue.  (*See* Zillow Mot. at 15-23.)  VHT, on the other hand, argues that the images are separate works because they were separately infringed and contends that separate statutory damages awards are appropriate even though it registered its images as part of a "compilation" with the Copyright Office.  (VHT Mot. at 38-46.)

The court proceeds with its analysis of the compilation issue as follows.  First, the court briefly reviews the relevant statutory text regarding compilations and statutory damages.  Second, the court reviews its prior analysis of the statutory damages question.

---

in their proposed pretrial order—eventually entered by the court, superseding the pleadings—that "[t]he United States Copyright Office has issued copyright registrations to VHT for 27,358 of the photographs that are the subject of this action."  (*See* Prop. PTO at 5; PTO at 5.)

1   Third, the court analyzes the Ninth Circuit's opinion in this case regarding the proper test

2   for "compilation." Fourth, the court reconciles the Ninth Circuit's opinion here with

3   earlier Ninth Circuit authority on which the court previously relied. Finally, based on the

4   statutory text and the court's reconciliation of these Ninth Circuit authorities, the court

5   analyzes whether VHT's images in this case constitute a "compilation."

6       1.   Statutory Damages Under the Copyright Act

7           Under the Copyright Act, a party may elect to receive statutory damages in lieu of

8   actual damages for all infringements involved in the action "with respect to any one

9   work." *See* 17 U.S.C. § 504(c)(1). In relevant part, 17 U.S.C. § 504(c)(1) provides:

10          [T]he copyright owner may elect, at any time before final judgment is
           rendered, to recover, instead of actual damages and profits, an award of
11          statutory damages for all infringements involved in the action, with respect
           to any one work, for which any one infringer is liable individually, or for
12          which any two or more infringers are liable jointly and severally, in a sum of
           not less than $750 or more than $30,000 as the court considers just.
13
   *Id.* Section 504(c)(1) further provides that "[f]or the purposes of this subsection, all the
14
   parts of a compilation or derivative work constitute one work." *Id.*
15
           A "work" is undefined in the statutory scheme. *See Sullivan v. Flora, Inc.*, 936
16
   F.3d 562, 567 (7th Cir. 2019). "Compilation" is defined as "a work formed by the
17
   collection and assembling of preexisting materials or of data that are selected,
18
   coordinated, or arranged in such a way that the resulting work as a whole constitutes an
19
   original work of authorship." 17 U.S.C. § 101.
20
   //
21
   //
22

1        2.  <u>The Court's Prior Analysis</u>

2            Prior to trial, Zillow asked the court to determine whether 17 U.S.C. § 504(c)(1)

3   limits VHT to a single award of statutory damages for all infringements of any number of

4   images that VHT registered under an express claim of compilation in a single database.

5   (*See* Prop. PTO at 6.)  VHT asked the court to determine whether it is entitled to separate

6   statutory damages awards for each image that has independent economic value.  (*See id.*)

7            The court analyzed the statutory damages question on the record.  (*See* 2/7/17

8   Trial Tr. at 11-17.)  After a review of controlling Ninth Circuit authority, the court

9   determined that it must apply the "independent economic value" test to determine

10  whether VHT's images constitute separate "works."  (*See id.*)  Specifically, the court

11  relied on *Columbia Pictures I* and its progeny.  (*See id.* (citing *Columbia Pictures I*, 106

12  F.3d at 295).)  In *Columbia Pictures I*, the Ninth Circuit determined that the "proper test

13  to apply in analyzing whether [each material] is a separate work" for purposes of

14  statutory damages is whether each material "has an independent economic value."  *See*

15  *Columbia Pictures I* at 295.  This court also noted that other circuits had rejected the

16  "independent economic value" test.  (*See* 2/7/17 Trial Tr. at 16 (citing *Bryant v. Media*

17  *Right Prods., Inc.*, 603 F.3d 135, 142 (2d Cir. 2010)).)  Further, other federal circuit

18  courts had recognized the Ninth Circuit's application of the "independent economic

19  value" test.  *See, e.g.*, *Bryant*, 603 F.3d at 142 (noting that three other circuits have

20  adopted the "independent economic value" test, including the Ninth Circuit, and citing

21  *Columbia Pictures I,* 106 F.3d at 295).

