**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| VHT, INC., a Delaware corporation, | Nos.  22-35147 |
| | 22-35200 |
| *Plaintiff-Appellee/* | |
| *Cross-Appellant,* | D.C. No. |
| | 2:15-cv-01096- |
| v. | JLR |
| ZILLOW GROUP, INC., a | |
| Washington corporation; ZILLOW, | OPINION |
| INC., a Washington corporation, | |
| *Defendants-Appellants* | |
| *Cross-Appellees.* | |

Appeal from the United States District Court
for the Western District of Washington
James L. Robart, District Judge, Presiding

Argued and Submitted February 27, 2023
Seattle, Washington

Filed June 7, 2023

Before: M. Margaret McKeown, William A. Fletcher, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge McKeown

# SUMMARY[*]

## Copyright

The panel affirmed the district court's judgment on remand in a copyright action brought by VHT, Inc., concerning the online display of photos by Zillow Group, Inc., and Zillow Inc., an online real estate marketplace.

Thousands of copyrighted photos on Zillow's site come from VHT, a professional real estate photography studio. Zillow used VHT's photos on its real estate "Listing Platform," which is the primary display of properties, and on a home design section of the website called "Digs."

Following summary judgment rulings, a jury trial, and various post-trial motions, the panel affirmed the district court in large part in prior appeal *Zillow I*. Essentially, the panel agreed with the district court that Zillow was not liable for direct, secondary, or contributory infringement. However, the panel determined that Zillow's addition of searchable functionality on the Digs home design webpages was not fair use. The panel also reversed the jury's finding that Zillow had willfully infringed 2,700 searchable photos displayed on Digs, and it remanded for consideration of statutory damages and a determination whether VHT's photos used on Digs were part of a compilation or were individual photos. Following more motions and a bench trial on remand, the parties again appealed.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that, on remand, the district court properly excused VHT's compliance with the non-jurisdictional registration requirement of 17 U.S.C. § 411(a), which provides that no infringement action "shall be instated until preregistration or registration of the copyright has been made in accordance with this title."  Before filing suit, VHT submitted to the Copyright Office completed registration applications for its images, but the Copyright Office did not issue registration certificates until after the suit was filed.  *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019), issued 11 days before *Zillow I*, overruled Ninth Circuit precedent and held that registration is made not when an application for registration is filed, but when the Copyright Register has registered a copyright after examining a properly filed application.  On remand, Zillow argued for the first time that VHT failed to satisfy § 411(a)'s registration requirement and that its claims therefore must be dismissed.  The panel held that the district court properly excused VHT's failure to meet § 411(a)'s non-jurisdictional exhaustion requirement because copyright registration was wholly collateral to whether Zillow infringed on VHT's copyright, dismissing VHT's claim after the statute of limitations had already expired would cause irreparable harm, and excusal would not undermine the purpose of administrative exhaustion.

The panel affirmed the district court's ruling, on remand, that the 2,700 VHT photos remaining at issue were not a compilation, which would entitle VHT to only a single award of statutory damages under 17 U.S.C. § 504(c), but rather, each individual photo constituted an infringement. The photos were part of VHT's master photo database, and VHT group-registered its images as "compilation."  But VHT also registered the underlying individual images and

licensed these images on a per-image or per-property basis. The panel held that the photos had independent economic value separate from the database and did not qualify as "one work." Following *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publishing Co.*, 747 F.3d 673 (9th Cir. 2014), the Copyright Office stated that a database is, by definition, a compilation, and in 2018 it updated registration options to allow registration of a number of works as a group that is not considered a compilation. The panel clarified that *Alaska Stock* does not limit recovery to one award for any infringements in a database. The panel held that the statutory text, caselaw, and common sense compelled one result: the infringed works were not the database but instead were the 2,700 individual photographs, and VHT was entitled to an award of statutory damages for each of the 2,700 infringements.