22  //

1    The court also relied on *Columbia Pictures Television, Inc. v. Krypton*

2  *Broadcasting of Birmingham, Inc.*, 259 F.3d 1186, 1193 (9th Cir. 2001) ("*Columbia*

3  *Pictures II*").  (*See* 2/7/17 Trial Tr. at 16-17.)  *Columbia Pictures II* noted that every

4  circuit to address the issue of separate statutory damages has held that "separate

5  copyrights are not distinct works [for the purpose of statutory damages] unless they can

6  live their own copyright life," and stating that "[a]s applied to episodes of a television

7  series, this test requires us to determine whether each episode has an independent

8  economic value and is, in itself, viable."  *See Columbia Pictures II*, 259 F.3d at 1193.

9  *Columbia Pictures II* states that the Ninth Circuit "adopted this test" for what constitutes

10  a "work."  *Id.*

11    Based on this authority, the court concluded that the independent economic value

12  test was the appropriate measure of whether VHT is entitled to separate statutory

13  damages for each of its images.  (*See* 2/7/17 Trial Tr. at 17.)  The court declined to "veer

14  from established and unqualified precedent based on an insignificant difference in

15  registration format and an equivocal Copyright Office interpretation that can be

16  reconciled with that precedent."  (*See id.*)

17    3.  The Ninth Circuit's Opinion

18    The Ninth Circuit opinion in this case reads *Columbia Pictures I* and its progeny

19  differently.  Instead of a "test," the Ninth Circuit reads *Columbia Pictures II* to hold that

20  the question of independent economic value "informs our analysis of whether the photo

21  or episode is a work, *though it is not a dispositive factor.*"  *See VHT, Inc.*, 918 F.3d at

22  747 (citing *Columbia Pictures II*, 259 F.3d at 1193) (emphasis added).  Moreover, the

1    Ninth Circuit declared that "consideration of the independent economic value factor does

2    not answer the question whether something is a compilation" under 17 U.S.C. § 101.

3    *VHT, Inc.*, 918 F.3d at 747.  In other words, "independent economic value" is merely one

4    factor in determining whether something is a separate "work," and does not resolve

5    whether something is a "compilation."

6            The Ninth Circuit held that "[w]hether various VHT photo collections comprise

7    one or more compilations is a threshold damages question."  *See id.*  The Ninth Circuit

8    further noted that "[t]hough the registration label is not controlling, it may be considered

9    by the court when assessing whether a work is a compilation."  *Id.* at 748.  The Ninth

10   Circuit emphasized that "[u]ltimately, what counts is the statutory definition."  *Id.*  The

11   Ninth Circuit therefore remanded to this court "for further proceedings as to whether the

12   VHT photos remaining at issue were a compilation."  *Id.*

13           4.  Reconciliation with *Columbia Pictures I* and Its Progeny

14           Now, the court must reconcile the Ninth Circuit's opinion with *Columbia Pictures*

15   *I* and its progeny with respect to (1) the role of the "independent economic value" test;

16   and (2) the interaction between "work" and "compilation."