On VHT's cross-appeal, the panel held that, because the panel in *Zillow I* had vacated the jury's finding of willfulness, the district court did not exceed its mandate on remand by conducting a new bench trial to decide statutory damages and determine whether any of the infringements were innocent. The panel also affirmed the amount of the statutory award.

## COUNSEL

Ian B. Crosby (argued), Jenna G. Farleigh, and Emily A. Parsons, Susman Godfrey LLP, Seattle, Washington, for Defendants-Appellants.

Stephen M. Rummage (argued) and Eric M. Stahl, Davis Wright Tremaine LLP, Seattle, Washington, for Plaintiff-Appellee.

Stephen M. Doniger, Doniger Burroughs PC, Venice, California; Mickey H. Osterreicher and Alicia Wanger Calzada, National Press Photographers Association, Athens, Georgia; for Amici Curiae The National Press Photographer's Association, American Photographic Artists, The Graphic Artist Guild, Professional Photographers of America, North American Nature Photographers, American Society of Media Photographers, and Digital Media Licensing Association.

## OPINION

McKEOWN, Circuit Judge:

This is the second time we have considered copyright claims concerning the online display of photos by Zillow Group, Inc. and Zillow Inc. (collectively, "Zillow"), an online real estate marketplace. In *VHT Inc. v. Zillow Group Inc.* ("*Zillow I*"), we addressed infringement claims related to tens of thousands of real estate property photos displayed by Zillow on its website. 918 F.3d 723, 732, 734 (9th Cir. 2019).

VHT is the largest professional real estate photography studio in the country, and thousands of the copyrighted photos on Zillow's site come from VHT. *Id.* at 730. VHT's clients, including real estate brokerages and listing services, hire VHT to photograph properties for marketing purposes. *Id.* The photos are retouched and edited by the company, saved in VHT's electronic photo database, and delivered to the clients per their license agreement. *Id.* Zillow used VHT's photos in two ways: on its real estate "Listing Platform," which is the primary display of properties, and on a section of the website called "Digs," which "features photos of artfully-designed rooms in some of those properties and is geared toward home improvement and remodeling." *Id.*

Following summary judgment rulings, a jury trial and various post-trial motions, in *Zillow I*, we affirmed the district court in large part. Essentially, we agreed with the district court that Zillow was not liable for direct, secondary or contributory infringement. *See id.* at 750. However, we determined that Zillow's addition of searchable functionality on the Digs home design webpages was not fair use. *See id.*

at 743–44.  We also reversed the jury's finding that Zillow had willfully infringed 2,700 searchable photos displayed on Digs, *see id.* at 748–49, and remanded for consideration of statutory damages and a determination "whether VHT's photos used on Digs are part of a 'compilation' or if they are individual photos," *id.* at 748.

Now, following more motions and a bench trial, the case is back before us.  This time around, we affirm the district court's decision in full.

## I.  ANALYSIS

### A.  IMPLICATIONS OF *FOURTH ESTATE V. WALL-STREET.COM*

The Copyright Act provides that no infringement action "shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a).  More than a decade ago, the Supreme Court made clear that registration is non-jurisdictional.  *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 169 (2010). The Court noted that "Section 411(a) imposes a precondition to filing a claim that is not clearly labeled jurisdictional, is not located in a jurisdiction-granting provision, and admits of congressionally authorized exceptions."  *Id.* at 166 (citing §§ 411(a)–(c)).  "Section 411(a) thus imposes a type of precondition to suit that supports nonjurisdictional treatment under [the Court's] precedents."  *Id.*  The key question, then, is what constitutes registration.

When VHT filed this action, Ninth Circuit precedent held registration was "made" upon the Copyright Office's receipt of a completed registration application.  *See Cosmetic Ideas, Inc. v. IAC/InterActiveCorp*, 606 F.3d 612, 621 (9th Cir. 2010), *overruled by Fourth Estate Public*

*Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019). Before filing suit, VHT submitted to the Copyright Office completed registration applications for its images. VHT does not dispute that the Copyright Office did not issue registration certificates until after the suit was filed. Zillow argues that the failure to obtain a registration decision before filing suit was fatal under the Supreme Court's decision in *Fourth Estate* and requires dismissal with prejudice as the statute of limitations has passed.