17               a.  *Independent Economic Value*

18           First, the Ninth Circuit concludes that "the question of whether something . . . has

19   'independent economic value' . . . is not a dispositive factor" as to whether something is a

20   "work" for the purpose of statutory damages.  *See id.* at 747.  The Ninth Circuit cites

21   *Columbia Pictures II*, 259 F.3d at 1193, in support of this conclusion.  *Columbia Pictures*

22   *II* states that "every circuit to address the issue has held that 'separate copyrights are not

1    distinct works unless they can 'live their own copyright life,'" *Columbia Pictures II*, 259

2    F.3d at 1193 (quoting *Walt Disney Co. v. Powell,* 897 F.2d 565, 569 (D.C. Cir.

3    1990)) (additional internal quotation omitted), and that as applied to episodes of a

4    television series, "this test requires us to determine whether each episode 'has an

5    independent economic value and is, in itself, viable,'" *see id.* (emphasis added) (quoting

6    *Gamma Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106, 1117 (1st Cir. 1993) (internal

7    citation omitted).  *Columbia Pictures II* goes on:  "We adopted this test for what

8    constitutes a 'work' in a prior appeal of this case."  *Id.*

9            In addition to *Columbia Pictures II*, *Columbia Pictures I* holds that "the proper

10   test to apply in analyzing whether each episode is a separate work" is whether the

11   episodes have "independent economic value."  *See Columbia Pictures I*, 106 F.3d at 295.

12   Moreover, other circuits view the Ninth Circuit as having adopted the independent

13   economic value "test."  *See, e.g.*, *Bryant*, 603 F.3d at 142 (noting that three other circuits

14   have adopted the "independent economic value" test, including the Ninth Circuit, and

15   citing *Columbia Pictures I*, 106 F.3d at 295).

16           Nevertheless, the Ninth Circuit now clarifies that "the question of whether

17   something . . . has 'independent economic value' . . . is not a dispositive factor" as to

18   whether something is a "work" for the purpose of statutory damages.  *See VHT, Inc.*, 918

19   F.3d at 747.  Thus, although the court will consider the "independent economic value" of

20   the VHT Photos, in fidelity to the Ninth Circuit's opinion here, it will not consider this

21   factor as dispositive.

22   //

1            *b.  Relationship Between "Work" and "Compilation"*

2            Second, the Ninth Circuit concludes that "consideration of the independent

3    economic value factor does not answer the question whether something is a compilation."

4    *See VHT, Inc.*, 918 F.3d at 747.  Nevertheless, if *Columbia Pictures I* and *Columbia*

5    *Pictures II* are to be given effect, although independent economic value may not be

6    dispositive of the issue, it must at least weigh in favor of finding that that item is a

7    distinct "work."  If VHT's images each are distinct "works" for statutory damages

8    purposes (possibly by virtue of having, in part, independent economic value), it would

9    appear that they cannot be a "compilation," because a "compilation" is defined in the

10   statute as a single "work" for statutory damages purposes.  *See* 17 U.S.C. § 504(c)(1).

11           Moreover, this court has been unable to locate a case that draws a bright-line

12   distinction between the question of whether something is a "compilation" and whether

13   something is a single "work" for the purpose of statutory damages.  Courts generally treat

14   these as the same question in an analysis under 17 U.S.C. § 504(c)(1), and collapse them

15   into a single inquiry regarding whether materials are single or separate works for the

16   purposes of statutory damages.  *See, e.g.*, *Columbia Pictures I*, 106 F.3d at 292;

17   *Columbia Pictures II*, 259 F.3d at 1193; *Bryant*, 603 F.3d at 142 (comparing the Second

18   Circuit's test for "compilation" directly with the Ninth Circuit's "independent economic

19   value" test for "work"); *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1180 (9th Cir.

20   2012) (holding that each wedding photo on a disk is a separate "work" and the set of

21   photos is not a "compilation" because each photo "has an independent economic value")

22   (quoting *Columbia Pictures II*, 259 F.3d at 1193)).  Thus, although this court is mindful

1   of the Ninth Circuit's instruction that "the independent economic value factor does not

2   answer the question whether something is a compilation," *see VHT, Inc.*, 918 F.3d at 747,

3   the court concludes that independent economic value is still one factor that is relevant to

4   its analysis.