In *Fourth Estate*, the Supreme Court granted certiorari to resolve a circuit split on the correct interpretation of 17 U.S.C. § 411(a). A unanimous Court held that "'registration . . . has been made' within the meaning of 17 U.S.C. § 411(a) not when an application for registration is filed, but when the [Copyright] Register has registered a copyright after examining a properly filed application." 139 S. Ct. at 892 (alteration in original). Although *Fourth Estate* overruled Ninth Circuit law in *Cosmetic Ideas*, the Court did not address or implicate the Court's earlier holding in *Reed Elsevier* that registration under Section 411(a) is a non-jurisdictional requirement. *See Reed Elsevier*, 559 U.S. at 169. The Supreme Court explained that "registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights." *Fourth Estate*, 139 S. Ct. at 887. It reasoned that "Congress has maintained registration as prerequisite to suit, and rejected proposals that would have eliminated registration." *Id.* at 891.

*Fourth Estate* was decided 11 days before the Ninth Circuit issued its opinion in *Zillow I*. Before our opinion was filed, neither party argued the impact of *Fourth Estate* through a Rule 28(j) letter or otherwise, nor did Zillow file a petition for rehearing afterward. Instead, after remand,

Zillow for the first time argued that VHT failed to satisfy
Section 411(a)'s requirement to obtain issued copyright
registrations before filing suit, and its claims must be
dismissed.    The district court concluded that "because
§ 411(a) is a pre-filing requirement, the fact that this case
made it to trial implies a decision that VHT either complied
with   § 411(a)   or   was   excused   from   compliance."
Alternatively, the district court held that it "would excuse the
[exhaustion] requirement in this narrow instance."    The
district court noted that "dismissal would result in a massive
waste of judicial resources" given the advanced stage of the
proceedings.    We agree that dismissal was not required.

Our review of the district court's excusal of exhaustion
is de novo, because the exhaustion requirement is
"predominantly a question of law." *Hoeft v. Tucson Unified
Sch. Dist.*, 967 F.2d 1298, 1302–03 (9th Cir. 1992).    We
benchmark whether to excuse compliance with non-
jurisdictional exhaustion requirements, thus avoiding
dismissal, based on three considerations, namely whether:
(1) the claim is "wholly collateral" to the substantive claim
of entitlement; (2) there is a "colorable showing of
irreparable harm;" and (3) "exhaustion would be futile."
*Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*,
30 F.4th 905, 919 (9th Cir. 2022).

The district court did not err in excusing VHT's failure
to exhaust under Section 411(a).    To begin, copyright
registration is wholly collateral to whether Zillow infringed
on VHT's copyright.    Copyright protection runs from the
work's creation, not from registration.    *See Eldred v.
Ashcroft*, 537 U.S. 186, 194–95 (2003).    VHT gained an
exclusive right in its photos upon creation—a right "apart
from registration" with the Copyright Office. *Fourth Estate*,
139 S. Ct. at 887.    While "registration is akin to an

administrative exhaustion requirement," *id.*, the requirement exists to encourage registration because Congress values "a robust federal register of existing copyrights," *Cosmetic Ideas*, 606 F.3d at 619 (citing H.R. Rep. No. 94-1476 at 158), *abrogated on other grounds by Fourth Estate*, 139 S. Ct. at 886. Here, the registration requirement is collateral to the merits determination about whether Zillow infringed the copyright. *See McBride Cotton & Cattle Corp. v. Veneman*, 290 F.3d 973, 980 (9th Cir. 2002) (holding that a claim is collateral "if it is not bound up with the merits so closely that the court's decision would constitute interference with the agency process" (cleaned up)).

No party disputes that dismissing VHT's claim after the statute of limitations has already expired would cause irreparable harm. Such irreparable harm is unique to this case because VHT complied with then-existing precedent from our court and now, at this late stage in the proceedings, the statute of limitations has already expired. To impose a new registration timeline after years of discovery, reliance on circuit precedent, a jury trial, a bench trial and two appeals would be a judicial travesty and waste of resources.