5          *c.  Reconciliation*

6        As this court is bound by the Ninth Circuit's opinions in this case and in the

7   *Columbia Pictures* line of cases, the court must reconcile the two.  First, the court takes

8   heed of the Ninth Circuit's instruction that "[u]ltimately, what counts is the statutory

9   definition" of "compilation."  *VHT, Inc.*, 918 F.3d at 748.  Thus, the court reads the Ninth

10  Circuit's instruction and the statutory text to require the court to consider how VHT's

11  images are "selected, coordinated, or arranged" in analyzing whether they constitute a

12  compilation.

13       For further guidance, the court turns to *Bryant*, 603 F.3d at 142.[11]  In *Bryant*, the

14  Second Circuit analyzed whether the songs on an album each constituted separate works

15  or a single compilation.  *See id.* at 140.  The *Bryant* court focused on whether "the

16  plaintiff—the copyright holder—issued its works separately, or together as a unit."  *Id.* at

17  141.  The court noted that in two prior cases, a series of television shows and a series of

18  songs were not "compilations" because the plaintiff issued each episode or show

19  separately.  *Id.* (citing *Twin Peaks Prods., Inc. v. Publ'ns. Int'l Ltd.*, 996 F.2d 1366, 1381

20

21          [11] The Ninth Circuit cited *Bryant* for the proposition that "[t]he question of whether a
    work constitutes a 'compilation' for the purposes of statutory damages pursuant to Section
22  504(c)(1) of the Copyright Act is a mixed question of law and fact."  *See VHT, Inc.*, 918 F.3d at
    747 (citing *Bryant*, 603 F.3d at 140).

1 | (2d Cir. 1993); *WB Music Corp. v. RTV Comm. Grp., Inc.,* 445 F.3d 538, 541 (2d Cir.

2 | 2006)).  The *Bryant* court then contrasted those facts from the facts before it, in which the

3 | copyright holders decided to issue their songs in album form and concluded that the

4 | albums constituted "compilations."  *See id.*

5 |       The court finds the *Bryant* court's method of determining whether something is a

6 | "compilation" persuasive.  *Bryant*'s focus on how the copyright holder arranges its own

7 | materials hews closely to the statutory language that addresses how the materials at issue

8 | are "selected, coordinated, or arranged."  *See* 17 U.S.C. § 101.  Moreover, looking to the

9 | form in which the copyright holder issues its materials helps reconcile the Ninth Circuit's

10 | opinion in this case with the *Columbia Pictures* line of cases.  Under this analysis, it may

11 | be possible for materials to have independent economic value *if* issued separately (and

12 | therefore potentially constitute separate "works"), but *in fact* not be issued separately

13 | (and therefore constitute a compilation).

14 |       Applying *Bryant's* analysis is not a perfect solution.  Tensions remain between the

15 | definition of "work" and the definition of "compilation."  Nevertheless, the court finds

16 | the most faithful reading of the Ninth Circuit's opinion here to be that *Columbia Pictures*

17 | *I* and *Columbia Pictures II* are about "works," not "compilations."  If that is the case,

18 | even though *Bryant* distinguishes its test from that in *Columbia Pictures I* and *Columbia*

19 | *Pictures II*, the *Bryant* test can be reconciled by interpreting it as defining a

20 | "compilation," separate and apart from "work."

21 |       *Bryant's* approach is also consistent with one potential reading of *Monge*.  *See*

22 | *Monge*, 688 at 1180.  In *Monge*, the Ninth Circuit analyzed the question of "work" and

"compilation" together.  *See id.* (concluding that each photo on a disk was a separate

work and concluding in the following sentence that "[i]n sum, there is no compilation.").

However, the *Monge* court reviewed the statutory definition of compilation and

concluded that a series of images on a disk were not "selected, coordinated, or arranged"

to create "an original work of authorship."  *Id.*

Finally, the court pays heed to the Ninth Circuit's instruction that "[t]hough the

registration label is not controlling, it may be considered by the court when assessing

whether a work is a compilation."  *VHT, Inc.*, 928 F.3d at 748.  Therefore, the court will

consider VHT's images' registration label insofar as it provides guidance with respect to

how VHT's images are "selected, coordinated, or arranged" when VHT issues those

images.  *See* 17 U.S.C. § 101.