Finally, and importantly, excusal would not undermine the purpose of administrative exhaustion. Exhaustion is generally required to prevent "premature interference with agency processes," to allow the agency to "function efficiently and so that it may . . . correct its own errors," to provide courts "the benefit[s] of [the agency's] experience and expertise," and "to compile a record" for judicial review. *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975). Excusal here would not prematurely interfere with the agency process, nor would it deprive the Copyright Office of providing its experience and expertise. The Third Amended Complaint, filed October 24, 2016, pled that the Copyright Office had

by then issued the registrations.  Alternatively, the Copyright Office had the opportunity to enter an appearance in the case on the issue of registrability but did not do so.  *See* 17 U.S.C. § 411(a).    The Supreme Court's concern that "an infringement suit could be filed and resolved before the Register acted on an application" is surely not present in this case.  *See Fourth Estate*, 139 S. Ct. at 889.  After the Copyright Office granted VHT's eleventh registration in May 2016, the infringement suit did not go to trial until January 2017, eight months later.  By the time the district court excused the exhaustion requirement in its May 2020 decision, it had been over six years since the Copyright Office registered VHT's copyright.    Therefore, VHT's failure to obtain a registration before initiating suit did not undermine the administrative process.

The district court properly excused VHT's compliance with the registration requirement under Section 411(a).

## B.  THE COMPILATION QUESTION

### 1.  District Court Decision

On remand, we left to the district court "further proceedings as to whether the VHT photos remaining at issue were a compilation."  *Zillow I*, 918 F.3d at 748.  The answer to that question is of deep monetary consequence to the parties.    VHT sought statutory rather than actual damages.  If the photos at issue are deemed a compilation, VHT is entitled to a single award of statutory damages, ranging from $750 to $30,000.  17 U.S.C. § 504(c)(1).  If the photos are not a compilation and each individual photo constitutes an infringement, any statutory damages award could be multiplied by the 2,700 individually infringed photos.

The district court was not persuaded by Zillow's arguments that "VHT's images are a 'compilation' because they are part of VHT's master photo database and because the Copyright Office determined that VHT's database is a compilation." Instead, it agreed with VHT that "the question is not whether [VHT] stores its photos in a database, but rather whether its photos 'used on Digs' are part of a compilation." The district court weighed the fact that VHT group-registers its images as "compilations" against the facts that VHT also registers the underlying individual images and licenses these images on a per-image or per-property basis. The court explained that, to the extent the independent economic value of the individual photos separate from the database remains a factor, the jury's finding indicated that the individual images were individual works. The court ultimately concluded "as a matter of law that the infringed images at issue do not constitute a 'compilation'" under the governing statute.

### 2. Statutory Definition of Compilation

As noted in *Zillow I*, "[t]he question of whether a work constitutes a 'compilation' for the purposes of statutory damages pursuant to Section 504(c)(1) of the Copyright Act is a mixed question of law and fact." 918 F.3d at 747 (quoting *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 140 (2d Cir. 2010)). While the independent economic value of the photos "informs our analysis" and the form of registration "may be considered," neither factor is dispositive. *Zillow I*, 918 F.3d at 747–48. "Ultimately, what counts is the statutory definition." *Id.* at 748. We begin there.

Under Section 504(c)(1), a copyright owner may elect to recover

> an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.

17 U.S.C. § 504(c)(1).  That provision clarifies that "[f]or the purposes of this subsection, all the parts of a compilation or derivative work constitute one work." *Id.*

Section 504(c) thus requires us to determine whether the photos at issue qualify as "one work."  The distinction is crucial: If the "one work" subject to the defendant's infringements is a compilation, Section 504(c) limits the copyright holder to a single statutory award.  If the works infringed are not a compilation, they are eligible for individual damage awards.  A "compilation" is "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship."   17 U.S.C. § 101.