5.  <u>Application</u>

Zillow argues that VHT's images are a "compilation" because they are part of

VHT's master photo database and because the Copyright Office determined that VHT's

database is a compilation.  (*See* Zillow Mot. at 15.)  VHT responds that the question is

not whether it stores its photos in a database, but rather whether its photos "used on Digs"

are part of a compilation.  (*See* VHT Mot. at 34 (citing *VHT, Inc.*, 918 F.3d at 747).)  In

other words, VHT argues that the question is whether the "works infringed" make up a

compilation or not.  (*See id.* at 34-35.)

The court agrees with VHT.  VHT stores its images in a database and registers the

database as well as its individual images.  However, VHT's organization of its images

*prior to* issuance does not answer the question of how VHT's images are organized or

1    arranged *when issued.  See Bryant*, 603 F.3d at 142; *see also Monge*, 688 F.3d at 1180

2    (holding that individual wedding images on a disk did not constitute a "compilation").  In

3    fact, VHT licenses its images on a per-image or per-property basis.  Thus, VHT's images

4    in its database are more akin to the television episodes in *Twin Peaks* than the collection

5    of songs on an album in *Bryant*.  *Compare Twin Peaks Prods., Inc.*, 996 F.2d at 1381,

6    *with Bryant*, 603 F.3d at 142.  True, the fact  that VHT group-registers its images as

7    "compilations" weighs in favor of a "compilation" finding.  *See VHT, Inc*., 928 F.3d at

8    748.  However, this factor is not controlling (*see id.*), and the court finds it outweighed by

9    the form in which VHT issues its images.

10          Finally, to the extent the images' independent economic value remains a factor to

11   consider in the "compilation" analysis, *see supra* § III.C.4.b, the court concludes, based

12   on the jury's finding, that this factor weighs against finding a "compilation."[12]  (*See*

13   Verdict Form at 5.)

14          Therefore, the court concludes as a matter of law that VHT's database does not

15   constitute a "compilation" under 17 U.S.C. § 101.  Accordingly, the court DENIES

16   Zillow's motion for partial summary judgment on the compilation issue, and GRANTS

17   VHT's motion for partial summary judgment on the same issue.

18   //

19   //

20   //

21   ────────────────

22   [12] The court notes, however, that even if it did not consider the independent economic
     value factor, it would still conclude that VHT's database does not constitute a compilation under
     17 U.S.C. § 101.

**D.     Order Regarding Remaining Issues in This Case**

Having concluded that the court will not dismiss this case on *Fourth Estate* grounds, and that VHT's database is not a "compilation" as a matter of law, the court ORDERS the parties to submit the following:

(1) A joint statement, not to exceed ten (10) pages, that includes (a) the parties' position(s) as to the remaining issues left for adjudication in this case; and (b) if the parties believe any issues remain that are not addressed by an amended judgment, the parties' proposal for resolving those remaining issues; and

(2) A proposed amended judgment that accounts for the Ninth Circuit's reversal of the court's denial of Zillow's motion notwithstanding the verdict on the issue of willfulness and vacating of the jury's willfulness determination (*see* 9th Cir. Op., 918 F.3d at 750).

The parties should confer and attempt to reach agreement on both of the above items.  If the parties are unable to reach agreement, the parties may include separate statements.  The parties shall file their statement and their proposed amended judgment no later than fourteen days from the date of this order.

//

//

//

//

//

//

# IV.    CONCLUSION

For the foregoing reasons, the court DENIES Zillow's motion for judgment on the pleadings or for partial summary judgment (Dkt. # 339); and GRANTS VHT's motion for partial summary judgment (Dkt. # 343).  The court further ORDERS the parties to submit a joint statement and proposed amended judgment as specified in Section III.D of this order.

Dated this 8th day of May, 2020.

JAMES L. ROBART
United States District Judge