While the Copyright Act does not provide a definition of "work," it extends copyright protection to "'[p]ictorial, graphic, and sculptural works' includ[ing] . . . photographs." *Id.*  The gravamen of VHT's claim has always been the infringement of 2,700 individual images—what the Copyright Act would call the individual "preexisting

materials." *Id.* Apart from the individual photos, VHT also owns a copyright in its database. The Copyright Office has recognized the dual copyright nature of registration of the database itself as well as the works within it. *See Alaska Stock, LLC v. Houghton Mifflin Harcourt Publishing Co.*, 747 F.3d 673, 682 (9th Cir. 2014). But VHT has not claimed that Zillow infringed the aspects of its database that make it a compilation, i.e., the selection, coordination, and arrangement of preexisting pictorial works. *See* 17 U.S.C. § 101. The Copyright Office notes that the database registration option "may be useful when an applicant is registering a claim in the creative selection, coordination, or arrangement of the photographs within a database." United States Copyright Office, Circular No. 42, *Copyright Registration of Photographs* at 5 (2021), available at https://www.copyright.gov/circs/circ42.pdf.

Zillow asks us to follow a simple syllogism: the photos were housed in a database, the database was registered as a compilation, therefore the photos were part of a compilation and eligible for only one award. The problem with Zillow's theory is that it elevates the form of registration above all else—a conclusion we and others have rejected. *See Zillow I*, 918 F.3d at 748; *Gamma Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106, 1117 n.8 (1st Cir. 1993) ("[T]he number of copyright registrations is not the unit of reference for determining the number of awards of statutory damages."); *Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 286 n.8 (4th Cir. 2003) ("Imageline is entitled to one award of statutory damages per work infringed because SuperBundle and Master Gallery are compilations or derivative works in which Imageline holds copyrights, not because they are single registrations." (emphasis removed)) *abrogated on other grounds by Reed Elsevier*, 559 U.S. at 169; *Bryant*, 603

F.3d at 141 ("The fact that each song may have received a separate copyright is irrelevant to this analysis."); *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1277 (11th Cir. 2015) (explaining that "the manner of copyright registration is not dispositive of the works issue"); *Sullivan v. Flora, Inc.*, 936 F.3d 562, 572 (7th Cir. 2019) ("The inquiry and fact finding demanded by § 504(c)(1) is more functional than formal, taking account of the economic value, if any, of a protected work more than the fact that the protection came about by an artist registering multiple works in a single application.").

Here, the individual photos were created at the request of a listing agent or broker, then licensed and published to that agent or broker for marketing an individual listing. *Zillow I*, 918 F.3d at 730. VHT licensed the individual photos in the database, not the database itself. The database itself was not published. Rather, Zillow used each photo independently to market home designs. Zillow selected photos based on the content of the images: it sought "photos of artfully-designed rooms" for its Digs platform. *Id.* It was not selecting on the authorship or arrangement of the photos within the database. Instead, it obtained images from feed providers based on the photos themselves. Zillow infringed the individual photos, not the database.  Importantly, the individual infringed photos were not "in any way selected, coordinated, or arranged to create an original work of authorship," *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1180 (9th Cir. 2012) (internal quotation marks omitted), and Zillow did not copy any selection, coordination, or arrangement of the photos from the database.

"Although the Copyright Act states that 'all parts of a compilation . . . constitute one work,' it does not say that any work included in a compilation cannot also exist as a

separate, independent work." *Arista Recs. LLC v. Lime Grp. LLC*, No. 06 CV 5936 KMW, 2011 WL 1311771, at \*3 (S.D.N.Y. Apr. 4, 2011) (alteration in original) (quoting 17 U.S.C. § 504(c)(1)).    Though VHT stored photos in a database, it marketed and licensed individual photos that existed as separate pictorial works.    The photos had independent economic value separate from the database, further supporting VHT's claim that they were individual works eligible for individual awards. *See Zillow I*, 918 F.3d at 747 (holding that independent economic value "informs our analysis . . . though it is not a dispositive factor").

The Seventh Circuit's decision in *Sullivan v. Flora, Inc.* underscores the independent economic value of the individual photos.  Although independent economic value is just one factor to consider, the Seventh Circuit explained its relevance by way of an analogy that resonates here:

> [T]hink in the first instance of the multiple protected works as a quilt and then ask whether any one individual patch has discernable, independent economic value— whether once separated from the quilt a particular patch lives its own copyright life (as "one work")—or instead whether the value lies in the patches' combined assembly into the quilt as a whole (as a "compilation").

*Sullivan*, 936 F.3d at 572.  Because VHT licensed the photos on a per-image or per-property basis, rather than licensing the database itself, each "patch" was valuable on its own. The pictorial works lived their own copyright lives, and value came from each photo's individual content rather than their assembly within the database.

### 3. Evolution of the Copyright Office's Statements on Compilation

This case falls at an inflection point in the Copyright Office's evolving thinking about compilations. The Copyright Office issues a Compendium of U.S. Copyright Office Practices ("Compendium"), which is considered "a non-binding administrative manual." *Georgia v. Public.Resource.Org, Inc.*, 140 S. Ct. 1498, 1510 (2020) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). "[W]e must follow [the Compendium] only to the extent it has the 'power to persuade.'" *Id.* As of 2021, the Office "encourages photographers, stock photography companies, database providers, and other interested parties to register their works using the group registration options for published or unpublished photographs, rather than the group registration for photographic databases." Compendium § 1112.3. Though database registration remains an option, the Office cautions that "registering photographs as part of a photographic database may limit the copyright owner's ability to seek certain remedies in an infringement action," *id.*, as "all the parts of a compilation . . . constitute one work." Compendium § 1112.3 (alteration in original) (quoting 17 U.S.C. § 504(c)(1)). The genesis of that statement first came in 2016, after the copyrights here were registered. VHT received its first Certificates of Registration on its database registration back in 2014, prior to the Office's commentary about the registration type. A bit of history explains the Office's evolving stance and why its caution about compilations has no traction here.

Database registration has been an option since 1989 and remains one today.

Group Registration of Photographs, 81 Fed. Reg. 86643, 86645 (proposed Dec. 1, 2016) (to be codified at 37 C.F.R. pts. 201, 202); Compendium § 1117.  In 2016, the Copyright Office issued a Notice of Proposed Rulemaking focused on updating its group registration options.  At that time, there were multiple options for group registration of multiple photos within the same application:

- Group registration of published photographs, which required photos by the same photographer published in a single year;

- Unpublished collections, which required all the works to have at least one common author;

- Group registration for contributions to periodicals, such as a newspaper, magazine or journal;

- Collective works, such as a periodical, anthology or encyclopedia constituting separate works that are assembled into a collection;

- Group registration for photographic databases.

81 Fed. Reg. at 86644–46.  As to the last group, which is at issue here, the Copyright Office stated that the registration

> covers the authorship involved in selecting, coordinating, and arranging the content of the database as a whole.  It also may cover the individual photographs that are included within the database if the photographers transferred the exclusive rights in their respective works to the owner of the database, and if the selection, coordination,

and/or arrangement of those photographs is
sufficiently creative.

*Id.* at 86645.

One of the Office's proposed changes was to do away
with the unpublished collection group, rebranding that
option as the "'group option for unpublished photographs'
or 'GRUPH.'" *Id.* at 86646. The final rule in 2018 did just
that and permitted a group registration of up to 750
unpublished photographs per group. Group Registration of
Photographs, 83 Fed. Reg. 2542 (Jan. 18, 2018) (codified at
37 C.F.R. pts. 201, 202). The problem with the unpublished
collection group, the Office explained in its 2016 proposal,
is that "when a number of photographs are registered as an
unpublished collective work, the copyright owner would be
entitled to seek only one award of statutory damages in an
infringement action, rather than a separate award for each
photograph." 81 Fed. Reg. at 86653. The new unpublished
group registration option, in contrast, "is treated as a separate
registration for each photograph that is included within the
group." *Id.* Though the Office noted in its proposed rule
that it "will continue to accept" database registration claims,
it expressed for the first time that copyright holders should
consider similar statutory damage implications for the
database registration group. *Id.* at 86654.

Citing to our decision in *Alaska Stock*, the Copyright
Office stated that "[a] database is—by definition—a
compilation." *Id.* (citing *Alaska Stock*, 747 F.3d at 676). It
continued:

Consequently, when a group of photographs
is registered as a database, the copyright
owner may be entitled to seek only one award

> of statutory damages for the database as a
> whole—rather than a separate award for each
> photograph—even if the defendant infringed
> all the photographs that are covered by the
> registration.

81 Fed. Reg. at 86654. The Office concluded that "the group options for published and unpublished photographs provide significant benefits, while avoiding the potential downside of registering a number of works as part of a photographic database," as the group itself is not considered a compilation. *Id.* The group registration updates went into effect in 2018. *See* 83 Fed. Reg. 2542; Compendium § 1112.3.

The Copyright Office's caution regarding the database registration category and promotion of different group categories was apparently a reaction to our decision in *Alaska Stock*. We take the opportunity to clear up some confusion. To begin, *Alaska Stock*'s reference to photographic databases as "collective work" under the Copyright Act was in the context of registration, without reference to statutory damages. *See Alaska Stock*, 747 F.3d at 676. We held that a stock photo agency that registered databases had successfully registered both a copyright in the databases and the individual images stored within them. *See id.* at 685.

The Copyright Office's reading of *Alaska Stock* as potentially limiting recovery to one award for any infringements in a database belies the rationale of that case. *Alaska Stock* was a victory for photographers and stock agencies. We espoused our support for an efficient registration process that was financially and administratively manageable for individual photographers trying to make a living and one on which stock agencies had relied upon for

decades with the "written blessing of the federal administrative agency." *Alaska Stock,* 747 F.3d at 677. We emphasized that "[w]e are not performing a mere verbal, abstract task when we construe the Copyright Act. We are affecting the fortunes of people, many of whose fortunes are small." *Id.* at 686. In holding that the collective registration covered both the database and the individual photographs within it, we recognized that "[t]he livelihoods of photographers and stock agencies have long been founded on their compliance with the Register's reasonable interpretation of the statute." *Id.* If a copyright holder could receive only one statutory award for thousands of infringements housed within a database, *Alaska Stock* becomes at best an empty gesture and at worst a cruel joke.

At the time of the infringements here, database registration was the viable course for stock agencies with thousands of photos and one that had been endorsed by the Copyright Office for decades. *See id.* According to amici, database registration remains a "critically important" course: "Unlike creators of other copyrightable works, photographers can create hundreds, and sometimes thousands, of photographs per day."[1] Even the other group registration options, which limit registration to 750 photographs, would be little help to large stock agencies like VHT, which owns the copyright in over ten million home photos. 83 Fed. Reg. at 2542. If database registration alone automatically limited a holder to one infringement award, the Copyright Office would be inundated with applications,

---

[1] The amicus brief was filed by the American Photographic Artists, National Press Photographer's Association, Professional Photographers of America, North American Nature Photography Association, Graphic Artist Guild, Digital Media Licensing Association and American Society of Media Photographers.

or, worse, copyright holders would give up on registration and never be able to protect their creative and monetary investments.

The district court's careful intertwining of factual and legal analysis supports its conclusion that, in this case, the registration encompassed the individual photos that were infringed.  The court considered the appropriate factors and distinguished between "VHT's organization of its images *prior to* issuance" in an automated database and "how VHT's images are organized or arranged *when issued*."

The statutory text, caselaw, and common sense compel one result: the infringed works were not the database but instead were the 2,700 individual photographs, and VHT is entitled to an award for each of the 2,700 infringements.

## C. REGISTRATION VALIDITY

Zillow argued in the alternative that if VHT's database is not a compilation, its database registration applications are inaccurate and subject to invalidation under 17 U.S.C. § 411(b)(1).  This argument is neither convincing nor applicable given our compilation holding.  Zillow's sole authority, *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, 925 F.3d 1147 (9th Cir. 2019), is no longer good law.  *See Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 142 S. Ct. 941, 945 (2022) ("Lack of knowledge of either fact or law can excuse an inaccuracy in a copyright registration."); *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1065 n.3 (9th Cir. 2022) ("Because we relied on the same distinction in *Gold Value*, to the extent that its holding concluded that a party's knowledge of the law is irrelevant under § 411(b), it is 'clearly irreconcilable' with the Supreme Court's analysis here and is thereby abrogated.").  We need not consider the issue further as our

conclusion that the infringed photographs did not amount to a statutory compilation does not implicate whether the database itself was registered as a compilation.

### D. DAMAGES

On cross appeal, VHT argues that the district court exceeded its mandate by conducting a new trial to decide statutory damages and also takes issue with the statutory damages awarded.  At the first trial, "[t]he jury found that Zillow willfully infringed exclusive rights to 3,373 searchable VHT photos that were eligible for statutory damages."  *Zillow I*, 918 F.3d at 748.  We vacated that finding as to 2,700 photos because substantial evidence did not support either actual awareness or reckless disregard as required to sustain willfulness.  *Id.* at 748–49.  The district court took our vacatur of the jury's finding of willfulness as "necessarily vacat[ing] the award of damages for willful infringement."  The district court did not err.  A new trial was necessary to determine the status of the photos and to consider the appropriate statutory award.

Once we vacated the willfulness option, it was not clear how the disputed images should be categorized.  The verdict form instructed the jury to "categorize th[e] images based on whether Zillow infringed willfully, innocently, or neither willfully nor innocently."  The new trial was necessary to determine whether any of the infringements were innocent.  Before doing so, the district court harkened back to statements in *Zillow I* that "substantial evidence does not show Zillow was 'actually aware' of its infringing activity" and that Zillow's "belief that feed providers had properly licensed its uses and that its system effectively respected those rights was reasonable."  *VHT, Inc. v. Zillow Grp., Inc.*, No. C15-1096JLR, 2021 WL 913034, at *5 (W.D. Wash.

Mar. 10, 2021) (quoting *Zillow I*, 918 F.3d at 749). The district court appropriately considered the innocence issue and the record supports its determination that 388 images were innocently infringed.

VHT also challenges the amount of the statutory award. The district court awarded statutory damages of $800 for 2,312 images and $200 per image for the 388 innocently infringed photos. VHT repeats the argument it made to the district court that, on remand, the court should have awarded $1,500 per infringement, which is near the bottom of the statutory damages range for infringements that are neither willful nor innocent. It is also the amount the jury awarded for the willful infringements. VHT does not cite any authority for the proposition that the statutory damages award should go undisturbed after a willfulness vacatur if the jury also could have reached that same amount without finding willfulness.

The Second Circuit rejected a similar argument where the damage award would still have been authorized by the statute without willfulness. *See Island Software & Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 265 (2d Cir. 2005). The Second Circuit "believe[d] it prudent to vacate [the district court's] damage award and remand for further proceedings" where "in setting the statutory damages, the district court relied, at least in part, on an erroneous conclusion that willfulness had been established as a matter of law." *Id.* The court reasoned that it could not "be certain that the district court's remedial decision would have been the same absent its conclusion that [the infringer] acted with reckless disregard for, or willful blindness to, [the copyright holder's] rights." *Id.* The First Circuit has reiterated this same principle of vacatur where there is uncertainty as to the relationship between willfulness and statutory damages. *See*

*Venegas-Hernandez v. Sonolux Recs.*, 370 F.3d 183, 195–96 (1st Cir. 2004).   Not only was a new trial warranted on damages, we see no basis to disturb the district court's award of statutory damages.

**AFFIRMED.**